ECF, KAPLAN, TDIS

## U.S. District Court
## Northern District of Texas (Dallas)
## CIVIL DOCKET FOR CASE #: 3:07-mc-00018
## Internal Use Only

In Re Subpoena issued to Radio Shack Corporation
Assigned to: Judge Jorge A Solis

Date Filed: 03/14/2007
Date Terminated: 03/21/2007

**In Re**

‐ 0 7 ‐ 1 8 4 ;

**Radio Shack Corporation**

**Plaintiff**

**L G Philips LCD Co Ltd**

represented by **Franklin L Broyles**
Goins Underkofler Crawford & Langdon -
Dallas
1201 Elm St
Suite 4800
Dallas, TX 75270
214/969-5454
Fax: 214/969-5902 FAX
Email: frankb@gucl.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Tatung Company**

Certified a true copy of an instrument
on file in my office on 3/21/2007
Clerk, U.S. District Court,
Northern District of Texas
By _____ Deputy

represented by **Penelope Brobst Blackwell**
Greenberg Traurig - Dallas (Ross Ave)
2200 Ross Ave
Suite 5200
Dallas, TX 75201
214/665-3660
Fax: 214/665-5960
Email: blackwellp@gtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Tatung Company of America Inc**

represented by **Penelope Brobst Blackwell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Respondent**

**LG.Philips LCD Co., Ltd.**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/14/2007 | ❶ | ***Magistrate Judge Kaplan chosen by random selection to handle matters that may be referred in this case. (mfw) (Entered: 03/15/2007) |

| 03/14/2007 | ●1 | MOTION for Protective Order and Brief in Support by Tatung Company, Tatung Company of America Inc (mfw) (Entered: 03/15/2007) |
|---|---|---|
| 03/14/2007 | ●2 | Appendix in Support filed by Tatung Company, Tatung Company of America Inc re 1 MOTION for Protective Order (Attachments: # (1)) (mfw) (Entered: 03/15/2007) |
| 03/14/2007 | ● | Filing fee: $39.00. Receipt # 9675 (mfw) (Entered: 03/15/2007) |
| 03/15/2007 | ●3 | Order Designating Case for ECF - see order for specifics. (Signed by Judge Jorge A Solis on March 15, 2007) (mfw) (Entered: 03/15/2007) |
| 03/15/2007 | ●4 | RESPONSE in Opposition filed by LG.Philips LCD Co., Ltd. re 1 MOTION for Protective Order (Broyles, Franklin) (Entered: 03/15/2007) |
| 03/15/2007 | ●5 | Brief/Memorandum in Support filed by LG.Philips LCD Co., Ltd. re 4 Response in Opposition, 1 MOTION for Protective Order (Broyles, Franklin) (Entered: 03/15/2007) |
| 03/15/2007 | ●6 | Appendix in Support filed by LG.Philips LCD Co., Ltd. re 5 Brief/Memorandum in Support of Motion, 4 Response in Opposition, 1 MOTION for Protective Order (Broyles, Franklin) (Entered: 03/15/2007) |
| 03/15/2007 | ●7 | RESPONSE in Opposition filed by LG.Philips LCD Co., Ltd. re 5 Brief/Memorandum in Support of Motion, 6 Appendix in Support, 4 Response in Opposition, 1 MOTION for Protective Order *[Corrected Response]* (Broyles, Franklin) (Entered: 03/15/2007) |
| 03/15/2007 | ●8 | ORDER REFERRING CASE to Magistrate Judge Jeff Kaplan (Signed by Judge Jorge A Solis on March 15, 2007) (mfw) (Entered: 03/16/2007) |
| 03/16/2007 | ●9 | Standing Order for Electronic Filings Related to Matters Referred to the United States Magistrate Judge - see order for specifics. (Signed by Judge Jeff Kaplan on March 16, 2007) (mfw) (Entered: 03/16/2007) |
| 03/16/2007 | ●10 | ORDER: Motion Hearing set for 3/23/2007 10:00 AM before Magistrate Judge Jeff Kaplan. (Signed by Judge Jeff Kaplan on March 16, 2007) (mfw) (Entered: 03/16/2007) |
| 03/19/2007 | ●11 | NOTICE by L.G. Phillips LCD Co., Ltd. *of related case and suggestion for consolidation* (Broyles, Franklin) (Entered: 03/19/2007) |
| 03/19/2007 | ●12 | NOTICE by L G Philips LCD Co Ltd *Certificate of Service re: cover letter included with Judge's Copy of Notice of Related Case* (Broyles, Franklin) (Entered: 03/19/2007) |
| 03/20/2007 | ●13 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by LG.Philips LCD Co., Ltd.. (Broyles, Franklin) (Entered: 03/20/2007) |
| 03/21/2007 | ●14 | Agreed Order Transferring case to United States District Court for the District of Delaware. (Signed by Judge Barbara M. G. Lynn on March 21, 2007) (mfw) (Entered: 03/21/2007) |
| 03/21/2007 | ● | Interdistrict Transfer to District of Delaware. (mfw) (Entered: 03/21/2007) |
| 03/21/2007 | ●15 | Transmitted certified copy of transfer order and docket report to District of Delaware by U.S. Mail. (mfw) (Entered: 03/21/2007) |



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

# ORIGINAL

| | |
|---|---|
| **IN RE SUBPOENA ISSUED TO** | ) |
| RADIO SHACK CORPORATION | ) Civil Action No.: _____ |
| | ) |
| | ) |
| | ) |

## 3-07MC0018-P

---

### DEFENDANTS TATUNG COMPANY AND TATUNG COMPANY OF AMERICA, INC.'S MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT

---

Respectfully submitted,

Penelope Brobst Blackwell
State Bar No. 24029456

**GREENBERG TRAURIG, LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone:     (214) 665-3600
Telecopier:     (214) 665-3601

**ATTORNEYS FOR TATUNG COMPANY and**
**TATUNG COMPANY OF AMERICA, INC**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS............................................................................................... 2

    A.   The Delaware Action. ............................................................................................... 2

    B.   The Tatung Defendants Have Already Provided LPL With Voluminous Discovery
         Relating to Both Its Accused and Non-Accused Products................................... 3

    C.   LPL's Motion To Compel Further Customer Information Is Pending Before the Special
         Master. ....................................................................................................................... 4

    D.   LPL Now Seeks the Same Discovery Directly From the Tatung Defendants' Customers. 4

III. ARGUMENTS AND AUTHORITIES............................................................................. 5

    A.   The Tatung Defendants Have Standing Under FRCP 26(c) To Move For A Protective
         Order. ......................................................................................................................... 5

    B.   Good Cause Supports The Issuance of A Protective Order................................. 7

         1.   Legal Standard Governing The Issuance Of Protective Orders....................... 7

         2.   The Requested Discovery Seeks Overly Broad Categories Of Communications and
             Information Completely Unrelated To Claims At Issue in The Delaware Action. ......... 7

         3.   The Requested Third-Party Discovery Is Irrelevant To Any Purported Claim of Indirect
             Infringement.................................................................................................. 9

         4.   The Requested Discovery Seeks Confidential Business Information To Which LPL
             Would Not Otherwise Be Entitled. ................................................................. 10

         5.   LPL's Discovery Is Unduly Burdensome And Is Intended to Harass The Tatung
             Defendants' Customers. ................................................................................. 11

    C.   The Need For a Protective Order Limiting Third-Party Discovery Is Even More
         Compelling Due To LPL's Violations Of Previous Protective Orders............................ 12

         1.   LPL Has Violated Other Protective Orders On At Least Two Occasions.................... 12

         2.   LPL Is Potentially In Violation Of the Patent Prosecution Bar. ..................... 12

IV. CONCLUSION................................................................................................................ 13

# TABLE OF AUTHORITIES

## Federal Cases

*Alliance Gen. Ins. Co. v. Louisiana Sheriff's Auto. Risk Program*, 96, 1999 U.S. Dist. LEXIS 5042, at *8 (E.D. La. Apr. 9, 1999) ................................................................. 6

*Brown v. Braddick*, 595 F.2d 961 (5th Cir. 1979) ........................................................ 6

*Cmedia, LLC v. Lifekey Healthcare, LLC*, 216 F.R.D. 387 (N.D. Tex. 2003) .................. 7, 10, 11

*Dart Industries, Inc. v. Liquid Nitrogen Processing*, 50 F.R.D. 286 (D. Del. 1970)..................... 6

*Echostar Communications Corp. v. The News Corp. Ltd.*, 180 F.R.D. 391 (D. Co. 1998)............ 7

*Harris v. Amoco Production Co.*, 768 F.2d 669 (5th Cir. 1985) ..................................... 7

*Hinton v. Entex, Inc.*, 93 F.R.D. 336 (E.D. Tex. 1981) ................................................ 9

*Joy Technologies, Inc. v. Flakt, Inc.*, 772 F. Supp. 842 (D. Del. 1991) ......................... 8

*Kadair v. Sony Corp. of America*, 694 F.2d 1017 (5th Cir. 1983)................................. 8

*Landry v. Air Line Pilots Assoc.*, 901 F.2d 404 (5th Cir. 1990) .................................. 7

*Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318 (Fed. Cir. 1990) ............................. 8, 9, 10

*Minnesota Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294 (Fed. Cir. 2002) ................... 10

*PC Connector Solutions LLC v. Smartdisk Corp.*, 406 F.3d 1359 (Fed. Cir. 2005)...................... 9

*Pulsecard v. Discover Card Services, Inc.*, 1995 WL 526533 * 26 (D. Kan. 1995).................... 13

*Will-Drill Res., Inc. v. J. R. Pounds, Inc.*, 2:06-0064, 2007 U.S. Dist. LEXIS 12877, at *10-11 (S.D. Miss. Feb. 23, 2007)............................................................................. 6

*Williams v. Weems Cmty. Mental Health Ctr.*, 04-179, 2006 U.S. Dist. LEXIS 21845, at *3 (S.D. Miss. April 6, 2006)................................................................................... 6

*Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir. 1982)............................................................ 8

## Federal Rules

Federal Rule of Civil Procedure 26(c) ........................................................................ 7

Federal Rule of Civil Procedure 45 .......................................................................... 6

Defendants Tatung Company and Tatung Company of America (collectively, "the Tatung Defendants") file this their Motion for Protective Order and Brief in Support ("Motion"), and will show as follows:

## I. **INTRODUCTION**

This Motion for Protective Order seeks to limit the scope of a subpoena and deposition notice ("Subpoena") issued on third-party Radio Shack Corporation ("Radio Shack") out of this district in connection with a patent infringement lawsuit styled *L.G. Philips LCD Co., Ltd. v. Tatung Company, et al.*, Civil Action No. 04-343, in the United States District Court for the District of Delaware (the "Delaware Action"). The subpoena at issue is found in the Tatung Defendants' Appendix in Support of this Motion ("App."), being filed concurrently herewith, at App. 3-16. In short, the Tatung Defendants submit that any third-party discovery, such as the Subpoena Duces Tecum and for Deposition served on Radio Shack, should be limited to the accused products that are at issue in the Delaware Action. For a list of the accused products, *see* Declaration of Charlene Oh, dated March 8, 2007 ("Oh Dec. 1") at ¶ 3. As set forth in detail below, the Tatung Defendants respectfully request that their Motion be granted because Plaintiff L.G. Philips LCD Co., Ltd.'s ("LPL") discovery requests are: (1) a transparent and improper effort by LPL to perform an "end run" around a potentially unfavorable ruling by the Special Master in the Delaware Action concerning the proper scope of LPL's discovery, namely, the Special Master's imminent ruling on LPL's motion to compel discovery pertaining to *unaccused* products from the Tatung Defendants and the Tatung Defendants' motion to stay discovery regarding *unaccused* products pending resolution of issues relating to LPL's and its attorneys' violations of Protective Orders in cases pending between the parties; (2) irrelevant in that they seeks overly broad categories of communications and information from the Tatung Defendants'

**DEFENDANTS' TATUNG COMPANY AND TATUNG COMPANY OF AMERICA, INC.'S MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT - Page** 1

customers entirely unrelated to the patents-in-suit or the accused products in the Delaware Action; (3) not reasonably calculated to lead to the discovery of admissible evidence in the Delaware Action, but instead, seek information about the Tatung Defendants' confidential business communications and trade secret information for ulterior and improper purposes; and (4) calculated to harass the Tatung Defendants' customers by requiring a burdensome production of irrelevant documents.[1]

## II. STATEMENT OF FACTS

### A.    The Delaware Action.

Defendant Tatung Company is a Taiwanese original equipment manufacturer ("OEM") that sells electronic products including computer monitors and televisions to resellers and retailers worldwide. Defendant Tatung Company of America, a California corporation, is a reseller of computer monitors and other LCD applications in the United States. LPL and its parent company, LG Electronics, Inc. ("LGE"), compete with the Tatung Defendants in the market of flat display panel computer monitors. Third-party Radio Shack, the recipient of LPL's subpoena and deposition notice, is located in Dallas, Texas and is a customer of the Tatung Defendants.

The Tatung Defendants integrate more than 800 models of computer monitors and flat panel display products, referred to collectively as "visual display products." As OEMs, many of the Tatung Defendants' products are branded and otherwise customer specific; in most instances, the products are made to exacting customer specifications. In the Subpoena, LPL requests the

---

[1] At least one district court in the Southern District of Florida has found, based on the same arguments set forth herein, that the relief sought by the Tatung Defendants is appropriate and warranted. In *L.G. Philips LCD Co., Ltd. v. Tatung Company, et al.*, pending in the United States District Court for the Southern District of Florida, Cause No. 07-80223, the Court issued an order limiting the discovery sought by LPL from third-party Defendant, Sensormatic, Inc., in a subpoena virtually identical to the subpoena issued to Radio Shack. A copy of the Motion for Protective Order filed in that action is attached to the Appendix at App. 17-54, and a copy of the Court's Order is attached as App. 74-88.

production of documents relating to the design requirements and specifications of the products supplied by Tatung Defendants' to Radio Shack. App. 14-15/Requests 1, 3, 4. In addition, the Subpoena seeks the production of the Tatung Defendants' specific pricing arrangements with customers. App. 14-15/Requests 1, 3, 4, 5, 7. Due to the highly competitive nature of this market, the information sought by LPL are extremely valuable trade secrets. Chang Decl. at ¶ 4, App. 60.

**B.**    **The Tatung Defendants Have Already Provided LPL With Voluminous Discovery Relating to Both Its Accused and Non-Accused Products.**

LPL commenced the Delaware Action against the Tatung Defendants on May 27, 2004, alleging patent infringement claims against the Tatung Defendants based on certain "rear-mount" patents with respect to twenty (20) of its products. Tatung has denied these allegations. For over two years, the parties have been engaging in discovery in the Delaware Action, and the discovery cut-off date that action is March 30, 2007.

LPL served its initial discovery requests in the Delaware Action over two years ago. In response, the Tatung Defendants produced technical specifications and assembly drawings covering approximately 800 models of the monitors and flat panel displays that they sell. Declaration of Charlene Oh, dated March 13, 2007 ("Oh Decl. 2") at ¶ 3, App. 57. Until November 2006, LPL had accused only one Tatung product of infringing the patents-in-suit. *Id.* at ¶ 6. In November 2006, LPL identified two additional accused products. *Id.* at ¶ 7. It was not until mid-January 2007 that LPL accused the remaining products. *Id.* at ¶ 8.

The Tatung Defendants have expended a great deal of effort to comply with their discovery obligations. Since late January 2007 alone, the Tatung Defendants have produced approximately 15,000 pages of documents, including the following:

- Highly confidential Tatung America product work instructions;

**DEFENDANTS' TATUNG COMPANY AND TATUNG COMPANY OF AMERICA, INC.'S MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT - Page 3**

- Highly confidential exploded view drawings of products; and

- Highly confidential sales summaries from 2002 to the present (quarter 1, 2007) containing model, price, and quantity information for *all* of its visual display products.

*Id.* at ¶ 9, App. 57-58.

In addition, the Tatung Defendants have made available for LPL's inspection, and LPL has examined, disassembled, and photographed more than 40 monitor and television products. *Id.* at ¶ 10, App. 58. Of the hundreds of products for which LPL has been provided technical documents, LPL has to date accused only 20 products of infringing the patents-in-suit. *Id.* at ¶ 5.

**C.    LPL's Motion To Compel Further Customer Information Is Pending Before the Special Master.**

In January 2007, LPL filed a motion to compel the production of additional documents such as highly confidential agreements and communications between the Tatung Defendants and their customers relating to *all* of the Tatung Defendants' visual display products including the hundreds of unaccused products. *Id.* at ¶ 11. The Tatung Defendants opposed that motion on the grounds that LPL's requested discovery is not limited in any way to the accused products at issue in the Delaware Action and is instead LPL's attempt to obtain highly sensitive business information. *Id.* at ¶ 12. *That motion is presently pending before the Special Master in the Delaware Action, and a decision is expected before the close of discovery on March 30, 2007.* *Id.* at ¶ 13.

**D.    LPL Now Seeks the Same Discovery Directly From the Tatung Defendants' Customers.**

Instead of waiting for the ruling from the presiding Special Master, LPL has recently served Radio Shack, as well as two dozen other Tatung customers, with a subpoena for oral

**DEFENDANTS' TATUNG COMPANY AND TATUNG COMPANY OF AMERICA, INC.'S MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT - Page 4**

deposition and the production of voluminous, irrelevant documents including confidential customer information on hundreds of products that LPL has *never accused of infringement. Id.*

Specifically, LPL's request for documents seeks, *inter alia*, "all documents" including but not limited to writings, accounting records, agreements, communications, correspondence, faxes, summaries of records or telephone conversations, minutes or records of meetings or conferences, lists of persons attending meetings or conferences, drafts of any documents between the Tatung Defendants and Radio Shack concerning (a) marketing, sales, business documents or presentation materials provided by the Tatung Defendants; (b) Radio Shack's market for its "visual display products;" (c) the business relationship between Radio Shack and the Tatung Defendants since January 1, 2002; (d) Radio Shack's receipt or purchase of visual display products sold, manufactured, or distributed by the Tatung Defendants; (e) the total quantity of visual display products sold by Radio Shack that were manufactured or assembled by the Tatung Defendants, and more. *See* Document Requests at App. 14-15.

These extensive and broad-reaching requests for "visual display products" encompass *all* of the products the Tatung Defendants sell to Radio Shack and not just the accused products that are the subject of the Delaware Action.  To date, LPL has failed to provide any legitimate explanation why information on *unaccused* products is relevant to its patent infringement claims in the Delaware Action.

## III. ARGUMENTS AND AUTHORITIES

### A.    The Tatung Defendants Have Standing Under FRCP 26(c) To Move For A Protective Order.

In meet and confer discussions, LPL has erroneously claimed that the Tatung Defendants do not have standing to object to the information sought from third parties.  LPL's position, however, is contrary to the Federal Rules of Civil Procedure and the law of this Circuit.  Rule

26(c) of the Federal Rules of Civil Procedure ("FRCP") provides that "[u]pon motion *by a party* or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred . . . and for good cause shown . . . the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person . . ." (emphasis added). This language allows parties to a lawsuit to challenge third-party subpoenas. *See Alliance Gen. Ins. Co. v. Louisiana Sheriff's Auto. Risk Program*, 96-961, 1999 U.S. Dist. LEXIS 5042, at *8 (E.D. La. Apr. 9, 1999) (ruling that based on Fed. R. Civ. P. 26(c) and with regard to a third-party subpoena, "Defendants are clearly *parties* to this litigation, and clearly have standing to move for a protective order"); *see also Will-Drill Res., Inc. v. J. R. Pounds, Inc.,* 2:06-0064, 2007 U.S. Dist. LEXIS 12877, at *10-11 (S.D. Miss. Feb. 23, 2007) (ruling that based on Fed. R. Civ. P. 26(c), "defendants do have standing to bring a motion for protective order" with regard to a third-party subpoena); *Williams v. Weems Cmty. Mental Health Ctr.*, 04-179, 2006 U.S. Dist. LEXIS 21845, at *3 (S.D. Miss. April 6, 2006) (citing Fed. R. Civ. P. 26(c) and stating there was "no standing problem" in a motion by Defendant with regard to a third-party subpoena). Accordingly, for these reasons, the Tatung Defendants have standing to bring this Motion.[2]

---

[2] When conferring regarding this motion, LPL stated that it believed that the Tatung Defendants did not have standing to bring this motion pursuant to *Dart Industries, Inc. v. Liquid Nitrogen Processing*, 50 F.R.D. 286, 291 (D. Del. 1970) which states that "unless a party to an action can make claim to some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty witness, the party to the action has no right to relief under FRCP 45(b) or 30(b)." LPL, however, is incorrect for multiple reasons. First, the Tatung Defendants are moving under Rule 26(c), not Rule 45, which was the rule at issue in *Dart*. In addition, the Fifth Circuit has recognized that when a party has a personal right or privilege with respect to the materials subpoenaed, it has standing to move for a protective order or to quash the subpoena even under Federal Rule of Civil Procedure 45. *See Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979). Here, the Tatung Defendants are asserting a personal right and privilege in that the documents and information sought from Radio Shack by the LPL Defendants contain trade secrets and other confidential information belonging to the Tatung Defendants.

**DEFENDANTS' TATUNG COMPANY AND TATUNG COMPANY OF AMERICA, INC.'S MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT - Page 6**

**B.    Good Cause Supports The Issuance of A Protective Order.**

     **1.    Legal Standard Governing The Issuance Of Protective Orders.**

Pursuant to Federal Rule of Civil Procedure 26(c), "upon a showing of good cause," the

Court may issue a protective order precluding or limiting the scope of discovery in order to

protect a party from annoyance, embarrassment, oppression, or undue burden or expense. *Harris*

*v. Amoco Production Co.*, 768 F.2d 669, 684 (5th Cir. 1985) (once good cause shown, court may

exercise its sound discretion to restrict discovery of particular materials).   The party seeking a

protective order must show good cause and a specific need for protection. *Landry v. Air Line*

*Pilots Assoc.*, 901 F.2d 404, 435 (5th Cir. 1990); *Harris*, 768 F.2d at 684.   In determining "good

cause," the court must balance the need for discovery by the requesting party and the relevance

of the discovery to the case against the harm, prejudice or burden to the other party. *Cmedia,*

*LLC v. Lifekey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003) (citing *Truswal Sys.*

*Corp. V. Hydro-Air Engineering, Inc.*, 813 F.3d 1207, 1210 (Fed. Cir. 1987)).

In the context of Fed. R. Civ. P. 26(c)(7), "good cause" is established when the movant

demonstrates that the information sought is a trade secret and that its disclosure might be

harmful. *Cmedia*, 216 F.R.D. at 391 (citing *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 131

F.R.D. 668, 671 (S.D. Tex. 1990)).   In addition, case law is clear that disclosure to a competitor

is presumptively more harmful than disclosure to a noncompetitor.   *Id.* (citing *Echostar*

*Communications Corp. v. The News Corp. Ltd.*, 180 F.R.D. 391, 395 (D. Co. 1998)).

     **2.    The Requested Discovery Seeks Overly Broad Categories Of Communications and Information Completely Unrelated To Claims At Issue in The Delaware Action.**

A protective order is appropriate because LPL's third-party discovery requests are overly

broad and seek information that is not relevant to its claims and are not calculated to lead to the

**DEFENDANTS' TATUNG COMPANY AND TATUNG COMPANY OF AMERICA, INC.'S MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT - Page 7**

discovery of admissible evidence.    Instead, LPL seeks to obtain, through the guise of "discovery," sensitive and confidential information relating to the Tatung Defendant's business operations that would help LPL gain a competitive advantage.

The scope of permissible discovery is obviously limited by the requirement of relevance. *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982). A matter is not discoverable unless it is "relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1).    If relevant, it need not be admissible if it appears "reasonably calculated to lead to the discovery of admissible evidence." *Id.*  While the standard of relevance in the context of discovery is construed broadly, it is not so broad as to support "fishing expeditions" in discovery, which is apparently what LPL attempts to conduct via its vague, sweepingly overbroad subpoenas. *Kadair v. Sony Corp. of America*, 694 F.2d 1017, 1023 (5th Cir. 1983).

The case of *Joy Technologies, Inc. v. Flakt, Inc.*, 772 F. Supp. 842 (D. Del. 1991) presents a nearly identical situation: the defendant sought a protective order preventing plaintiff from seeking discovery from *any of the defendant's customers or potential customers* until plaintiff made a showing that the information (a) was necessary and relevant to the action; and (b) could not be obtained from any other source. *Id.* at 845. The *Joy* Court granted the requested protective order, stating:

> "[I]t is undisputed that [plaintiff] and [defendant] are fierce competitors in the technology that is the subject of this lawsuit, and [plaintiff] has not convinced the Court that the same information it seeks from third parties is not available from [defendant].  Therefore, unless [plaintiff] can demonstrate that it has a specific need for evidence available only from third party customers of [defendant], the Court concludes that [defendant] and its customers are entitled to protection."

*Id.* at 849.

Similarly, in *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990), the plaintiff sought to obtain information from a nonparty competitor that was purportedly

relevant to the issue of damages in the underlying patent suit. The court held that the plaintiff was embarking on a "fishing expedition" with its "merely speculative inquiries in the guise of relevant discovery." *Id.* at 1327-28; *see also Hinton v. Entex, Inc.,* 93 F.R.D. 336, 337-38 (E.D. Tex. 1981) (denying discovery by when requests were over broad and not relevant and appeared to be a "fishing expedition" prohibited by the Fifth Circuit).

Here, LPL's discovery requests to Radio Shack seek broad categories of documents and information concerning both accused and *unaccused* products, and is not limited as to relevant time period. Such overly broad discovery requests encompass documents and information that are not related to the pending Delaware Action. Instead, LPL seeks to obtain such information about the Tatung Defendants to obtain a competitive advantage.

The Tatung Defendants do not seek to prevent LPL from obtaining all third-party discovery being requested in its subpoena and deposition notice. Rather, such third-party discovery should focus on deposition topics and documents *pertaining to the accused products* at issue in the Delaware Action.

### 3.     The Requested Third-Party Discovery Is Irrelevant To Any Purported Claim of Indirect Infringement.

The Tatung Defendants anticipate that LPL will claim that it needs customer information in order to determine indirect infringement. However, LPL has not shown why such information is relevant to any such indirect infringement claim.

Determining whether a patent claim has been infringed involves a two step analysis. First, the claim must be properly construed by the Court to determine its scope and meaning. *PC Connector Solutions LLC v. Smartdisk Corp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005). Second, the claim, as construed, must be compared to the accused device or process. *Id.* Infringement analysis therefore focuses on the products or processes and the claims of the patents.

Here, the Tatung Defendants have already produced technical documents that depict their products' components, as well as the assembly methods used. LPL is *already in possession* of all the technical information it needs to compare Tatung's products to the asserted claims. There is no need to directly subpoena and depose the Tatung Defendants' customers.

Moreover, there can be no indirect infringement without both direct infringement and an infringing product. "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, . . . and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Minnesota Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304 (Fed. Cir. 2002).

Here, there is no allegation of direct infringement with respect to the hundred of products for which LPL seeks thousands of documents from third parties. LPL is therefore not entitled to the broad categories of documents it seeks from Radio Shack.

### 4. The Requested Discovery Seeks Confidential Business Information To Which LPL Would Not Otherwise Be Entitled.

A protective order also is appropriate because LPL's subpoena and deposition notice seek disclosure of confidential, proprietary trade secret information belonging to the Tatung Defendants. Such confidential commercial information warrants special protection under FED. R. CIV. P. 26(c)(7). *Micro Motion,* 894 F.2d at 1323 (citing *Smith & Wesson v. United States,* 782 F.2d 1074, 1082 (1st Cir. 1986)); *see also Cmedia,* 216 F.R.D. at 391.

The Tatung Defendants and LPL are active competitors in the computer monitor business. *See* Declaration of Jackson Chang ("Chang Decl.") at ¶ 2, App. 60. Producing the information and testimony LPL seeks would cause major competitive harm to the Tatung Defendants. Chang Decl. at ¶ 3, App. 60. As just one example, LPL designates as a deposition topic: "The nature of the business relationship and transactions between Radio Shack and [the

Tatung Defendants] relating to the sale, distribution, or importation of visual display products, including but not limited to the agreements between Radio Shack [and the Tatung Defendants]." Topic No. 1, App. 11. These topics are closely guarded by the Tatung Defendants as highly sensitive and confidential business information. Chang Decl. at ¶ 4, App. 60. The Tatung Defendants' methods of manufacturing its visual display products, for example, are not disclosed publicly; divulging this information would likely result in competitors using the information to: (1) undercut the Tatung Defendants in pricing; (2) deduce the exact specifications required by existing customers; and/or (3) specifically target and lure away Tatung's existing customers. *Id.* at ¶ 7, App. 60. All of this information is closely guarded by the Tatung Defendants. Only authorized personnel have access to the information, which are subject to increased internal security. *Id.* at ¶ 6. The product specifications and features required by each customer, including Radio Shack, constitute competitive value and maintaining the confidentiality of such information is essential to the Tatung Defendants.

### 5.    LPL's Discovery Is Facially Overbroad and Intended to Harass The Tatung Defendants' Customers.

In addition, the subpoena should be modified and limited because it is facially overbroad in that it seeks documents relating to *any* products of the Tatung Defendants instead of being limited to the accused products which are the subject of the Delaware Action. *See Cmedia, LLC v. Lifeky Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003) ("A facially overbroad subpoena is unduly burdensome."). Moreover, the subpoenas should be modified and limited because it is clear that the overbroad discovery requests have been interposed solely to harass a Tatung customer, specifically Radio Shack, and aggravate the business relationship between the Tatung Defendants and their customers.

**C.**    **The Need For a Protective Order Limiting Third-Party Discovery Is Even More Compelling Due To LPL's Violations Of Previous Protective Orders.**

Although the parties have entered into a Stipulated Protective Order in the Delaware Action, the Stipulated Protective Order is not sufficient to protect the Tatung Defendants from harm because LPL has a demonstrated history of violating the Stipulated Protective Order. A copy of the Stipulated Protective Order is found in the Appendix at App. 61-73.

**1.**    **LPL Has Violated Other Protective Orders On At Least Two Occasions.**

The Tatung Defendants have recently petitioned the Special Master in the Delaware Action for relief regarding LPL's multiple violations of protective orders issued in different cases, implicating different patents, pending between the parties. Oh Decl. 2 at ¶ 15. LPL has ***admitted*** that its lawyers have viewed, used and disclosed confidential materials produced in other litigation between the parties for purposes of the Delaware Action, which is expressly prohibited by the Protective Orders in the other litigation. *Id.* at ¶ 16. The cases include *LPL v. Tatung Company, et. al.*, Case No. 05-292-JJF in Delaware District Court and *LPL v. Tatung Company, et. al.,* Case No. CV-02-6775-CBM in the Central District of California. *Id.* Such conduct flagrantly disregards the letter and spirit of the applicable protective orders.

**2.**    **LPL Is Potentially In Violation Of the Patent Prosecution Bar.**

Second, the Patent and Trademark Office records appear to show that LPL staffs its litigation team with attorneys who also prosecute patents in the area of flat panel display technology. *Id.* at ¶ 17. The Tatung Defendants' investigation of this conduct, which would directly violate the Protective Order, is ongoing, and the issue has been raised with the Special Master. *Id.*

For these reasons, the Tatung Defendants submit that the parties' current Protective Order is insufficient to protect against the potential harm posed by disclosure of unlimited confidential

information by third parties, including Radio Shack. *See Pulsecard v. Discover Card Services, Inc.*, 1995 WL 526533 * 26 (D. Kan. 1995) ("entry of a prior protective order should necessarily bar a second one, if facts justify it").

## IV.    CONCLUSION

To be clear, the Tatung Defendants do not contest LPL's right to seek discovery from Radio Shack. They submit, however, that discovery obtained from third-parties must be *relevant* to this litigation and serve a legitimate purpose. Here, LPL's overly broad and improper requests do not serve such purposes. Accordingly, the Tatung Defendants respectfully request that the Court issue a protective order limiting discovery from Radio Shack to deposition testimony and documents relating to the accused products in the Delaware Action.

Respectfully submitted,

By: _____
Penelope Brobst Blackwell
State Bar No. 24029456

**GREENBERG TRAURIG, LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone:    (214) 665-3600
Telecopier:    (214) 665-3601

**ATTORNEYS FOR TATUNG COMPANY and TATUNG COMPANY OF AMERICA, INC**

## CERTIFICATE OF CONFERENCE

On March 5, 2007, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and Local Rule 7.1, counsel for Defendants Tatung Company and Tatung Company of America, Inc. in the Delaware Action conferred in good faith with counsel for plaintiff L.G. Philips LCD Co., Ltd. in the Delaware Action to resolve this dispute prior to filing this motion and were unsuccessful.

Penelope Brobst Blackwell

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served all counsel of record by electronic mail and certified mail, return receipt requested, this _____ day of March, 2007, and addressed as follows:

| | |
|---|---|
| Richard D. Kirk, rkirk@bayardfirm.com<br>The Bayard Firm<br>222 Delaware Avenue # 900<br>Wilmington, DE 19899 | Gaspare J. Bono, gbono@mckennalong.com<br>Rel S. Ambrozy, rambrozy@mckennalong.com<br>Cass W. Christenson, cchristenson@mckennalong.com<br>Lora A. Brzezynski, lbrzezynski@mckennalong.com<br>Cormac T. Connor, cconnor@mckennalong.com<br>Shari L. Klevens, sklevens@mckennalong.com<br>McKenna Long & Aldridge LLP<br>1900 K Street, N.W.<br>Washington, DC 20006 |
| Jeffrey B. Bove, jbove@cblh.com<br>James D. Heisman, jheisman@cblh.com<br>Jaclyn M. Mason, jmason@cblh.com<br>Connolly Bove Lodge & Hutz LLP<br>1007 North Orange Street<br>P.O. Box 2207<br>Wilmington, DE 19899 | Tracy R. Roman, troman@raskinpeter.com<br>Raskin Peter Rubin & Simon LLP<br>1801 Century Park East, Suite 2300<br>Los Angeles, CA 90067 |
| Scott R. Miller, smiller@cblh.com<br>Connolly Bove Lodge & Hutz LLP<br>355 South Grand Avenue, Suite 3150<br>Los Angeles, CA 90071 | Frederick L. Cottrell, III, Cottrell@RLF.com<br>Anne Shea Gaza, Gaza@RLF.com<br>Richards Layton & Finger, PA<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, DE 19899 |

**DEFENDANTS' TATUNG COMPANY AND TATUNG COMPANY OF AMERICA, INC.'S MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT - Page 14**

| Frank E. Merideth, Jr., meridethf@gtlaw.com<br>Valerie W. Ho, hov@gtlaw.com<br>Mark H. Krietzman, krietzmanm@gtlaw.com<br>Steve P. Hassid, hassids@gtlaw.com<br>Charlene L. Oh, ohc@gtlaw.com<br>Deborah J. Pouratian, pouratiand@gtlaw.com<br>Greenberg Traurig LLP<br>2450 Colorado Avenue, Suite 400E<br>Santa Monica, CA 90404 | |

Penelope Brobst Blackwell

DAL-FS1\105575v02

JS 44 (Rev. 10/06)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
In re Subpoena issued to RadioShack
L.G. LCD Co. Ltd.

**DEFENDANTS**
Tatung Company, Tatung Company of America and Viewsonic

07MC0018-P

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Taiwan
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Gaspare J. Bono, McKenna Long & Aldridge, LLP
1900 K Street, N.W., Washington, DC  20006

Attorneys (If Known)
For Tatung: Penelope Blackwell, Greenberg Traurig
2200 Ross Avenue, Suite 5200, Dallas, Texas  75201

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Federal Rule Civ. P. 26 and 45
Brief description of cause:    Motion for Protective Order from Foreign Deposition

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

**VIII. RELATED CASE(S) PENDING OR CLOSED** (See instructions):
LG Philips LCD Co. Ltd. v. Tatung Co. et al.    District of Delaware, Wilmington
JUDGE    Joseph J. Farnan, Jr.    DOCKET NUMBER    04-343

DATE    3/14/07    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

N
ORIG

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAR 1 4 2007

CLERK, U.S. DISTRICT COURT
By _____
           **Deputy**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE SUBPOENA ISSUED TO          )
                                  ) Civil Action No.: 3:07mc17-N
COMPUSA, INC.                     )
                                  )
                                  )

---

**APPENDIX IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND BRIEF IN SUPPORT**

---

Defendants Tatung Company and Tatung Company of America, Inc. submit the

following Appendix in Support of Defendants' Motion for Protective Order and Brief in Support:

1.   Notice of Fed.R.Civ.P. 30(b)(6) Deposition *Duces Tecum* and Fed.R.Civ.P. 45 Service of Subpoena………………………………………………………………...…….…..0003

2.   Motion for a Protective Order Limited Scope of Third Party Deposition and Subpoena……………………………………………………………………………0017

3.   Declaration of Charlene Oh……………………………………………………...0055

4.   Declaration of Charlene L. Oh………………………………………………….....0057

5.   Declaration of Jackson Chang…………………………………………………....0060

6.   Stipulated Protective Order……………………………………………………….0061

7.   Order Granting Motion for Protective Order (S.D. Fla.)……………………...…..0074

Respectfully Submitted,

Penelope Broobst Blackwell
  State Bar No. 24029456
**GREENBERG TRAURIG, LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone:  (214) 665-3600
Facsimile:  (214) 665-3601
**ATTORNEYS FOR TATUNG COMPANY and
TATUNG COMPANY OF AMERICA, INC**

---

**APPENDIX IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT - Page 1**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served all counsel of record via electronic mail and certified mail, return receipt requested, this 19th day of March, 2007, and addressed as follows:

| | |
|---|---|
| Richard D. Kirk, rkirk@bayardfirm.com<br>The Bayard Firm<br>222 Delaware Avenue # 900<br>Wilmington, DE 19899 | Gaspare J. Bono, gbono@mckennalong.com<br>Rel S. Ambrozy, rambrozy@mckennalong.com<br>Cass W. Christenson, cchristenson@mckennalong.com<br>Lora A. Brzezynski, lbrzezynski@mckennalong.com<br>Cormac T. Connor, cconnor@mckennalong.com<br>Shari L. Klevens, sklevens@mckennalong.com<br>McKenna Long & Aldridge LLP<br>1900 K Street, N.W.<br>Washington, DC 20006 |
| Jeffrey B. Bove, jbove@cblh.com<br>James D. Heisman, jheisman@cblh.com<br>Jaclyn M. Mason, jmason@cblh.com<br>Connolly Bove Lodge & Hutz LLP<br>1007 North Orange Street<br>P.O. Box 2207<br>Wilmington, DE 19899 | Tracy R. Roman, troman@raskinpeter.com<br>Raskin Peter Rubin & Simon LLP<br>1801 Century Park East, Suite 2300<br>Los Angeles, CA 90067 |
| Scott R. Miller, smiller@cblh.com<br>Connolly Bove Lodge & Hutz LLP<br>355 South Grand Avenue, Suite 3150<br>Los Angeles, CA 90071 | Frederick L. Cottrell, III, Cottrell@RLF.com<br>Anne Shea Gaza, Gaza@RLF.com<br>Richards Layton & Finger, PA<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, DE 19899 |
| Frank E. Merideth, Jr., meridethf@gtlaw.com<br>Valerie W. Ho, hov@gtlaw.com<br>Mark H. Krietzman, krietzmanm@gtlaw.com<br>Steve P. Hassid, hassids@gtlaw.com<br>Charlene L. Oh, ohc@gtlaw.com<br>Deborah J. Pouratian, pouratiand@gtlaw.com<br>Greenberg Traurig LLP<br>2450 Colorado Avenue, Suite 400E<br>Santa Monica, CA 90404 | |

Penelope Brobst Blackwell

DAL-FS1\105704v01

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

Plaintiff,

v.

TATUNG COMPANY, et al.,

Defendants.

Civil Action No. 04-343 (JJF)

**NOTICE OF FED.R.CIV.P. 30(b)(6) DEPOSITION *DUCES TECUM*
AND FED.R.CIV.P. 45 SERVICE OF SUBPOENA**
**(COMPUSA, INC.)**

TO:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Tracy Roman, Esq.
Raskin  Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

PLEASE TAKE NOTICE that Plaintiff will take the deposition *duces tecum* of

CompUSA, Inc. ("CompUSA") pursuant to Fed. R. Civ. P. 30(b)(6), on March 27, 2007.  The

deposition will take place at 1700 Pacific Ave. Ste 4750, Dallas TX 75201.  The deposition will

be videotaped and taken before a notary public or court reporter, duly authorized to administer

651703-1

App. 0003

oaths and transcribe the testimony of the deponent(s) and may use technology that permits the real time display of the deposition transcript for attendees who bring a compatible computer. The deposition may continue from day to day until completed if authorized by the Court or stipulated by the parties.

PLEASE ALSO TAKE NOTICE that LG.Philips LCD Co., Ltd. is serving CompUSA with a subpoena (the "Subpoena"), a copy of which is attached hereto. The subjects covered in the deposition will include (but are not limited to) the subjects listed on Attachment A to the Subpoena. Pursuant to Fed. R. Civ. P. 30(b)(6), CompUSA is required to designate one or more persons to testify at the deposition as to the matters known or reasonably available to CompUSA concerning all topics listed in Attachment A to the Subpoena. In addition, the Subpoena requires CompUSA to produce at the deposition the documents listed in Attachment B to the Subpoena.

You are invited to attend and cross examine.

February 13, 2007

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
rkirk@bayardfirm.com
(302) 655-5000
Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

651703-1

App. 0004

OAO88  (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS

LG.PHILIPS LCD CO., LTD.
V.
TATUNG COMPANY, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]     04-343 (JJF)

TO:   **CompUSA, Inc.**
      **14951 North Dallas Parkway**
      **Dallas, TX  75254**

United States District Court for the District of Delaware

X   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

X   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. (See Attachment A for topics.)

| PLACE OF DEPOSITION Esquire Deposition Services, 1700 Pacific Ave., Ste. 4750, Dallas, TX 75201 | DATE AND TIME Mar. 27, 2007 at 9:00 a.m. |
|---|---|

X   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): All documents listed in Attachment B.

| PLACE Mail documents to: McKenna Long & Aldridge LLP, Attn:  Shari Klevens c/o Esquire Deposition Services, 1700 Pacific Ave. Ste 4750, Dallas TX 75201 | DATE AND TIME March 5, 2007 at 9:00 a.m. |
|---|---|

G   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER=S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR Shari Klevens (Attorney for Plaintiff) *S/Klevens* | DATE February 13, 2007 |
|---|---|

ISSUING OFFICER=S NAME, ADDRESS AND PHONE NUMBER
Shari Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
Telephone: 202-496-7612

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

DC:50459508.1

App. 0005

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

DC:50459508 1

App. 0006

## ATTACHMENT A: TOPICS TO BE ADDRESSED AT THE DEPOSITION

For purposes of this Attachment, CompUSA, Inc. should use the following definition for the terms used herein.

A.    "CompUSA," "you," and "your" as used herein, means CompUSA, Inc. and all persons or entities acting or purporting to act on your behalf, and any affiliates of CompUSA, Inc.

B.    "ViewSonic" means Defendant ViewSonic Corporation, and all persons or entities acting or purporting to act on ViewSonic's behalf, and any affiliates of ViewSonic, including, but not limited to, entities, divisions, and affiliates located in Taiwan.

C.    "ViewSonic products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for ViewSonic.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, ViewSonic brand products.

D.    "Tatung Company" means Defendant Tatung Company, all persons or entities acting or purporting to act on Tatung Company's behalf and affiliates of Tatung Company, including but not limited to, Tatung Company.

E.    "Tatung Company products" as used herein any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung Company.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung brand products.

App. 0007

F.      "Tatung America" means Defendant Tatung Company of America, Inc., and all persons or entities acting or purporting to act on Tatung Company of America's behalf, including, but not limited to Tatung Company of America.

G.      "Tatung America products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung America.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung America brand products.

H.      "TSTI" means Tatung Science and Technology, Inc., and all persons or entities acting or purporting to act on Tatung Science and Technology's behalf, including, but not limited to Tatung Science and Technology.

I.      "TSTI products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for TSTI. This includes all such products, regardless of brand name, and thus includes, but is not limited to, TSTI brand products.

J.      "Affiliate(s)" means any corporation or other entity that controls, is controlled by or is under common control with the identified corporation or entity, including without limitation partnerships, parents, subsidiaries and divisions.

K.      "Visual display products" means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs.

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 2 of 6

L.     "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information between two of more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery or otherwise, including but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

M.     "Concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing or constituting the referenced subject.

N.     "Discuss," "discussing," "relate to" "relating to," "support" or "supporting" means in any way directly or indirectly, in whole or in part, discussing, referring to, regarding, constituting, concerning, about, pertaining to, relating to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling or negating.

O.     "Identify" used in respect to a company or corporate or business entity of any kind means to set forth:

> a.  the full name of the company;
>
> b.  the full name of the division or office involved, if applicable; and
>
> c.  the address of the company and of the division or office involved, if applicable.

P.     "Identify" used in respect to a document or thing means:

App. 0009

    a.   to provide a brief description of such document or thing, including date, author, recipients, type, and content or substance;

    b.   to identify the custodian of the document or thing;

    c.   to identify the place where the document or thing may be inspected; and

    d.   if a copy of the document has been supplied to LPL, to so state and specifically identify the copy supplied by reference to production numbers or other identifying information.

Q.    "Identify" used with respect to a natural person means to state:

    a.   the full name;

    b.   the present or last known business and residence addresses;

    c.   the last known employer or job affiliation; and

    d.   the last known occupation and business position or title held.

R.    "Import" or "importation" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

S.    "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

T.    "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

U.    "Person" means any natural person, firm, association, partnership, corporation, or other form of legal entity.

V.    "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

W.    The use of the singular form of any word includes the plural and vice versa.

The topics to be covered in the deposition include:

1.    The nature of the business relationship and transactions between CompUSA and Tatung Company, Tatung America, TSTI, and/or ViewSonic relating to the sale, distribution, or importation of visual display products, including but not limited to the agreements between CompUSA, Tatung Company, Tatung America, TSTI, and/or ViewSonic.

2.    The scope, nature and purpose of communications between CompUSA and Tatung Company, Tatung America, TSTI, and ViewSonic (a) concerning the sale or marketing in the United States of visual display products manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, (b) communications regarding any product support assistance or warranties that Tatung Company, Tatung America, TSTI, and/or ViewSonic have provided to CompUSA, and (c) communications regarding the market trends for visual display products in the United States.

3.    Any agreements or contracts pursuant to which CompUSA has agreed to purchase Tatung Company's, Tatung America's, TSTI's and/or ViewSonic's visual display products either directly from Tatung Company, Tatung America, TSTI, or ViewSonic or indirectly by purchasing such products from any OEMs.

4.    CompUSA's activities or efforts related to the distribution or sale of visual display products in the United States manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic.

5.    All channels, distributors, suppliers, and networks through which products made in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic have been shipped, imported, sold, and/or distributed in the United States.

App. 0011

6.    CompUSA's sales of its visual display products that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, including the quantity and dollar amount of such sales, by product.

7.    The date(s) and location(s) of any in person meetings in the United States between employees or representatives of CompUSA and of a) Tatung, b) Tatung America, c) TSTI, and/or d) ViewSonic, the identity and job descriptions of participants in such meetings, and the substance of issues discussed or addressed in such meetings.

DC:50459619.1

## ATTACHMENT B: DOCUMENTS TO BE PRODUCED

For purposes of this Attachment, CompUSA should refer to Attachment A for the definition or meaning of terms used herein, which definitions are incorporated herein by reference. In addition, the following definition applies:

A.    "Document" means all types of documents and things embraced within Federal Rules of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries or interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, or opinions of counsel, records, reports or summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, computer printouts, floppy disks, hard drives, CD-ROM's, magnetic tapes and other data compilations from which

App. 0013

information can be obtained or translated, if necessary by CompUSA through detection devices into reasonably usable form. The term document also refers to any tangible object other than a document as described above, and includes objects of every kind and nature such as, but not limited to, prototypes, models, and specimens.

The documents to be produced on or before March 5, 2007, include the following:

1.      All documents provided by Tatung Company, Tatung America, TSTI, or ViewSonic to CompUSA since January 1, 2002 regarding marketing, sales, or business documents or presentation materials and any documents relating to warranties, product support, or service provided by Tatung Company, Tatung America, TSTI, or ViewSonic regarding their visual display products.

2.      Documents provided by CompUSA to Tatung Company, Tatung America, TSTI, or ViewSonic since January 1, 2002 sufficient to show CompUSA's market for visual display products, and/or market trends in the United States for visual display products.

3.      Documents sufficient to show the business relationship between CompUSA and Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including communications with Tatung Company, Tatung America, TSTI, and/or ViewSonic, notes from meeting with Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents in which CompUSA has agreed to purchase visual display products directly from Tatung Company, Tatung America, TSTI, and/or ViewSonic.

4.      All documents from January 1, 2002 by which CompUSA has agreed to purchase from original equipment manufacturers ("OEMs") any visual display products that CompUSA had reason to believe were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents sufficient to show that

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 2 of 3

App. 0014

Tatung Company, Tatung America, TSTI, and/or ViewSonic received notice of CompUSA's agreements to purchase.

     5.     Documents sufficient to show CompUSA's receipt or purchase of visual display products sold, manufactured, shipped, imported, or distributed in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002.

     6.     Documents sufficient to show the total quantity of visual display products sold, by product, by CompUSA that were manufactured or assembled in whole or in part by Tatung Company, Tatung America, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

     7.     Documents sufficient to show the sales by total dollar value and by quantity of visual display products sold, by product, by CompUSA that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

     8.  Documents sufficient to identify each person CompUSA has communicated with at Tatung Company, Tatung America, TSTI, and/or ViewSonic.

DC:50459613.1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 13, 2007, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Jeffrey B Bove, Esq.                         Frederick L. Cottrell, III, Esq.
Jaclyn M. Mason, Esq.                        Anne Shea Gaza, Esq.
Connolly Bove Lodge & Hutz LLP               Richards, Layton & Finger
1007 North Orange Street                     One Rodney Square
P.O. Box 2207                                P.O. Box 551
Wilmington, Delaware 19899-2207              Wilmington, DE 19899


The undersigned counsel further certifies that copies of the foregoing document

were sent by hand to the above counsel and by email and will be sent by first class mail

to the following non-registered participants:

Scott R. Miller, Esq.                        Valerie Ho, Esq.
Connolly Bove Lodge & Hutz LLP               Mark H. Krietzman, Esq.
355 South Grand Avenue                       Frank C. Merideth, Jr., Esq.
Suite 3150                                   Greenberg Traurig LLP
Los Angeles, CA 90071                        2450 Colorado Avenue, Suite 400E
                                             Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067


/s/ Richard D. Kirk (rk922)
Richard D. Kirk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

L.G. PHILIPS LCD CO., LTD.,

Plaintiff,

TATUNG COMPANY; TATUNG
COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION,

Defendants.

_____/

Case No. 04-343-JJF (D. Del.)

**07-80223**

**CIV-RYSKAMP**

MAGISTRATE JUDGE
VITUNAC

FILED BY _____
2007 MAR -9 PM 4:16
_____ D.C.

## MOTION FOR A PROTECTIVE ORDER LIMITING SCOPE
## OF THIRD PARTY DEPOSITION AND SUBPOENA

### FRCP 26(C) CERTIFICATE OF COMPLIANCE

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, counsel for

Defendants Tatung Company and Tatung Company of America, Inc. certify that they

conferred in good faith with counsel for plaintiff L.G. Philips LCD Co., Ltd. to resolve

this dispute prior to filing this motion and were unsuccessful.

### BASIS FOR EMERGENCY HEARING

This Motion for Protective Order Limiting Scope of Third Party Deposition and

Subpoena (the "Motion for Protective Order") concerns a deposition notice and third-

party subpoena issued in this district in connection with a patent infringement lawsuit

pending in the United States District Court for the District of Delaware (the "Delaware

Action").

Defendants respectfully request an expedited hearing and briefing schedule on the

Motion for Protective Order for the following reasons:

*BOC 36433484v1 3/9/2007*

App. 0017

-     Discovery cut-off in the Delaware Action is set for March 30, 2007.

-     Fully aware of the impending discovery cut-off date, Plaintiff waited until the last minute to serve 23 separate third-party subpoenas and deposition notices, issued out of 15 different judicial districts, throughout the country starting in mid-February 2007.

-     On February 27, 2007, Defendants requested that Plaintiff meet and confer about the scope of discovery demanded by Plaintiff in those 23 third-party subpoenas and deposition notices. Following Defendants' February 27, 2007 request, Plaintiff agreed to meet and confer on March 5, 2007.

-     During the March 5, 2007 meet and confer, Plaintiff refused to limit the scope of the third-party subpoenas and deposition notices in any meaningful way.

-     Plaintiff's subpoenas demand production of documents by March 5, 2007, and its deposition notices set depositions for March 12, 2007 through March 28, 2007. Because of Plaintiff's last-minute discovery tactics and its failure to meaningfully meet and confer with Defendants, an emergency hearing is necessary to resolve these discovery issues in a timely manner. Pursuant thereto, Defendants respectfully request an emergency hearing.

2

App. 0018

**DEFENDANTS TATUNG COMPANY AND TATUNG COMPANY OF
AMERICA, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER
LIMITING SCOPE OF THIRD PARTY DEPOSITION AND SUBPOENA**

### I.    INTRODUCTION

Defendants Tatung Company and Tatung Company of America (collectively, "the

Tatung Defendants") submit this Memorandum of Points and Authorities in support of

their Motion for Protective Order Limiting Scope of Third Party Deposition and

Subpoena (the "Motion for Protective Order").

This Motion for Protective Order seeks to limit the scope of a subpoena and

deposition notice issued on third-party Sensormatic, Inc. ("Sensormatic") out of this

district in connection with a patent infringement lawsuit pending in the United States

District Court for the District of Delaware (the "Delaware Action," C.A. No. 04-343-

JJF). The subpoena at issue is attached as Exhibit 1 hereto and made a part hereof.

Defendants submit that any third-party discovery should be limited to the accused

products. *See* Declaration of Charlene Oh at ¶3, which is attached hereto as Exhibit 2.

For the reasons discussed in greater detail below, the Tatung Defendants' request for a

protective order should be granted because the discovery sought by Plaintiff L.G. Philips

LCD Co., Ltd. ("LPL") is:

1.    A transparent and improper effort by LPL to perform an "end run" around

a potentially unfavorable ruling by the Special Master in the Delaware Action concerning

the proper scope of LPL's discovery, namely, the Special Master's impending ruling on

LPL's motion to compel discovery pertaining to *unaccused* products from the Tatung

Defendants and the Tatung Defendants' motion to stay discovery regarding *unaccused*

3

App. 0019

products pending resolution of issues relating to LPL's and its attorneys' violations of
Protective Orders in cases pending between the parties;

2.      Irrelevant in that it seeks extremely broad categories of communications
and information from the Tatung Defendants' customers entirely unrelated to the patents-
in-suit or the accused products in the Delaware Action;

3.      Not reasonably calculated to lead to the discovery of admissible evidence
in the Delaware Action, but instead, is information about the Tatung Defendants'
confidential business communications and trade secret information that LPL seeks for
ulterior and improper purposes; and

4.      Unduly burdensome in that the third-party discovery Plaintiff seeks from
Sensormatic and the Tatung Defendants' other customers will require the production of
thousands of documents and is calculated to harass the Tatung Defendants' customers,
some of whom have already responded to subpoenas issued by LPL during jurisdictional
discovery.

## II.      STATEMENT OF FACTS

### A.      The Nature Of This Lawsuit.

Defendant Tatung sells electronic products including computer monitors and
televisions to resellers and retailers worldwide.  Defendant Tatung Company of America,
a California corporation, is a reseller of computer monitors and other LCD applications in
the United States.  The Tatung Defendants also perform OEM (Original Equipment
Manufacturer) services for a number of customers.  LPL and its parent company, LG
Electronics, Inc. ("LGE"), compete with the Tatung Defendants in the market of flat
display panel products (e.g., LCD monitors, LCD televisions and plasma televisions).

4

Third-party Sensormatic, the recipient of LPL's subpoena and deposition notice, is located in Boca Raton, Florida and is a customer of the Tatung Defendants.

The Tatung Defendants integrate more than 800 models of computer monitors and flat panel display products, referred to collectively as "visual display products." As OEMs, many of the Tatung Defendants' products are branded and otherwise customer specific; in most instances, the products are made to exacting customer specifications. Because the monitor business is highly competitive, the particular product design requirements and specifications of the Tatung Defendants' OEM customers, including those of Sensormatic, are extremely valuable trade secrets. The Tatung Defendants' specific pricing arrangements with customers also are extremely valuable trade secrets.

LPL commenced the Delaware Action against the Tatung Defendants on May 27, 2004. In the Delaware Action, LPL has alleged patent infringement claims against the Tatung Defendants based on certain "rear-mount" patents with respect to 20 of its products.

The discovery cut-off date in the Delaware Action is March 30, 2007.

**B.    The Tatung Defendants Have Already Provided LPL With Voluminous Discovery Relating to Both Its Accused and Non-Accused Products.**

LPL served its initial discovery requests in the Delaware Action over two years ago. In response to those discovery requests, the Tatung Defendants produced technical specifications and assembly drawings covering approximately 800 models of monitors and flat panel displays they sell. Until November 2006, LPL had accused only one Tatung product of infringing the patents-in-suit. In November 2006, LPL identified two

5

additional accused products.  It was not until mid-January 2007 that LPL accused the remaining products.

The Tatung Defendants have expended a great deal of effort to comply with their discovery obligations.  Since late January 2007 alone, the Tatung Defendants have produced approximately 15,000 pages of documents, including the following:

- Highly confidential Tatung America product work instructions;

- Highly confidential exploded view drawings of products; and

- Highly confidential sales summaries from 2002 to the present (quarter 1, 2007) containing model, price, and quantity information for *all* of its visual display products.

In addition, the Tatung Defendants have made available for LPL's inspection, and LPL has examined, disassembled, and photographed more than 40 monitor and television products.  Of the hundreds of products for which LPL has been provided technical documents, LPL to date has accused only 20 products of infringing the patents-in-suit.

## C.    LPL's Motion To Compel Further Customer Information Is Pending Before the Special Master.

In January 2007, LPL filed a motion to compel the production of additional documents such as highly confidential agreements and communications between the Tatung Defendants and their customers relating to *all* of the Tatung Defendants' visual display products including the hundreds of unaccused products.  The Tatung Defendants vigorously opposed that motion on the grounds that LPL's requested discovery is not limited in any way to the accused products at issue in the Delaware Action and is instead a transparent attempt by LPL to obtain highly sensitive business information.  That

6

motion is presently pending before the Special Master. The parties expect a decision shortly, as discovery cut-off is March 30, 2007.

**D.     LPL Now Seeks the Same Discovery Directly From the Tatung Defendants' Customers.**

In what can only be characterized as a blatant attempt to circumvent a potentially unfavorable ruling by the Special Master on a motion LPL itself filed, LPL recently served Sensormatic, as well as two dozen other customers of the Tatung Defendants, with a subpoena and deposition notice seeking voluminous discovery about highly confidential customer information on hundreds of products that LPL has *never accused of infringement*.

Specifically, LPL's request for documents seeks, *inter alia*, "all documents" including but not limited to writings, accounting records, agreements, communications, correspondence, faxes, summaries of records or telephone conversations, minutes or records of meetings or conferences, lists of persons attending meetings or conferences, documents between the Tatung Defendants and Sensormatic concerning such subject matter area as (a) marketing, sales, business documents or presentation materials provided by the Tatung Defendants, (b) technical specifications and/or assembly drawings regarding the Tatung Defendants' "visual display products," (c) Sensormatic's design requirements for its "visual display products," (d) Sensormatic's market for its "visual display products," (e) the business relationship between Sensormatic and the Tatung Defendants since January 1, 2002, (f) the manufacture and/or assembly of the Tatung Defendants' "visual display products," and more.

7

App. 0023

These extensive and broad-reaching requests for "visual display products" encompass *all* of the products the Tatung Defendants sell to Sensormatic and not just the accused products that are the subject of the Delaware Action.  To date, LPL has failed to provide any legitimate explanation why information on *unaccused* products is relevant to its patent infringement claims in the Delaware Action.

### III.    LEGAL ARGUMENT

**A.    The Tatung Defendants Have Standing Under FRCP 26(c) To Move For A Protective Order.**

Rule 26(c) of the Federal Rules of Civil Procedure ("FRCP") provides that "[u]pon motion *by a party* or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred…and for good cause shown… the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person…" (emphasis added).  Courts within the Eleventh Circuit have recognized that this language gives parties to a lawsuit, as well as third-parties themselves, standing to challenge third-party subpoenas. *See Maxwell v. Health Ctr. of Lake City, Inc.*, No. 3:05-cv-1056-J-32MCR, 2006 U.S. Dist. LEXIS 36774, at *6-8 (M.D. Fla. 2006) (granting Defendant's motion for protective order against third party subpoenas under FRCP 26(c)); *see also, Garcia v. Jefferson Capital Sys., LLC*, No. 8:05-CV-1967-T-23EAJ, 2006 U.S. Dist. LEXIS 56147, at *9-10 (M.D. Fla. 2006) (stating that Defendants have standing to move for protective order against third party subpoenas seeking irrelevant information, pursuant to FRCP 26(c)); *see also, Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla.

8

2005) (holding that a party has standing to challenge a subpoena issued to a non-party if the party alleges a personal right or privilege with respect to the subpoenas).

In meet and confer discussions, LPL has asserted that the Tatung Defendants do not have standing to object to the information sought from third parties. LPL is mistaken and references inapposite authority.[1]

Based on the above, the Tatung Defendants, as parties to the Delaware Action, clearly have standing to seek a protective order against LPL's attempts to obtain extremely broad and irrelevant discovery from third-parties.

**B.    Good Cause Supports The Issuance of A Protective Order.**

**1.    Legal Standard Governing The Issuance Of Protective Orders.**

Pursuant to Federal Rule of Civil Procedure 26(c), "upon a showing of good cause," the Court may issue a protective order precluding or limiting the scope of discovery in order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. *See, e.g., Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.,* 234 F.R.D.

---

[1]    For example, LPL will likely cite *Dart Industries, Inc. v. Liquid Nitrogen Processing* for the proposition that "unless a party to an action can make claim to some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty witness, the party to the action has no right to relief under FRCP 45(b) or 30(b)." 50 F.R.D. 286, 291 (D. Del. 1970), *quoting Shepherd v. Castle,* 20 F.R.D. 184, 188 (W.D.Mo. 1957).

Dart Industries *is inapposite for two reasons. First, that case involved a party's motion to quash a third party subpoena under FRCP 45(b); here, the Tatung Defendants move for a protective order pursuant to FRCP 26(c), which expressly grants parties standing to move the court to limit the scope of, or altogether preclude certain issues from, third party discovery.[1] FRCP 26(c)(4), 26(c)(7). The Tatung Defendants have chosen not to quash under FRCP 45(b) because they agree that LPL may seek relevant and appropriate discovery from third parties; FRCP 26(c) is the more appropriate mechanism to strike a balance between allowing open discovery and ensuring that such discovery is fairly tailored to the accused products.*

*Second, unlike the Tatung Defendants, the moving party in* Dart Industries *did not assert any personal privilege with respect to the requested documents. 50 F.R.D. at 291. In fact, the court expressly "decline[d] to hold that Dart lacks standing to move to quash the subpoena duces tecum on the grounds stated in FRCP 45(b)," averring that Dart's interest "may be sufficient to give it standing to move to limit the production sought here."* Id., *emphasis added.*

9

175, 178 (N.D. Ill. 2006); *see also, Pulsecard, Inc. v. Discover Card Services, Inc.*, 1995

WL 526533 at *14 (D. Kan. 1995). The protective order may include limiting the scope

of discovery to certain matters, precluding altogether the discovery of certain matters, and

ordering that a trade secret or other confidential research, development, or commercial

information not be revealed. Fed R. Civ Proc. 26(c)(4), 26(c)(7).

In the context of Federal Rule of Civil Procedure 26(c)(7) specifically, "good

cause" requires the party seeking the protective order to demonstrate that: (1) the material

sought to be protected is confidential, and (2) disclosure will create a competitive

advantage for the party. *Pulsecard*, 1995 WL 526533 at * 16, *citing Georgia Television

Co. v. TV News Clips of Atlanta*, 718 F. Supp. 939, 953 (N.D. Ga. 1989).

> **2.    The Requested Discovery Seeks Overly Broad Categories Of
> Communications and Information Completely Unrelated To Claims
> At Issue in The Delaware Action.**

A protective order is appropriate because LPL's third-party discovery requests are

overly broad and seek information that is not relevant to its claims, nor the Tatung

Defendants' defenses, in the Delaware Action. Instead, LPL seeks to obtain, through the

guise of "discovery," sensitive and confidential information relating to the Tatung

Defendant's business operations that would help LPL gain a competitive advantage.

"[D]iscovery may not be had regarding a matter which is not 'relevant to the

subject matter involved in the pending action.'" *Micro Motion, Inc. v. Kane Steel Co.*,

894 F.2d 1318, 1323 (Fed. Cir. 1990). Moreover, "[e]*ven if relevant*, discovery is not

permitted where no need is shown, or compliance would be unduly burdensome, or

where harm to the person outweighs the need of the person seeking discovery of the

10

App. 0026

information." *Id; see also, American Standard, Inc. v. Pfizer Inc.*, 828 F.2d 734, 739-42 (Fed. Cir. 1987).

In this regard, the case of *Joy Technologies, Inc. v. Flakt, Inc.*, 772 F. Supp. 842 (D. Del. 1991) is instructive, and presents a nearly identical situation to that found here. In *Joy Technologies*, the defendant sought a protective order preventing plaintiff from seeking discovery from *any of the defendant's customers or potential customers* until plaintiff made a showing that the information: (a) was necessary and relevant to the action, and (b) could not be obtained from any other source. *Id.* at 845. The court granted the requested protective order, stating:

> [I]t is undisputed that [plaintiff] and [defendant] are fierce competitors in the technology that is the subject of this lawsuit, and [plaintiff] has not convinced the Court that the same information it seeks from third parties is not available from [defendant]. Therefore, unless [plaintiff] can demonstrate that it has a specific need for evidence available only from third party customers of [defendant], the Court concludes that [defendant] and its customers are entitled to protection.

*Id.* at 849.

Similarly, in *Micro Motion, supra*, the plaintiff sought to obtain information from a nonparty competitor that was purportedly relevant to the issue of damages in the underlying patent suit. The court held that the plaintiff was embarking on a "fishing expedition" with its "merely speculative inquiries in the guise of relevant discovery." 894 F.2d at 1327-28, *see also Visto Corp. v. Smartner Info. Systems, Ltd.*, 2007 WL 218771 at * 5 (N.D. Cal. 2007) (granting protective order such that third party did not have to respond to the subpoena).

Here, LPL's discovery requests to Sensormatic seek broad categories of documents and information concerning both accused and *unaccused* products that also

11

are not limited as to time period. Such overly broad discovery requests encompass documents and information that, in reality, have nothing to do with the pending Delaware Action. Instead, it is readily apparent that LPL seeks to obtain such information about the Tatung Defendants to obtain a competitive advantage over them.

It also should be noted that the Tatung Defendants do not seek to prevent LPL from obtaining all third-party discovery being requested in its subpoena and deposition notice. Rather, such third-party discovery should focus on deposition topics and documents *pertaining to the accused products* at issue in the Delaware Action.

### 3. The Requested Third-Party Discovery Is Irrelevant To Any Purported Claim of Indirect Infringement.

The Tatung Defendants anticipate that LPL will claim that it needs customer information in order to determine indirect infringement. However, LPL has not shown why such information is relevant to any such indirect infringement claim.

Determining whether a patent claim has been infringed involves a two step analysis. First, the claim must be properly construed by the Court to determine its scope and meaning. Second, the claim, as construed, must be compared to the accused device or process. *PC Connector Solutions LLC v. Smartdisk Corp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005). Infringement analysis therefore focuses on the products or processes and the claims of the patents.

Here, the Tatung Defendants have already produced technical documents that depict their products' components, as well as the assembly methods used. LPL is *already in possession* of all the technical information it needs to compare Tatung's products to the

12

asserted claims. There is no need to directly subpoena and depose the Tatung Defendants' customers.

Moreover, there can be no indirect infringement without direct infringement and an infringing product. "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, ... and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Minnesota Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304 (Fed. Cir. 2002).

Here, there is no allegation of direct infringement with respect to the hundred of products for which LPL seeks thousands of documents from third parties. LPL is therefore not entitled to the broad categories of documents it seeks from Sensormatic.

### 4. The Requested Discovery Seeks Confidential Business Information To Which LPL Would Not Otherwise Be Entitled.

A protective order also is appropriate because LPL's subpoena and deposition notice seeks disclosure of confidential, proprietary trade secret information belonging to the Tatung Defendants. Such confidential commercial information warrants special protection under Rule 26(c)(7). *Micro Motion,* 894 F.2d at 1323, *citing Smith & Wesson v. United States*, 782 F.2d 1074, 1082 (1st Cir. 1986).

The Tatung Defendants and LPL are active competitors in the computer monitor business. Declaration of Jackson Chang ("Chang Decl.") at ¶ 2, which is attached hereto as Exhibit 3. Producing the information and testimony LPL seeks would cause major competitive harm to the Tatung Defendants. Chang Decl. at ¶ 3. As just one example, LPL designates as a deposition topic: "The nature of the business relationship and

13

transactions between Sensormatic and [the Tatung Defendants] relating to the sale, manufacture, assembly, distribution, or import of visual display products, including but not limited to the agreements between Sensormatic [and the Tatung Defendants]." These topics are closely guarded by the Tatung Defendants as highly sensitive and confidential business information. *Id.* at ¶ 4. The Tatung Defendants' methods of manufacturing its visual display products, for example, are not disclosed publicly; divulging this information would likely result in competitors using the information to 1) undercut the Tatung Defendants in pricing; 2) deduce the exact specifications required by existing customers; and/or 3) specifically target and lure away Tatung's existing customers. *Id.* at ¶ 7. All of this information is kept secret by the Tatung Defendants. Only authorized personnel have access to the information and information kept on computers are password protected. *Id.* at ¶ 6. The product specifications and features required by each customer, including Sensormatic, constitute competitive value and maintaining the confidentiality of such information is essential to the fair conduct of this litigation.

### 5.  LPL's Discovery Is Unduly Burdensome And Is Intended to Harass The Tatung Defendants' Customers.

Ordering compliance with LPL's subpoena would pose an undue and unnecessary burden and expense on non-party Sensormatic to gather and produce such information and defend depositions in the requested time frame, particularly given the utter irrelevance of the majority of requested documents and testimony.

The Tatung Defendants respectfully submit that LPL's discovery requests have been interposed solely to harass Sensormatic and aggravate the business relationship between the Tatung Defendants and their customers.

14

C. **The Need For a Protective Order Limiting Third Party Discovery Is Even More Compelling Due To LPL's Violations Of Previous Protective Orders.**

LPL will likely argue that a Protective Order entered in the Delaware Action is sufficient for discovery produced by third parties. The Tatung Defendants disagree on two grounds, both of which are pending before the Special Master.

1. **LPL Has Violated Other Protective Orders On At Least Two Occasions.**

The Tatung Defendants have recently petitioned the Special Master for relief regarding LPL's multiple violations of protective orders issued in different cases, implicating different patents, pending between the parties. LPL has *admitted* that its lawyers have viewed, used and disclosed confidential materials produced in other litigation between the parties for purposes of this case, which is expressly prohibited by the Protective Orders in the other litigation. The cases include *LPL v. Tatung Company, et. al.*, Case No. 05-292-JJF in Delaware District Court and *LPL v. Tatung Company, et. al.*, Case No. CV-02-6775-CBM in the Central District of California. Such conduct flagrantly disregards the letter and spirit of the applicable protective orders.

2. **LPL Is Potentially In Violation Of the Patent Prosecution Bar.**

Second, the PTO records appear to show that LPL staffs its litigation team with attorneys who also prosecute patents in the area of flat panel display technology. The Tatung Defendants' investigation of this conduct, which would directly violate the Protective Order, is ongoing, and the issue has been raised with the Special Master.

For these reasons, the Tatung Defendants submit that the parties' current Protective Order is insufficient to protect against the potential harm posed by disclosure of unlimited confidential information by third parties, including Sensormatic. *See*

15

*Pulsecard*, 1995 WL 526533 at * 26 ("The court does not find that the entry of a prior protective order should necessarily bar a second one, if facts justify it").

### IV.    CONCLUSION

To be clear, the Tatung Defendants do not contest LPL's right to seek discovery from Sensormatic.  They submit, however, that discovery obtained from third-parties must be *relevant* to this litigation and serve a legitimate purpose.  Here, LPL's overly broad and improper requests do not serve such purposes.  Accordingly, the Tatung Defendants respectfully request that the Court issue a protective order limiting discovery from Sensormatic to deposition testimony and documents relating to the accused products.

GREENBERG TRAURIG, P.A.
5100 Town Center Circle, Suite 400
Boca Raton, FL  33486
Telephone:    561.955.7600
Facsimile:    561.338.7099

By: _____
Geoffrey M. Cahen
Florida Bar No. 0013319
Counsel for Defendants Tatung
Company and Tatung Company of
America, Inc.

16

App. 0032

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing

upon all parties to this matter by depositing a true copy of same in the U.S. Mail, proper

postage prepaid, properly addressed to the parties on the attached service list:

This 9th day of March, 2007.

GREENBERG TRAURIG

By:_____
Geoffrey M. Cahen
Attorney For Defendants Tatung
Company and Tatung Company of
America, Inc.

17

App. 0033

## SERVICE LIST

Richard D. Kirk
rkirk@bayardfirm.com
**The Bayard Firm**
222 Delaware Avenue # 900
Wilmington, DE 19899

Gaspare J. Bono
gbono@mckennalong.com
Rel S. Ambrozy
rambrozy@mckennalong.com
Cass W. Christenson
cchristenson@mckennalong.com
Lora A. Brzezynski
lbrzezynski@mckennalong.com
**McKenna Long & Aldridge LLP**
1900 K Street, N.W.
Washington, DC 20006

Jeffrey B. Bove
jbove@cblh.com
James D. Heisman
jheisman@cblh.com
Jaclyn M. Mason
jmason@cblh.com
**Connolly Bove Lodge & Hutz LLP**
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Tracy R. Roman
troman@raskinpeter.com
**Raskin Peter Rubin & Simon LLP**
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

Scott R. Miller
smiller@cblh.com
**Connolly Bove Lodge & Hutz LLP**
355 South Grand Avenue, Suite 3150
Los Angeles, CA 90071

Frederick L. Cottrell, III
Cottrell@RLF.com
Anne Shea Gaza
Gaza@RLF.com
**Richards Layton & Finger, PA**
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

**Error! Unknown document property name.**

Frank E. Merideth, Jr.
meridethf@gtlaw.com
Valerie W. Ho
hov@gtlaw.com
Mark H. Krietzman
krietzmanm@gtlaw.com
Steve P. Hassid
hassids@gtlaw.com
**Greenberg Traurig LLP**
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

**Error! Unknown document property name.**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

                    Plaintiff,

          v.                              Civil Action No. 04-343 (JJF)

TATUNG COMPANY, et al.,

                    Defendants.

**NOTICE OF FED.R.CIV.P. 30(b)(6) DEPOSITION *DUCES TECUM*
AND FED.R.CIV.P. 45 SERVICE OF SUBPOENA**
**(SENSORMATIC)**

TO:

Jeffrey B Bove, Esq.                    Frederick L. Cottrell, III, Esq.
Jaclyn M. Mason, Esq.                   Anne Shea Gaza, Esq.
Connolly Bove Lodge & Hutz LLP          Richards, Layton & Finger
1007 North Orange Street                One Rodney Square
P.O. Box 2207                           P.O. Box 551
Wilmington, Delaware 19899-2207         Wilmington, DE 19899

Valerie Ho, Esq.                        Scott R. Miller, Esq.
Mark H. Krietzman, Esq.                 Connolly Bove Lodge & Hutz LLP
Frank C. Merideth, Jr., Esq.            355 South Grand Avenue
Greenberg Traurig LLP                   Suite 3150
2450 Colorado Avenue, Suite 400E        Los Angeles, CA 90071
Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin  Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

        PLEASE TAKE NOTICE that Plaintiff will take the deposition *duces tecum* of

Sensormatic ("Sensormatic") pursuant to Fed. R. Civ. P. 30(b)(6), on March 16, 2007.  The

deposition will take place at Esquire Deposition Services, 2385 NW Executive Ctr. Suite 120,

Boca Raton, FL 33431.  The deposition will be videotaped and taken before a notary public or

651702-1



court reporter, duly authorized to administer oaths and transcribe the testimony of the

deponent(s) and may use technology that permits the real time display of the deposition

transcript for attendees who bring a compatible computer. The deposition may continue from

day to day until completed if authorized by the Court or stipulated by the parties.

PLEASE ALSO TAKE NOTICE that LG.Philips LCD Co., Ltd. is serving Sensormatic

with a subpoena (the "Subpoena"), a copy of which is attached hereto. The subjects covered in

the deposition will include (but are not limited to) the subjects listed on Attachment A to the

Subpoena. Pursuant to Fed. R. Civ. P. 30(b)(6), Sensormatic is required to designate one or

more persons to testify at the deposition as to the matters known or reasonably available to

Sensormatic concerning all topics listed in Attachment A to the Subpoena. In addition, the

Subpoena requires Sensormatic to produce at the deposition the documents listed in Attachment

B to the Subpoena.

You are invited to attend and cross examine.


February 13, 2007

                                         THE BAYARD FIRM

                                         /s/ Richard D. Kirk (rk0922)
                                         Richard D. Kirk
                                         Ashley B. Stitzer
                                         222 Delaware Avenue, Suite 900
OF COUNSEL:                              P.O. Box 25130
Gaspare J. Bono                          Wilmington, DE  19899-5130
Matthew T. Bailey                        rkirk@bayardfirm.com
Lora A. Brzezynski                       (302) 655-5000
Cass W. Christenson                      Counsel for Plaintiff
McKenna Long & Aldridge LLP              LG.PHILIPS LCD CO., LTD.
1900 K Street, NW
Washington, DC 20006
(202) 496-7500


651702-1


App. 0037

OAO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

LG.PHILIPS LCD CO., LTD.

V.

TATUNG COMPANY, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]   04-343 (JJF)

TO:   **Sensormatic, Inc.**
      **6600 Congress Ave**
      **Boca Raton, Florida 33431-0837**

United States District Court for the District of
Delaware

  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
X to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
X deposition in the above case. (See Attachment A for topics.)

| PLACE OF DEPOSITION<br>Esq. Deposition Svcs, 2385 NW Executive Center Dr., Ste. 120, Boca Raton, FL 33431 | DATE AND TIME<br>March 16, 2007 at 9 am. |
| --- | --- |

  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at
X the place, date, and time specified below (list documents or objects): All documents listed in Attachment B.

| PLACE<br>Mail documents to: McKenna Long & Aldridge LLP, Attn:  Shari Klevens c/o<br>Esq. Deposition Svcs, 2385 NW Executive Center Dr., Ste. 120, Boca Raton, FL 33431 | DATE AND TIME<br>March 5, 2007 at 9:00 a.m. |
| --- | --- |

G  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

  Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER=S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR<br>Shari Klevens (Attorney for Plaintiff)   *CKlevens* | DATE<br>February 13, 2007 |
| --- | --- |

ISSUING OFFICER=S NAME, ADDRESS AND PHONE NUMBER
Shari Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
Telephone: 202-496-7612

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

DC:50459531 1

AO88  (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
|      |       |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
|                        |                   |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
|                        |       |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee

(2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial

(B)  Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production  Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded

(3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance,
(ii)  requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B) If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

DC:50459531.1

## ATTACHMENT A: TOPICS TO BE ADDRESSED AT THE DEPOSITION

For purposes of this Attachment, Sensormatic should use the following definition for the terms used herein.

A.    "Sensormatic," "you," and "your" as used herein, means Sensormatic and all persons or entities acting or purporting to act on your behalf, and any affiliates of Sensormatic.

B.    "ViewSonic" means Defendant ViewSonic Corporation, and all persons or entities acting or purporting to act on ViewSonic Corporation's behalf, and any affiliates of ViewSonic, including, but not limited to, entities, divisions, and affiliates located in Taiwan.

C.    "ViewSonic products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for ViewSonic.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, ViewSonic brand products.

D.    "Tatung Company" means Defendant Company and all persons or entities acting or purporting to act on Tatung Company's behalf, including, but not limited to Tatung America and TSTI.

E.    "Tatung Company products" as used herein any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung brand products.

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 1 of 6

F.    "Tatung America" means Defendant Tatung Company of America, Inc., and all persons or entities acting or purporting to act on Tatung Company of America's behalf, including but not limited to Tatung Company and any affiliates of Tatung Company of America.

G.    "Tatung America products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung America.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung America brand products.

H.    "TSTI" means Tatung Science and Technology, Inc., and all persons or entities acting or purporting to act on Tatung Science and Technology's behalf, including but not limited to Tatung Company, and any affiliates of Tatung Science and Technology.

I.    "TSTI products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for TSTI. This includes all such products, regardless of brand name, and thus includes, but is not limited to, TSTI brand products.

J.    "Affiliate(s)" means any corporation or other entity that controls, is controlled by or is under common control with the identified corporation or entity, including without limitation partnerships, parents, subsidiaries and divisions.

K.    "Visual display products" means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs.

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 2 of 6

L.    "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information between two of more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery or otherwise, including but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

M.    "Concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing or constituting the referenced subject.

N.    "Discuss," "discussing," "relate to" "relating to," "support" or "supporting" means in any way directly or indirectly, in whole or in part, discussing, referring to, regarding, constituting, concerning, about, pertaining to, relating to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling or negating.

O.    "Identify" used in respect to a company or corporate or business entity of any kind means to set forth:

    a.  the full name of the company;

    b.  the full name of the division or office involved, if applicable; and

    c.  the address of the company and of the division or office involved, if applicable.

P.    "Identify" used in respect to a document or thing means:

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 3 of 6

     a.  to provide a brief description of such document or thing, including date, author, recipients, type, and content or substance;

     b.  to identify the custodian of the document or thing;

     c.  to identify the place where the document or thing may be inspected; and

     d.  if a copy of the document has been supplied to LPL, to so state and specifically identify the copy supplied by reference to production numbers or other identifying information.

Q.    "Identify" used with respect to a natural person means to state:

     a.  the full name;

     b.  the present or last known business and residence addresses;

     c.  the last known employer or job affiliation; and

     d.  the last known occupation and business position or title held.

R.    "Import" or "importation" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

S.    "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

T.    "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

U.    "Person" means any natural person, firm, association, partnership, corporation, or other form of legal entity.

V.    "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

W.    The use of the singular form of any word includes the plural and vice versa.

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 4 of 6

The topics to be covered in the deposition include:

1.    The nature of the business relationship and transactions between Sensormatic and Tatung Company, Tatung America, TSTI, and/or ViewSonic relating to the sale, manufacture, assembly, distribution, or import of visual display products, including but not limited to the agreements between Sensormatic, Tatung Company, Tatung America, TSTI, and/or ViewSonic.

2.    The scope, nature and purpose of communications between Sensormatic and Tatung Company, Tatung America, TSTI, and/or ViewSonic (a) concerning the sale or marketing in the United States of visual display products manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, (b) communications regarding any product support assistance or warranties that Tatung Company, Tatung America, TSTI, and/or ViewSonic have provided to Sensormatic, (c) communications regarding the market trends for visual display products in the United States, (d) communications regarding the technical specifications of Tatung Company, Tatung America, TSTI, and/or ViewSonic visual display products, and (e) communications regarding your required or desired technical specifications for visual display products manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic.

3.    The scope, nature and purpose of communications between Sensormatic and Tatung Company, Tatung America, TSTI, and/or ViewSonic concerning the technical assembly of Tatung Company's, Tatung America's, TSTI's, or ViewSonic's visual display products, including, but not limited to, the use and identity of original equipment manufacturers ("OEMs") or systems integrators used by Sensormatic, Tatung Company, Tatung America, TSTI, and ViewSonic.

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 5 of 6

4.       Any agreements or contracts pursuant to which Sensormatic has agreed to purchase Tatung Company's, Tatung America's, TSTI, and/or ViewSonic's visual display products either directly from Tatung Company, Tatung America, TSTI, or ViewSonic or indirectly by purchasing such products from any OEMs.

5.       Sensormatic's activities or efforts related to the distribution or sale of visual display products in the United States manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic.

6.       All channels, distributors, suppliers, and networks through which products made in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic have been shipped, imported, sold, and/or distributed in the United States.

7.       Sensormatic's sales of its visual display products that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, including the quantity and dollar amount of such sales, by product.

8.       The substance of any meetings between Sensormatic and Tatung Company, Tatung America, TSTI, and/or ViewSonic whether in the U.S. or abroad.

DC:50159632.1

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 6 of 6

## ATTACHMENT B: DOCUMENTS TO BE PRODUCED

For purposes of this Attachment, Sensormatic should refer to Attachment A for the definition or meaning of terms used herein, which definitions are incorporated herein by reference. In addition, the following definition applies:

A.    "Document" means all types of documents and things embraced within Federal Rules of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries or interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, or opinions of counsel, records, reports or summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, computer printouts, floppy disks, hard drives, CD-ROM's, magnetic tapes and other data compilations from which

App. 0046

information can be obtained or translated, if necessary by Sensormatic through detection devices into reasonably usable form. The term document also refers to any tangible object other than a document as described above, and includes objects of every kind and nature such as, but not limited to, prototypes, models, and specimens.

The documents to be produced on or before March 5, 2007, include the following:

1.      All documents provided by Tatung Company, Tatung America, TSTI, and/or ViewSonic to Sensormatic since January 1, 2002 regarding: (i) marketing, sales, or business documents or presentation materials; (ii) technical specifications and/or drawings regarding Tatung Company's, Tatung America's, TSTI's or ViewSonic's visual display products, including but not limited to the assembly of such products; and (iii) any documents relating to warranties, product support, or service provided by Tatung Company, Tatung America, TSTI, and/or ViewSonic regarding their visual display products.

2.      Documents provided by Sensormatic to Tatung Company, Tatung America, TSTI or ViewSonic since January 1, 2002 sufficient to show (i) Sensormatic's design requirements for its visual display products, (ii) Sensormatic's market for its visual display products, and/or (iii) market trends in the United States for visual display products.

3.      Documents sufficient to show the business relationship between Sensormatic and Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including communications with Tatung Company, Tatung America, TSTI, and/or ViewSonic, notes from meeting with Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents in which Sensormatic has agreed to purchase visual display products directly from Tatung Company, Tatung America, TSTI, and/or ViewSonic.

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 2 of 3

4.      All documents related to the manufacture and/or assembly of Tatung Company's, Tatung America's, TSTI's, and/or ViewSonic's visual display products.

5.      All documents since January 1, 2002 evidencing or relating to Sensormatic's purchase from original equipment manufacturers ("OEMs") any visual display products that Sensormatic had reason to believe were manufactured or assembled in whole or in part by Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents sufficient to show that Tatung Company, Tatung America, TSTI, and/or ViewSonic received notice of Sensormatic's agreements to purchase.

6.      Documents sufficient to show Sensormatic's receipt or purchase of visual display products sold, manufactured, shipped, imported, or distributed in whole or in part by Tatung Company, Tatung America, TSTI, and ViewSonic since January 1, 2002.

7.      Documents sufficient to show the total quantity of visual display products sold, by product, by Sensormatic that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI, and (4) ViewSonic products.

8.      Documents sufficient to show the sales by total dollar value and by quantity of visual display products sold, by product, by Sensormatic that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI, and (4) ViewSonic products.

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 3 of 3

9.    Documents sufficient to identify each person Sensormatic has communicated with

at Tatung Company, Tatung America, TSTI, and/or ViewSonic.

DC:5C459602.1

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 4 of 3

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 13, 2007, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Jeffrey B Bove, Esq.                    Frederick L. Cottrell, III, Esq.
Jaclyn M. Mason, Esq.                   Anne Shea Gaza, Esq.
Connolly Bove Lodge & Hutz LLP          Richards, Layton & Finger
1007 North Orange Street                One Rodney Square
P.O. Box 2207                           P.O. Box 551
Wilmington, Delaware 19899-2207         Wilmington, DE 19899


The undersigned counsel further certifies that copies of the foregoing document

were sent by hand to the above counsel and by email and will be sent by first class mail

to the following non-registered participants:

Scott R. Miller, Esq.                   Valerie Ho, Esq.
Connolly Bove Lodge & Hutz LLP          Mark H. Krietzman, Esq.
355 South Grand Avenue                  Frank C. Merideth, Jr., Esq.
Suite 3150                              Greenberg Traurig LLP
Los Angeles, CA 90071                   2450 Colorado Avenue, Suite 400E
                                        Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067


                         /s/ Richard D. Kirk (rk922)
                         Richard D. Kirk

571447-1

## DECLARATION OF CHARLENE OH

I, Charlene Oh, declare:

1.      I am an attorney licensed to practice before the Courts of the State of California.  I am an associate with the law firm of Greenberg Traurig, LLP, counsel for Defendants Tatung Company and Tatung Company of America, Inc.  I make this Declaration in support of Defendants' Motion for a Protective Order Limiting Scope of Third Party Deposition and Subpoena (the "Motion for Protective Order").

2.      The Motion for Protective Order concerns a deposition notice and third party subpoena issued in this district in connection with a patent infringement lawsuit pending in the United States District Court for the District of Delaware, C.A. No. 04-343-JJF (the "Delaware Action").

3.      The following list identifies those products Plaintiff L.G. Philips LCD Co., Ltd. has accused of infringement in the C.A. No. 04-343-JJF case.  The list is taken from Plaintiff's Fifth Supplemental Response to Defendants' Interrogatory No. 1.

| |
|---|
| L17AMTN |
| L17UCCT |
| TLM1705 |
| Tatung ADMNC1LCD17 |
| American Dynamics ADMNC1LCD17 |
| Unidentified American Dynamics Product |
| P42HSMT |
| P46T |
| (Triview) TLM1505 TriviewFST-1503RV-4B |
| TLM1703T |
| TLM1703 |
| TLM1903 |
| V23CLTT |
| V23DLWX-U12 |
| V27CMTT-U01 |
| V30CMTT-U62 |

126743326_1



EXHIBIT

2

App. 0051

| V30CMTT-U01 |
|---|
| HP RG556AA |
| IloFCBT |
| Hitachi 37HDL52 |

4.    The Motion for Protective Order requests that this Court limit discovery from third parties to deposition testimony and documents that relate to the above accused products.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 8, 2007 in Los Angeles, CA.

_____
Charlene Oh

126743326_1

## DECLARATION OF JACKSON CHANG

I, Jackson Chang, under penalty of perjury, hereby declare and state:

1.    I am the General Manager of Display BU Sales for Tatung Company.

2.    Tatung Company and Tatung Company of America, Inc. (the "Tatung Defendants"), actively compete with L.G. Philips LCD Co., Ltd. ("LPL") and its parent company, LG Electronics, Inc. ("LGE") in the computer monitor business.

3.    Producing the information and testimony LPL seeks would cause major competitive harm to the Tatung Defendants.

4.    The noticed deposition topics are closely guarded by the Tatung Defendants as highly sensitive and confidential business information.

5.    The requested documents also implicate highly sensitive commercial information.

6.    All of this information is kept secret by the Tatung Defendants. Only authorized personnel have access to the information and information kept on computers are password protected.

7.    A third party's disclosure of the requested information would likely result in competitors using the information to 1) undercut the Tatung Defendants in pricing; 2) deduce the exact specifications required by existing customers; and/or 3) specifically target and lure away Tatung's existing customers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 8, 2007 in Los Angeles, CA.

_Jackson Chang_
Jackson Chang

EXHIBIT

**3**

App. 0053

Case 9:07-mc-80223-KLR    Document 1    Entered on FLSD Docket 03/12/2007    Page 38 of 38

OJS 44 (Rev. 11/05)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**
L.G. PHILIPS LCD CO., LTD.

**DEFENDANTS**
TATUNG COMPANY, TATUNG COMPANY OF AMERICA, INC. and VIEWSONIC CORPORATION

CIV-RYSKAMP

MAGISTRATE JUDGE
VITUNAC

07-80223

(b) County of Residence of First Listed Plaintiff Seoul, Korea
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Taipei, Taiwan
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
302-655-5000

Attorneys (If Known)
Greenberg Traurig
5100 Town Center Circle, Suite 400
Boca Raton, FL 33486
561-955-7600

2007 MAR -9 FILED BY

(d) Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

07CV 8C223  KLR/AAV

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**
(See instructions second page):
a) Re-filed Case ☐ YES ☐ NO    b) Related Cases ☒ YES ☐ NO
JUDGE Joseph J. Fernan, Jr.

District of Delaware (Wilmington)
DOCKET NUMBER 1:04-cv-00343-JJF

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity): Fed. R. Civ. P. 26(c)

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
Geoffrey Calvin

DATE 03/09/07

722519

FOR OFFICE USE ONLY

AMOUNT 39—

American LegalNet, Inc.    www.USCourtForms.com

App. 0054

## DECLARATION OF CHARLENE OH

I, Charlene Oh, declare:

1.      I am an attorney licensed to practice before the Courts of the State of California.  I am an associate with the law firm of Greenberg Traurig, LLP, counsel for Defendants Tatung Company and Tatung Company of America, Inc.  I make this Declaration in support of Defendants' Motion for a Protective Order Limiting Scope of Third Party Deposition and Subpoena (the "Motion for Protective Order").

2.      The Motion for Protective Order concerns a deposition notice and third party subpoena issued in this district in connection with a patent infringement lawsuit pending in the United States District Court for the District of Delaware, C.A. No. 04-343-JJF (the "Delaware Action").

3.      The following list identifies those products Plaintiff L.G. Philips LCD Co., Ltd. has accused of infringement in the C.A. No. 04-343-JJF case.  The list is taken from Plaintiff's Fifth Supplemental Response to Defendants' Interrogatory No. 1.

| |
|---|
| L17AMTN |
| L17UCCT |
| TLM1705 |
| Tatung ADMNC1LCD17 |
| American Dynamics ADMNC1LCD17 |
| Unidentified American Dynamics Product |
| P42HSMT |
| P46T |
| (Triview) TLM1505 TriviewFST-1503RV-4B |
| TLM1703T |
| TLM1703 |
| TLM1903 |
| V23CLTT |
| V23DLWX-U12 |
| V27CMTT-U01 |
| V30CMTT-U62 |

| V30CMTT-U01 |
| HP RG556AA |
| IloFCBT |
| Hitachi 37HDL52 |

4.    The Motion for Protective Order requests that this Court limit discovery from third parties to deposition testimony and documents that relate to the above accused products.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 8, 2007 in Los Angeles, CA.

Charlene Oh

126743326_1

App. 0056

### Declaration of Charlene L. Oh

I, Charlene L. Oh, declare as follows:

1.     I am an attorney at the law firm of Greenberg Traurig, LLP, and I am counsel for Defendants Tatung Company and Tatung Company of America (collectively, "the Tatung Defendants") in the lawsuit styled *L.G. Philips LCD Co., Ltd. v. Tatung Company, et al.*, Civil Action No. 04-343-JJF, in the United States District Court for the District of Delaware (the "Delaware Action").

2.     I have personal knowledge of the facts contained in this declaration and, if called and sworn as a witness, I could and would testify truthfully to the following:

3.     L.G. Philips LCD Co., Ltd.'s ("LPL") served its initial discovery requests in the Delaware Action over two years ago.

4.     In response, the Tatung Defendants produced technical specifications and assembly drawings covering approximately 800 models of the monitors and flat panel displays that they sell.

5.     Of the hundreds of products for which LPL has been provided technical documents, LPL has to date accused only 20 products of infringing the patents-in-suit.

6.     Until November 2006, LPL had accused only one Tatung product of infringing the patents-in-suit.

7.     In November 2006, LPL identified two additional accused products.

8.     It was not until mid-January 2007 that LPL accused the remaining products.

9.     The Tatung Defendants have expended a great deal of effort to comply with their discovery obligations.  Since late January 2007 alone, the Tatung Defendants have produced approximately 15,000 pages of documents, including the following:

126746797_1

App. 0057

- Highly confidential Tatung America product work instructions;

- Highly confidential exploded view drawings of products; and

- Highly confidential sales summaries from 2002 to the present (quarter 1, 2007) containing model, price, and quantity information for *all* of its visual display products.

10.     In addition, the Tatung Defendants have made available for LPL's inspection, and LPL has examined, disassembled, and photographed more than 40 monitor and television products.

11.     In January 2007, LPL filed a motion to compel the production of additional documents such as highly confidential agreements and communications between the Tatung Defendants and their customers relating to *all* of the Tatung Defendants' visual display products including the hundreds of unaccused products.

12.     The Tatung Defendants opposed that motion on the grounds that LPL's requested discovery is not limited in any way to the accused products at issue in the Delaware Action and is instead LPL's attempt to obtain highly sensitive business information.

13.     That motion is presently pending before the Special Master in the Delaware Action, and a decision is expected before the close of discovery on March 30, 2007.

14.     LPL has recently served over two dozen Tatung customers, with a subpoena duces tecum for oral deposition and the production of voluminous, irrelevant documents including confidential customer information on hundreds of products that LPL has never accused of infringement.

126746797_1

15.     The Tatung Defendants have recently petitioned the Special Master in the Delaware Action for relief regarding LPL's multiple violations of protective orders issued in different cases, implicating different patents, pending between the parties.

16.     LPL has admitted that its lawyers have viewed, used and disclosed confidential materials produced in other litigation between the parties for purposes of the Delaware Action, which is expressly prohibited by the Protective Orders in the other litigation. The cases include *LPL v. Tatung Company, et. al.*, Case No. 05-292-JJF in Delaware District Court and *LPL v. Tatung Company, et. al.*, Case No. CV-02-6775-CBM in the Central District of California.

17.     The Patent and Trademark Office records appear to show that LPL staffs its litigation team with attorneys who also prosecute patents in the area of flat panel display technology. The Tatung Defendants' investigation of this conduct, which would directly violate the Protective Order, is ongoing, and the issue has been raised with the Special Master.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct. Executed on March 13, 2007 in Los Angeles, California.

_____

Charlene L. Oh

126746797_1

## DECLARATION OF JACKSON CHANG

I, Jackson Chang, under penalty of perjury, hereby declare and state:

1.     I am the General Manager of Display BU Sales for Tatung Company.

2.     Tatung Company and Tatung Company of America, Inc. (the "Tatung Defendants"), actively compete with L.G. Philips LCD Co., Ltd. ("LPL") and its parent company, LG Electronics, Inc. ("LGE") in the computer monitor business.

3.     Producing the information and testimony LPL seeks would cause major competitive harm to the Tatung Defendants.

4.     The noticed deposition topics are closely guarded by the Tatung Defendants as highly sensitive and confidential business information.

5.     The requested documents also implicate highly sensitive commercial information.

6.     All of this information is kept secret by the Tatung Defendants.  Only authorized personnel have access to the information and information kept on computers are password protected.

7.     A third party's disclosure of the requested information would likely result in competitors using the information to 1) undercut the Tatung Defendants in pricing; 2) deduce the exact specifications required by existing customers; and/or 3) specifically target and lure away Tatung's existing customers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 8, 2007 in Los Angeles, CA.

_____
Jackson Chang

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 JAN 24  AM 9: 45

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 04-343-JJF |
| v | ) | |
| | ) | |
| TATUNG COMPANY; | ) | |
| TATUNG COMPANY OF AMERICA, | ) | |
| INC. and VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## STIPULATED PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the parties stipulate to the following Protective Order, subject to the approval of the Court:

1.      Scope of Protection.

1.1      This Protective Order shall govern any record of information, designated pursuant to Paragraph 2 of this Protective Order, produced in this action, including all designated deposition testimony, all designated testimony taken at a hearing or other proceeding, interrogatory answers, documents and other discovery materials, whether produced informally or in response to interrogatories, requests for admissions, requests for production of documents or other formal method of discovery.

1.2      This Protective Order shall also govern any designated record of information produced in this action pursuant to required disclosures under any federal procedural rule or District of Delaware local rule, and any supplementary disclosures thereto.

1.3      This Protective Order shall apply to the parties and any nonparty from whom discovery may be sought and who desires the protection of this Protective Order (collectively herein referred to as a "party" or the "parties").

2.      Designation.

2.1      Each party shall have the right to designate as confidential and subject to this Protective Order any information produced by it in this action which contains, reflects, or

otherwise discloses confidential technical, business or financial information ("CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered confidential under this Protective Order. The parties will use reasonable care to avoid designating any documents or information CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER that are generally available to the public.

2.2     Each party shall have the right to designate as restricted to review by those categories of individuals listed in Paragraphs 4.1(a) - 4.1(e) and subject to this Protective Order any information produced in this action which contains, reflects, or otherwise discloses (1) trade secrets, (2) research and development, manufacturing, operational or other highly sensitive technical information, or (3) highly sensitive business related informaton, such as customer, supplier or financial information (collectively, "HIGHLY SENSITIVE CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend HIGHLY SENSITIVE CONFIDENTIAL prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered HIGHLY SENSITIVE CONFIDENTIAL under this Protective Order. To the extent that material is marked HIGHLY SENSITIVE CONFIDENTIAL, such material shall be revealed to or used by limited categories of individuals, as provided for in Paragraph 4.2, and shall not be communicated in any manner, either directly or indirectly, to any person or entity not permitted disclosure pursuant to this Protective Order. Any copies of such material, abstracts, summaries or information derived therefrom, and any notes or other records regarding the contents thereof, shall also be deemed HIGHLY SENSITIVE CONFIDENTIAL, and the same terms regarding confidentiality of these materials shall apply as apply to the originals. Use of this highly restrictive designation is limited to information of the highest sensitivity. The parties will use reasonable care to avoid designating any documents or information HIGHLY SENSITIVE CONFIDENTIAL for which the designating party does not have a good faith belief that the documents or information satisfy the criteria set forth in this Paragraph 2.2. HIGHLY SENSITIVE CONFIDENTIAL information shall be used only for purposecs directly related to this action, and for no other purpose whatsoever, except by consent of all of the parties or order of the Court.

2.3     To the extent that any party has, prior to the date that this Order is entered, produced to the other side materials that the producing party has marked with confidentiality designation, all such materials shall be considered to have been designated under this Order as HIGHLY SENSITIVE CONFIDENTIAL unless otherwise agreed by the Parties.

3.     Limit On Use And Disclosure Of Designated Information.

3.1    Each party and all persons bound by the terms of this Protective Order shall use any information or document governed by this Protective Order only in connection with the prosecution or defense of this action and for no other purpose, except by consent of the parties or order of the Court. No party or other person shall disclose or release to any person not authorized under this Protective Order any information or document governed by this Protective Order for any purpose, or to any person authorized under this Protective Order for any other purpose.

3.2    It is, however, understood that counsel for a party may give advice and opinions to his or her client in connection with the prosecution or defense of this action based on his or her evaluation of designated confidential information received by the party, provided that such rendering of advice and opinions counsel shall not reveal the content of such information except by prior written agreement with counsel for the producing party.

3.3    The attorneys of record for the parties and other persons receiving information governed by this Protective Order shall exercise reasonable care to ensure that the information and documents governed by this Protective Order are (a) used only for the purposes specified herein, and (b) disclosed only to authorized persons.

4.    Disclosure Of Confidential Material.

4.1    Documents or information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER shall be disclosed by the recipient thereof only to:

(a)    the attorneys who are actively involved in this action that are partners of or employed by the following law firms of record for the parties, and their authorized secretarial, clerical and legal assistant staff: Morris, James, Hitchens & Williams LLP; McKenna, Long & Aldridge LLP; Potter Anderson & Corroon LLP; Bingham McCutchen LLP; Rosethal, Monhait, Gross & Goddess; and Baum & Weems provided that such attorneys shall not be provided access to HIGHLY SENSITIVE CONFIDENTIAL information if such attorneys

(1)    have participated in, directed or supervised any patent prosecution activitiy related to the patents-in-suit or currently participate in, direct or supervise any patent prosecution activity involving (i) flat panel or fllat panel display technology or (ii) technology related or refering to or incorporating flat panels or flat panel displays (collectively, "the Subject Matter"). During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not participate in, direct or supervise any patent prosecution activity in the United States Patent and Trademark Office or with any patent office outside the United States involving the Subject Matter;

(2)      provide non-legal, business advice or non-legal, business representation or to clients in the flat panel display industry wherein the highly sensitive business-related financial information of any opposing party would be relevant to such non-legal, business advice or non-legal, business representation. During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not provide non-legal, business advice or non-legal, business representation to clients in the flat panel display industry wherein the highly sensitive business-related information of any opposing party would be relevant to such non-legal, business advice or representation; or

(3)      are related to or have a personal, social relationship with any officer, director or employee of a party

(b)      the Court and Court personnel, as provided in Paragraph 12;

(c)      consultants or experts and their staffs retained by the parties or their attorneys for purposes of this action, who are agreed upon by the parties pursuant to Paragraph 6, who are not employees or otherwise affiliated with any of the parties (except persons scheduled to be deposed by any of the parties pursuant to Rule 30(b)(6), Fed.R.Civ.P.), and who first agree to be bound by the terms of this Protective Order;

(d)      court reporters employed in connection with this action;

(e)      outside copying and computer services necessary for document handling, and other litigation support personnel (e.g., translators, graphic designers and animators);

(f)      One member of LG.Philips LCD, Co., Ltd.'s in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(g)      One member of Viewsonic Corporation's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(h)      One member of Tatung Company's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(i)      One attorney of Tatung Company of America, Inc.'s regular out-side counsel, provided that each such individual must first agree to be bound by the terms of this Protective Order;

4.2      Documents or information designated HIGHLY SENSITIVE CONFIDENTIAL shall be disclosed by the recipient thereof only to those categories of individuals listed in Paragraphs 11 4.1(a) - 4.1(e) subject to the restrictions therein.

5.    Redaction.

Counsel for a party producing documents may mask ("redact") material deemed exempt from discovery because it is protected from disclosure under the attorney-client privilege or work product immunity afforded by Rule 26(b), Fed.R.Civ.P. However, any document from which material is masked must identify in the masked area that masking or redaction has occurred. The reason for any such masking must be stated on a log to be provided within thirty (30) days after the production of the documents. Sufficient information regarding the masked material must be provided to the other party to enable it to evaluate the legitimacy of the asserted privilege or immunity. The parties reserve the right to pursue categories for redaction in addition to those identified above, by either consent of the parties or order of the Court, to be addressed on a case-by case basis.

6.    Disclosure to Independent Consultants and Identification of Experts.

6.1    If any party desires to disclose information designated CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL to any expert or consultant pursuant to Paragraph 4 above, it must first identify in writing to the attorneys for the producing party each such expert or consultant. The attorney for the producing party shall have ten (10) business days from receipt of such notice to object to disclosure of such information to any of the experts or consultants so identified.

6.2    Such identification shall include the full name and professional address and/or affiliation of the proposed expert or consultant, an up-to-date curriculum vitae identifying at least all other present and prior employments or consultancies of the expert or consultant in the field of flat panel and flat panel display technologies, and a list of the cases in which the expert or consultant has testified at a deposition, an arbitral hearing or trial within the last four years. The parties shall attempt to resolve any objections informally. If the objections cannot be resolved, the party seeking to disclose the CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information to the expert or consultant may move the Court for an Order allowing the disclosure. On any motion challenging the disclosure of such information to an expert or consultant, the burden of proof shall lie with the party objecting to the disclosure to establish that the information should not be disclosed to the expert or consultant. In the event objections are made and not resolved informally, disclosure of information to the expert or consultant shall not be made except by Order of the Court (or to any limited extent upon which the parties may agree).

7.    Agreement Of Confidentiality.

In no event shall any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL be disclosed to any person authorized pursuant to Paragraph 4, other than (a) the Court and Court personnel, (b) the parties' attorneys identified in Paragraph 4.1(a) and their authorized secretarial and legal assistant staffs, (c) court reporters, and (d) outside copying and computer services necessary for document handling, until such person has executed a written

Confidentiality Undertaking (in the form set forth in Exhibit A hereto) acknowledging and agreeing to be bound by the terms of this Protective Order. Copies of such Confidentiality Undertakings shall be promptly served on the producing party.

8.     Related Documents.

Information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL shall include (a) all documents, copies, extracts, and complete or partial summaries prepared from or containing such information; (b) portions of deposition transcripts and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (c) portions of briefs, memoranda or any other papers filed with the Court and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (d) deposition testimony designated in accordance with Paragrapah 9; and (e) testimony taken at a hearing or other proceeding that is designated in accordance with Paragraph 10.

9.     Designation Of Deposition Transcripts.

9.1     Deposition transcripts, or portions thereof, may be designated as subject to this Protective Order either (a) at the time of such deposition, in which case the transcript of the designated testimony shall be marked by the reporter with the appropriate legend (see Paragraph 2.1) as the designating party may direct, or (b) within twenty-one (21) days following the receipt of the transcript of the deposition by providing written notice to the reporter and all counsel of record, in which case all counsel receiving such notice shall mark the copies or portions of the designated transcript in their possession or under their control as directed by the designating party.

9.2     All deposition transcripts not previously designated shall be deemed to be, and shall be treated as, HIGHLY SENSITIVE CONFIDENTIAL until the expiration of the period set forth in Paragraph 9.1, and neither the transcript nor the content of the testimony shall be disclosed by a non-designating party to persons other than those persons named or approved according to Paragraph 4.

9.3     The designating party shall have the right to exclude from a deposition, before the taking of testimony which the designating party designates CONFIDENTIALSUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, all persons other than those persons previously qualified to receive such information pursuant to Paragraph 4.

9.4     In addition, to the extent that any document or information that has been designated as either CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, such document or information shall not be disclosed to or otherwise used with any witness not currently or previously employed or retained by the producing party during a deposition without at least three (3) calendar days prior notice to the designating party of such potential use in order to permit counsel for the designating party to attend and to take

such action as it deems appropriate to protect the confidentiality of the documents and/or information. Counsel for the parties shall attempt to resolve any objection(s) and they will only seek redress to the Court if no resolution can be reached. However, the receiving party shall not use or otherwise disclose the confidential documents or information subject to such objection at such deposition of a witness not currently or previously employed or retained by the producing party until the Court has ruled upon any such objection(s), provided that the producing party submits the matter to the Court within three (3) calendar days of the parties being unable to resolve the objection(s).

10.    Designation Of Hearing Testimony Or Argument.

With respect to testimony elicited during hearings and other proceedings, whenever counsel for any party deems that any question or line of questioning calls for the disclosure of CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL information, counsel may designate on the record prior to such disclosure that the disclosure is subject to confidentiality restrictions. Whenever matter designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL is to be discussed in a hearing or other proceeding, any party claiming such confidentiality may ask the Court to have excluded from the hearing or other proceeding any person who is not entitled under this Order to receive information so designated.

11.    Disclosure To Author Or Recipient.

Notwithstanding any other provisions of this Order, nothing herein shall prohibit counsel for a party from disclosing a document containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL to any person which the document clearly identifies as an author, addressee, or carbon copy recipient of such document, or to any current employee of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. During deposition or trial testimony, counsel may disclose documents produced by a party to current employees and officers of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. And regardless of such designation pursuant to this ' Protective Order, if a document or testimony makes reference to the actual or alleged conduct or statements of a person who is a potential witness, counsel may discuss such conduct or statements with such witness without revealing any portion of the document or testimony other than that which specifically refers to such conduct or statement, and such discussion shall not constitute disclosure in violation of this Protective Order.

12.    Designation Of Documents Under Seal.

Any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, if filed with the Court, shall be filed under seal and shall be made available only to the Court and to persons authorized by the terms of this Protective Order. The party filing any paper which reflects, contains or includes

any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information subject to this Protective Order shall file such paper in a sealed envelope, or other appropriately sealed container, which indicates the title of the action, the party filing the materials, the nature of the materials filed, the appropriate legend (see Paragraph 2.1), and a statement substantially in the following form:

This envelope contains documents subject to a Protective Order of the Court. It should be opened only by the Court. Its contents should not be disclosed, revealed or made public except by Order of the Court or written agreement of the parties.

13.     Confidentiality Of Party's Own Documents.

No person may disclose, in public or private, any designated information of another party except as provided for in this Protective Order, but nothing herein shall affect the right of the designating party to disclose to its officers, directors, employees, attorneys, consultants or experts, or to any other person, its own information. Such disclosure shall not waive the protections of this Protective Order and shall not entitle other parties or their attorneys to disclose such information in violation of it, unless by such disclosure of the designating party the information becomes public knowledge (see Paragraph 16). Similarly, the Protective Order shall not preclude a party from showing its own information to its officers, directors, employees, attorneys, consultants or experts, or to any other person, which information has been filed under seal by the opposing party.

14.     Other Protections.

14.1     No person shall use any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information, or information derived therefrom, for purposes other than the prosecution or defense of this action, including without limitation, for purposes of preparing, filing or prosecuting any patent application, continuation or divisional patent application, reissue patent application or request for re-examination.

14.2     Any party may mark any document or thing containing CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information as an exhibit to a deposition, hearing or other proceeding and examine any witness thereon qualified under the terms of this Protective Order to have access to such designated material.

15.     Challenge To Confidentiality.

15.1 This Protective Order shall not preclude any party from seeking and obtaining, on an appropriate showing, such additional protection with respect to the confidentiality of documents or other discovery materials as that party may consider appropriate. Nor shall any party be precluded from (a) claiming that any matter designated hereunder is not entitled to the protections of this Protective Order, (b) applying to the Court for an Order permitting the disclosure or use of information or documents otherwise prohibited by this Protective Order, or (c) applying for a further Order modifying this Protective Order in any respect. No party shall be obligated to challenge the propriety of any designation, and

failure to do so shall not preclude a subsequent challenge to the propriety of such designation.

15.2    On any motion challenging the designation of any information, the burden of proof shall lie with the producing party to establish that the information is, in fact, CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information. If a party seeks declassification or removal of particular items from a designation on the ground that such designation is not necessary to protect the interests of the party wishing the designated information, the following procedure shall be utilized:

a. The party seeking such declassification or removal shall give counsel of record for the other party written notice thereof specifying the designated information as to which such removal is sought and the reasons for the request; and

b. If, after conferring, the parties cannot reach agreement concerning the matter, then the party requesting the declassification or removal of particular items may file and serve a motion for a further Order of this Court directing that the designation shall be so removed.

16.    Prior Or Public Knowledge.

This Protective Order shall not apply to information that, prior to disclosure, is public knowledge, and the restrictions contained in this Protective Order shall not apply to information that is, or after disclosure becomes, public knowledge other than by an act or omission of the party to whom such disclosure is made, or that is legitimately and independently acquired from a source not subject to this Protective Order.

17.    Limitation Of Protective Order.

This Protective Order is not intended to address discovery objections to produce, answer, or respond on the grounds of attorney-client privilege or work product doctrine, or to preclude any party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure.

18.    Other Proceedings.

By entering this order and limiting the disclosure of information in this case, the court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who may be subject to a motion to disclose another party's CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information pursuant to this order shall promptly notify that party of the motion so that it may have an opportunity to appear and be heard on whether such information should be disclosed.

19.    Inadvertent Disclosure Of Work Product Or Privileged Information:

Procedure And Waiver.

19.1    If the producing party at anytime notifies the Non-producing party in writing that it has inadvertently produced documents and/or things that are protected from disclosure under attorney-client privilege, work-product immunity, and/or any other applicable privilege or immunity from disclosure, the non-producing party shall return all copies of such documents and/or things to the producing party within five (5) business days of receipt of such notice and shall not further disclose or use such items for any purpose until further order of the Court. Upon being notified by the producing party pursuant to this section, counsel for the non-producing party shall use his or her best efforts to retrieve all copies of the documents at issue.

19.2    The return of any discovery item to the producing party shall not in any way preclude the non-producing party from moving the Court for a ruling that: (a) the document or thing was never privileged or otherwise immune from disclosure; and/or (b) that any applicable privilege or immunity has been waived.

19.3    Inadvertent or unintentional disclosure of information subject to any privilege or immunity during the course of this litigation without proper designation shall not be deemed a waiver of a claim that disclosed information is in fact subject to a privilege or immunity if so designated within ten (10) business days after the producing party actually learns of the inadvertent or unintentional disclosure.

20.    Non-Party Material.

The terms of this Protective Order, as well as the terms of any protective order that may be entered into between a discovering party and third party for the production of information to the discovering party, are applicable to CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information provided by a non-party. Information provided by a non-party in connection with this action and designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, pursuant to the terms of this Protective Order shall be protected by the remedies and relief provided by this Protective Order.

21.    Return Of Designated Information.

Within thirty (30) days of final termination of this action, unless otherwise agreed to in writing by an attorney of record for the designating party, each party shall assemble and return, or certify destruction of, all materials containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, including all copies, extracts and summaries thereof, to the party from whom the designated material was obtained, except that (a) any documents or copies which contain, constitute or reflect attorney's work product or attorney-client privilege communications, and (b) archive copies of pleadings, motion papers, deposition transcripts, correspondence and written discovery responses may be retained by counsel.

22.     Waiver Or Termination Of Order.

No part of the restrictions imposed by this Protective Order may be waived or terminated, except by written stipulation executed by counsel of record for each designating party, or by an Order of the Court for good cause shown. The restrictions provided for herein shall not terminate upon the conclusion of this action, but shall continue until further Order of this Court.

23.     Modification Of Order; Prior Agreements.

To the extent the terms of this Protective Order conflict with Local Rule 26.2 or with any agreements between the parties regarding the confidentiality of particular documents or information entered into before the date of this Protective Order, the terms of this Protective Order shall govern, except as to those documents and information produced or disclosed prior to the entry of this Protective Order, which documents and information shall continue to be governed by the terms of such prior agreements or by the provisions of Local Rule 26.2, as applicable.

24.     Section Captions.

The title captions for each section of this Protective Order are for convenience only and are not intended to affect or alter the text of the sections or the substance of the

Order.

Dated: December    , 2004

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 04-343-JJF |
| v. | ) | |
| | ) | |
| TATUNG COMPANY; | ) | |
| TATUNG COMPANY OF AMERICA, | ) | |
| INC. and VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

CONFIDENTIALITY UNDERTAKING

I certify that I have read the Protective Order in this action and that I fully understand the terms of the Order. I recognize that I am bound by the terms of that Order, and I agree to comply with those terms. I hereby consent to the personal jurisdiction of the United States District Court, District of Delaware, for any proceedings involving the enforcement of that Order and waive any venue objection with respect to any such proceedings.

EXECUTED this _____ day of _____, _____.

Name

Affiliation

Business Address

## CERTIFICATE OF SERVICE

I, Jeffrey S. Goddess, hereby certify that on January 24, 2005, I caused two copies of the foregoing document to be served as follows:

(VIA E-MAIL)        Richard D. Kirk, Esquire
                    The Bayard Firm
                    222 Delaware Avenue #900
                    P. O. Box 25130
                    Wilmington, DE 19899
                    Attorneys for Plaintiff L.G. Philips LCD Co., Ltd.

(VIA E-MAIL)        Richard L. Horwitz, Esquire
                    Potter Anderson & Corroon, LLP
                    1313 N. Market Street
                    Hercules Plaza, 6th Floor
                    P. O. Box 951
                    Wilmington, DE 19899

(VIA E-MAIL)        Cass W. Christenson, Esquire
                    McKenna Long & Aldridge LLP
                    1900 K Street, NW
                    Washington, DC 20006

(VIA E-MAIL)        Tracy Roman, Esquire
                    Bingham McCutchen
                    355 S. Grand Ave., 44th Floor
                    Los Angeles, CA 90071


JEFFREY S. GODDESS (No. 630)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

L.G. PHILIPS LCD CO., LTD.,

     Plaintiff,

TATUNG COMPANY; TATUNG
COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION,

     Defendants

Case No. 04-343-JJF (D. Del.)

**07-80223**

**CIV-RYSKAMP**

THIS MATTER having been opened to the Court on motion by defendants, the

Tatung Co. and the Tatung Company of America, Inc., by their attorneys, for a protective

order pursuant to Fed. R. Civ. P. 26(c), limiting the scope of discovery from third party

Sensormatic, Inc. ("Sensormatic"); and plaintiff L.G.Philips LCD Co., Ltd., by their

attorneys, having opposed the motion; and the Court having considered the papers

submitted and the arguments presented; and for good cause shown:

**IT IS HEREBY ORDERED THAT:**

1.     The motion is GRANTED.

2.     Any deposition testimony taken from third party Sensormatic shall be

limited to the accused products at issue in *L.G. Philips LCD Co., Ltd. v. Tatung*

*Company, et. al.*, C.A. No. 04-343-JJF (United States District Court for the District of

Delaware) (the "Delaware Action"). Such deposition testimony shall be subject to the

provisions of the Stipulated Protective Order dated January 24, 2005 entered in the

Delaware Action.

3.     Any documents produced in response to the subpoena by third party

Sensormatic shall be limited to those documents relating to the accused products at issue

in the Delaware Action. Additionally, any documents produced shall be stamped

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER and shall be produced subject

to the Stipulated Protective Order dated January 24, 2005 entered in the Delaware Action,

which is attached hereto as Exhibit 1.

Dated:  March 9, 2007
Boca Raton, Florida

_____
United States District Court Judge for the
Southern District of Florida

Copies to:      Richard D. Kirk, Esq. (rkirk@bayardfirm.com)
                Gaspare J. Bono, Esq. (gbono@mckennalong.com)
                Jeffrey B. Bove, Esq. (jbove@cblh.com)
                Tracy R. Roman, Esq. (troman@raskinpeter.com)
                Scott R. Miller, Esq. (smiller@cblh.com)
                Frederick L. Cottrell, III, Esq. (Cottrell@RLF.com)
                Frank E. Merideth, Jr., Esq. (meredith@gtlaw.com)
                Geoffrey M. Cahen, Esq. (caheng@gtlaw.com)

App. 0075

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 JAN 24  AM 9: 45

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LG PHILIPS LCD CO., LTD ,                    )
                                             )
Plaintiff,                                   )
                                             )        C A. No. 04-343-JJF
v                                            )
                                             )
TATUNG COMPANY;                              )
TATUNG COMPANY OF AMERICA,                   )
INC. and VIEWSONIC CORPORATION,              )
                                             )
Defendants.                                  )

<u>STIPULATED PROTECTIVE ORDER</u>

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the parties stipulate to the
following Protective Order, subject to the approval of the Court:

1.      Scope of Protection.

1.1     This Protective Order shall govern any record of information, designated pursuant
to Paragraph 2 of this Protective Order, produced in this action, including all designated
deposition testimony, all designated testimony taken at a hearing or other proceeding,
interrogatory answers, documents and other discovery materials, whether produced
informally or in response to interrogatories, requests for admissions, requests for
production of documents or other formal method of discovery.

1.2     This Protective Order shall also govern any designated record of information
produced in this action pursuant to required disclosures under any federal procedural rule
or District of Delaware local rule, and any supplementary disclosures thereto.

1.3     This Protective Order shall apply to the parties and any nonparty from whom
discovery may be sought and who desires the protection of this Protective Order
(collectively herein referred to as a "party" or the "parties").

2       Designation.

2.1     Each party shall have the right to designate as confidential and subject to this
Protective Order any information produced by it in this action which contains, reflects, or

EXHIBIT

App. 0076

otherwise discloses confidential technical, business or financial information ("CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered confidential under this Protective Order. The parties will use reasonable care to avoid designating any documents or information CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER that are generally available to the public.

2.2 Each party shall have the right to designate as restricted to review by those categories of individuals listed in Paragraphs 4.1(a) - 4.1(e) and subject to this Protective Order any information produced in this action which contains, reflects, or otherwise discloses (1) trade secrets, (2) research and development, manufacturing, operational or other highly sensitive technical information, or (3) highly sensitive business related information, such as customer, supplier or financial information (collectively, "HIGHLY SENSITIVE CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend HIGHLY SENSITIVE CONFIDENTIAL prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered HIGHLY SENSITIVE CONFIDENTIAL under this Protective Order. To the extent that material is marked HIGHLY SENSITIVE CONFIDENTIAL, such material shall be revealed to or used by limited categories of individuals, as provided for in Paragraph 4.2, and shall not be communicated in any manner, either directly or indirectly, to any person or entity not permitted disclosure pursuant to this Protective Order. Any copies of such material, abstracts, summaries or information derived therefrom, and any notes or other records regarding the contents thereof, shall also be deemed HIGHLY SENSITIVE CONFIDENTIAL, and the same terms regarding confidentiality of these materials shall apply as apply to the originals. Use of this highly restrictive designation is limited to information of the highest sensitivity. The parties will use reasonable care to avoid designating any documents or information HIGHLY SENSITIVE CONFIDENTIAL for which the designating party does not have a good faith belief that the documents or information satisfy the criteria set forth in this Paragraph 2.2. HIGHLY SENSITIVE CONFIDENTIAL information shall be used only for purposes directly related to this action, and for no other purpose whatsoever, except by consent of all of the parties or order of the Court.

2.3 To the extent that any party has, prior to the date that this Order is entered, produced to the other side materials that the producing party has marked with confidentiality designation, all such materials shall be considered to have been designated under this Order as HIGHLY SENSITIVE CONFIDENTIAL unless otherwise agreed by the Parties.

3. Limit On Use And Disclosure Of Designated Information.

3.1    Each party and all persons bound by the terms of this Protective Order shall use any information or document governed by this Protective Order only in connection with the prosecution or defense of this action and for no other purpose, except by consent of the parties or order of the Court. No party or other person shall disclose or release to any person not authorized under this Protective Order any information or document governed by this Protective Order for any purpose, or to any person authorized under this Protective Order for any other purpose.

3.2    It is, however, understood that counsel for a party may give advice and opinions to his or her client in connection with the prosecution or defense of this action based on his or her evaluation of designated confidential information received by the party, provided that such rendering of advice and opinions counsel shall not reveal the content of such information except by prior written agreement with counsel for the producing party.

3.3    The attorneys of record for the parties and other persons receiving information governed by this Protective Order shall exercise reasonable care to ensure that the information and documents governed by this Protective Order are (a) used only for the purposes specified herein, and (b) disclosed only to authorized persons.

4.    Disclosure Of Confidential Material.

4.1    Documents or information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER shall be disclosed by the recipient thereof only to:

(a)    the attorneys who are actively involved in this action that are partners of or employed by the following law firms of record for the parties, and their authorized secretarial, clerical and legal assistant staff: Morris, James, Hitchens & Williams LLP; McKenna, Long & Aldridge LLP; Potter Anderson & Corroon LLP; Bingham McCutchen LLP; Rosethal, Monhait, Gross & Goddess; and Baum & Weems provided that such attorneys shall not be provided access to HIGHLY SENSITIVE CONFIDENTIAL information if such attorneys

(1)    have participated in, directed or supervised any patent prosecution activitiy related to the patents-in-suit or currently participate in, direct or supervise any patent prosecution activity involving (i) flat panel or fllat panel display technology or (ii) technology related or refering to or incorporating flat panels or flat panel displays (collectively, "the Subject Matter"). During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not participate in, direct or supervise any patent prosecution activity in the United States Patent and Trademark Office or with any patent office outside the United States involving the Subject Matter;

(2)     provide non-legal, business advice or non-legal, business representation or to clients in the flat panel display industry wherein the highly sensitive business-related financial information of any opposing party would be relevant to such non-legal, business advice or non-legal, business representation. During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not provide non-legal, business advice or non-legal, business representation to clients in the flat panel display industry wherein the highly sensitive business-related information of any opposing party would be relevant to such non-legal, business advice or representation; or

(3)     are related to or have a personal, social relationship with any officer, director or employee of a party

(b)     the Court and Court personnel, as provided in Paragraph 12;

(c)     consultants or experts and their staffs retained by the parties or their attorneys for purposes of this action, who are agreed upon by the parties pursuant to Paragraph 6, who are not employees or otherwise affiliated with any of the parties (except persons scheduled to be deposed by any of the parties pursuant to Rule 30(b)(6), Fed.R.Civ.P.), and who first agree to be bound by the terms of this Protective Order;

(d)     court reporters employed in connection with this action;

(e)     outside copying and computer services necessary for document handling, and other litigation support personnel (e.g., translators, graphic designers and animators);

(f)     One member of LG.Philips LCD, Co., Ltd.'s in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(g)     One member of Viewsonic Corporation's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(h)     One member of Tatung Company's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(i)     One attorney of Tatung Company of America, Inc.'s regular out-side counsel, provided that each such individual must first agree to be bound by the terms of this Protective Order;

4.2     Documents or information designated HIGHLY SENSITIVE CONFIDENTIAL shall be disclosed by the recipient thereof only to those categories of individuals listed in Paragraphs 11 4.1(a) - 4.1(e) subject to the restrictions therein.

LG Philips v. Tatung Co, Case No. 04-343-JJF
Protective Order, Page 4

App. 0079

5.     Redaction

Counsel for a party producing documents may mask ("redact") material deemed exempt
from discovery because it is protected from disclosure under the attorney-client privilege
or work product immunity afforded by Rule 26(b), Fed.R.Civ.P. However, any document
from which material is masked must identify in the masked area that masking or
redaction has occurred. The reason for any such masking must be stated on a log to be
provided within thirty (30) days after the production of the documents. Sufficient
information regarding the masked material must be provided to the other party to enable
it to evaluate the legitimacy of the asserted privilege or immunity. The parties reserve the
right to pursue categories for redaction in addition to those identified above, by either
consent of the parties or order of the Court, to be addressed on a case-by case basis.

6.     Disclosure to Independent Consultants and Identification of Experts.

6.1     If any party desires to disclose information designated CONFIDENTIAL or
HIGHLY SENSITIVE CONFIDENTIAL to any expert or consultant pursuant to
Paragraph 4 above, it must first identify in writing to the attorneys for the producing party
each such expert or consultant. The attorney for the producing party shall have ten (10)
business days from receipt of such notice to object to disclosure of such information to
any of the experts or consultants so identified.

6.2     Such identification shall include the full name and professional address and/or
affiliation of the proposed expert or consultant, an up-to-date curriculum vitae identifying
at least all other present and prior employments or consultancies of the expert or
consultant in the field of flat panel and flat panel display technologies, and a list of the
cases in which the expert or consultant has testified at a deposition, an arbitral hearing or
trial within the last four years. The parties shall attempt to resolve any objections
informally. If the objections cannot be resolved, the party seeking to disclose the
CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information to the expert
or consultant may move the Court for an Order allowing the disclosure. On any motion
challenging the disclosure of such information to an expert or consultant, the burden of
proof shall lie with the party objecting to the disclosure to establish that the information
should not be disclosed to the expert or consultant. In the event objections are made and
not resolved informally, disclosure of information to the expert or consultant shall not be
made except by Order of the Court (or to any limited extent upon which the parties may
agree).

7.     Agreement Of Confidentiality.

In no event shall any information designated CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL be disclosed to any
person authorized pursuant to Paragraph 4, other than (a) the Court and Court personnel,
(b) the parties' attorneys identified in Paragraph 4.1(a) and their authorized secretarial and
legal assistant staffs, (c) court reporters, and (d) outside copying and computer services
necessary for document handling, until such person has executed a written

Confidentiality Undertaking (in the form set forth in Exhibit A hereto) acknowledging and agreeing to be bound by the terms of this Protective Order. Copies of such Confidentiality Undertakings shall be promptly served on the producing party.

8.     Related Documents.

Information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL shall include (a) all documents, copies, extracts, and complete or partial summaries prepared from or containing such information; (b) portions of deposition transcripts and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (c) portions of briefs, memoranda or any other papers filed with the Court and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (d) deposition testimony designated in accordance with Paragrapah 9; and (e) testimony taken at a hearing or other proceeding that is designated in accordance with Paragraph 10.

9.     Designation Of Deposition Transcripts.

9.1     Deposition transcripts, or portions thereof, may be designated as subject to this Protective Order either (a) at the time of such deposition, in which case the transcript of the designated testimony shall be marked by the reporter with the appropriate legend (see Paragraph 2.1) as the designating party may direct, or (b) within twenty-one (21) days following the receipt of the transcript of the deposition by providing written notice to the reporter and all counsel of record, in which case all counsel receiving such notice shall mark the copies or portions of the designated transcript in their possession or under their control as directed by the designating party.

9.2     All deposition transcripts not previously designated shall be deemed to be, and shall be treated as, HIGHLY SENSITIVE CONFIDENTIAL until the expiration of the period set forth in Paragraph 9.1, and neither the transcript nor the content of the testimony shall be disclosed by a non-designating party to persons other than those persons named or approved according to Paragraph 4.

9.3     The designating party shall have the right to exclude from a deposition, before the taking of testimony which the designating party designates CONFIDENTIALSUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, all persons other than those persons previously qualified to receive such information pursuant to Paragraph 4.

9.4     In addition, to the extent that any document or information that has been designated as either CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, such document or information shall not be disclosed to or otherwise used with any witness not currently or previously employed or retained by the producing party during a deposition without at least three (3) calendar days prior notice to the designating party of such potential use in order to permit counsel for the designating party to attend and to take

such action as it deems appropriate to protect the confidentiality of the documents and/or information. Counsel for the parties shall attempt to resolve any objection(s) and they will only seek redress to the Court if no resolution can be reached. However, the receiving party shall not use or otherwise disclose the confidential documents or information subject to such objection at such deposition of a witness not currently or previously employed or retained by the producing party until the Court has ruled upon any such objection(s), provided that the producing party submits the matter to the Court within three (3) calendar days of the parties being unable to resolve the objection(s).

10.     Designation Of Hearing Testimony Or Argument.

With respect to testimony elicited during hearings and other proceedings, whenever counsel for any party deems that any question or line of questioning calls for the disclosure of CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL information, counsel may designate on the record prior to such disclosure that the disclosure is subject to confidentiality restrictions. Whenever matter designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL is to be discussed in a hearing or other proceeding, any party claiming such confidentiality may ask the Court to have excluded from the hearing or other proceeding any person who is not entitled under this Order to receive information so designated.

11.     Disclosure To Author Or Recipient.

Notwithstanding any other provisions of this Order, nothing herein shall prohibit counsel for a party from disclosing a document containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL to any person which the document clearly identifies as an author, addressee, or carbon copy recipient of such document, or to any current employee of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. During deposition or trial testimony, counsel may disclose documents produced by a party to current employees and officers of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. And regardless of such designation pursuant to this ' Protective Order, if a document or testimony makes reference to the actual or alleged conduct or statements of a person who is a potential witness, counsel may discuss such conduct or statements with such witness without revealing any portion of the document or testimony other than that which specifically refers to such conduct or statement, and such discussion shall not constitute disclosure in violation of this Protective Order

12.     Designation Of Documents Under Seal.

Any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, if filed with the Court, shall be filed under seal and shall be made available only to the Court and to persons authorized by the terms of this Protective Order. The party filing any paper which reflects, contains or includes

any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information subject to this Protective Order shall file such paper in a sealed envelope, or other appropriately sealed container, which indicates the title of the action, the party filing the materials, the nature of the materials filed, the appropriate legend (see Paragraph 2.1), and a statement substantially in the following form:

This envelope contains documents subject to a Protective Order of the Court. It should be opened only by the Court. Its contents should not be disclosed, revealed or made public except by Order of the Court or written agreement of the parties.

13.     Confidentiality Of Party's Own Documents.

No person may disclose, in public or private, any designated information of another party except as provided for in this Protective Order, but nothing herein shall affect the right of the designating party to disclose to its officers, directors, employees, attorneys, consultants or experts, or to any other person, its own information. Such disclosure shall not waive the protections of this Protective Order and shall not entitle other parties or their attorneys to disclose such information in violation of it, unless by such disclosure of the designating party the information becomes public knowledge (see Paragraph 16). Similarly, the Protective Order shall not preclude a party from showing its own information to its officers, directors, employees, attorneys, consultants or experts, or to any other person, which information has been filed under seal by the opposing party.

14.     Other Protections.

14.1     No person shall use any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information, or information derived therefrom, for purposes other than the prosecution or defense of this action, including without limitation, for purposes of preparing, filing or prosecuting any patent application, continuation or divisional patent application, reissue patent application or request for re-examination.

14.2     Any party may mark any document or thing containing CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information as an exhibit to a deposition, hearing or other proceeding and examine any witness thereon qualified under the terms of this Protective Order to have access to such designated material.

15.     Challenge To Confidentiality.

15.1 This Protective Order shall not preclude any party from seeking and obtaining, on an appropriate showing, such additional protection with respect to the confidentiality of documents or other discovery materials as that party may consider appropriate. Nor shall any party be precluded from (a) claiming that any matter designated hereunder is not entitled to the protections of this Protective Order, (b) applying to the Court for an Order permitting the disclosure or use of information or documents otherwise prohibited by this Protective Order, or (c) applying for a further Order modifying this Protective Order in any respect. No party shall be obligated to challenge the propriety of any designation, and

failure to do so shall not preclude a subsequent challenge to the propriety of such designation.

15.2    On any motion challenging the designation of any information, the burden of proof shall lie with the producing party to establish that the information is, in fact, CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information. If a party seeks declassification or removal of particular items from a designation on the ground that such designation is not necessary to protect the interests of the party wishing the designated information, the following procedure shall be utilized:

a. The party seeking such declassification or removal shall give counsel of record for the other party written notice thereof specifying the designated information as to which such removal is sought and the reasons for the request; and

b. If, after conferring, the parties cannot reach agreement concerning the matter, then the party requesting the declassification or removal of particular items may file and serve a motion for a further Order of this Court directing that the designation shall be so removed.

16.    Prior Or Public Knowledge.

This Protective Order shall not apply to information that, prior to disclosure, is public knowledge, and the restrictions contained in this Protective Order shall not apply to information that is, or after disclosure becomes, public knowledge other than by an act or omission of the party to whom such disclosure is made, or that is legitimately and independently acquired from a source not subject to this Protective Order.

17.    Limitation Of Protective Order.

This Protective Order is not intended to address discovery objections to produce, answer, or respond on the grounds of attorney-client privilege or work product doctrine, or to preclude any party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure.

18    Other Proceedings.

By entering this order and limiting the disclosure of information in this case, the court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who may be subject to a motion to disclose another party's CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information pursuant to this order shall promptly notify that party of the motion so that it may have an opportunity to appear and be heard on whether such information should be disclosed.

19.    Inadvertent Disclosure Of Work Product Or Privileged Information:

App. 0084

Procedure And Waiver.

19.1   If the producing party at anytime notifies the Non-producing party in writing that it has inadvertently produced documents and/or things that are protected from disclosure under attorney-client privilege, work-product immunity, and/or any other applicable privilege or immunity from disclosure, the non-producing party shall return all copies of such documents and/or things to the producing party within five (5) business days of receipt of such notice and shall not further disclose or use such items for any purpose until further order of the Court. Upon being notified by the producing party pursuant to this section, counsel for the non-producing party shall use his or her best efforts to retrieve all copies of the documents at issue.

19.2   The return of any discovery item to the producing party shall not in any way preclude the non-producing party from moving the Court for a ruling that: (a) the document or thing was never privileged or otherwise immune from disclosure; and/or (b) that any applicable privilege or immunity has been waived.

19.3   Inadvertent or unintentional disclosure of information subject to any privilege or immunity during the course of this litigation without proper designation shall not be deemed a waiver of a claim that disclosed information is in fact subject to a privilege or immunity if so designated within ten (10) business days after the producing party actually learns of the inadvertent or unintentional disclosure.

20.   Non-Party Material.

The terms of this Protective Order, as well as the terms of any protective order that may be entered into between a discovering party and third party for the production of information to the discovering party, are applicable to CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information provided by a non-party  Information provided by a non-party in connection with this action and designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, pursuant to the terms of this Protective Order shall be protected by the remedies and relief provided by this Protective Order.

21.   Return Of Designated Information.

Within thirty (30) days of final termination of this action, unless otherwise agreed to in writing by an attorney of record for the designating party, each party shall assemble and return, or certify destruction of, all materials containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, including all copies, extracts and summaries thereof, to the party from whom the designated material was obtained, except that (a) any documents or copies which contain, constitute or reflect attorney's work product or attorney-client privilege communications, and (b) archive copies of pleadings, motion papers, deposition transcripts, correspondence and written discovery responses may be retained by counsel.

App. 0085

22.     Waiver Or Termination Of Order.

No part of the restrictions imposed by this Protective Order may be waived or terminated, except by written stipulation executed by counsel of record for each designating party, or by an Order of the Court for good cause shown. The restrictions provided for herein shall not terminate upon the conclusion of this action, but shall continue until further Order of this Court.

23.     Modification Of Order; Prior Agreements.

To the extent the terms of this Protective Order conflict with Local Rule 26.2 or with any agreements between the parties regarding the confidentiality of particular documents or information entered into before the date of this Protective Order, the terms of this Protective Order shall govern, except as to those documents and information produced or disclosed prior to the entry of this Protective Order, which documents and information shall continue to be governed by the terms of such prior agreements or by the provisions of Local Rule 26.2, as applicable.

24.     Section Captions.

The title captions for each section of this Protective Order are for convenience only and are not intended to affect or alter the text of the sections or the substance of the

Order.

Dated: December        , 2004

LG Philips v Tatung Co, Case No  04-343-JJF
Protective Order, Page 11

App. 0086

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 04-343-JJF |
| v. | ) | |
| | ) | |
| TATUNG COMPANY; | ) | |
| TATUNG COMPANY OF AMERICA, | ) | |
| INC. and VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants | ) | |

CONFIDENTIALITY UNDERTAKING

I certify that I have read the Protective Order in this action and that I fully understand the terms of the Order. I recognize that I am bound by the terms of that Order, and I agree to comply with those terms. I hereby consent to the personal jurisdiction of the United States District Court, District of Delaware, for any proceedings involving the enforcement of that Order and waive any venue objection with respect to any such proceedings.

EXECUTED this        day of _____, _____.

Name

Affiliation

Business Address

*App. 0087*

## CERTIFICATE OF SERVICE

I, Jeffrey S. Goddess, hereby certify that on January 24, 2005, I caused two copies of the foregoing document to be served as follows:

(VIA E-MAIL)        Richard D. Kirk, Esquire
The Bayard Firm
222 Delaware Avenue #900
P. O. Box 25130
Wilmington, DE 19899
 Attorneys for Plaintiff L.G. Philips LCD Co., Ltd.

(VIA E-MAIL)        Richard L. Horwitz, Esquire
Potter Anderson & Corroon, LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19899

(VIA E-MAIL)        Cass W. Christenson, Esquire
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

(VIA E-MAIL)        Tracy Roman, Esquire
Bingham McCutchen
355 S. Grand Ave., 44th Floor
Los Angeles, CA 90071

_____
JEFFREY S. GODDESS (No. 630)

App. 0088

**UNITED STATES DISTRICT COURT**          Revised 11/01/06
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

TO:    **All Attorneys of Record Appearing in a Case Designated for Enrollment
in the Electronic Case Files System (including Attorneys in *pro se* cases)**

## STANDING ORDER[1] DESIGNATING CASE FOR ENROLLMENT
## IN THE ELECTRONIC CASE FILES "ECF" SYSTEM

The court has determined that this case will be enrolled  in the Electronic Case

Files ("ECF") system as an ECF case.  Therefore, it is **ordered** that all counsel of record

must register as an ECF user **within ten days of the date of notice of this order**, if

they have not already done so.  Only licensed attorneys may submit documents for

electronic filing; therefore, no *pro se* party (including a prisoner) will be permitted to

register as an ECF user or submit documents electronically.  To register, counsel must:

1.    Review Miscellaneous Order Number 61;

2.    Review the ECF Administrative Procedures Manual;

3.    Complete the online attorney tutorial for ECF training;

4.    Review the ECF User Guide;

5.    Complete the ECF Attorney/User Registration Form and forward it to the

Clerk's Office; and

---

[1]Upon opening a new case, the clerk must enter this Standing Order.  If the plaintiff or petitioner in
a civil action is proceeding *pro se*, the clerk may not distribute this order unless there is an order for process
to issue.  If process is ordered to issue, the clerk is directed at that time to send a copy of this order to the
defendant or respondent with the service of the summons or show cause order.

6.    Ensure that any attorney granted *pro hac vice* admission as co-counsel in this case also registers as an ECF user.

**Please note**:  The designation of this case as an ECF case and the accompanying requirements are **mandatory**.  Any request seeking leave to be excluded from this designation must be in the form of a written motion and is subject to a hearing.[2]

## Duty of Initiating Party
## to Serve ECF Designation Order upon Opposing Party

It is further **ordered** that in a civil ECF case, the party initiating the action in this court must serve a copy of this order on the opposing party(ies) with service of process or within five days of receipt of this order, whichever is later.  If an additional party is joined in a civil ECF case at a later date, the party joining the additional party is **ordered** to serve a copy of this order on the additional party within five days of when the additional party is joined.

In a criminal ECF case, it is **ordered** that the government serve a copy of this order on defendant's counsel when defendant's counsel makes an appearance in the case on behalf of the defendant.

---

[2]If the court initially grants an attorney permission to submit documents for filing on paper, the court may withdraw that permission at any time during the pendency of a case and require the attorney to re-file documents electronically using the ECF system.  An attorney who is granted permission to submit documents for filing on paper will be required to include with each paper document a disk or CD-ROM containing an electronic copy of the paper filed with the court in portable document format ("PDF").

<u>**Electronic Case Files Requirements**</u>

After an attorney is registered as an ECF user, the attorney must submit all documents for filing in this case using the ECF system.  In doing so, counsel must observe the following directives:

1.  **Governing Documents:**  The case will be governed, unless otherwise ordered, by Miscellaneous Order Number 61, the ECF Administrative Procedures Manual, and the ECF User Guide.

2.  **Service of Documents upon Non-ECF Users:**  Service of documents upon non-ECF users (including *pro se* litigants) must be effected on paper in a manner authorized by Federal Rule of Civil Procedure 5.

3.  **Courtesy Copies ("paper copies" of filings in ECF cases):**  Each judge listed on the reference chart included as Attachment 1 to this Standing Order has specific requirements for courtesy copies.  Each courtesy copy must be marked "Judge's Copy," must have a copy of the Notice of Electronic Filing[3] for that document affixed as the first page, must be delivered to the court within **three business days** of the date of filing of the original document, and must be in the form required by LR 10.1 and LCrR 49.3.  The court, in its discretion, may not begin its consideration of the document until it has received the required courtesy copy.

---

[3]A link to the Notice of Electronic Filing and the electronically filed document will be automatically e-mailed to the filer upon the completion of the electronic filing procedure.

**Standing Order Designating Case for Enrollment in ECF - Page 3**

Furthermore, failure to follow the courtesy copy requirements of the presiding judge may result in the document being unfiled.  If the courtesy copy is mailed directly to the chambers of the presiding judge, delivery is complete upon mailing.  Hand-deliveries must be made to the clerk's office at 1100 Commerce Street, Room 1452, Dallas, Texas  75242, must be enclosed in a sealed envelope that bears the name of the judge to whom the courtesy copy is directed, and must identify itself as a "Courtesy Copy." *The court will not accept hand deliveries brought directly to chambers unless it specifically instructs a party to do so.*  **Please Note**:  If this case or any portion of this case is referred to a United States Magistrate Judge, the magistrate judge may enter an order with additional specific requirements.  Please see the magistrate judge's order for details.

4.    **Proposed Orders**:  A proposed order must be submitted with **every** motion via e-mail as instructed under the ECF system's "Proposed Orders" event.  The subject line of the e-mail transmitting the proposed order must be complete as directed in the instructions.

5.    **Documents That Require Leave of Court to File**:  A party who moves for leave of court to file an amended pleading, or for leave of court to file any other document (e.g., surreply, document exceeding the page limit, etc.), must attach the proposed document as an exhibit to the motion for leave.  If the motion for leave is granted, the moving party must **THEN**

submit the document for which leave was granted within three business days **AFTER** leave is granted, unless otherwise ordered by the court. Attorneys are cautioned not to prematurely file a document that requires leave of court to file.

6. **Privacy Policy: Counsel must ensure that all documents filed with the court strictly comply with the privacy policy of the United States District Court for the Northern District of Texas. The privacy policy restricts the use and manner of use of certain types of information, including: social security numbers, driver license numbers, tax identification numbers, minors' names, birth dates, financial account numbers, credit card numbers, medical records, employment histories, proprietary or trade secret information, crime victim information, national security information, sensitive security information as described in 49 U.S.C. § 114(s), and information regarding an individual's cooperation with the government. The complete privacy policy may be found at** http://www.txnd.uscourts.gov/pdf/TXNprivnot.pdf.

7. **Questions:** ECF questions should be directed to the Office of the Clerk at (214)753-2200 or the ECF Help Desk at (866) 243-2866.

*ATTACHMENT 1*

# COURTESY COPY REQUIREMENTS

| JUDGE | COPY REQUIREMENTS | MAILED TO: |
|---|---|---|
| A. Joe Fish | Civil and Criminal Cases:  ALL FILINGS | 1100 Commerce Street, Room 1528 Dallas, TX  75242 |
| Sidney A. Fitzwater | Civil and Criminal Cases: ALL FILINGS | 1100 Commerce Street, Room 1520 Dallas, TX 75242 |
| Jorge A. Solis | Civil and Criminal Cases:  ALL FILINGS, including Proposed Orders | 1100 Commerce Street, Room 1654 Dallas, TX  75242 |
| David C. Godbey | **No** Courtesy Copies Required | |
| Sam A. Lindsay | Civil Cases: All Dispositive Motions, Responses, Replies and Appendices thereto **and** any document over 25 pages in length Criminal Cases:  ALL FILINGS | 1100 Commerce Street, Room 1312 Dallas, TX 75242 |
| Barbara M.G. Lynn | Civil Cases: All Dispositive Motions, Responses, Replies and Appendices thereto **and** any document over 25 pages in length Criminal Cases:  ALL FILINGS | 1100 Commerce Street, Room 1572 Dallas, TX 75242 Note: Hand-deliveries to chambers are allowed. |
| Ed Kinkeade | Civil Cases: All Dispositive Motions, Responses, Replies, and Appendices thereto **and** any document over 25 pages in length Criminal Cases:  ALL FILINGS | 1100 Commerce Street, Room 1625 Dallas, TX  75242 |
| Jane J. Boyle | Civil and Criminal Cases:  All Dispositive Motions, Responses, Replies, and Appendices thereto | 1100 Commerce Street, Room 1376 Dallas, TX  75242 |
| Jerry Buchmeyer | Civil and Criminal Cases: All Dispositive Motions, Responses, Replies, and Appendices thereto (including Joint Submissions) | 1100 Commerce Street, Room 1544 Dallas, TX 75242 |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

IN RE SUBPOENA ISSUED TO
COMPUSA, INC.

**3-07 mc 0018-P**
related case: 3-07 mc 0017-N

## RESPONDENT LG.PHILIPS LCD CO., LTD.'S BRIEF IN SUPPORT OF ITS RESPONSE TO TATUNG'S MOTION FOR PROTECTIVE ORDER

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff/Respondent LG.Philips LCD Co., Ltd. ("LPL") hereby opposes the Motion for Protective Order tardily filed by Defendants Tatung Company and Tatung Company of America, Inc. (collectively "Tatung") with respect to the third party subpoena served by LPL on Radio Shack Corporation. (*See* Appendix RESP 0002-00015).

The matter presented to this Court concerns Motions to Quash deposition subpoenaes filed by the Defendant Tatung, not by the proposed deponent, who is not a party to the case.

Tatung has filed numerous motions in various district courts, including this Court, to quash LPL's deposition subpoenaes served on a number of third party witnesses in a patent infringement action pending in the United States District Court in Delaware filed as Case Number 04-cv-00343-JJF, ("Main Case").

For the reasons explained in LPL's contemporaneously filed Brief in Support of this Response, LPL requests that this matter be transferred to the District Court in Delaware, or alternatively, that Tatung's motion be denied.

Respectfully Submitted,

_____

Frank L. Broyles
Texas State Bar #03230500
GOINS, UNDERKOFLER,
CRAWFORD & LANGDON, LLP
1201 ELM ST. SUITE 4800
DALLAS, TX 75270
(214) 969-5454
(214 969-5902 TELECOPY

Attorneys for Respondent
**LG.PHILIPS LCD CO., LTD.**

Certificate of Service

On March 15, 2007, a genuine copy of the foregoing and referenced Appendix was served via email on the persons shown on the service list attached on the next page. Additionally, a copy will be served by First Class Mail on March 16, 2007.

s/Frank L. Broyles

# SERVICE LIST:
## 07-0017 & 07-0018 NDTX

**Richard D. Kirk**
The Bayard Firm
222
Delaware Ave.
Ste 900
Wilmington, DE 19899

**Jeffrey B. Bove**
**James D. Heisman**
**Jaclyn M. Mason**
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange St.
P.O. Box 2207
Wilmington, DE 19899

**Scott R. Miller**
CONNOLLY BOVE LODGE & HUTZ LLP
355 S. Grand Ave.
Suite 3150
Los Angeles, CA 90071

**Tracy R. Roman**
RASKIN PETER RUBIN & SIMON LLP
1801 Century Park East, Ste 2300
Los Angeles, CA 90067

**Frederick L. Cottrell, III**
**Anne Shea Gasa,**
RICHARDS LAYTON & FINGER, PA
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Penelope Brobst Blackwell

Email List:

rkirk@bayardfirm.com; jbove@cblh.com; jheisman@cblh.com; jmason@cblh.com;
smiller@cblh.com; troman@raskinpeter.com; Cottrell@RLF.com; Gaza@RLF.com

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| IN RE SUBPOENA ISSUED TO COMPUSA, INC. | **3-07 mc 0018-P**<br>(related case: 3-07 mc 0017-N) |

<u>**RESPONDENT LG.PHILIPS LCD CO., LTD.'S  BRIEF IN SUPPORT OF ITS
RESPONSE TO TATUNG'S MOTION FOR PROTECTIVE ORDER**</u>

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff/Respondent LG.Philips LCD Co., Ltd. ("LPL") hereby opposes the tardily filed Motion for Protective Order filed by Defendants Tatung Company and Tatung Company of America, Inc. (collectively "Tatung") with respect to the third party subpoena served by LPL on Radio Shack Corporation (*See* Appendix RESP 0002-00015).[1]

LPL requests that the Court exercise its discretion to transfer the instant motion to the United States District Court for the District of Delaware.  In the alternative, LPL requests that the Court deny the Motion and allow LPL to proceed with necessary and appropriate third party discovery.

This Motion for Protective Order has not been filed by the party who received the subpoena from LPL.  Rather, Tatung, a defendant in the underlying case, in a blatant attempt to interfere with this and other proper subpoenas, has filed this motion in an effort to prevent third parties from producing what LPL knows will be extensive evidence against Tatung of both infringement and inducement to infringe the patents in the underlying suit.  Further, Tatung's efforts are designed to prevent LPL from obtaining necessary third party discovery prior to the deadline of March 30, 2007.  LPL has filed a motion with the Special Discovery Master in the underlying case seeking an order that prevents Tatung from taking such actions and also seeking an extension of third party discovery due to Tatung's improper conduct.

---

[1] References to RESP 000 - -, refer to pages in Appendix filed herewith.

## I.    STATEMENT OF FACTS

This discovery dispute arises out of a patent infringement action pending in the United States District Court for the District of Delaware ("Main Case").  LPL is the owner of U.S. Patent No. 6,498,718 ("the '718 Patent") and U.S. Patent No. 6,501,641 ("the '641 Patent") (collectively, the "Patents-in-Suit"), which relate to mounting systems used in visual display products such as liquid crystal display ("LCD") computer monitors, laptop computers, and televisions.  LPL has asserted patent infringement claims against Tatung and ViewSonic Corporation ("ViewSonic") (collectively, the "Defendants").  The Defendants manufacture visual display products, which LPL alleges utilize LPL's patented techniques.  Among its claims, LPL alleges that Defendants have induced other parties, including the party to whom the instant Subpoena was served, to infringe LPL's patents.[2]

On December 27, 2006, LPL served a third party subpoena on Hewlett-Packard Company.  On February 13 and 14, 2007, LPL served approximately 23 other third party subpoenas ("Subpoenas") on various distributors, retailers, and purchasers of Defendants' products in the United States.  The Subpoenas were issued based on LPL's understanding that these parties, who have current or former business relationships with Tatung and ViewSonic, have documents that are relevant to the instant action, including but not limited to, documents related to purchase and sale of the infringing products in the United States, documents relating to Defendants' efforts to market the infringing products in the United States, and other important

---

[2] "A person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement."  *C. R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990).  If the defendant has knowledge of the patent, then upon a showing that defendant "had intent to induce the specific acts constituting infringement, intent additionally to cause an infringement can be presumed."  *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379 (Fed. Cir. 2005).  A jury could conclude that e-mails between a foreign defendant and a U.S. company "represent product support" showing that the defendant was aware of potentially infringing activities in the U.S. by the U.S. company and that the defendant "intended to encourage those activities."  *Id.* at 1379-80.  *See also Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1305 (Fed. Cir. 2002) (evidence did not support finding of no inducement where defendant was aware of patents and supplied infringing products to customers "with instructions on how they were to be used, which, when followed, would lead to infringement.");  *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001) (defendant's acts in connection with selling infringing audio chips, manufactured in Singapore and sold to customer that resold to the U.S. PC market, constituted active inducement).

discovery concerning infringement, inducement, damages, and other issues.[3]    While a small

handful of these third parties were served with subpoenas during the jurisdictional phase of this

case, the new subpoenas are materially and justifiable broader.

Based on information available to LPL and LPL's belief, the third parties are likely to

have information showing that the Defendants have imported, sold, and used their products in the

United States, activities which infringe upon LPL's U.S. patents and which support LPL's claims

of direct infringement or inducement of infringement.

In addition, the Subpoenas requested that all documents be produced by March 5, 2007,

and that depositions occur between March 12 and March 27, 2007, consistent with the March 30

deadline for third party discovery in this case.    LPL provided notice and copies of the Subpoenas

to the Defendants prior to the service of the Subpoenas.    During a telephone conference on

January 30, 2007, Tatung indicated for the first time that it intended to file a motion for

protective order with respect to the Subpoena directed to Hewlett-Packard, but Tatung never did

so.[4]    More than one month later, on March 5, Tatung again threatened to file additional motions

for protective orders with respect to the later served 23 Subpoenas.    In addition, even though

Tatung had received the second batch of Subpoenas nearly three weeks earlier, Tatung indicated

that some or all of such motions would be made on an *ex parte* basis because of the upcoming

return dates on the Subpoenas, which incidentally was that same day.    (*See* Ex. 2, Emails

---

[3] LPL has also sought the same information and documents, unsuccessfully, from the Defendants.  Defendants have produced some - but certainly not all – discovery that LPL seeks.  Notably, much of Defendants' production is subject to objections and limitations that LPL disputes and which are the subject of related discovery motions already pending before the Special Discovery Master in the Main Case in the District of Delaware, as described more fully herein.

[4] To date, Hewlett-Packard has produced more than 5000 pages of relevant, responsive documents.  Hewlett-Packard's agreement to produce and subsequent production belies Tatung's argument that the Subpoenas are burdensome to the third parties, particularly because the majority of the third parties are smaller entities with far fewer responsive documents.    Moreover, Hewlett-Packard produced many "Process Management Plans," documents that LPL asserts are essential to its infringement claims.  Incredibly, Tatung denied the existence of such documents and refused to produce them in response to numerous requests from LPL.  Tatung's failure to produce these documents underscores how critical it is for LPL to obtain the discovery that is being sought from the third parties.

between V. Ho and C. Connor (Mar. 5-7, 2007); RESP 00017-20). Tatung claimed to have standing to raise any such objections on behalf of the third parties because it claimed that the Subpoenas pertained to Tatung's still unresolved objections to the scope of discovery in the Main Case. Tatung never explained why it had waited several weeks before raising its objections, but merely stated that it intended to file its motions on an *ex parte* basis. *See id.* In an exchange of emails, LPL strenuously objected to Tatung's position that it could file *ex parte* motions on any issue in the case, including any issues related to the third party subpoenas served by LPL. *See id.* In addition, LPL further reiterated its position that Tatung had no standing to raise objections to the Subpoenas, principally, because Tatung has never proved why any documents now in the custody of third parties are confidential, trade secrets, or otherwise shielded from discovery. *See id,* RESP 00017-20.

Nonetheless, Tatung filed the instant Motion, along with approximately 22 other Motions related to the various Subpoenas served by LPL. Tatung filed the Motions for Protective Order without regard for the fact that several of the third parties had either already produced the requested documents or agreed to produce the requested documents with objection. Indeed, several third parties have agreed to produce the requested documents even after learning that Tatung had filed Motions related to the Subpoenas, which further undermines Tatung's arguments in its Motion. Nonetheless, due to Tatung's interference and improper motions, there are also certain third parties who have now refused to produce the requested discovery <u>after they had already agreed to comply with the subpoenas</u>. *See, e.g.* Ex. 3 at RESP 00021-23.

## II.    <u>ARGUMENT</u>

Under Rule 26(c), Tatung bears the burden of establishing that a protective order should be granted. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). To meet its burden, "the party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *See id; United States v. Garrett*, 571 F.2d 1323, 1326, n. 3 (5th Cir. 1978) (requiring "a particular and specific demonstration of fact

as distinguished from stereotyped and conclusory statements"); *General Dynamics Corp. v. Selb Mfg. Corp.*, 481 F.2d 1204, 1212 (8th Cir.1973), cert. denied, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035 (1970 & Supp.1985). Moreover, it is clear that the harm described by the movant must be significant, not a mere trifle. *See, e.g., Joy v. North*, 692 F.2d 880, 894 (2d Cir.1982) (refusing protective order where proponent's only argument in its favor was the broad allegations that the disclosure of certain information would "injure the bank in the industry and local community"), cert. denied sub nom. *Citytrust v. Joy*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). Tatung has failed to meet its high burden with respect to this Motion.

### A.    The Court Should Exercise Its Discretion to Transfer Tatung's Motion to the District of Delaware

The Court has the authority to transfer Defendants' Motion for Protective Order to the District of Delaware. *See Devlin v. Transportation Communications International Union*, 2000 WL 249286, *1 (S.D.N.Y. 2000) (stating that there is ample authority for the court from which a subpoena issues to transfer any motions relating to that subpoena back to the court where the main case is pending); *Digital Equipment Corp.*, 949 F.2d 228, 231 (8th Cir. 1991) (holding that while the court initially has exclusive jurisdiction to rule on the objections, it may in its discretion remit the matter to the court in which the action is pending).[5]

As explained above, all 23 motions filed by LPL are nearly identical. Yet, by having the Motions heard in 15 or more different jurisdictions, the parties risk that inconsistent opinions will be rendered. Moreover, the hearings on all of these motions will be very time consuming and will further interfere with LPL's attempts to finalize discovery in the Main Case, in which depositions of Tatung's witnesses are currently being taken. Thus, for the reasons cited above, LPL requests that the Court formally transfer this dispute back to the District of Delaware, the

---

[5] *See also* Fed.R.Civ.P. 26(c), advisory committee's note. The Advisory Committee's Note to Rule 26(c) (Protective Orders) explains: The subdivision recognizes the power of the court in the district where a deposition is being taken to make protective orders...The court in the district where the deposition is being taken may, and frequently will, remit the deponent or party to the court where the action is pending.

court where the Main Case is pending, so that all 23 motions and oppositions can be heard en masse.

### B.    Tatung Lacks Standing to Challenge the Subpoenas

Tatung does not have standing to raise any objections to LPL's Rule 45 subpoenas.  Rule 45(c) provides protection to persons "subject to subpoenas."  Indeed,

> "[u]nless a party to an action can make claim to some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty witness, the party to the action has no right to relief under Rule 45(b) or 30(b)."  *Dart Industries, Inc. v. Liquid Nitrogen Processing*, 50 F.R.D. 286, 291 (D. Del. 1970).[6]

Tatung attempts to distinguish the *Dart* decision on two grounds.  First, Tatung argues that the motion in *Dart* was premised on Rule 45(c), rather than Rule 26(c), which was relied upon by Tatung.  However, the standards for protective orders under both rules is the same.  *See* Advisory Committee Notes to the 1970 Amendment to Rule 45 (the "scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules.")  Thus, Rule 45 clearly incorporates the standards set forth in Rule 26.

Tatung also attempts to distinguish *Dart* on the ground that the moving party in *Dart* did not assert any personal privilege in the requested documents.  Similarly however, in this case, while Tatung has stated, in a conclusory manner, that it has a personal stake in the documents to be produced, Tatung has failed to provide any particularized facts or evidence to support its conclusions.  Such statements are insufficient for Tatung to meet its burden in establishing that it is entitled to a Protective Order. *Cipollone*, 785 F.2d at 1121.  In addition, Tatung fails to explain why the Protective Order entered in the Main Case, which governs the use and disclosure of confidential information, does not adequately protect the information to be produced by the third

---

[6] *See* also, *Ponsford v. United States*, 771 F.2d 1305, 1308 (9th Cir. 1985) (denying motion to quash for lack of standing); *Nova Products, Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (denying motion to quash because no showing of personal right or privilege); *Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New York*, 519 F. Supp. 668, 680 (D. Del. 1981) (denying motion to quash because movant failed to prove documents sought were privileged).

parties.  Indeed, by Tatung's own admission, it has already produced documents designated as "Highly Sensitive Confidential" in the Main Case under the Protective Order.  Yet, Tatung's arguments suggest that such a course of action is not good enough for the third parties, even though the Protective Order clearly applies to non-parties as well.  Ex. 4 at RESP 00024-39.

Here, Tatung has not identified any particular harm that would necessitate a Protective Order.  Moreover, Tatung has no basis to object to the information sought by LPL's subpoenas and, thus, does not have standing to move for a Protective Order with respect to any of LPL's subpoenas.  As such, Tatung has evidently filed these motions solely to delay and impede LPL's discovery efforts.

### C.    Tatung's Motion Is Nothing More Than An Attempt to Interfere With LPL's Legitimate Third Party Discovery

Tatung's interference with valid third party discovery is inappropriate and is nothing more than an attempt to delay the third party discovery until after the March 30, 2007 discovery deadline.  Indeed, on March 7, 2007, LPL received a telephone message from Sensormatic, who had previously agreed to produce the documents requested in the Subpoena.  In that message, Sensormatic stated that Tatung told Sensormatic that it planned to move for a  protective order.  Sensormatic further expressed concern about being in the middle of the dispute between the parties regarding the Subpoena.  As a result, Sensormatic has not produced documents yet, despite its earlier agreement to do so.  On March 8, 2007, LPL received correspondence from Tyco Electronics Corp. ("Tyco"), who LPL had also served with a Subpoena.  (*See* Ex. 3, RESP 00021-23).  Prior to that date, Tyco had also agreed to produce documents in response to the Subpoena.  In the correspondence on March 8, however, Tyco stated that, "I understand that [Tatung] intends to file a motion for protective order with regard to this subpoena.  In light of this, Tyco will await the disposition of this motion by the court before providing any material in response to the subpoena."  (Id.)  These communications clearly show that Tatung's motions are delaying LPL's legitimate discovery in this action.

Tatung has also taken steps to disrupt third party discovery in at least one other case. *See Safer Display Technology, Ltd. v. Tatung Co.*, 227 F.R.D. 435 (E.D. Va. 2004) (copy attached hereto at RESP 00083). In that case, represented by the same counsel as in the Main Case, Tatung engaged in similar delays before it finally withdrew its jurisdictional defense. *See Safer Display*, 227 F.R.D. at 437. Notably, in *Safer Display*, Tatung worked diligently to impede third party discovery by contacting and attempting to dissuade third parties from producing discovery, (*see* Ex. 6 at RESP 00092-93), and filing motions for protective orders for which Tatung lacked standing, (*see id.* at RESP 00093-94).

Tatung's continuing pattern of dilatory tactics and improper interference with LPL's discovery efforts should not be allowed to continue.

### D.    LPL Has Been Unsuccessful In Obtaining the Discovery It Seeks From the Defendants, Who Have Refused to Produce the Requested Documents

LPL needs the discovery that it seeks from the third parties because the fact discovery in the Main Case will close on March 30, 2007 and because Tatung has not cooperated with LPL's discovery efforts. Indeed, Tatung misrepresents the volume and the sufficiency of its document production to date. Although LPL's discovery requests were served on November 29, 2005, Tatung has refused to fully comply with those requests by, among other things, imposing unreasonable limitations and conditions on their production. LPL filed motions to compel in the Main Case that addressed issues common to all Defendants in the Main Case in September, October, November, and December 2006 and in January, February, and March 2007. Most of these issues have not yet been resolved and many of those unresolved issues relate directly to Tatung's instant Motion for Protective Order. For instance, although Tatung has identified over 300 potentially infringing products, it only produced about 60 technical drawings and then claimed, without explaining their calculations, that this fractional production covered as much as 96% of their products. Additionally, after telling LPL for months that it had produced all technical documents, Tatung has only recently revealed, but not yet fully produced, additional categories of critically relevant technical drawings. Tatung has informed LPL that it will

complete its supplemental production in April, which is well after the March 30 deadline for third party discovery.

Tatung argues that the third parties should not be required to produce documents, in part, because Tatung has objected to the scope of LPL's requests. Tatung correctly notes that the Special Discovery Master in the Main Case has not yet ruled on these issues. This is precisely the reason that LPL seeks discovery from the third parties. Tatung has refused to produce relevant documents and the Special Discovery Master has not ruled on Tatung's objections or on LPL's motions to compel that production. Notably, the subpoena itself is not limited to documents relating to Tatung in the possession of the third party as the subpoena also seeks documents relating to ViewSonic, another defendant in the Main case who has not objected to these subpoenas. All fact discovery, including third party discovery, in the Main Case closes on March 30, 2007. After that date, LPL will not be able to seek further discovery from any third party. Thus, in order to compile all relevant evidence and properly prepare its case for trial, LPL needs discovery from the third parties so that it can test the sufficiency and completeness of Tatung's own production.

There have been no rulings in the Main Case that would limit LPL's ability to obtain the scope of discovery that it seeks from the third parties. Indeed, contrary to Tatung's statement that the Special Discovery Master's "impending ruling" will be favorable to Tatung, neither party can predict in whose favor the Special Discovery Master will rule.

**E.    The Scope of the Subpoena is Reasonable, And In Any Event, Tatung's Objections are Misplaced**

In its Motion, Tatung argues that any discovery should be limited to the accused products. This, however, is precisely why LPL issued the Subpoenas. In its Complaint, LPL identified to Tatung an example of a product that LPL alleged to infringe the Patents-in-Suit. However, because Tatung makes hundreds of products, most of which are sold under brand names belonging to third parties, LPL needs third party discovery to determine which of Tatung's hundreds of products use infringing technology.

In light of the Delaware Court's Scheduling Order, requiring that third party discovery be completed by March 30, Tatung's efforts to limit the scope of LPL's subpoena to products that have been accused of infringement will artificially narrow the scope of the subpoena to products that are currently accused, even though that list will likely expand in April, after LPL finally receives Tatung's supplemental document production.

In addition, Tatung's objections to the scope of the Subpoena are misplaced. Specifically, objections based on burden or scope of a Subpoena should be made by the party upon whom the Subpoena is served. As the burden will not be borne by Tatung, Tatung does not have standing to raise that issue. To the extent that Tatung believes that the documents produced by third parties are not relevant to the litigation, or exceed the bounds of admissible evidence, Tatung can raise those arguments in advance of trial. *See Cook v. Rockwell Intern. Corp.*, 935 F.Supp. 1452, 1465 (D.Colo. 1996) ("Defendants had no standing to object to the breadth of the order [with respect to third party subpoena] but were restricted to appropriate objections as to relevance and admissibility before trial.") Notably, Tatung filed the Motions for Protective Order without regard for the fact that several of the third parties had either already produced the requested documents or agreed to produce the requested documents with objection. As the party to whom the Subpoena was served has not filed a Motion for Protective Order with respect to the breadth of the Subpoena, Tatung's objection on that basis should be denied.

### III.    CONCLUSION

For the foregoing reasons, LPL requests that the Court exercise its discretion to transfer the instant motion to the United States District Court for the District of Delaware. In the alternative, LPL requests that the Court deny the Motion and allow LPL to proceed with necessary third party discovery.

Respectfully Submitted,


s/Frank L. Broyles
  Frank L. Broyles
  Texas State Bar #03230500
  GOINS, UNDERKOFLER,
  CRAWFORD & LANGDON, LLP
  1201 ELM ST. SUITE 4800
  DALLAS, TX 75270
  (214) 969-5454
  (214 969-5902 TELECOPY


Attorneys for Respondent
**LG.PHILIPS LCD CO., LTD.**


Certificate of Service

On March 15, 2007, a genuine copy of the foregoing and referenced Appendix was served via email on the persons shown on the service list attached on the next page. Additionally, a copy will be served via first class mail on March 16, 2007.

s/Frank L. Broyles

# SERVICE LIST:
## 07-0017 & 07-0018 NDTX

**Richard D. Kirk**
The Bayard Firm
222
Delaware Ave.
Ste 900
Wilmington, DE 19899

**Jeffrey B. Bove**
**James D. Heisman**
**Jaclyn M. Mason**
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange St.
P.O. Box 2207
Wilmington, DE 19899

**Scott R. Miller**
CONNOLLY BOVE LODGE & HUTZ LLP
355 S. Grand Ave.
Suite 3150
Los Angeles, CA 90071

**Tracy R. Roman**
RASKIN PETER RUBIN & SIMON LLP
1801 Century Park East, Ste 2300
Los Angeles, CA 90067

**Frederick L. Cottrell, III**
**Anne Shea Gasa,**
RICHARDS LAYTON & FINGER, PA
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Penelope Brobst Blackwell

Email List:

rkirk@bayardfirm.com; jbove@cblh.com; jheisman@cblh.com; jmason@cblh.com; smiller@cblh.com; troman@raskinpeter.com; Cottrell@RLF.com; Gaza@RLF.com

# EXHIBIT 1

RESP 00001

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 04-343 (JJF) |
| TATUNG COMPANY, et al., | |
| Defendants. | |

**NOTICE OF FED.R.CIV.P. 30(b)(6) DEPOSITION *DUCES TECUM*
AND FED.R.CIV.P. 45 SERVICE OF SUBPOENA
(RADIOSHACK CORPORATION)**

TO:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Tracy Roman, Esq.
Raskin  Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067


PLEASE TAKE NOTICE that Plaintiff will take the deposition *duces tecum* of

Radioshack Corporation ("Radioshack") pursuant to Fed. R. Civ. P. 30(b)(6), on March 22, 2007

at 10:00 a.m.  The deposition will take place at the offices of Esquire Deposition Services, 1700

Pacific Ave., Suite 4750, Dallas TX 75201.  The deposition will be videotaped and taken before

575485-1
652865-1

**RESP 00002**

a notary public or court reporter, duly authorized to administer oaths and transcribe the testimony of the deponent(s) and may use technology that permits the real time display of the deposition transcript for attendees who bring a compatible computer. The deposition may continue from day to day until completed if authorized by the Court or stipulated by the parties.

PLEASE ALSO TAKE NOTICE that LG.Philips LCD Co., Ltd. is serving Radioshack with a subpoena (the "Subpoena"), a copy of which is attached hereto. The subjects covered in the deposition will include (but are not limited to) the subjects listed on Attachment A to the Subpoena. Pursuant to Fed. R. Civ. P. 30(b)(6), Radioshack is required to designate one or more persons to testify at the deposition as to the matters known or reasonably available to Radioshack concerning all topics listed in Attachment A to the Subpoena. In addition, the Subpoena requires Radioshack to produce at the deposition the documents listed in Attachment B to the Subpoena.

You are invited to attend and cross examine.

February 26, 2007

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
rkirk@bayardfirm.com
(302) 655-5000
Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

575485-1
652865-1

RESP 00003

OAO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS

LG.PHILIPS LCD CO., LTD.
V.
TATUNG COMPANY, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    04-343 (JJF)

TO:    **RadioShack Corporation**
       **Riverfront Campus World Headquarters**
       **300 RadioShack Circle, Ft. Worth, TX 76102-1964**

United States District Court for the District of
Delaware

   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
G  to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
X  deposition in the above case. (See Attachment A for topics.)

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Esquire Deposition Services, 1700 Pacific Ave. Ste 4750, Dallas TX 75201 | March 22, 2007 at 9:00 am. |

   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at
X  the place, date, and time specified below (list documents or objects): All documents listed in Attachment B.

| PLACE | DATE AND TIME |
|---|---|
| Mail documents to: McKenna Long & Aldridge LLP, Attn: Shari Klevens<br>c/o Esquire Deposition Services, 1700 Pacific Ave. Ste 4750, Dallas TX 75201 | March 15, 2007 at 9:00<br>a.m. |

G  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER=S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR | DATE |
|---|---|
| Shari Klevens (Attorney for Plaintiff) *Shari Klevens* | February 26, 2007 |

ISSUING OFFICER=S NAME, ADDRESS AND PHONE NUMBER
Shari Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
Telephone: 202-496-7612

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

DC:50459468.1

**RESP 00004**

AO88  (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| | | |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)    subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or
(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

DC:50459468.1

**RESP 00005**

**ATTACHMENT A: TOPICS TO BE ADDRESSED AT THE DEPOSITION**

For purposes of this Attachment, RadioShack Corporation should use the following definition for the terms used herein.

A.     "RadioShack," "you," and "your" as used herein, means RadioShack Corporation and all persons or entities acting or purporting to act on your behalf, and any affiliates of RadioShack Corporation.

B.     "ViewSonic" means Defendant ViewSonic Corporation, and all persons or entities acting or purporting to act on ViewSonic's behalf, and any affiliates of ViewSonic, including, but not limited to, entities, divisions, and affiliates located in Taiwan.

C.     "ViewSonic products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for ViewSonic.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, ViewSonic brand products.

D.     "Tatung Company" means Defendant Tatung Company, all persons or entities acting or purporting to act on Tatung Company's behalf, and affiliates of Tatung Company including but not limited to Tatung Company.

E.     "Tatung Company products" as used herein any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung Company.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung brand products.

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 1 of 6

RESP 00006

F.     "Tatung America" means Defendant Tatung Company of America, Inc., and all persons or entities acting or purporting to act on Tatung Company of America's behalf, including, but not limited to Tatung Company of America.

G.     "Tatung America products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung America.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung America brand products.

H.     "TSTI" means Tatung Science and Technology, Inc., and all persons or entities acting or purporting to act on Tatung Science and Technology's behalf, including, but not limited to Tatung Science and Technology.

I.     "TSTI products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for TSTI. This includes all such products, regardless of brand name, and thus includes, but is not limited to, TSTI brand products.

J.     "Affiliate(s)" means any corporation or other entity that controls, is controlled by or is under common control with the identified corporation or entity, including without limitation partnerships, parents, subsidiaries and divisions.

K.     "Visual display products" means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs.

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 2 of 6

RESP 00007

L.      "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information between two of more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery or otherwise, including but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

M.      "Concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing or constituting the referenced subject.

N.      "Discuss," "discussing," "relate to" "relating to," "support" or "supporting" means in any way directly or indirectly, in whole or in part, discussing, referring to, regarding, constituting, concerning, about, pertaining to, relating to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling or negating.

O.      "Identify" used in respect to a company or corporate or business entity of any kind means to set forth:

      a.  the full name of the company;

      b.  the full name of the division or office involved, if applicable; and

      c.  the address of the company and of the division or office involved, if applicable.

P.      "Identify" used in respect to a document or thing means:

RESP 00008

    a.   to provide a brief description of such document or thing, including date, author, recipients, type, and content or substance;

    b.   to identify the custodian of the document or thing;

    c.   to identify the place where the document or thing may be inspected; and

    d.   if a copy of the document has been supplied to LPL, to so state and specifically identify the copy supplied by reference to production numbers or other identifying information.

Q.    "Identify" used with respect to a natural person means to state:

    a.   the full name;

    b.   the present or last known business and residence addresses;

    c.   the last known employer or job affiliation; and

    d.   the last known occupation and business position or title held.

R.    "Import" or "importation" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

S.    "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

T.    "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

U.    "Person" means any natural person, firm, association, partnership, corporation, or other form of legal entity.

V.    "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

W.    The use of the singular form of any word includes the plural and vice versa.

The topics to be covered in the deposition include:

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 4 of 6

RESP 00009

1.    The nature of the business relationship and transactions between RadioShack and Tatung Company, Tatung America, TSTI, and/or ViewSonic relating to the sale, distribution, or importation of visual display products, including but not limited to the agreements between RadioShack, Tatung Company, Tatung America, TSTI, and/or ViewSonic.

2.    The scope, nature and purpose of communications between RadioShack and Tatung Company, Tatung America, TSTI, and ViewSonic (a) concerning the sale or marketing in the United States of visual display products manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, (b) communications regarding any product support assistance or warranties that Tatung Company, Tatung America, TSTI, and/or ViewSonic have provided to RadioShack, and (c) communications regarding the market trends for visual display products in the United States.

3.    Any agreements or contracts pursuant to which RadioShack has agreed to purchase Tatung Company's, Tatung America's, TSTI's and/or ViewSonic's visual display products either directly from Tatung Company, Tatung America, TSTI, or ViewSonic or indirectly by purchasing such products from any OEMs.

4.    RadioShack's activities or efforts related to the distribution or sale of visual display products in the United States manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic.

5.    All channels, distributors, suppliers, and networks through which products made in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic have been shipped, imported, sold, and/or distributed in the United States.

RESP 00010

6.    RadioShack's sales of its visual display products that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, including the quantity and dollar amount of such sales, by product.

7.    The date(s) and location(s) of any in person meetings in the United States between employees or representatives of RadioShack and of a) Tatung, b) Tatung America, c) TSTI, and/or d) ViewSonic, the identity and job descriptions of participants in such meetings, and the substance of issues discussed or addressed in such meetings.

DC:50459616.1

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 6 of 6

## ATTACHMENT B: DOCUMENTS TO BE PRODUCED

For purposes of this Attachment, RadioShack Corporation should refer to Attachment A for the definition or meaning of terms used herein, which definitions are incorporated herein by reference.  In addition, the following definition applies:

A.    "Document" means all types of documents and things embraced within Federal Rules of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries or interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, or opinions of counsel, records, reports or summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, computer printouts, floppy disks, hard drives, CD-ROM's, magnetic tapes and other data compilations from which

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 1 of 4

information can be obtained or translated, if necessary by RadioShack through detection devices into reasonably usable form. The term document also refers to any tangible object other than a document as described above, and includes objects of every kind and nature such as, but not limited to, prototypes, models, and specimens.

The documents to be produced on or before March 5, 2007, include the following:

1.    All documents provided by Tatung Company, Tatung America, TSTI, or ViewSonic to RadioShack since January 1, 2002 regarding marketing, sales, or business documents or presentation materials and any documents relating to warranties, product support, or service provided by Tatung Company, Tatung America, TSTI, or ViewSonic regarding their visual display products.

2.    Documents provided by RadioShack to Tatung Company, Tatung America, TSTI, or ViewSonic since January 1, 2002 sufficient to show RadioShack's market for visual display products, and/or market trends in the United States for visual display products.

3.    Documents sufficient to show the business relationship between RadioShack and Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including communications with Tatung Company, Tatung America, TSTI, and/or ViewSonic, notes from meeting with Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents in which RadioShack has agreed to purchase visual display products directly from Tatung Company, Tatung America, TSTI, and/or ViewSonic.

4.    All documents from January 1, 2002 by which RadioShack has agreed to purchase from original equipment manufacturers ("OEMs") any visual display products that RadioShack had reason to believe were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents sufficient to show

RESP 00013

that Tatung Company, Tatung America, TSTI, and/or ViewSonic received notice of RadioShack's agreements to purchase.

5.     Documents sufficient to show RadioShack's receipt or purchase of visual display products sold, manufactured, shipped, imported, or distributed in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002.

6.     Documents sufficient to show the total quantity of visual display products sold, by product, by RadioShack that were manufactured or assembled in whole or in part by Tatung Company, Tatung America, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

7.     Documents sufficient to show the sales by total dollar value and by quantity of visual display products sold, by product, by RadioShack that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

8. Documents sufficient to identify each person RadioShack has communicated with at Tatung Company, Tatung America, TSTI, and/or ViewSonic.

DC:50459608.1

Attachments B to Fed. R. Civ. P. 45 Subpoena
Page 3 of 4

RESP 00014

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 26, 2007, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent by email to the above counsel on February 26, 2007, and will be sent by hand

on February 26, 2007, and were sent by email on February 26, 2007, and will be sent by

first class mail on February 26, 2007, to the following non-registered participants:

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

/s/ Richard D. Kirk (rk922)
Richard D. Kirk

571447-1

**RESP 00015**

# EXHIBIT 2

RESP 00016

**Connor, Cormac**

| | |
|---|---|
| **From:** | HoV@GTLAW.com |
| **Sent:** | Wednesday, March 07, 2007 6:06 AM |
| **To:** | Connor, Cormac |
| **Cc:** | Christenson, Cass; Ambrozy, Rel; Brzezynski, Lora; MeridethF@GTLAW.com; KrietzmanM@GTLAW.com; HassidS@gtlaw.com |
| **Subject:** | Re: 3/5 meet-and-confer |

Your suggestion that the Tatung Defendants have known about LPL's improper subpoenas since January is wrong. LPL did not serve its various batches of subpoenas until mid to late February. We never met and conferred regarding the subpoenas at issue in January because those subpoenas had not even been issued by LPL at the time. Your resentment aside, the record speaks for itself.

The case law you cite is irrelevant.

We will proceed with our motions.

Valerie Ho
--------------------------
Sent from my BlackBerry Wireless Handheld

----- Original Message -----
From: Connor, Cormac <cconnor@mckennalong.com>
To: Ho, Valerie W. (Shld-LA-LT)
Cc: Christenson, Cass <cchristenson@mckennalong.com>; Ambrozy, Rel
<rambrozy@mckennalong.com>; Brzezynski, Lora <lbrzezynski@mckennalong.com>; Merideth,
Frank (Shld-LA-LT); Krietzman, Mark H. (Shld-LA-IP); Hassid, Steve (Assoc-LA-IP); Ho,
Valerie W. (Shld-LA-LT)
Sent: Tue Mar 06 08:49:18 2007
Subject: RE: 3/5 meet-and-confer

We obviously continue to disagree. LPL will not withdraw or modify its subpoenas as they
are entirely proper and seek relevant material. Further, the subpoenas are not limited to
discovery disputed by Tatung and seek substantial information that is separate and apart
from any motions pending before the Special Master.


Also, your email was the second time yesterday that you insinuated that I am or LPL is
somehow using the meet-and-confer process "merely as a delay tactic." As I told you
during our call yesterday, I resent your baseless insinuation that I am or LPL is acting
in bad faith, particularly as I have been asking you to provide legal authority to support
your demands since at least our meet-and-confer on January 30, more than one month ago.
Now, after your own delay and inaction, you are trying to use the press of our March 30
discovery deadline as an excuse to proceed against LPL on an ex parte basis. Further,
although I specifically requested that you explain why Tatung thinks it should be
permitted to file motions without first providing notice to LPL, you have not done so.
(Your reference to the CDCA local rule concerning the formatting and process by which an
ex parte submission is handled does not suffice.) Tatung is alone responsible for waiting
so long to file the motions it has described and LPL rejects any suggestion that Tatung is
entitled to proceed against any of LPL's subpoenas without providing LPL proper notice and
an opportunity to be heard. If Tatung persists down this path, LPL will seek sanctions
and all appropriate relief against Tatung.


As for the case citations that you have finally provided, I have reviewed your references
and they are distinguishable from our situation in several ways. Tatung's position also
is contrary to settled law. "Unless a party to an action can make claim to some personal
right or privilege in respect to the subject matter of a subpoena duces tecum directed to
a nonparty witness, the party to the action has no right to relief under Rule 45(b) or

1

RESP 00017

30(b)." Dart Industries, Inc. v. Liquid Nitrogen Processing, 50 F.R.D. 286, 291 (D. Del. 1970); see Ponsford v. United States, 771 F.2d 1305, 1308 (9th Cir. 1985) (denying motion to quash for lack of standing); Nova Products, Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (denying motion to quash because no showing of personal right or privilege); Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New York, 519 F. Supp. 668, 680 (D. Del. 1981) (denying motion to quash because movant failed to prove documents sought were privileged). We do not find that Tatung has any basis to object to the information sought by LPL's subpoenas and, thus, we do not believe that Tatung has standing to move to quash any of LPL's subpoenas.


Further, you have generally objected that the subpoenas seek information that is confidential and not limited to U.S. products. We believe that these objections are unfounded. If you have a more specific proposal for narrowing certain issues, however, please let us know so that we can respond.


Cormac T. Connor

McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel. 202-496-7439
fax 202-496-7756
email: cconnor@mckennalong.com


---

From: HoV@GTLAW.com [mailto:HoV@GTLAW.com]
Sent: Monday, March 05, 2007 4:52 PM
To: Connor, Cormac
Cc: Christenson, Cass; Ambrozy, Rel; Brzezynski, Lora; MeridethF@GTLAW.com; KrietzmanM@GTLAW.com; HassidS@gtlaw.com
Subject: RE: 3/5 meet-and-confer


Dear Cormac,

During our meet and confer, you stated that you did not believe the Tatung Defendants have standing to bring motions for protective order in connection with the subpoenas issued by LPL to third party customers of the Tatung Defendants, which seek broad categories of confidential and trade secret information belonging to the Tatung Defendants that do not relate in any way to the accused products or patents-in-suit. In response to your request that we provide authority on this issue, we agreed to do so with the understanding that LPL may reconsider its position upon reviewing the authorities provided. Accordingly, in a good faith attempt to meet and confer and potentially obviate the need to file these motions (and in the hopes that LPL is not using the meet and confer process merely as a delay tactic), we agreed to provide you with the authorities requested on the condition that you inform us by the commencement of business (pacific time) tomorrow as to whether LPL will withdraw or narrow its subpoenas (as identified in my letter).

The authorities the Tatung Defendants are relying on include the following: FRCP 26(c); Visto Corp. v. Smartner Information Systems, Ltd., 2007 WL 218771 (N.D. Cal. 2007); Highland Tank & Mfg. Co. v. PS Int'l, Inc., 227 F.R.D. 374 (W.D. Pa. 2005); Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318 (Fed. Cir. 1990); and Joy Technologies, Inc. v. Flakt, Inc., 772 F.Supp. 842, 849 (D.Del. 1991).

If we do not receive confirmation tomorrow morning that LPL is withdrawing or narrowing its subpoenas, we will move forward with the motions/applications for protective order.

As I mentioned during our meet and confer, we will be filing the applications/motions in the courts from which the subpoenas were issued. Due to the return dates of the subpoenas, the Tatung Defendants may not have sufficient time to file regularly noticed

RESP 00018

motions under the relevant local rules, and as a result, may have to move on an ex parte basis.  See, e.g., Central District of California Local Rule 7-19.  We, of course, will provide LPL with the appropriate ex parte notice.

With respect to the issues raised in Cass' email from this weekend, I will respond separately as those issues are completely unrelated to the issues discussed during our meet and confer.

Valerie

---

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient,  you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com <mailto:postmaster@gtlaw.com> .

---

From: Connor, Cormac [mailto:cconnor@mckennalong.com]
Sent: Monday, March 05, 2007 12:15 PM
To: Ho, Valerie W. (Shld-LA-LT)
Cc: Christenson, Cass; Ambrozy, Rel; Brzezynski, Lora; Merideth, Frank (Shld-LA-LT); Krietzman, Mark H. (Shld-LA-IP); Hassid, Steve (Assoc-LA-IP); Ho, Valerie W. (Shld-LA-LT)
Subject: 3/5 meet-and-confer

Following up on our 2 pm EST meet-and-confer call today, this email will confirm that you have agreed to provide LPL with legal authority supporting Tatung's stated intention to file motions for protective orders with respect to several of LPL's third party subpoenas. (To that end, you noted that Tatung would not be filing any motions concerning the subpoena issued to CTX.)  You said that you would provide that authority within the hour and I agreed to respond as to whether LPL will change its position based on those authorities by approximately noon EST tomorrow.

Additionally, you stated that Tatung intends to file its motions in the relevant courts on an ex parte basis.  As I stated on the call, LPL objects to Tatung's efforts to file these motions.  If this is the route that Tatung intends to take, please be sure to include citations to legal authority that would support Tatung's filing its proposed motions on an ex parte basis.  If, as it seems to be, Tatung's intention is to file these motions without notice to LPL, then LPL strenuously objects.  LPL demands that Tatung provide LPL with notice of any motions that it files with respect to any issue in this case, including motions pertaining to third party subpoenas.  If you refuse to do so, LPL will raise the matter with the appropriate courts and with the Special Master.

Finally, please let us know where Tatung stands with respect to the discovery deficiencies identified in Cass Christenson's March 4 email to you.

Cormac T. Connor

3

RESP 00019

McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel. 202-496-7439
fax 202-496-7756
email: cconnor@mckennalong.com

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.
---------------------------------------------------------

     Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS
under Circular 230, we inform you that any U.S. federal tax advice contained in this
communication (including any attachments), unless otherwise specifically stated, was not
intended or written to be used, and cannot be used, for the purpose of (1) avoiding
penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to
another party any matters addressed herein.


     The information contained in this transmission may contain privileged and
confidential information.  It is intended only for the use of the person(s) named above.
If you are not the intended recipient,  you are hereby notified that any review,
dissemination, distribution or duplication of this communication is strictly prohibited.
If you are not the intended recipient, please contact the sender by reply email and
destroy all copies of the original message. To reply to our email administrator directly,
please send an email to postmaster@gtlaw.com.

---------------------------------------------------------

# EXHIBIT 3

RESP 00021

**Klevens, Shari**

| | |
|---|---|
| **From:** | Piraino, Russ [russ.piraino@tycoelectronics.com] |
| **Sent:** | Thursday, March 08, 2007 3:06 PM |
| **To:** | Klevens, Shari |
| **Subject:** | RE: LG.Philips LCD Co., Ltd. v. Tatung, et al., C.A. No. 04-343-JJF |

Shari:

I understand that Phillips intends to file a motion for protective order
with regard to this subpoena.  In light of this, Tyco will await the
disposition of this motion by the court before providing any material in
response to the subpoena.  Thank you.

Russ Piraino

-----Original Message-----
From: Klevens, Shari [mailto:sklevens@mckennalong.com]
Sent: Thursday, March 01, 2007 3:27 PM
To: Piraino, Russ
Subject: LG.Philips LCD Co., Ltd. v. Tatung, et al., C.A. No. 04-343-JJF

Dear Russ:
This email is a follow up to our discussion this afternoon regarding
Plaintiff LG.Philips LCD Co., Ltd.'s ("LG") third party subpoena
("Subpoena") to Tyco International, Ltd. ("Tyco") in the referenced action.
I understand that your investigation related to the Subpoena has revealed
that Tyco does not merely resell products purchased from Tatung and
ViewSonic, but rather that any Tatung and/or ViewSonic products are
incorporated into a limited number of custom-made products manufactured and
sold by Tyco.  I further understand that such purchases account for less
than 1% of Tyco's overall products sold.
In light of the above, LG is willing to limit its document requests if Tyco
is willing to fully comply with the Subpoena as limited to the
following:
1. A sales summary consisting of a printout from Tyco's sales database.
The summary should reflect the purchase price, brand name, model number,
quantity, and sales price of the products sold by Tyco and a sales summary
showing all of this information for the products purchased by Tyco from
each defendant.  These documents should also show the correlation between
the Tatung or ViewSonic model number and Tyco's model numbers.
2. All contracts, supply agreements, and licenses between Tyco and Tatung
or ViewSonic.
3. Documents related to the technical specifications, manufacturing, or
assembly of Tatung and ViewSonic products, including any drawings and/or
narrative descriptions of same.
4. Documents sufficient to identify OEMs or ODMs that manufactured Tyco's
products incorporating visual display products manufactured by Tatung or
Viewsonic, agreements or other documents that mention Tatung or ViewSonic
between Tyco and any OEMs, and documents sufficient to show that Tatung or
ViewSonic had knowledge of such agreements (such as correspondence with
Tatung or ViewSonic).
5. Documents relating to product support or service on Tyco's visual
display products provided by Tatung or ViewSonic through a warranty or

1

RESP 00022

otherwise, including documents reflecting warranties provided by Tatung or
ViewSonic, and documents reflecting any type of repair assistance or help
desk assistance, including setting up repair centers in the US.
As we discussed, we agree to extend Tyco's deadline for producing the
requested documents until March 12, 2007.  Further, after a review of the
documents produced by Tyco in response to the Subpoena, we will determine
whether a deposition, currently scheduled on March 19, will be necessary.
We are hopeful that a deposition will not be required, especially if we can
obtain an affidavit from Tyco in lieu of deposition testimony.
Please contact me if you have any further questions.
Regards,
Shari


Shari L. Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel 202.496.7612
fax 202.496.7756


CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.

**RESP 00023**

# EXHIBIT 4

RESP 00024

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,           )
                                    )
Plaintiff,                          )
                                    )
v.                                  )          C.A. No. 04-343-JJF
                                    )
TATUNG COMPANY;                     )
TATUNG COMPANY OF AMERICA,          )
INC. and VIEWSONIC CORPORATION,     )
                                    )
Defendants.                         )

## PROTECTIVE ORDER FOR JURISDICTIONAL DISCOVERY

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court hereby enters the following Protective Order:

1.      Scope of Protection.

1.1     The Court is adopting this Order solely for purposes of jurisdictional discovery. This Order is entered without prejudice to the right of any party to seek a permanent and different protective order. This Protective Order shall govern any record of information, designated pursuant to Paragraph 2 of this Protective Order, produced in this action, including all designated deposition testimony, all designated testimony taken at a hearing or other proceeding, interrogatory answers, documents and other discovery materials, whether produced informally or in response to interrogatories, requests for admissions, requests for production of documents or other formal method of discovery.

1.2     This Protective Order shall also govern any designated record of information produced in this action pursuant to required disclosures under any federal procedural rule or District of Delaware local rule, and any supplementary disclosures thereto.

1.3     This Protective Order shall apply to the parties and any nonparty from whom discovery may be sought and who desires the protection of this Protective Order (collectively herein referred to as a "party" or the "parties").

RESP 00025

2.      Designation.

2.1      Each party shall have the right to designate as confidential and subject to this Protective Order any information produced by it in this action which contains, reflects, or otherwise discloses confidential technical, business or financial information ("CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered confidential under this Protective Order. The parties will use reasonable care to avoid designating any documents or information CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER that are generally available to the public.

2.2      Each party shall have the right to designate as restricted to review by those categories of individuals listed in Paragraphs 4.1(a) - 4.1(e) and subject to this Protective Order any information produced in this action which contains, reflects, or otherwise discloses (1) trade secrets, (2) research and development, manufacturing, operational or other highly sensitive technical information, or (3) highly sensitive business related informaton, such as customer, supplier or financial information (collectively, "HIGHLY SENSITIVE CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend HIGHLY SENSITIVE CONFIDENTIAL prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered HIGHLY SENSITIVE CONFIDENTIAL under this Protective Order. To the extent that material is marked HIGHLY SENSITIVE CONFIDENTIAL, such material shall be revealed to or used by limited categories of individuals, as provided for in Paragraph 4.2, and shall not be communicated in any manner, either directly or indirectly, to any person or entity not permitted disclosure pursuant to this Protective Order. Any copies of such material, abstracts, summaries or information derived therefrom, and any notes or other records regarding the contents thereof, shall also be deemed HIGHLY SENSITIVE CONFIDENTIAL, and the same terms regarding confidentiality of these materials shall apply as apply to the originals. Use of this highly restrictive designation is limited to information of the highest sensitivity. The parties will use reasonable care to avoid designating any documents or information HIGHLY SENSITIVE CONFIDENTIAL for which the designating party does not have a good faith belief that the documents or information satisfy the criteria set forth in this Paragraph 2.2. HIGHLY SENSITIVE CONFIDENTIAL information shall be used only for purposecs directly related to this action, and for no other purpose whatsoever, except by consent of all of the parties or order of the Court.

2.3      To the extent that any party has, prior to the date that this Order is entered, produced to the other side materials that the producing party has marked with confidentiality designation, all such materials shall be considered to have been designated under this Order as HIGHLY SENSITIVE CONFIDENTIAL unless otherwise agreed by the Parties.

RESP 00026

3.    Limit On Use And Disclosure Of Designated Information.

3.1    Each party and all persons bound by the terms of this Protective Order shall use any information or document governed by this Protective Order only in connection with the prosecution or defense of this action and for no other purpose, except by consent of the parties or order of the Court. No party or other person shall disclose or release to any person not authorized under this Protective Order any information or document governed by this Protective Order for any purpose, or to any person authorized under this Protective Order for any other purpose.

3.2    It is, however, understood that counsel for a party may give advice and opinions to his or her client in connection with the prosecution or defense of this action based on his or her evaluation of designated confidential information received by the party, provided that such rendering of advice and opinions counsel shall not reveal the content of such information except by prior written agreement with counsel for the producing party.

3.3    The attorneys of record for the parties and other persons receiving information governed by this Protective Order shall exercise reasonable care to ensure that the information and documents governed by this Protective Order are (a) used only for the purposes specified herein, and (b) disclosed only to authorized persons.

4.    Disclosure Of Confidential Material.

4.1    Documents or information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER shall be disclosed by the recipient thereof only to:

(a)    the attorneys who are actively involved in this action that are partners/members of or employed by the following law firms of record for the parties, and their authorized secretarial, clerical and legal assistant staff: The Bayard Firm; McKenna, Long & Aldridge LLP; Potter Anderson & Corroon LLP; Bingham McCutchen LLP; Rosethal, Monhait, Gross & Goddess; and Baum & Weems provided that such attorneys shall not be provided access to HIGHLY SENSITIVE CONFIDENTIAL information if such attorneys

(1)    have participated in, directed or supervised any patent prosecution activitiy related to the patents-in-suit or currently participate in, direct or supervise any patent prosecution activity involving (i) flat panel or flat panel display technology or (ii) technology related or refering to or incorporating flat panels or flat panel displays (collectively, "the Subject Matter"). During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not participate in, direct or supervise any patent prosecution activity in the United States Patent and

RESP 00027

Trademark Office or with any patent office outside the United States involving the Subject Matter;

(2)     provide non-legal, business advice or non-legal, business representation or to clients in the flat panel display industry wherein the highly sensitive business-related financial information of any opposing party would be relevant to such non-legal, business advice or non-legal, business representation. During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not provide non-legal, business advice or non-legal, business representation to clients in the flat panel display industry wherein the highly sensitive business-related information of any opposing party would be relevant to such non-legal, business advice or representation; or

(3)     are related to or have a personal, social relationship with any officer, director or employee of a party

(b)     the Court and Court personnel, as provided in Paragraph 12;

(c)     consultants or experts and their staffs retained by the parties or their attorneys for purposes of this action, who are agreed upon by the parties pursuant to Paragraph 6, who are not employees or otherwise affiliated with any of the parties (except persons scheduled to be deposed by any of the parties pursuant to Rule 30(b)(6), Fed.R.Civ.P.), and who first agree to be bound by the terms of this Protective Order;

(d)     court reporters employed in connection with this action;

(e)     outside copying and computer services necessary for document handling, and other litigation support personnel (e.g., translators, graphic designers and animators);

(f)     One member of LG.Philips LCD, Co., Ltd.'s in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(g)     One member of Viewsonic Corporation's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(h)     One member of Tatung Company's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(i)     One attorney of Tatung Company of America, Inc.'s regular out-side counsel, provided that each such individual must first agree to be bound by the terms of this Protective Order;

RESP 00028

4.2    Documents or information designated HIGHLY SENSITIVE CONFIDENTIAL shall be disclosed by the recipient thereof only to those categories of individuals listed in Paragraphs 11 4.1(a) - 4.1(e) subject to the restrictions therein.

5.    Redaction.

Counsel for a party producing documents may mask ("redact") material deemed exempt from discovery because it is protected from disclosure under the attorney-client privilege or work product immunity afforded by Rule 26(b), Fed.R.Civ.P. However, any document from which material is masked must identify in the masked area that masking or redaction has occurred. The reason for any such masking must be stated on a log to be provided within thirty (30) days after the production of the documents. Sufficient information regarding the masked material must be provided to the other party to enable it to evaluate the legitimacy of the asserted privilege or immunity. The parties reserve the right to pursue categories for redaction in addition to those identified above, by either consent of the parties or order of the Court, to be addressed on a case-by case basis.

6.    Disclosure to Independent Consultants and Identification of Experts.

6.1    If any party desires to disclose information designated CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL to any expert or consultant pursuant to Paragraph 4 above, it must first identify in writing to the attorneys for the producing party each such expert or consultant. The attorney for the producing party shall have ten (10) business days from receipt of such notice to object to disclosure of such information to any of the experts or consultants so identified.

6.2    Such identification shall include the full name and professional address and/or affiliation of the proposed expert or consultant, an up-to-date curriculum vitae identifying at least all other present and prior employments or consultancies of the expert or consultant in the field of flat panel and flat panel display technologies, and a list of the cases in which the expert or consultant has testified at a deposition, an arbitral hearing or trial within the last four years. The parties shall attempt to resolve any objections informally. If the objections cannot be resolved, the party seeking to disclose the CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information to the expert or consultant may move the Court for an Order allowing the disclosure. On any motion challenging the disclosure of such information to an expert or consultant, the burden of proof shall lie with the party objecting to the disclosure to establish that the information should not be disclosed to the expert or consultant. In the event objections are made and not resolved informally, disclosure of information to the expert or consultant shall not be made except by Order of the Court (or to any limited extent upon which the parties may agree).

7.    Agreement Of Confidentiality.

In no event shall any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL be disclosed to any

person authorized pursuant to Paragraph 4, other than (a) the Court and Court personnel, (b) the parties' attorneys identified in Paragraph 4.1(a) and their authorized secretarial and legal assistant staffs, (c) court reporters, and (d) outside copying and computer services necessary for document handling, until such person has executed a written Confidentiality Undertaking (in the form set forth in Exhibit A hereto) acknowledging and agreeing to be bound by the terms of this Protective Order. Copies of such Confidentiality Undertakings shall be promptly served on the producing party.

8.     Related Documents.

Information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL shall include (a) all documents, copies, extracts, and complete or partial summaries prepared from or containing such information; (b) portions of deposition transcripts and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (c) portions of briefs, memoranda or any other papers filed with the Court and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (d) deposition testimony designated in accordance with Paragrapah 9; and (e) testimony taken at a hearing or other proceeding that is designated in accordance with Paragraph 10.

9.     Designation Of Deposition Transcripts.

9.1     Deposition transcripts, or portions thereof, may be designated as subject to this Protective Order either (a) at the time of such deposition, in which case the transcript of the designated testimony shall be marked by the reporter with the appropriate legend (see Paragraph 2.1) as the designating party may direct, or (b) within twenty-one (21) days following the receipt of the transcript of the deposition by providing written notice to the reporter and all counsel of record, in which case all counsel receiving such notice shall mark the copies or portions of the designated transcript in their possession or under their control as directed by the designating party.

9.2     All deposition transcripts not previously designated shall be deemed to be, and shall be treated as, HIGHLY SENSITIVE CONFIDENTIAL until the expiration of the period set forth in Paragraph 9.1, and neither the transcript nor the content of the testimony shall be disclosed by a non-designating party to persons other than those persons named or approved according to Paragraph 4.

9.3     The designating party shall have the right to exclude from a deposition, before the taking of testimony which the designating party designates CONFIDENTIALSUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, all persons other than those persons previously qualified to receive such information pursuant to Paragraph 4.

9.4     In addition, to the extent that any document or information that has been designated as either CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, such

RESP 00030

document or information shall not be disclosed to or otherwise used with any witness not currently or previously employed or retained by the producing party during a deposition without at least three (3) calendar days prior notice to the designating party of such potential use in order to permit counsel for the designating party to attend and to take such action as it deems appropriate to protect the confidentiality of the documents and/or information. Counsel for the parties shall attempt to resolve any objection(s) and they will only seek redress to the Court if no resolution can be reached. However, the receiving party shall not use or otherwise disclose the confidential documents or information subject to such objection at such deposition of a witness not currently or previously employed or retained by the producing party until the Court has ruled upon any such objection(s), provided that the producing party submits the matter to the Court within three (3) calendar days of the parties being unable to resolve the objection(s).

10.    Designation Of Hearing Testimony Or Argument.

With respect to testimony elicited during hearings and other proceedings, whenever counsel for any party deems that any question or line of questioning calls for the disclosure of CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL information, counsel may designate on the record prior to such disclosure that the disclosure is subject to confidentiality restrictions. Whenever matter designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL is to be discussed in a hearing or other proceeding, any party claiming such confidentiality may ask the Court to have excluded from the hearing or other proceeding any person who is not entitled under this Order to receive information so designated.

11.    Disclosure To Author Or Recipient.

Notwithstanding any other provisions of this Order, nothing herein shall prohibit counsel for a party from disclosing a document containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL to any person which the document clearly identifies as an author, addressee, or carbon copy recipient of such document, or to any current employee of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. During deposition or trial testimony, counsel may disclose documents produced by a party to current employees and officers of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. And regardless of such designation pursuant to this Protective Order, if a document or testimony makes reference to the actual or alleged conduct or statements of a person who is a potential witness, counsel may discuss such conduct or statements with such witness without revealing any portion of the document or testimony other than that which specifically refers to such conduct or statement, and such discussion shall not constitute disclosure in violation of this Protective Order.

12.    Designation Of Documents Under Seal.

Any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, if filed with the Court, shall be filed under seal and shall be made available only to the Court and to persons authorized by the terms of this Protective Order. The party filing any paper which reflects, contains or includes any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information subject to this Protective Order shall file such paper in a sealed envelope, or other appropriately sealed container, which indicates the title of the action, the party filing the materials, the nature of the materials filed, the appropriate legend (see Paragraph 2.1), and a statement substantially in the following form:

This envelope contains documents subject to a Protective Order of the Court. It should be opened only by the Court. Its contents should not be disclosed, revealed or made public except by Order of the Court or written agreement of the parties.

13.    Confidentiality Of Party's Own Documents.

No person may disclose, in public or private, any designated information of another party except as provided for in this Protective Order, but nothing herein shall affect the right of the designating party to disclose to its officers, directors, employees, attorneys, consultants or experts, or to any other person, its own information. Such disclosure shall not waive the protections of this Protective Order and shall not entitle other parties or their attorneys to disclose such information in violation of it, unless by such disclosure of the designating party the information becomes public knowledge (see Paragraph 16). Similarly, the Protective Order shall not preclude a party from showing its own information to its officers, directors, employees, attorneys, consultants or experts, or to any other person, which information has been filed under seal by the opposing party.

14.    Other Protections.

14.1    No person shall use any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information, or information derived therefrom, for purposes other than the prosecution or defense of this action, including without limitation, for purposes of preparing, filing or prosecuting any patent application, continuation or divisional patent application, reissue patent application or request for re-examination.

14.2    Any party may mark any document or thing containing CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information as an exhibit to a deposition, hearing or other proceeding and examine any witness thereon qualified under the terms of this Protective Order to have access to such designated material.

15.    Challenge To Confidentiality.

15.1 This Protective Order shall not preclude any party from seeking and obtaining, on an appropriate showing, such additional protection with respect to the confidentiality of

documents or other discovery materials as that party may consider appropriate. Nor shall any party be precluded from (a) claiming that any matter designated hereunder is not entitled to the protections of this Protective Order, (b) applying to the Court for an Order permitting the disclosure or use of information or documents otherwise prohibited by this Protective Order, or (c) applying for a further Order modifying this Protective Order in any respect. No party shall be obligated to challenge the propriety of any designation, and failure to do so shall not preclude a subsequent challenge to the propriety of such designation.

15.2    On any motion challenging the designation of any information, the burden of proof shall lie with the producing party to establish that the information is, in fact, CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information. If a party seeks declassification or removal of particular items from a designation on the ground that such designation is not necessary to protect the interests of the party wishing the designated information, the following procedure shall be utilized:

a. The party seeking such declassification or removal shall give counsel of record for the other party written notice thereof specifying the designated information as to which such removal is sought and the reasons for the request; and

b. If, after conferring, the parties cannot reach agreement concerning the matter, then the party requesting the declassification or removal of particular items may file and serve a motion for a further Order of this Court directing that the designation shall be so removed.

16.    Prior Or Public Knowledge.

This Protective Order shall not apply to information that, prior to disclosure, is public knowledge, and the restrictions contained in this Protective Order shall not apply to information that is, or after disclosure becomes, public knowledge other than by an act or omission of the party to whom such disclosure is made, or that is legitimately and independently acquired from a source not subject to this Protective Order.

17.    Limitation Of Protective Order.

This Protective Order is not intended to address discovery objections to produce, answer, or respond on the grounds of attorney-client privilege or work product doctrine, or to preclude any party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure.

18.    Other Proceedings.

By entering this order and limiting the disclosure of information in this case, the court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who may be subject to a motion to disclose another party's CONFIDENTIAL or HIGHLY

RESP 00033

SENSITIVE CONFIDENTIAL information pursuant to this order shall promptly notify that party of the motion so that it may have an opportunity to appear and be heard on whether such information should be disclosed.

19.     Inadvertent Disclosure Of Work Product Or Privileged Information: Procedure And Waiver.

19.1     If the producing party at anytime notifies the Non-producing party in writing that it has inadvertently produced documents and/or things that are protected from disclosure under attorney-client privilege, work-product immunity, and/or any other applicable privilege or immunity from disclosure, the non-producing party shall return all copies of such documents and/or things to the producing party within five (5) business days of receipt of such notice and shall not further disclose or use such items for any purpose until further order of the Court. Upon being notified by the producing party pursuant to this section, counsel for the non-producing party shall use his or her best efforts to retrieve all copies of the documents at issue.

19.2     The return of any discovery item to the producing party shall not in any way preclude the non-producing party from moving the Court for a ruling that: (a) the document or thing was never privileged or otherwise immune from disclosure; and/or (b) that any applicable privilege or immunity has been waived.

19.3     Inadvertent or unintentional disclosure of information subject to any privilege or immunity during the course of this litigation without proper designation shall not be deemed a waiver of a claim that disclosed information is in fact subject to a privilege or immunity if so designated within ten (10) business days after the producing party actually learns of the inadvertent or unintentional disclosure.

20.     Non-Party Material.

The terms of this Protective Order, as well as the terms of any protective order that may be entered into between a discovering party and third party for the production of information to the discovering party, are applicable to CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information provided by a non-party. Information provided by a non-party in connection with this action and designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, pursuant to the terms of this Protective Order shall be protected by the remedies and relief provided by this Protective Order.

21.     Return Of Designated Information.

Within thirty (30) days of final termination of this action, unless otherwise agreed to in writing by an attorney of record for the designating party, each party shall assemble and return, or certify destruction of, all materials containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, including all copies, extracts and summaries thereof, to the party from

RESP 00034

whom the designated material was obtained, except that (a) any documents or copies which contain, constitute or reflect attorney's work product or attorney-client privilege communications, and (b) archive copies of pleadings, motion papers, deposition transcripts, correspondence and written discovery responses may be retained by counsel.

22.    Waiver Or Termination Of Order.

No part of the restrictions imposed by this Protective Order may be waived or terminated, except by written stipulation executed by counsel of record for each designating party, or by an Order of the Court for good cause shown. The restrictions provided for herein shall not terminate upon the conclusion of this action, but shall continue until further Order of this Court.

23.    Modification Of Order; Prior Agreements.

To the extent the terms of this Protective Order conflict with Local Rule 26.2 or with any agreements between the parties regarding the confidentiality of particular documents or information entered into before the date of this Protective Order, the terms of this Protective Order shall govern, except as to those documents and information produced or disclosed prior to the entry of this Protective Order, which documents and information shall continue to be governed by the terms of such prior agreements or by the provisions of Local Rule 26.2, as applicable.

24.    Section Captions.

The title captions for each section of this Protective Order are for convenience only and are not intended to affect or alter the text of the sections or the substance of the Order.

/ / /

RESP 00035

25.    Duration.

This Protective Order's duration is to the end of jurisdictional discovery; the obligations hereunder are continuing unless and until otherwise modified by the Court.

Dated: ~~January~~ Febry 3    , 2005

_____
Hon. Joseph J. Farnan, Jr.
United States District Judge

Approved as to form:

_____
Richard D. Kirk (Del. Bar No. 922)
The Bayard Firm
222 Delawre Ave., Ste. 900
P.O. Box 25130
Wilmington, Delaware 19899
Tel: 302-655-5000
Fax: 302-658-6395

Attorneys for LG.Philips LCD Co., Ltd.

_____
Jeffrey S. Goddess (Del. Bar No. 630)
Rosethal, Monhait, Gross & Goddess
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, Delaware 19899-1070
Tel: 302-656-4433
Fax: 302-658-7567

Attorneys for Tatung Company and
Tatung Company of America

RESP 00036

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG Philips LCD Co., Ltd., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 04-343-JJF |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| Tatung Co., Tatung Company of | ) | |
| America Inc., and Viewsonic Corp., | ) | |
| | ) | |
| Defendants. | ) | |

## STIPULATION AND ORDER

IT IS HEREBY STIPULATED AND AGREED, subject to order of the Court, by and between counsel for the parties, that the Protective Order For Jurisdictional Discovery, dated February 3, 2005 (D.I. 144), is amended as follows:

4.    Disclosure of Confidential Material.

4.1    Documents or information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER shall be disclosed by the recipient thereof only to:

(a)    the attorneys who are actively involved in this action that are partners/members of or employed by the following law firms of record for the parties, and their authorized secretarial, clerical and legal assistant staff: The Bayard Firm; McKenna, Long & Aldridge LLP; Potter, Anderson & Corroon LLP; Bingham McCutchen LLP; Richards, Layton & Finger, P.A.; Greenberg Traurig, LLP provided that such attorneys shall not be provided access to HIGHLY SENSITIVE CONFIDENTIAL information if such attorneys

RESP 00037

Notwithstanding the foregoing, all other provisions of the Protective Order for Jurisdictional Discovery (D.I. 144), including provisions both obligating and protecting Tatung Company's and Tatung Company of America, Inc.'s former counsel, Rosenthal, Monhait, Gross & Goddess and Baum & Weems, shall remain in full force and effect.

To the extent the Protective Order For Jurisdictional Discovery is or may still be in effect, Defendants Tatung Co. and Tatung Company of America Inc., and their respective counsel at Richards, Layton and Finger, P.A. and Greenberg Traurig, LLP, hereby expressly agree to be bound by the terms of the Protective Order For Jurisdictional Discovery for any documents or information that is or may be designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER and/or HIGHLY SENSITIVE CONFIDENTIAL now and in the future.

| | |
|---|---|
| */s/ Richard L. Horwitz* | *[signature]* |
| Richard L. Horwitz (#2246) | Frederick L. Cottrell, III (#2555) |
| rhorwitz@potteranderson.com | cottrell@rlf.com |
| David E. Moore (#3983) | Anne Shea Gaza (#4093) |
| dmoore@potteranderson.com | gaza@rlf.com |
| Potter Anderson & Corroon LLP | Richards, Layton & Finger, P.A. |
| 1313 N. Market Street | One Rodney Square |
| Hercules Plaza, 6th Floor | P.O. Box 551 |
| Wilmington, DE 19899 | Wilmington, Delaware 19899 |
| Telephone: (302) 984-6027 | Telephone: (302) 651-7700 |
| Facsimile: (302) 658-1192 | Facsimile: (302) 651-7701 |
| *Attorneys for Defendant* | *Attorneys for Defendants Tatung Co. and* |
| *Viewsonic Corp.* | *Tatung Company of America Inc.* |

RLF1-2974874-1

2

RESP 00038

/s/ Richard D. Kirk
Richard D. Kirk (#922)
rkirk@bayardfirm.com
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
Telephone: (302) 429-4208
Facsimile: (302) 658-6395
*Attorneys for Plaintiff LG*
*Philips LCD Co.*

Dated: January __, 2006


SO ORDERED this _____ day of _____, 2006.


_____
Hon. Joseph J. Farnan, Jr.

3

RESP 00039

# EXHIBIT 5

RESP 00040

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,   :
            :
   Plaintiff,     :
            :
  v.        :  Civil Action No. 04-343 JJF
            :
TATUNG CO., TATUNG COMPANY :
OF AMERICA, INC.,     :
            :
   Defendants.    :

## SPECIAL MASTER'S REPORT AND RECOMMENDATIONS ON MOTION OF LG.PHILIPS LCD CO., LTD. FOR DISCOVERY SANCTIONS AGAINST THE TATUNG DEFENDANTS:

### SANCTIONS RECOMMENDED

This matter comes before me, as Special Master, on the motion of plaintiff LG.Philips LCD Co., Ltd. ("LPL") for the imposition of sanctions against defendants Tatung Co. ("Tatung Taiwan") and the Tatung Company of America, Inc. ("Tatung America" and, together with Tatung Taiwan, "Tatung" or the "Tatung Defendants") in connection with certain jurisdictional discovery ordered by the Court.

The Special Master recommends that LPL's motion for sanctions be **GRANTED**, as set forth herein.

### BACKGROUND

This is a patent infringement case brought by LPL against, *inter alia*, the Tatung Defendants alleging infringement of United States Patent Nos. 6,498,718 and 6,501,641 that relate to assembly mountings for flat panel display monitors used in such products as liquid crystal display ("LCD") and plasma televisions, and computer monitors. D.I. 1. The complaint

asserts grounds for jurisdiction over the Tatung Defendants on the basis of actual purchases in Delaware of equipment manufactured by Tatung that allegedly infringe the patents-in-suit. *Id.*

In lieu of answering the complaint, the Tatung Defendants jointly moved to dismiss for lack of personal jurisdiction, insufficient process and insufficient service of process and, in the alternative, to quash service. D.I. 16-17. Tatung's joint motion (the "Tatung Motion") was supported by the declaration of Tatung's counsel, Robert C. Weems, D.I. 19, as well as by the sworn declarations of David Shan-Juh Chang on behalf of Tatung Taiwan, D.I. 20, and Robin Tsou and Edward Chen on behalf of Tatung America, D.I. 19 at Exh. 3 and D.I. 21.

In response to the Tatung Motion, LPL moved for leave to conduct jurisdictional discovery of the Tatung Defendants. D. I. 34-35. On November 17, 2004 the Court granted LPL's request for jurisdictional discovery, set a 90-day deadline of February 15, 2005 for its completion, and reset the original Scheduling Order deadlines. D.I. 88. The Court also issued orders (i) providing that no further motions could be filed by the parties until the Court resolved the Tatung Motion, D.I. 93; and (ii) reserving the Court's decision on the Tatung Motion until after completion of the jurisdictional discovery, D.I. 94. Shortly thereafter, LPL served jurisdictional discovery upon each of the Tatung Defendants, in the form of interrogatories, requests for production of documents, and notices of depositions. D.I. 98, 99, 102-103.

**Jurisdictional Discovery Disputes Before the Court**

Notwithstanding the Court's order that no further motions be filed by the parties until the Court resolved the Tatung Motion, the record discloses that the parties sought the Court's attention with numerous discovery disputes following entry of that order. For example, on December 20, 2004, Tatung America sent a letter to the Court seeking leave to file a motion for a protective order to quash deposition notices issued on December 2, 2004 by LPL for depositions

RESP 00042

scheduled for December 22, 2004 and mid-January 2005. Tatung America refused to appear for the Rule 30(b)(6) deposition scheduled in two days, arguing that its request to file a motion for a protective order had the same effect as an actual motion and therefore excused its requirement to appear, pursuant to Local Rule 30.2. D.I. 128 at 1, n.1. A volley of letters followed, D.I. 107-108, prompting the Court to schedule *sua sponte* a date to hear what the Court deemed would be LPL's motion to compel and request for sanctions, and to require additional briefing. D.I. 126-30.

At the hearing held on January 24, 2005, the Court took steps to get the jurisdictional discovery back on track. The record of that hearing establishes that – although almost 60 days had elapsed since LPL propounded its jurisdictional discovery – the Tatung Defendants had yet to respond to outstanding interrogatory requests, had failed to produce any responsive documents whatsoever, and had refused to appear at scheduled depositions. In the words of LPL's counsel:

> [D]efendant Tatung Company of America has refused to appear for four depositions in this matter on two separate occasions. As a result of that, Your Honor, and as a result of their inadequate responses to interrogatories and document requests, we **really have no jurisdictional discovery at this point** two months after this Court ordered Tatung Company of America and Tatung Company to provide jurisdictional discovery.

D.I. 132 at 4:9-19 (emphasis added).

The tack taken by the Tatung Defendants has been to object to and seek to quash all of the jurisdictional discovery sought by LPL, arguing primarily that the scope of LPL's discovery exceeded the permissible scope of jurisdictional discovery and that neither the provisions of Local Rule 26.2 nor the protective order proposed by LPL were adequate to protect Tatung's confidential information. In the words of Tatung's counsel:

> There are two fundamental problems with plaintiff's discovery. They are: (1) plaintiff's refusal of a confidentiality order, such as the one approved by Judge Jordan [in another case] and (2)

3

RESP 00043

> plaintiff's refusal to specify with some reasonable particularity its 30(b)(6) deposition categories, so that the designee(s) can be identified and prepared to testify [on behalf of] the company with answers other than an embarrassing (and potentially damaging) "I don't know."

D.I. 128 at pp. 1-2.

The Court first addressed and resolved the parties' impasse over the proposed terms of a protective order to protect confidential information disclosed during discovery, by obtaining LPL's agreement that it could live with the terms proposed by Tatung for the limited period of jurisdictional discovery.[1]  D.I. 132 at pp. 10-22.  The Court rejected Tatung's objections to the scope of discovery, by expressly determining that the deposition topics listed in the Rule 30(b)(6) deposition notices issued by LPL were within the permissible scope of jurisdictional discovery and were specific enough to permit Tatung to designate corporate designee(s).  D.I. 132 at 38:4-8 and 42:2-5.

The Court then directed that the noticed depositions go forward, and attempted to provide reassurance to Tatung that the deposition questioning would stay within the scope of the noticed topics by providing a mechanism for handling objections by the Tatung Defendants to any deposition questioning that may exceed the permissible scope.  D.I. 132 at 36:12-24; 37:1-24; and 38:1-3.  The Court also directed that "all the documents relative to the declarations that you

---

[1]  The impasse between the parties centered on Tatung's demand that certain of LPL's counsel be restricted from prosecuting patents during the pendency of this litigation, to avoid risk to confidential information that Tatung might disclose during discovery.  In the Special Master's view, the provisions of Local Rule 26.2 adequately address this concern prior to the entry of a tailored protective order, especially given the narrow focus of jurisdictional discovery. Local Rule 26.2 provides as follows:

> If any documents are deemed confidential by the producing party and the parties have not been able to agree on an appropriate protective order, until a protective order is in effect, disclosure should be limited to members and employees of the firm of trial counsel who have entered an appearance, and, where appropriate, have been admitted *pro hac vice*.  **Such persons are under an obligation to keep such documents confidential and to use them only for the purposes of litigating the case.** (Emphasis added).

Simply stated, jurisdictional discovery should not have been delayed in order to await the entry of a tailored protective order.

4

cited and answers to interrogatories that are incomplete ought to . . . be given over [by Tatung]

by the end of this week, the very first part of next week." D.I. 132 at 56:17-21.  The Court

addressed LPL's request for sanctions with a clear cautionary note:

> I'm going to monitor what we have to do to keep this case moving.
> And at some point if I make a judgment that one side is recalcitrant
> and the other is acting in good faith, then **I [will] go all the way
> back and award fees and costs.**

D.I. 132 at 61:5-15 (emphasis added).

Following the hearing, the Court issued written orders that provided (i) for entry of the

restrictive form of protective order requested by the Tatung Defendants, but modified to limit its

duration to the jurisdictional discovery period; and (ii) that the depositions related to

jurisdictional discovery go forward, with instruction that "If [the Tatung] Defendants believe

[LPL's] examination exceeds the issues of jurisdiction, [Tatung] may object and instruct the

witness not to answer.  [LPL] may then file a motion to compel on the objected-to question."

D.I. 133.

Within a few weeks, LPL found it necessary to again burden the Court when Tatung

Taiwan also refused to appear for noticed depositions.  LPL moved for leave to file an expedited

motion to compel jurisdictional discovery from the Tatung Defendants and for a third extension

of the jurisdictional discovery period.  D.I. 154.  This prompted an additional round of letters and

email to the Court, D.I. 163-64, 166-67.  The Tatung Defendants then filed a request for the

appointment of a special master, together with a motion for a protective order.  D.I. 168.  LPL

opposed the appointment of a special master and renewed its request for sanctions.  D.I. 169.

By order dated February 17, 2005, the Court referred the pending discovery issues to the

Special Master Panel for assignment of a special master, with the Honorable Joseph J. Farnan, Jr.

noting:

5

> I believed that the rulings and instructions I provided to the parties at the January 24, 2005 hearing would avoid further conflict on the pending discovery matters. I apparently was wrong. As explained at the January 24 hearing, **this Court lacks the resources to manage overly contentious discovery disputes** effectively. Therefore, in the circumstances presented in this case, I find appointment of a special master pursuant to Federal Rule of Civil Procedure 53(a)(1)(c) to be warranted. Absent an appropriate finding by the master or me, the costs shall be shared equally.

D.I. 174 (emphasis added). By order dated February 25, 2005, I was appointed Special Master in this matter. D.I. 178.

**Jurisdictional Discovery Disputes Before Special Master**

The additional submissions to and proceedings before the Special Master were not docketed as part of the official record in this case and, therefore, merit summarization and explication for the Court's and parties' consideration of the Special Master's Report and Recommendations.

On March 9, 2005, the Special Master conducted a teleconference with counsel for all parties, including defendant Viewsonic Corporation ("Viewsonic"), to discuss the procedural steps for bringing discovery disputes before the Special Master.[2] The teleconference then turned to the outstanding jurisdictional discovery issues, and Viewsonic was excused from the remainder of the teleconference. The Special Master continued the teleconference with LPL and Tatung to specifically discuss the outstanding jurisdictional discovery disputes. A hearing date on the discovery issues was set for March 30, 2005, and a schedule was set for written submissions by the parties prior to the hearing.

---

[2] The procedures agreed upon during the teleconference were later memorialized in the Special Master's March 11, 2005 Order for Initial Discovery Disputes.

RESP 00046

After reviewing the parties' respective written submissions,[3] the Special Master conducted a lengthy hearing on March 30, 2005 to consider the arguments of LPL and the Tatung Defendants on the outstanding discovery disputes. At that hearing, the Special Master made rulings primarily with respect to the dispute over the counting of interrogatories.[4]

Because time constraints prevented the Special Master from fully addressing the parties' arguments as to the other categories of discovery during the March 30, 2005 hearing, the Special Master and parties agreed to continue the hearing to a later date. Following a teleconference with the parties on April 4, 2005, the Special Master set April 20, 2005 as the date for continuing the hearing and clarified that the hearing would address the remaining disputes as they related to depositions, answers to interrogatories, document production, extension of the jurisdictional discovery period, and sanctions.

On April 19, 2005, one day before the continued hearing date with the Special Master, Tatung America and Tatung Taiwan filed their respective answers to LPL's Complaint, in which each contested the jurisdiction of this Court. D.I. 186-187. One day later – at the start of the April 20, 2005 continued hearing before the Special Master – the Tatung Defendants consented by stipulation to the jurisdiction of this Court, D.I. 188, thereby mooting further consideration of Tatung's objections to the remaining jurisdictional discovery and LPL's motion to extend the period for jurisdictional discovery.

---

[3] As a preliminary matter, the Special Master notes that the parties collectively submitted to the Special Master thousands of pages of materials on their jurisdictional discovery disputes, most without correlation to the case docket, and many as mere attachments from which the Special Master had to glean and organize the facts. In *Brown v. SAP America, Inc.*, C.A. No. 98-507 at *1 (D. Del., March 3, 2004) (Robinson, C. J.) [available as 2004 WL 502221], this Court declined to address discovery motion submissions that totaled 1939 pages as too "voluminous [a] record in connection with motions ostensibly devoid of any material issues of fact."

However, in an attempt to keep the jurisdictional discovery on track and to properly consider the parties' positions on the issue of sanctions, the Special Master has reviewed and considered the complete submissions of both parties, requiring a considerable investment of time. The Court's inclination that sanctions should "go all the way back," if appropriate, necessitated review of select docket items including D.I. 16-17, 19-21, 25, 23-40, 47, 62, 93-94, 98-99, 105, 107-09, 123-26, 128-133, 144, 154, 163-64, 168-89, 174, 178, and 186-88.

[4] The Special Master's rulings with respect to the interrogatories are summarized *infra* at pages 19 to 28.

7

Accordingly, the Special Master turns to, and addresses herein, LPL's motions for sanctions.

## DISCUSSION

*Our system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which [the party] who hides the ball most effectively wins the case.* Abrahamsen v. Tran-State Express, Inc., 92 F.3d 425, 428-29 (6th Cir. 1996).

**I.    Analysis – Imposition of Sanctions**

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 37(d) provides, in pertinent part:

> If a party . . . or a person designated under Rule 30(b)(6) . . . to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, **and among others it may take any action [for sanctions] authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of [Rule 37] . . . In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified** or that other circumstances make an award of expenses unjust.
>
> **The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable** unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c).

Fed. R. Civ. P. 37(d) (emphasis added).

On November 17, 2004, this Court granted LPL's request for jurisdictional discovery and set a 90-day deadline for its completion. At the hearing held on January 24, 2005 on what the Court deemed to be LPL's motion to compel, the Court determined that the categories of

8

discovery identified by LPL in its 30(b)(6) deposition notices to the Tatung Defendants were within the permissible scope of the jurisdictional discovery previously ordered by the Court.

Based on the written submissions of the parties and the conduct of the March 30, 2005 hearing before the Special Master, the Special Master concluded then, and concludes now, that throughout the jurisdictional discovery period LPL exercised good faith and extraordinary effort in attempting to "meet and confer" to resolve Tatung's objections to the discovery sought. In this regard, the record before the Special Master discloses numerous efforts by LPL to support its positions to Tatung with relevant authority, and to address Tatung's objections – including, at times, with offers of compromise and to narrow the discovery sought – each and all vain attempts to persuade Tatung that discovery should go forward.

The record also discloses that, in contrast, the Tatung Defendants demanded capitulation instead of compromise. Tatung unilaterally blocked discovery by asserting layers of objections not supportable under relevant law. Notwithstanding the Court's express findings and prior orders, the Tatung Defendants continued to obstruct LPL from taking jurisdictional discovery through the March 30, 2005 hearing before the Special Master. Specifically, Tatung failed to appear for depositions on multiple occasions, failed to produce witnesses prepared to testify on noticed and relevant topics, and failed to respond to interrogatories and requests for production of documents on the same and/or similar topics.[5]

---

[5]  In their briefing before the Special Master, the Tatung Defendants repeatedly attempt to excuse their actions by recharacterizing the jurisdictional discovery dispute:

> Although necessarily framed as a jurisdictional issue, in practicality the entire dispute was completely avoidable by a change of venue from Delaware to California.

See, e.g., May 20, 2005 Letter Brief from Jeffrey S. Goddess, Esquire, to Special Master at p. 1. This characterization is curious given that the Tatung Defendants never filed motions to transfer venue; they filed only motions to dismiss for lack of jurisdiction. D.I. 16-17. Consequently, the Special Master finds it difficult to ascribe any other motive to the Tatung Defendants' recalcitrance other than their hope that the period set by Court order for jurisdictional discovery would expire and operate to deprive LPL of an opportunity to obtain evidence needed to support a finding of personal jurisdiction.

9

The Special Master therefore concludes, for the reasons discussed below, that sanctions are just and appropriate pursuant to Fed. R. Civ. P. 37 where, as here, LPL made good faith efforts to obtain the discovery without court action and where the Tatung Defendants' failed to comply with their discovery obligations without substantial justification.

**A.     Failure to Appear for Depositions**

    **1.     Legal Standard**

This Court's standard for deposition practice under Rule 30(b)(6) of the Federal Rules of Civil Procedure is well settled:

> The Federal Rules of Civil Procedure allow for a broad scope of discovery that is not limited to admissible evidence, but evidence that is reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Rule 30(b)(6) provides that after receiving a notice of deposition, the corporation should "designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6). Additionally, the deponent has a "duty of being knowledgeable on the subject matter identified as the area of inquiry." *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 148, 151 (D.D.C. 1999).

*Novartis Pharmaceuticals Corp. v. Abbott Laboratories*, 203 F.R.D. 159, 162 (D.Del. 2001); *accord, Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, No. Civ. A. 00-083 at *3 (D.Del., Feb. 18, 2005) (Farnan, J.) [available as 2005 WL440621].

    **2.     Tatung America's Failure to Appear**

On November 17, 2004, the Court ordered a 90-day period of jurisdictional discovery. D.I. 88. Shortly thereafter, LPL noticed a Rule 30(b)(6) deposition of Tatung America, scheduled for December 22, 2004. LPL also noticed additional depositions of Tatung America employees for mid-January. Two days before the noticed Rule 30(b)(6) deposition, Tatung America – under a Court order directed to both sides that they were not to file any motions regarding the jurisdictional discovery – sought leave to file a motion for a protective order and

10

RESP 00050

refused to appear for both the Rule 30(b)(6) deposition and the depositions scheduled for mid-January. D.I. 128.

Tatung then failed to appear for properly noticed depositions, relying upon its own assumption that its request for leave to file a protective order had the same effect as an actual motion, and excused its requirement to appear at the depositions pursuant to Local Rule 30.2. D.I. 128 at p.1, n.1. The Court had previously barred both parties from filing any discovery motions until it decided Tatung's motion to dismiss on jurisdictional grounds, D.I. 93, in order to avoid the delay attendant to just such motions and permit the completion of discovery within the 90-day period allotted. In the face of this prohibition, the Special Master concludes that Tatung proceeded at its own peril and should not be permitted the benefit of the safe harbor created by Local Rule 30.2.

Moreover, a motion for a protective order is governed by Rule 26(c) which provides, in pertinent part "[u]pon motion by a party . . . **for good cause shown** . . . the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c) (emphasis added). Good cause requires a specific showing that, absent the protective order, the movant would suffer "a clearly defined and serious injury." *Glenmede Trust Company v. Thompson*, 56 F. 3d 476, 483 (3d Cir. 1995); *accord Emory v. AstraZeneca Pharmaceuticals,* Civ. A. No. 02-1466 at *1 (D. Del. Sept. 4, 2003) (Farnan, J.) [available as 2003 WL 22136301]; and *Visx Inc. v. LazerSight Inc.*, Civ. A. No. 99-789 at *1-2 (D. Del. Jan. 20, 2001) (Farnan, J.) [available as 2001 WL 34367297].

At the January 24, 2005 hearing on LPL's motion to compel, the Tatung Defendants were clearly unable to show the clearly defined and serious injury necessary to meet the requisite showing of good cause. In addressing Tatung's objections, the Court expressly determined that

11

all of the deposition topics noticed by LPL were within the permissible scope of jurisdictional discovery, D.I. 132 at 38:4-8, and each of them provided the requisite specificity. *Id.* at 42:2-5 ("I think the topics are specific enough that it should be readily apparent what type of person has to come as a designee.").

The Court also flatly rejected Tatung's arguments that depositions of certain of its senior management – so called "apex" depositions – should not go forward. Since an order barring a litigant from taking a deposition would constitute extraordinary relief, the party seeking such a protective order bears the burden of proving that the proposed deponent has nothing to contribute. *See, e.g., Speadmark, Inc. v. Federated Department Stores, Inc.*, 176 F. R. D. 116, 118 (S.D.N.Y. 1997). This is true even if the proposed deponent is a busy person. *Naftchi v. New York University Medical Center*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997).

Tatung's argument that its executives lacked knowledge relating to jurisdiction was, in the Special Master's view, nothing short of specious in light of the fact that several of them – namely David Shan-Juh Chang on behalf of Tatung Taiwan and Robin Tsou and Edward Chen on behalf of Tatung America – had submitted sworn declarations in support of the Tatung Defendants' respective motions to dismiss on jurisdictional grounds. Accordingly, the Court directed that the depositions go forward. D.I. 132 at 56:22-23 ("these depositions ought to be rescheduled"); *See also, Scutellaro v. Walt Disney World Co., Inc.*, Civ. A. No. 92-671, *slip op.* at 6 (D.Del. July 14, 1993) (holding that if a senior executive "has knowledge of matters relevant to the instant suit, his position will not protect him from being deposed").

Following the January 24, 2005 hearing, and consistent with the Court's guidance and rulings, LPL renoticed the Rule 30(b)(6) and other depositions of Tatung America witnesses. Three depositions went forward on February 7-9, 2005. The deposition excerpts submitted to the

RESP 00052

Special Master disclose, in the Special Master's view, a pattern by Tatung's counsel to disrupt, obfuscate and avoid proper discovery during those depositions.[6] The Special Master offers just a few examples:

**(a)** Tatung America failed to produce a Rule 30(b)(6) designee prepared to respond to certain information within the noticed deposition topics:

> Q:  What other retail distribution centers – to what other retail distribution centers does Tatung America ship Hewlett Packard and Compaq products from Compton?
> A:  Other than the fact that I can place a couple of them in Texas, **I don't know.**
> Q:  You can't identify any others then?
> A.  I'm **unable to identify any.**
> Q.  Do you know if there are any other retail distribution centers, besides the Wal-Mart and Sam's Club?
> A.  I think **it's easy to speculate that there are many others.**
> Q.  But do you know whether there are additional ones that you just can't identify?
> A.  Yeah **I know there are others**, sure.
> Q.  Do you have any idea how many, whether it's 10, more than 10, less that 10?  Can you give me any range?
> A.  I'm pretty sure it's more than 10.
> Q.  Do you know if it's more than 20?
> A.  No, **I don't know** for sure.
> Q.  Do you know in what states any of the other retail distribution centers are located, besides Texas?
> A.  I'm sorry, **I don't know** any other specific locations.
> LPL COUNSEL:  Mr. Weems, I assume that for information Mr. Sun is not able to provide, Tatung America will provide another witness as soon as Mr. Sun is finished testifying to provide that information.
> TATUNG COUNSEL:  No, Mr. Sun has been prepared on all these topics and as to what he can remember today and what he can't remember today.
> LPL COUNSEL:  Well does Tatung America intend to produce documents then that would provide this information?
> TATUNG COUNSEL:  I'm not here to be interrogated, Mr. Christenson.  You can spend your time asking questions of the witness.
> LPL COUNSEL:  Okay.  I'll take that as a "no."

---

[6] Although Tatung has designated these deposition transcripts as "Highly Confidential," the Special Master does not consider any of the information in the deposition excerpts contained herein to warrant a "confidential" designation.

RESP 00053

Transcript of February 9, 2005 Deposition of Andrew Sun ("Sun Deposition") at 25:5-25 to 26:1-19 (emphasis added).

**(b)**     Tatung's counsel disrupted the flow of depositions with frequent requests for recess (some within minutes of the start of depositions)[7] and by inserting frequent and improper objections, such as the following:

> Q.  What is the Rancho Dominguez facility called?  Or what type
> of facility does Tatung America have in Rancho Dominguez?
> TATUNG COUNSEL: **Objection, vague.**
> Q.  You can answer.
> A.  It's called – we call it C plant.

Sun Deposition at 17:5-11.

> Q.  So all of the Hewlett Packard and Compaq personal computers
> served at that facility are manufactured by Tatung Company?
> TATUNG COUNSEL: **Objection, calls for speculation.**
> LPL COUNSEL:  I'm just trying to clarify, I think that's what he
> said.  But you tell me.
> A.  Yeah, essentially all of them.

Sun Deposition at 18:10-17 (emphasis added).

> Q.  In 2004 were all of the computer monitors distributed out of
> that facility LCD monitors?
> A.  No.  Some of them were CRT.
> Q.  Approximately what percentage in 2004 were LCD monitors?
> A.  I couldn't give you a good estimate.  I'd say the majority of
> them are LCDs.
> Q.  So more than 50 percent?
> TATUNG COUNSEL: **Objection. Asked and answered.**
> THE DEPONENT:   Yeah, I think more than half of them are
> LCDs.

Sun Deposition at 37:7-17 (emphasis added).

> Q.  Mr. Sun, do you agree that the distribution center in Arlington
> distributes products?
> A.  It prepares products for distribution.

---

[7]  The "need to break" was asserted by both attorneys representing Tatung and, thus, appears to be tactical rather than motivated by any other need.

RESP 00054

    Q. And specifically for distribution to retail distribution centers.
       Right?
    TATUNG COUNSEL: **Objection. Argumentative.**
    Q. You can answer
    TATUNG COUNSEL: **And calls for speculation.**

Sun Deposition at 38:5-13 (emphasis added).

    Q. What type of operation does Tatung Company have in El
       Paso?
    TATUNG COUNSEL: **Objection. Calls for speculation.**

Sun Deposition at 89:23-25 to 90:1 (emphasis added).

    Q. For 2004 how much revenue did Tatung America derive from
       LCD products sold or delivered in Delaware?
    TATUNG COUNSEL: **Objection.** Scope, post complaint sales
    **aren't relevant** for the jurisdictional inquiry.
    THE DEPONENT:   I'm afraid I don't know.
    Q. Since January 1, 2000 how much revenue has Tatung America
       derived from L17AMTN monitors sold or delivered in
       Delaware?
    TATUNG COUNSEL:  **Objection,** time, and times prior to the
       issuance of the patent, prior to the filing of the complaint **are**
       **not relevant**.

Sun Deposition at 108:25 to 109:1-11 (emphasis added).

**(c)**    Tatung counsel also engaged in an abusive "tag team" approach, with more than one

attorney asserting objections:

    Q. And my understanding at that time was you told me there were
       no such operations. And I want to be very sure I understand
       whether Tatung Company has any other operations in the
       United States beside [t]he El Paso Texas facility that you just
       mentioned.
    TATUNG COUNSEL (#1):  Could we have the question read
       back?
    TATUNG COUNSEL (#2):  **Objection.**
    LPL COUNSEL: Well, actually that wasn't a question.  I was
       leading up to a question.
       But the question is, does Tatung Company have any business
       locations in the United States other than El Paso Texas.
    TATUNG COUNSEL (#1):  Now let's have the full question read
       back with its pre-preamble.
    (Record read)

15

TATUNG COUNSEL (#2): And I **object** to the extent it mischaracterizes prior testimony. I'm going to **object** that the prior record speaks for itself. I'm going to **object** that the question is unintelligible and confused.

And subject to that, you can answer, if you can.

THE DEPONENT: Other than the El Paso warehouse, I don't know of any other Tatung Company operations in the United States.

Sun Deposition at 94:24-25 to 95:1-24 (emphasis added).

Q: Do you know whether Tatung Company has manufactured LCD products for ViewSonic Corporation since January 1, 2000.

TATUNG COUNSEL (#1): **Asked and Answered.** You can answer again, sir.

TATUNG COUNSEL (#2): And I just want to further note . . . Mr. Baum may not be aware of it, **ViewSonic counsel has specifically objected to the subpoenas issued to it.** Or actually I guess the notice or document request, something of that sort that was issued to it within the last 24, 48 hours. **So based on Viewsonic's objection, I think we have an obligation to instruct.**

TATUNG COUNSEL (#1): And we'll consider your questions as you ask them and keep that objection in mind.

So can we have the last question read back, please?

(The reporter reads back the question as follows:

"Q. Do you know whether Tatung Company has manufactured LCD products for Viewsonic Corporation since January 1, 2000?")

THE DEPONENT: I don't know.

Sun Deposition at 134:18-25 to 135:1-14 (emphasis added).

**(d)**     Tatung's counsel used objections to improperly coach deponents during their testimony:

Q. If you wanted to find out where those retail distribution centers for those various companies are located, how would you do that? Are there documents that you would be able to review that would give you that information?

TATUNG COUNSEL: **Objection. Argumentative.** The witness has already testified they don't do the distribution part. They do the boxing.

LPL COUNSEL: I object to speaking objections that coach the witness. That's improper. The record will reflect whatever the testimony was. And there's a question pending.

16

Sun Deposition at 40:21-25 to 41:1-7 (emphasis added).

> Q. Does Tatung America keep copies of the monthly sales reports?
> A. We can always get the number from the computer.
>
> **TATUNG COUNSEL: Listen to the question, Robin. He asked you if Tatung keeps copies. He didn't ask if you can you always get --**

Transcript of February 7, 2005 Deposition of Robin Tsou ("Tsou Deposition") at 39:17-22.

> Q. Does Tatung America have lists of customers, for computer monitors?
> TATUNG COUNSEL: Asked and answered.
> THE DEPONENT: We don't have a customer list, but we can trace –
> **TATUNG COUNSEL:    He asked you if you have a customer list.**

Tsou Deposition at 41:4-10 (emphasis added).

Finally, the Special Master notes that the February 2005 depositions of Tatung America had to be conducted without benefit of Tatung America's response to the interrogatories and document production propounded by LPL more than two months earlier. Although the Court had directed both Tatung Defendants at the January 24, 2005 hearing that responses to the interrogatories and responsive documents should be produced before any depositions went forward, Tatung America stood on its objection to the interrogatory count and did not provide further interrogatory responses. Tatung America produced only 46 pages of responsive documents although, as will be discussed later herein, deposition testimony disclosed that other responsive documents clearly existed.

**3.    Tatung Taiwan's Failure to Appear**

On January 20, 2005, LPL noticed seven depositions of Tatung Taiwan, namely: one pursuant to Fed. R. Civ. P. 30(b)(6); one of David Shan-Juhn Chang, whose declaration supported Tatung Taiwan's jurisdictional challenge; one of Wen Yen K. Lin, President of Tatung

RESP 00057

Taiwan and an officer of Tatung America, who had spoken publicly about Tatung's global operations; and four of other employees of Tatung Taiwan. The depositions were noticed for Taipei, Taiwan during the period of February 15-18, with four short depositions scheduled for one day.

LPL's counsel confirmed the depositions by letter dated January 21, 2005, stating:

> **These foreign depositions will require us to incur substantial pre-paid, non-refundable expense.** Already, [Taiwan America] has caused substantial inconvenience and costs to be incurred (including, for example, attorney fees and travel costs). We will ask the Court for relief at the appropriate time, including, but not limited to, full reimbursement. Similarly, we expect [Tatung Taiwan] to fulfill its obligation to attend these depositions and, if necessary, we will look to you and/or [Tatung Taiwan] to reimburse us for any expense that we incur as a result of further misconduct.

January 21, 2005 Letter from Cass W. Christenson, Esquire, to Robert C. Weems, Esquire (emphasis added). By letter dated January 27, 2005, LPL's counsel confirmed Tatung Taiwan's request for interpreters fluent in Mandarin Taiwanese for these depositions.

The record before the Special Master reflects that Tatung requested that LPL postpone the Taiwan depositions during a conversation with LPL's counsel on February 9, 2005. In a February 10, 2005 letter from LPL's counsel to Tatung's counsel, LPL declined to postpone the depositions, but suggested a compromise that might avoid the need for "apex" depositions:

> [W]e cannot accommodate your request to postpone the depositions considering Tatung's unjustified refusal to produce any documents. Additionally, we are convinced that the only way we will ever obtain the information we need (and you are required to produce) is to depose the individuals we have noticed, just like we had to do with Tatung America. As you know, these depositions have been noticed since January 20 and the document requests and interrogatories to Tatung were served at the end of November, 2004. Moreover, we have already purchased airplane tickets, contracted with a court reporter and an interpreter, and booked conference rooms and hotel rooms. All of those have strict cancellation policies. **In the spirit of cooperation, however, we**

18

RESP 00058

> are willing to reschedule the depositions of W.S. Lin, K.Y. Lang, and A.C. Wang [the three "apex" deponents], currently scheduled for Tuesday, February 15, to Saturday February 19, if Tatung Company agrees to produce the documents referenced in our motion to compel on Tuesday, February 15 at 9:00 a.m. at our counsel's hotel where they will be staying in Taiwan. Depending on the content of the documents and whether the deponents for the remaining depositions noticed for next week are forthright, including whether Tatung's 30(b)(6) witness is adequately prepared, we may be in a position to decide that the depositions of these three individuals are unnecessary.

February 10, 2005 Letter from Lora A. Brzezynski, Esquire, to Robert C. Weems, Esquire (emphasis added).

Approximately 20 days after the depositions had been renoticed, counsel for the Tatung Defendants advised LPL's counsel by letter dated February 11, 2005 – the day before LPL's counsel was set to depart for Taiwan for the depositions – that Tatung Taiwan and its employees would not appear for the depositions:

> Due to the present unresolved discovery issues, [LPL's] changing position on document production, and your refusal to defer overseas deposition until such matters have been worked out, we have been compelled to move for a protective order and to ask the Court to appoint a special master. Accordingly, we will not be producing deponents in Taiwan until such matters are resolved either by agreement or with the involvement of the Court.[8]

February 11, 2005 Letter from Robert C. Weems, Esquire to Lora A. Brzezynski, Esquire (emphasis added). As of the date of the March 30, 2005 hearing with the Special Master, Tatung Taiwan had not made any deponents available to LPL.

The Special Master finds that, against this backdrop, the claims by the Tatung Defendants of good cause and substantial justification ring hollow, and the Special Master concludes that,

---

[8] According to counsel for LPL: "Tatung never objected to the location or dates of these depositions. Tatung also did not object to the Rule 30(b)(6) topics (the same topics that the Court had approved for Tatung America's deposition) until <u>after</u> refusing to appear for the depositions." March 18, 2005 Letter from Richard D. Kirk, Esquire, to Vincent J. Poppiti, Special Master (emphasis in original).

RESP 00059

pursuant to Fed. R. Civ. P. 37(d), sanctions are appropriate for the repeated failure of the Tatung

Defendants to appear for depositions, and for obstructive tactics at the depositions at which they

did appear. In this regard, the Special Master finds that Tatung wielded its unilateral and last

minute refusals to appear at depositions like the tactical weapons of delay the Special Master

determines them to be. The Special Master therefore recommends that Tatung pay LPL's

reasonable expenses caused by its failure to appear for and its obstruction of depositions,

including attorney fees and Special Master fees. Fed. R. Civ. P. 37(d); *Haraway v. NASCAR,*

*Inc.*, 213 F.R.D. 161, 165-66 (D.Del. 2003) (awarding defendants attorneys' fees and costs for

plaintiff's failure to appear at deposition).

**B.**    **Failure to Respond to Interrogatories**

   **1.**    **Legal Standard**

   Pursuant to Federal Rule of Civil Procedure 33(b):

> **Each interrogatory shall be answered separately and fully in**
> **writing under oath**, unless it is objected to, in which event the
> objecting party shall state the reasons for objection and shall
> answer to the extent the interrogatory is not objectionable . . . **All**
> **grounds for and objection to an interrogatory shall be stated**
> **with specifity. Any ground not stated in a timely objection is**
> **waived** unless the party's failure to object is excused by the court
> for good cause shown.

Fed. R. Civ. P. 33(b)(1)(4) (emphasis added). Under Rule 37, "an evasive or incomplete

disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed.

R. Civ. P. 37(a)(3). When a party fails to comply with the provisions of Rule 33, "the court . . .

may make such orders in regard to the failure as are just." *Woulard v. Brown*, No. Civ. A. 01-

350 JJF at *1-2 (D.Del. Feb. 24, 2004) (Farnan, J.) [available at 2004 WL 758358] (quoting Fed.

R. Civ. P. 37(d)).

RESP 00060

2.    <u>**The Tatung Defendants' Failure to Respond**</u>

On November 29, 2004, LPL served twenty (20) interrogatories upon each of the Tatung Defendants. D.I. 98. Although there are a few differences between the interrogatories served on Tatung Taiwan and Tatung America, the parties agree that the sets of interrogatories propounded on each Tatung defendant are substantially similar in substance. *See, e.g.,* March 30, 2005 Transcript at 58:17-18 (Counsel for Tatung Defendants: "they're almost certainly identical").

The Tatung Defendants responded respectively to the interrogatories propounded by LPL on or about January 5, 2005. D.I. 113. Their responses are noteworthy in their similarities and by their stunning lack of response. Each Tatung Defendant objected to every interrogatory, asserting primarily boilerplate objections. Additionally, the Tatung Defendants argued that, when subparts are counted, LPL's interrogatories exceeded the maximum of 50 interrogatories permitted under Local Rule 26.1. Each Tatung Defendant renumbered the interrogatories posed by LPL's first four interrogatories into more than 50 subparts, and thereafter rested on its objection to count in refusing to further respond to interrogatories 5-20. Relying upon its boilerplate objections and its objections as to count, Tatung Taiwan did not answer any interrogatories. Tatung America partially answered only two interrogatories (Nos. 2 and 4), relying upon the selfsame objections.

At the January 24, 2005 hearing before Judge Farnan, the Court had made clear that the Tatung Defendants should respond to LPL's interrogatories before LPL's depositions of Tatung America and Tatung Taiwan – then scheduled for February 15 to 18 – took place:

> Interrogatories and documents, you're absolutely correct, should be resolved before deposition practice occurs. And we're focused on [late] February . . . **That's material that the party seeking deposition wants to have before they start the deposition** . . . **if there [are] interrogatories that are properly served, they need to be responded to,** and the same with documents.

21

RESP 00061

D.I. 132 at 49:14-19 and 50:6-11 (emphasis added). The Court directed that "all . . . answers to interrogatories ought to . . . be given over by the end of this week, the very first part of next week." D.I. 132 at 56:17-21.

By directing Tatung to respond to LPL's interrogatories, the Court – in the Special Master's view – impliedly rejected Tatung's argument, suggested by *Moore's Federal Practice*, that it could preserve its objections to supernumerary interrogatories by answering (or objecting) up to the numerical limit and asserting boilerplate objections to the remainder without answering.[9] Notwithstanding the Court's direction, the Tatung Defendants did not supplement or further respond to LPL's interrogatories, and stood on their boilerplate objections and objections to count. On February 7, 2005, LPL requested leave to file an expedited motion to compel jurisdictional discovery, D.I. 154, and the issues involving several discovery disputes – including the disputed interrogatory count – were ultimately brought before the Special Master.

In this regard, the Special Master examined the primary authority relied upon by the Tatung Defendants in challenging LPL's interrogatory count, that being *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684 (D. Nev. 1997). According to the *Kendall* court:

> The Court therefore holds that **interrogatory subparts are to be counted as part of but one interrogatory for the purpose [Local Rule 33-1(b)] if they are logically or factually subsumed within and necessarily related to the primary question** . . . [T]he more difficult question is determining whether the subparts are "logically or factually subsumed within and necessarily related to the primary question." . . . Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to **examine whether the first question is primary and subsequent questions are secondary to the primary question.** Or, can the subsequent question stand alone? Is it independent of the first question? **Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate**

_____
[9]   7 Moore's Federal Practice § 33.30[1].  *But see, id.* at § 33.171 ("Unstated grounds for objections normally are waived.").

RESP 00062

> **interrogatories, notwithstanding that they are joined by a conjunctive word and may be related.**

174 F.R.D. at 685-86 (emphasis added).

After reviewing the interrogatory count urged by Tatung against the standard articulated in Tatung's own authority, the Special Master concluded that the position of the Tatung Defendants on the disputed interrogatory count was not supported by *Kendall.* Accordingly, at the hearing held on March 30, 2005, the Special Master ruled as follows with respect to the disputed interrogatory count:

> First interrogatory [,] I need not read it. The first is counted as two by both Tatung defendants. I consider it to be **one** seeking the identity of those individuals who assisted with the Tatung defendants' discovery responses.

March 30, 2005 Transcript at 58:22-24 and 59:1-2 (emphasis added).

> Interrogatory No. 2, Tatung counts No. 2 as 12 interrogatories. I'm satisfied that it is legitimately considered to be **one** interrogatory requesting information on products manufactured, imported into, purchased, offered for sale and/or sold by Tatung in Delaware or [,] as to the Tatung company [,] in the United States.

*Id.* at 58:17-23 (emphasis added).

> Interrogatory No. 3 Tatung counts as 12. I'm also satisfied that that is legitimately **one** seeking information on Tatung's manufacture, importation, purchase, offer for sale, and/or sale of a particular line that is visual display products in the United States.

*Id.* at 59:1 and 60:1-5 (emphasis added).

> [Interrogatory] No. 4 Tatung counts as 32 interrogatories. The Tatung defendants. I'm satisfied it is legitimately considered to be **one** seeking information on the amount of money made by the defendant[s] from the sale of its products and/or services in Delaware.

*Id.* at 60:6-10 (emphasis added).

> [Interrogatory] No. 5, I would note that No. 5 was neither answered nor counted by Tatung because the interrogatories that I

23

RESP 00063

have just discussed with you have exceeded 25 by Tatung's count. I'm satisfied No. 5 is **one** aimed at determining how much money each Tatung defendant realized from the import, sale, or shipment of products intended for the United States market.

*Id.* at 60:11-17 (emphasis added).

[Interrogatory] No. 6, I'm satisfied that that is also legitimately **one** aimed at identifying each work location in the United States where Tatung has employed people since January the 1st 2000.

*Id.* at 60:18-21 (emphasis added).

[Interrogatory No.] 7 is **one** requesting information for each work location identified by Tatung's response to interrogatory No. 6.

*Id.* at 60:24 and 61:1-2 (emphasis added).

[Interrogatory No.] 8 is **one** aimed at quantifying Tatung's revenues from the United States.

*Id.* at 61:3-4 (emphasis added).

[Interrogatory No. 9] is legitimately **one** aimed at identifying Tatung customers of visual display products in the U.S. as to Tatung America and related information.

*Id.* at 61:9-11 (emphasis added).

[Interrogatory No.] 10 is legitimately **one** aimed at identifying shipments of Tatung visual display products to the U.S. as to Tatung America and related information.

*Id.* at 61:12-14 (emphasis added).

[Interrogatory No.] 11 is **one** aimed at identifying, including by person as to Tatung America, Tatung's shipments and delivery of products or services in Delaware and related information.

*Id.* at 61:15-18 (emphasis added).

[Interrogatory No.] 12 is **one** aimed at identifying Tatung's U.S. distributors.

*Id.* at 61:19-20 (emphasis added).

[Interrogatory No.] 13 is **one** seeking the identity of Tatung's distribution network and channels through which its visual display

24

RESP 00064

products are distributed throughout the United States or to the United States or to Delaware.

*Id.* at 61:21-24 (emphasis added).

Interrogatory No. 14 I consider to be **four** separate interrogatories seeking information concerning the chain of distribution as to four discrete products, all of which were offered or purchased through different retail channels.

*Id.* at 62:1-5 (emphasis added).

[Interrogatory No.] 15 I consider to be **four** in that it seeks each step in the chain of distribution by which four separate discrete pieces of equipment arrived in Delaware.

*Id.* at 62:6-9 (emphasis added).

[Interrogatory No.] 16 I consider to be **two** in that it seeks, first, all of Tatung's products available for purchase through the Internet and, second, the identity of Web site vendors authorized to sell Tatung's visual display products.

*Id.* at 62:10-14 (emphasis added).

[Interrogatory No.] 17 is **one** seeking reports generated by Tatung with respect to the distribution, shipment, and sale of its visual display products in or to the United States.

*Id.* at 62:15-18 (emphasis added).

[Interrogatory No.] 18 is **one** asking that Tatung delineate its contacts with Delaware.

*Id.* at 62:19-20 (emphasis added).

[Interrogatory No.] 19 is **one** asking Tatung to identify any affirmative steps it's taken to prevent its products from reaching the Delaware market.

*Id.* at 62:21-23 (emphasis added).

[Interrogatory No.] 20 is **one** requesting the brand names and related information for Tatung visual display products manufactured, marketed, imported, distributed and/or sold in the United States.

*Id.* at 62:24 and 63:103 (emphasis added).

**RESP 00065**

Accordingly, the Special Master concluded that the interrogatories propounded by LPL to each Tatung Defendant totaled 27, well within the 50 interrogatories permitted under Local Rule 26.1(b). LPL then pressed for an order requiring the Tatung Defendants to respond to the interrogatories within a two-week period.

Having lost on the count issue, the Tatung Defendants requested that the Special Master proceed to consider their other objections to the interrogatories. In Tatung's view, it couldn't object with specifity to certain of the interrogatories until the primary issue of count was resolved. March 30, 2005 Transcript at 72:1-6 ("until we have a resolution of the issue of the counting, again, it's not possible because we don't know exactly where and how we have to be looking.").

LPL argued, with supporting authority, that to the extent other specific objections had not been raised in the Tatung Defendants' responses, those objections had been waived. March 30, 2005 Transcript at pp. 64-70, and 90:16-19. Tatung requested an opportunity to submit contrary authority, *Id*. at 92:2-7, and the Special Master set a schedule for written submissions. *Id*. at 96:13-22. Thereafter, the Special Master received a March 31, 2005 submission from Tatung's counsel stating he had been mistaken about the legal support for Tatung's position. On April 1, 2005, LPL renewed its request to compel the Tatung Defendants to respond to the outstanding interrogatories. However, the Special Master's further consideration of discovery issues relating to the interrogatories was mooted by the April 20, 2005 stipulation by the Tatung Defendants that, *inter alia*, consents to the jurisdiction of this Court. D.I. 188.

In turning to the issue of sanctions, the Special Master concludes that sanctions are appropriate for the unjustified failure of the Tatung Defendants to respond to interrogatories. It is undisputed that the Court ordered jurisdictional discovery on November 17, 2004 and set a 90-

RESP 00066

day period (until February 15, 2005) for its completion. It is also undisputed that LPL propounded jurisdictional interrogatories upon the Tatung Defendants on or about November 29, 2005. Finally, it is undisputed that the Tatung Defendants refused to respond to interrogatories on the basis of boilerplate objections and/or their objections as to count.

Tatung participated in the January 24, 2005 hearing before the Court with the knowledge that the Court considered it to be a hearing on a motion by LPL to compel discovery responses from Tatung. At that hearing, the Court directed that any incomplete responses to interrogatories should be submitted by Tatung to LPL within a week. It also cautioned Tatung that it was subject to sanctions if it mistakenly relied upon its objections to interrogatory count:

> [T]hat rule has been around so long, lawyers ought to be able to count . . . but **if it's a counting problem, you better be sure you're going to win it** by a standard beyond a reasonable doubt, . . . and if you're arguing over whether [their] subparts are really questions, just think about that for a minute. That's even kind of a waste of a special master's time, **unless they're really playing with you. And then they're going to get sanctioned.** Not [just Tatung], but anybody that's fighting that kind of a thing on that kind of basis, you know, they're not going to do well.

D.I. 132 at 51:7-12; 52:10-24, and 53:1 (emphasis added). The Special Master concluded at the March 30, 2005 hearing that Tatung's position – of counting the first four interrogatories propounded by LPL as numbering in excess of 50 interrogatories -- was not an argument supported by even Tatung's own authority.

Pursuant to Rule 33, a party's answers or objections to interrogatories must be served within 30 days. Fed. R. Civ. P. 33(b)(3). Objections to interrogatories must be stated specifically and with particularity so that the objection can be reviewed and understood by both the opposing party and the Court. Fed. R. Civ. P. 33(b)(4); *Josephs v. Harris Corp.*, 677 F. 2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to

27

an interrogatory. On the contrary, the party resisting discovery 'must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive'") (citation omitted). *See also, Walker v. Lakewood Condo. Owners Assoc.*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all"). The Special Master concludes that the Tatung Defendants' objections to interrogatories were classic boilerplate and completely fail to meet the specificity test.

Having considered the parties' written submissions on the issue of sanctions, the Special Master concludes that sanctions are appropriate, pursuant to Fed. R. Civ. P. 37(d), where the failure of the Tatung Defendants to properly respond to interrogatories was neither substantially justified nor supported by relevant authority. The Special Master therefore recommends that Tatung pay LPL's reasonable expenses caused by its failure to respond to LPL's interrogatories, including attorney fees and Special Master fees. Fed. R. Civ. P. 37(d); *see also, Haraway,* 213 F.R.D. at 165-66 (noting "courts have readily awarded sanctions against individuals who have in some measure complied with Rule 37(d) but have violated the basic requirement of the Rule to cooperate in discovery."); *Woulard,* 2004 WL758358 at *1-2 (applying Rule 37(d) to sanction plaintiff who failed to respond to interrogatories or produce discovery).

**C.    Failure to Produce Requested Documents**

    **1.    Legal Standard**

Pursuant to Federal Rule of Civil Procedure 34(b):

> **The party upon whom the request is served shall serve a written response within 30 days after the service of the request . . . The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection**

RESP 00068

> permitted of the remaining parts. The party submitting the request may move for an order under Rule 37(a) with respect to any objection to or other failure to respond to the request or any part thereof, or any failure to permit inspection as requested.
>
> A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

Fed. R. Civ. P. 34(b) (emphasis added). Under Rule 37 "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3). When a party fails to comply with the provisions of Rule 34, "the court . . . may make such orders in regard to the failure as are just." *Woulard*, 2004 WL 758358 at *1-2 (quoting Fed. R. Civ. P. 37(d)).

### 2.    The Tatung Defendants' Failure to Produce

On November 29, 2004, LPL served requests for production of documents upon each of the Tatung Defendants. D.I. 98. The Tatung Defendants responded only by asserting boilerplate objections to the production requests, and failed to produce any documents when they served their objections to LPL on or about January 5, 2005. D.I. 113.

At the January 24, 2005 hearing with the Court, counsel for LPL – emphasizing the importance of certain of those documents to scheduled depositions – urged the Court to compel the production of responsive documents:

> *LPL Counsel*:    [W]e have served interrogatories, and we also served document requests in early December. And as of today, Your Honor, we haven't received a single document. Obviously, it would facilitate the deposition if I had in advance some of the documents. For example, Your Honor, one of the reasons I gave you [copies of the declarations submitted in support of Tatung's jurisdictional challenge] is that they refer in their declarations to records that they relied upon to put forth the facts, which include things like they are selling $132 million of product in the U.S. . . . . that's in their own papers. So they've put those numbers in the

29

RESP 00069

papers. They have also said those are based on specific records that they've reviewed, yet I don't have those records.

> Your Honor, I would like to have those records before I take these depositions.

*Tatung Counsel*: Sounds like it's something he should have. . . He should have those documents.

*The Court*: Interrogatories and documents, you['re] absolutely correct, should be resolved before deposition practice occurs. And we're focused on [late] February . . . That's material that the parties seeking deposition wants to have before they start the deposition . . . If there's interrogatories that are properly served, they need to be responded to, **and the same with documents. . . . You've got to give them up.**

*Tatung's Counsel*: **We'll absolutely give them up.**

D.I. 132 at pp. 48-50 (emphasis added). The Court concluded with the following direction to Tatung: "It seems to me that all the documents relative to the declarations that [LPL] cited . . . ought to be able to be given over by the end of this week, the very first part of next week." *Id.* at 56:17-21.

On January 27, 2005, counsel for LPL confirmed that Tatung's counsel had agreed to forward to LPL by January 31 "all of the documents that the Tatung defendants agreed to produce and their responses to the request for documents and all of the documents discussed at the January 24, 2005 hearing." January 27, 2005 letter from Cass W. Christenson, Esquire to Robert C. Weems, Esquire. Tatung America subsequently produced only 46 pages of documents; Tatung Taiwan produced nothing. By letter dated February 3, 2005, LPL's counsel confirmed that he had been advised that counsel for Tatung was "not aware of any intention to produce further documents." In response, LPL advised that it would file a motion to compel unless it received assurance that all responsive documents would be produced. February 3, 2005 letter from Cass W. Christenson, Esquire to Robert C. Weems, Esquire. Roadblocked again,

RESP 00070

LPL moved on February 7, 2005 for leave to file an expedited motion to compel jurisdictional discovery from the Tatung Defendants, including a request to compel the production of documents. D.I. 154.

While LPL's second motion to compel was pending, the re-noticed depositions of Tatung America proceeded without any further document production by either of the Tatung Defendants. During those depositions, witnesses identified the existence of documents that had not been produced, and that clearly appear to be responsive to LPL's requests for production. For example:

> Q:  So is it your understanding that the document marked TUS 36 and TUS 37 does not include any sales or shipments to Delaware for any time after December 31, 2003?
>
> A:  That's how it appears to me.
>
> Q.  And is it your testimony that you've reviewed a **sales tax report that shows sales and shipments of products to Delaware for the period that includes 2004**?
>
> TATUNG COUNSEL:  Objection. Asked and answered.
>
> THE DEPONENT:  Yeah, my recollection is not that clear but that's what I recall.
>
> LPL COUNSEL:  And [addressing Tatung counsel], as I understand Tatung America's position, Tatung America does not intend to provide that document during this deposition. Is that right?
>
> TATUNG COUNSEL:  You can ask your [next] questions, counsel.

Sun Deposition at 107:24-25 to 108:1-15 (emphasis added).

> Q.  Let's talk about the records that Tatung America keeps with respect to product sales. Does Tatung America have documents that show how many LCD monitors it sells each month?
>
> A.  Yes.
>
> Q.  What are those documents called?
>
> A.  **Mon[th]ly sales report**.
>
> Q.  Who prepares the monthly sales report?
>
> A.  I.T. room.
>
> Q.  Did you say I.T. room?
>
> A.  Yes.

31

**RESP 00071**

Q.  And is that based on information in Tatung America's database?
A.  Yes.
Q.  Does the report then go to you, Mr. Tsou, as manager?
A.  Yes, I will have the report.
Q.  You receive the monthly sales reports?
A.  Yes.

Tsou Deposition at 38:18-25 to 39:1-11 (emphasis added).

Q.  What **information is included in the monthly sales report**?
A.  The **models** and the **customers** and the **quantity**.
Q.  Does it give a **dollar amount**?
A.  Yes.
Q.  When you say "models," would an example of a model be the L17AMTN?
A.  That's one of the models.
Q.  So from the monthly sales report can you determine how many of a particular model were sold each month?
A.  Yes.
Q.  How far back do the monthly sales reports go?
A.  I don't know.
Q.  Since the time that you have been a Sales Manager, have there always been monthly sales reports?
A.  Yes.

Tsou Deposition at 44:1-17 (emphasis added).

Q.  How can you trace customers, of monitors?
A.  Through the computer system.
Q.  Does Tatung America have documents that show where products were shipped?
    Let me ask it again.  Let me ask it again, more specifically.
    Does Tatung America have **documents showing where computer monitors are shipped**?
A.  Yes.

Tsou Deposition at 41:17-24 (emphasis added).

Q.  Are you familiar with any documents called inventory reports?
A.  Our inventory report?
Q.  Yes, at Tatung America.
A.  Yes.
Q.  What is an inventory report?
A.  To show the products we have on hand.
Q.  Would that include computer monitor products?
A.  Yes.

32

RESP 00072

> Q. So inventory reports would show the computer monitor products that Tatung America has available in its inventory for sale?
>
> A. Yes.
>
> Q. Who prepares inventory reports? Well, first of all, are inventory reports prepared on a regular basis at Tatung America?
>
> A. Yes.
>
> Q. How often?
>
> A. Every week.

Tsou Deposition at 65:19-22 to 66:1-12 (emphasis added).

As of the March 30, 2005 hearing held before the Special Master, Tatung Taiwan had still not produced any documents whatsoever. Tatung America had not produced any additional documents to supplement its 46 page production. According to counsel for LPL, although additional responsive documents were identified during depositions of Tatung America employees, these responsive documents were never produced:

> **The depositions went forward with essentially — I was essentially in the dark without documents or interrogatory responses.** [I] proceeded with the depositions which I had to do because we were unable to obtain an agreement from [Tatung's] counsel to extend our discovery period. So we had a February 22 cutoff. Again, there was a sense of urgency to try to complete all this discovery. **[Tatung] would agree neither to provide additional time for discovery, nor to provide additional discovery.**
>
> We proceeded with the depositions and during the three depositions, which were on consecutive dates, February 7th, 8th, and 9th, I repeatedly asked during those depositions when **witnesses would identify documents that were on-site,** that [could we] take a break and the witness be permitted to obtain documents. I was consistently rebuked and **no further documents were produced during those depositions.**

March 30, 2005 Transcript at 23:10-15, 20-24 and 24:1-3 (emphasis added).

LPL's counsel further represented that, while its motion to compel was pending, LPL sought to revolve the impasse by voluntarily paring down the categories of their document

33

RESP 00073

requests from approximately 42 categories to approximately 18 categories of documents "just to get the most minimum necessary information as quickly and efficiently as we could." March 30, 2005 Transcript at p. 24. In response to this offer, Tatung countered that it would agree only to create a special report that produced information with respect to only those models of Tatung equipment that LPL accused of infringement. However, Tatung's counteroffer was conditional on LPL's agreement to severely restrict or forego all other jurisdictional discovery, including depositions. The "catch 22" of Tatung's counteroffer was that, without the additional discovery from Tatung, LPL could not identify for Tatung all of the accused products necessary to permit the creation of a meaningful report. *Id.* at pp. 27-31. The impasse manufactured by the Tatung Defendants therefore continued unabated, with LPL counsel representing to the Special Master at the March 30, 2005 hearing:

> We are now four months into jurisdictional discovery. We have **essentially no interrogatory answers, we have 46 pages of documents from Tatung America, zero documents from Tatung Company, and we have got no deposition testimony from Tatung Company.**

March 30, 2005 Transcript at 34:7-10 (emphasis added).

Pursuant to Rule 34, a party must produce documents for inspection within 30 days after the service of the request. Fed. R. Civ. P. 34(b). It is undisputed that throughout the pendency of the jurisdictional discovery period, Tatung Taiwan refused to produce any documents whatsoever responsive to LPL's document request. Tatung America produced only 46 pages of responsive documents. It is clear from the transcript of the parties' January 24, 2005 hearing before the Court that the Court did not expressly excuse the Tatung Defendants' duty to produce documents for inspection. To the contrary, the Court expressly instructed Tatung:

> That's material that the party seeking deposition wants to have before they start the deposition. So as a general matter if [there

RESP 00074

> are] interrogatories that are properly served, they need to be responded to, and **the same with documents**. And we all agree.

D.I. 132 at 50:6-12 ((emphasis added).

In addition to those documents the Special Master ordered produced at the March 30, 2005 hearing, it is clear to the Special Master that, at a minimum, the documents reviewed by those who submitted declarations in support of Tatung Taiwan's motion to dismiss on jurisdictional grounds would have been within a subset of documents responsive to LPL's document production requests. *See* D.I. 20. It is also clear from the Special Master's review of the transcripts of the depositions of Tatung America and its employees that certain documents reviewed by declarants – as well as other documents responsive to LPL's document requests – exist, but were not produced. *See supra* at pp. 29-31 (citing, e.g., sales tax report that shows sales and shipments of product to Delaware for period including 2004; monthly sales reports, computer shipment reports, inventory reports, and reports of transactions with third party vendors).

Therefore, having considered the parties' written submission on the issue of sanctions, the Special Master concludes that sanctions are appropriate, pursuant to Fed. R. Civ. P. 37(d), where the failure of the Tatung Defendants to properly produce documents for inspection was neither substantially justified nor supported by relevant authority.[10] The Special Master therefore recommends that Tatung pay LPL's reasonable expenses caused by its failure to respond to LPL's document requests, including attorney fees and Special Master fees. Fed. R. Civ. P. 37(d); *Haraway*, 213 F.R.D. at 165, 66 (noting "courts have readily awarded sanctions against individuals who have in some measure complied with Rule 37(d) but have violated the basic

---

[10] The Special Master does not pause in this regard even though several of the document requests were "fine tuned" during the course of the March 30, 2005 hearing. The effort in this regard is something that the Tatung Defendants could have forestalled had they made a good faith effort to meet and confer. In this regard, the Special Master concludes they did not.

RESP 00075

requirement of the Rule to cooperate in discovery"); *Novartis Pharmaceuticals*, 203 F.R.D. at 164 (finding production of only domestic sales and marketing documents to be "inadequate to satisfy burden under Rule 26(b) to produce all relevant, non-privileged documents); *Woulard*, 2004 WL 758358 at *1-2 (applying Rule 37(d) to sanction plaintiff who failed to respond to interrogatories or produce discovery); and *Liafail, Inc. v. Learning 2000, Inc.*, C.A. Nos. 01-599, 01-678 at *3 (D.Del. Dec. 23, 2002) (Sleet, J.) [available as 2002 WL 31954396] ("where the nature of the alleged breach of a discovery obligation is the non-production of evidence, the court has brought discretion in fashioning an appropriate sanction.").

**D.    Sanctions are Warranted**

For the foregoing reasons, the Special Master concludes that the persistent failures of the Tatung Defendants to comply with their discovery obligations – without substantial justification and unsupported by relevant legal authority – has unfairly burdened judicial resources, including this Court's scheduling orders for both jurisdictional discovery and the management of this case. Additionally, the Tatung Defendants' failures to appear at depositions, failures to respond to interrogatories, and failures to produce documents responsive to document requests have prejudiced LPL by forcing it to incur unnecessary attorney fees, expenses and delay.    The Special Master therefore recommends:

(1)    that sanctions be assessed against the Tatung Defendants, jointly and severally, for the unreimbursed expenses and reasonable costs, including attorney fees, incurred by LPL in (i) preparing for any noticed deposition for which a deponent did not appear; (ii) preparing papers in support of its motions to compel and/or for sanctions; (iii) preparing papers in opposition to motions by the Tatung Defendants for protective orders; (iv) preparing for and attendance at the January 24, 2005 hearing before the Court; (v) preparing papers submitted to the Special Master on the jurisdictional discovery disputes; (vi) preparing for and attendance at

RESP 00076

the March 30, 2005 hearing before the Special Master; (vii) preparing for and participation in the April 4, 2005 teleconference with the Special Master; (viii) preparing for and attendance at the April 20, 2005 aborted hearing before the Special Master; and (ix) upon application, such other and further costs and expenses as may be reasonable and just;

(2)    that LPL **not later than August 26, 2005** submit to the Special Master, by affidavit, a summary of the unreimbursed expenses and costs for which it seeks reimbursement pursuant to subparagraph (1) above, with detail sufficient to permit assessment of the reasonableness of such costs (detail that would implicate either the attorney-client or work product privilege may be submitted for *in camera* review);

(3)    that the Tatung Defendants, jointly and severally, pay all amounts due as sanctions to LPL within thirty (30) days of a determination by the Special Master that the amounts for which LPL seeks reimbursement are reasonable; and

(4)    that sanctions be imposed against the Tatung Defendants, jointly and severally, in the amount of LPL's *pro rata* share of the costs for the Special Master's services in connection with the jurisdictional discovery phase, so that the Tatung Defendants will pay 100% of such costs.

**These findings and recommendations will become a final order of the Court after the Special Master has ruled on the reasonableness of the amount of sanctions, unless objection is timely taken in accordance with the provisions of Fed. R. Civ. P. 53(g)(2).**

## II.    <u>Analysis – Assessment of Sanctions</u>

Having concluded that the imposition of sanctions is warranted, the Special Master turns to the issue of whether the recommended sanctions should be imposed against the Tatung Defendants, their counsel or both. Fed. R. Civ. P. 37(d). In this regard, the Special Master is mindful of the opinion issued in *Safer Display Technology, Ltd. v. Tatung Company and Tatung*

37

RESP 00077

*Co. of America, Inc.*, No. Civ. A. 2:04CV154 (E.D. Va. Dec. 29, 2004) (Doumar, D. J.) [available as 2004 WL 3330838], and the underlying case record (herein after, the "Virginia Action"). LPL has referenced the Virginia Action for judicial notice in several of its motions before the Court and submissions to the Special Master.

This Court, where appropriate, has taken judicial notice of facts in the public record. *See, e.g., In re Delmarva Securities Litigation,* 794 F. Supp. 1293, 1299 (D.Del. 1992) ("this Court is free to take judicial notice of certain facts that are of public record if they are provided to the Court by the parties seeking to have them considered"); *accord, PHP Liquidating, LLC v. Robbins PHP Liquidating,* 291 B.R. 592, 602 n. 7 (D.Del. 2003).

Facts of the type contained in judicial case records and opinions are particularly appropriate for judicial notice. As reasoned by Judge Stapleton of the Third Circuit: "it is not seriously questioned that that filing of documents in the case record provides competent evidence of certain facts – that a specific document was filed, that a party took a certain position, that certain judicial findings, allegations, or admissions were made." *Nantucket Investors II v. California Federal Bank (In re Indian Palms Associates, Ltd.),* 61 F. 3d 197, 205 (3d Cir. 1995). *See also, Furnari v. Warden, Allenwood Federal Correctional Institution,* 218 F. 3d 250, 255 (3d. Cir. 2000) (taking judicial notice of affidavit submitted by government attorney in an unrelated trial that described a witness as unreliable); and *Capital City & Trust v. Kroh (In re George P. Kroh),* 88 B.R. 987, 988-89 (Bankr. W. D. Mo. 1988) (taking judicial notice of findings of fact and conclusions of law entered in adversary actions against other parties by the same debtor as "highly relevant evidence of [debtor's] plan and scheme to obtain loans using false financial statements," as well as of the debtor's intent).

38

Accordingly, the Special Master takes judicial notice of certain of the findings of facts and conclusions of law made by the presiding judge in the Virginia Action on the basis that the opinion is a matter of public record that is available and verifiable in the public records of the United States District Court for the Eastern District of Virginia, as well as by computer through the Westlaw and other legal research databases. Judicial notice of the Virginia Action is taken solely for the purpose of determining against whom sanctions should properly be imposed.

In the Virginia Action, a patentee (Safer Display Technology, Ltd.) brought an infringement action against the same corporate entities referenced as Tatung Taiwan and Tatung America in the instant case. The similarities do not end there:

- In both the Virginia Action and the instant action, Tatung Taiwan filed motions to dismiss for lack of personal jurisdiction.[11]

- In both the Virginia Action and the instant case, declarations by David Shan-Juh Chang supported the motions of Tatung Taiwan to dismiss the litigations on jurisdictional grounds.[12]

- In both the Virginia Action and the instant case, declarations by Robin Tsou also supported motions to dismiss litigations on jurisdictional grounds.[13]

- In both the Virginia Action and the instant case, the Courts ordered a limited period of jurisdictional discovery.[14]

---

[11] In the Virginia Action, *see* 2004 WL 3330838 at *1. In the Delaware action, *see* D.I. 16.

[12] In the Virginia Action, *see* D.I. 8, 10 and 16 on civil docket for case 2:04-CV-00154-RGD (E.D. Va.). In the Delaware action, *see* D.I. 20.

[13] In the Virginia Action, *see* D.I. 105 on civil docket for case 2:04-CV-00154-RGD (E.D. Va.). In the Delaware action, *see* D.I. 19, Exh. 3.

[14] In the Virginia Action, *see* 2004 WL 3330838 at **1-2 (60-day period of jurisdictional discovery). In the Delaware action, *see* D.I. 88 (ordering a 90-day period of jurisdictional discovery, scheduled to end on February 15, 2005).

RESP 00079

- In both cases, the limited periods for jurisdictional discovery were prolonged by multiple discovery objections and/or disputes.[15]

- In both cases, the "meet and confer" communications between counsel did not further resolution of the discovery disputes but, rather, served to prolong the jurisdictional discovery period.[16]

- In both cases, the patent holders were forced to file motions to compel Tatung Defendants to respond to basic discovery.[17]

- In both cases, Tatung Taiwan insisted that depositions of its employees be noticed for Taiwan, but allowed none of the noticed depositions to go forward.[18]

- In both cases, Tatung Taiwan refused to go forward with the noticed deposition of David Shan-Juh Chang, whose declaration supported its motions to dismiss on jurisdictional grounds.[19]

- In both cases, the Tatung Defendants avoided going forward with noticed depositions just days before they were scheduled, by filing motions for protective orders.[20]

- In both cases, jurisdictional discovery went nowhere as the close of the jurisdictional discovery periods approached.[21]

---

[15] In the Virginia Action, *see* 2004 WL 3330838 at *2. In the Delaware action, *see supra* at pp. 2-7.

[16] In the Virginia Action, *see* 2004 WL 3330838 at *2 ("amicability and communication between counsel for the parties has deteriorated significantly, which has also prolonged the jurisdictional discovery period"). In the Delaware action, *see infra* at p. 41.

[17] In the Virginia Action, *see* D.I. 116 *passim*. In the Delaware Action, *see supra* at pp. 3-7.

[18] In the Virginia Action, *see* D.I. 116 at pp. 12-14. In the Delaware Action, see supra at pp. 17-19.

[19] In the Virginia Action, *see* D.I. 116 at pp. 12-13. In the Delaware Action, *see supra* at pp. 17-19.

[20] In the Virginia Action, *see* D.I. 116 at pp. 13-14. In the Delaware Action, *see* pp. 2-7.

[21] In the Virginia Action, *see* D.I. 116 at p. 13. In the Delaware Action, *see* D.I. 132 at p. 4:13-19.

RESP 00080

- In both cases – after burdening the Court and patent holders with substantial costs and delays – Tatung Taiwan belatedly agreed to consent to the jurisdiction of the courts.[22]

There is, however, at least one significant difference between the Virginia Action and the instant case. In the instant case, the Tatung Defendants are jointly represented by entirely different counsel than represented the Tatung Defendants in the Virginia Action.[23] It does not appear from the docket sheets in either action that any individual attorney appeared for the Tatung Defendants in both cases.

The marked similarity in the conduct of the Tatung Defendants during jurisdictional discovery in both cases cannot, in the Special Master's view, be attributed to advice of counsel. For that reason, the Special Master concludes that the Tatung Defendants are the architects of their own ill-conceived discovery strategy. It is particularly disappointing that the Tatung Defendants determined to follow that strategy in this case, even after similar conduct had been subject to the consideration of sanctions in the Virginia Action. As succinctly noted by the Honorable Robert G. Doumar in the Virginia Action:

> The Stalingrad Defense, in which the proponent tries to wear down the adversary until he succumbs to the depths of a longsome, frigid winter, cannot be implemented without severe costs to the proponent himself.

2004 WL 3330838 at *1. The Special Master agrees. Accordingly, the Special Master concludes that the sanctions recommended herein be assessed against – and only against – the Tatung Defendants, jointly and severally.

---

[22] In the Virginia Action, *see* D.I. 110 on docket 2:04-cv-00154 and 2004 WL 3330838 at **5-11. In the Delaware action, *see* D.I. 188.

[23] In the Virginia Action, the Tatung Defendants were represented by attorneys from various offices of the law firm of Greenberg & Traurig LLP. In the Delaware action, the Tatung Defendants are represented by lead counsel Robert C. Weems, Esquire, of the Law Offices of Baum & Weems and by Delaware co-counsel Jeffrey S. Goddess, Esquire, of the law firm Rosenthal Monhait Gross & Goddess, P.A.

41

RESP 00081

## END NOTE

The Special Master would be remiss at the close of this chapter if several observations with respect to the course of jurisdictional discovery were not made.

**First**, it is clear to the Special Master that the discovery disputes between the parties were capable of reasonable resolution in accordance with controlling law and without burdening the Court's time. It is fair to say that the "meet and confer" process between counsel was an abject failure in moving issues towards resolution. Rather, the process served to further entrench the parties in their respective positions and to unnecessarily prolong jurisdictional discovery. Primary among the reasons for this failure was an abrogation of the duty to comply with the rules that govern litigation in this Court, coupled with a breakdown in the civility and professionalism in the communications between counsel.

**Second**, it is a privilege for an attorney to be admitted to practice *pro hac vice* before the Delaware District Court. In the opinion of the Special Master, it is a privilege that can and should be withdrawn if attorneys so admitted fail to comply with the applicable rules of the Court, and to conduct themselves with the civility and professionalism required of members of the Delaware bar.

**Third**, going forward – to avoid the risk of sanctions in a form beyond mere monetary sanctions – the Special Master cautions counsel to rethink their game plan and resolve not to engage in the conduct that so tainted the jurisdictional discovery in this case.

ENTERED this 16th day of August, 2005.

Vincent J. Poppiti (DSBA No. 100614)
Special Master

42

RESP 00082

# EXHIBIT 6

RESP 00083

RECEIVED

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF VIRGINIA

### (Norfolk Division)

FILED

DEC 2 3 2004

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | | |
|---|---|---|
| SAFER DISPLAY TECHNOLOGY, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 2:04cv154 |
| v. | ) | Judge Robert G. Doumar |
| | ) | |
| TATUNG COMPANY and | ) | Pursuant to Local Rule 5 and the Protective |
| TATUNG CO. OF AMERICA, INC. | ) | Order Entered on September 28, 2004, the |
| | ) | Declaration of Douglas Weinstein and |
| Defendants. | ) | Attachments Thereto are Filed Under Seal. |
| | ) | |
| | ) | |

## PLAINTIFF SAFER'S SUBMISSION REGARDING COURT'S HEARING FOR DECEMBER 29, 2004 ON TATUNG'S MOTION FOR LEAVE TO WITHDRAW ITS JURISDICTIONAL CHALLENGE

### I.    Introduction

Tatung's litigation tactics have needlessly driven up litigation costs since July.  It should be sanctioned for its tactics and ordered to pay Safer's attorney fees.

In attempting to have this case dismissed for lack of personal jurisdiction, Tatung never denied that its accused computer monitors were sold in Virginia.  Instead, it put Safer to the burden of proving sales of Tatung monitors in Virginia—sales that would be expected from a multibillion-dollar company that annually sells hundreds of millions of dollars of products in the United States.

In refusing to submit to the jurisdiction of this court, Tatung forced Safer to pursue jurisdictional discovery from defendants and from third party distributors and sellers, and then Tatung obstructed Safer's efforts to collect that discovery.  While Tatung did finally submit to the jurisdiction of this Court, it did so only after consuming significant resources of the Court

116

and the parties, and on the eve of depositions ordered by the Court. In a final display of hubris, Tatung has attempted to shift blame to Safer for the unnecessary wheel spinning and litigation costs that resulted directly from Tatung's litigation tactics.

On December 22, 2004, Safer discovered evidence indicating that Tatung-Taiwan was the exclusive manufacturer for North America for at least two different monitors for a national computer vendor whose monitors are undeniably sold in Virginia, which means that Tatung's jurisdictional challenge was apparently not brought in good faith.[1] Judge Doumar explicitly warned Tatung that "if all they are doing is running up the costs" with their jurisdictional challenge, "then they're going to pay for it." That is precisely what Tatung has done, despite the Court's express warning, and despite its exclusive North American supply contract with the nationwide computer vendor. Accordingly, Tatung should be ordered to pay Safer's attorneys' fees.

**II.    Background**

   **A.    The Parties**

Plaintiff Safer Display Technology, Ltd. ("Safer") is the owner of U.S. Patent No. 4,270,145 ("the '145 patent") which covers, *inter alia,* computer monitors with on-screen display features. (Complaint (Dkt. No. 1) ¶ 13.) At least 28 corporations have taken a license to practice the valuable on-screen display features covered by the '145 patent, including Sony, Toshiba, Samsung, Sharp, NEC, JVC, LG Electronics, and Phillips Magnavox. In its Complaint, Safer alleges that Tatung Company ("Tatung-Taiwan") and Tatung Company of America, Inc. ("Tatung-U.S.") infringed, or induced others to infringe, the '145 patent by selling and importing

---

[1] Safer has no reason or evidence to believe that this manufacturing contract was cancelled and/or not fulfilled. Safer thus concludes that the exclusive manufacturing relationship indeed existed. In fact, confidential discovery from Tatung-Taiwan and third parties all indicates that Safer is entirely correct in this conclusion. (See Weinstein Decl. ¶¶ 3-17.)

2

RESP 00085

into the U.S. Tatung-Taiwan's computer monitors with on-screen display features during 1998 and 1999. (*Id.* ¶¶ 11, 13.)

Defendant Tatung-Taiwan is a multibillion-dollar manufacturer and self-described "worldwide leader in the design and manufacturing of a vast array of digital consumer products." (www.tatung.com.) Tatung-Taiwan's website lists its subsidiary, Tatung-U.S., as one of its worldwide business locations. (Neal Decl. Supporting Safer's Opposition to Tatung-Taiwan's Motion to Dismiss ("Neal Decl.") (Dkt. No. 11), ¶ 8.) Tatung-Taiwan is a 50% owner of Tatung-U.S., and Tatung-Taiwan's General Manager is also one of the four directors of Tatung-U.S. (*Id.* ¶ 6.) During the years 1998 and 1999 at issue in this lawsuit, Tatung-Taiwan sold over $498,000,000 and $380,000,000 in products into the United States. (*Id.* ¶ 11.)   Furthermore, Tatung-Taiwan has sold and continues to sell large numbers of monitors to computer distributors, including Compaq and Hewlett-Packard. (Weinstein Decl. ¶¶ 8, 10, 17.).  These computer distributors place their names and model numbers on the monitors and then sell them nationwide, including in Virginia, through national distribution channels.

A large part of Tatung-Taiwan's jurisdictional challenge has been its assertion that, although it admittedly sells its monitors to national computer vendors such as Compaq and Hewlett-Packard, it supposedly did not know whether its monitors were sold in Virginia because it was possible that there were additional monitors made by other manufacturers that were similarly rebranded and resold by Compaq and Hewlett-Packard.  Indeed, counsel for Tatung-Taiwan specifically argued that to Judge Bradberry on December 1, 2004  (Weinstein Decl. Tab 33, at 16:9-13 ("we don't know how many manufacturers Hewlett-Packard or Compaq have other than Tatung").)  That statement is contradicted by evidence indicating that Tatung-Taiwan

RESP 00086

was the exclusive North American manufacturer for a national computer distributor in 1998.

(This confidential relationship is discussed in the Weinstein Decl. ¶¶ 3-17, submitted under seal.)

**B.    Tatung's- Taiwan's Sales of Infringing Monitors in the U.S. is Evident From its Application For FCC Authorization**

In addition, according to the Federal Communications Commission ("FCC"), the U.S.

agency responsible for regulating electronic devices including monitors, Tatung-Taiwan applied

for and obtained FCC authorization for certain of its monitors. (Weinstein Decl. ¶ 18.) There

would be no reason for Tatung-Taiwan to seek FCC approval for its monitors if Tatung-Taiwan

did not intend for its monitors to be sold in the U.S. (*Id.*)

Furthermore, Safer has recently learned from information from the FCC that Tatung-

Taiwan applied for authorization to sell Compaq MV700 color monitors with on-screen display

functions during the applicable time period (1998-99). (Weinstein Decl. ¶¶ 18-23.)  Safer has

further learned from documents recently produced by Circuit City, Ingram Micro, and Office

Depot that these companies had significant sales of Compaq MV700 monitors in Virginia during

the applicable period.  (The specific numbers of monitors sold by these companies are

confidential and discussed in the supporting Weinstein Declaration (¶¶ 10-16), submitted under

seal.)

Safer was on the brink of taking depositions to prove that these Compaq MV700

monitors were manufactured by Tatung-Taiwan, and was pursuing similar jurisdictional

information from Hewlett-Packard, when Tatung-Taiwan abruptly moved to withdraw its

jurisdictional challenge on December 9, 2004.  (Dkt. No. 108.)  And as explained above,

approximately two weeks later, Safer discovered evidence that Tatung-Taiwan was an exclusive

manufacturer for North America for at least two monitors sold nationally and in Virginia.

4

RESP 00087

**C.    Tatung-Taiwan's Challenge to Personal Jurisdiction Lacked a Good Faith Basis**

Tatung-Taiwan's deadline to respond to Safer's complaint was extended by a stipulated order to July 15, 2004. (Dkt. No. 4). On that date, Tatung-Taiwan filed its Motion to Dismiss, contending—despite its exclusive manufacturing relationship for North America with a national computer vendor, sales of hundreds of million dollars of its consumer electronics products in the U.S., its sales to nationwide vendors like Compaq and Hewlett-Packard, and its 50% ownership and managerial control over Tatung-U.S.—that this Court supposedly lacks personal jurisdiction over Tatung-Taiwan. (Dkt. Nos. 6 and 7.) Tellingly, Tatung-Taiwan did not argue in its papers that its monitors were *not* sold in Virginia, even though Tatung-Taiwan was legally obligated to reasonably investigate whether its defense was valid (see Argument at pp. 17-18 below). Furthermore, Tatung-Taiwan could not argue in good faith that its monitors were not sold in Virginia because it knows, at a bare minimum, that (1) it was the exclusive manufacturer for North America for a national computer vendor in 1998, and (2) that its monitors were sold by Compaq and Hewlett-Packard in nationwide distribution channels to retailers such as Circuit City, Best Buy, and Office Depot, who sell monitors in Virginia. Finally, it defies reason that a sophisticated, global, multi-billion dollar company like Tatung-Taiwan would not know where its monitors and other products are sold in the United States.

Despite its duty to investigate its jurisdictional defense, Tatung-Taiwan argued instead that this action should be dismissed because Safer, without the benefit of any discovery, could not yet prove that accused monitors had been sold in Virginia.[2]  Tatung-Taiwan's motion to

---

[2] In opposing Tatung-Taiwan's motion to dismiss for alleged lack of personal jurisdiction, which was filed prior to jurisdictional discovery, Safer explained that this Court has personal jurisdiction over Tatung-Taiwan for at least two reasons summarized very briefly here. First, the exercise of personal jurisdiction comports with traditional notions of fair play and

RESP 00088

dismiss was heard by Judge Doumar on August 25, 2004. The Court rejected Tatung-Taiwan's

argument that this case should be dismissed without discovery, noting that "defendant really

knows what they're doing, what they're selling, not the plaintiff." (Weinstein Decl. Tab 32 at

33:21-22.) Judge Doumar similarly noted that "the facts establishing jurisdiction are mostly in

the knowledge of the defendant, not in the knowledge of the plaintiff." (*Id.* at 16:22-24.)

Accordingly, the Court deferred deciding Tatung-Taiwan's motion and granted Safer a limited

60 day period to take jurisdictional discovery. The Court stated that, under the Federal Circuit's

*Beverly Hills Fan* decision, Tatung-Taiwan would be found subject to personal jurisdiction if its

allegedly infringing monitors had been sold in Virginia. (*Id.* at 33:10-12; 37:15-18.) Judge

Doumar warned Tatung-Taiwan that a "Stalingrad defense" would be unacceptable (*Id.* at 40:3-

11) and that the Court wanted to "get to what is the real issue in the case." (*Id.* at 9:9-10.)

     Judge Doumar also warned Tatung-Taiwan as follows: "Let me be very frank with you.

If all [Tatung-Taiwan is] doing is running up the costs, then they're going to have to pay for it."

(*Id.* at 26:3-4.) Endeavoring to focus on the "real issues," the Court asked Tatung-Taiwan's

counsel whether he was wasting time with jurisdictional discovery because "the fact of the

matter is [Safer] could find out how many products were being sold by each of your defendants

here, and they could find out which products were sold to whom. It just -- if they're going to

turn up with the same answer, *aren't we wasting our time*?" (*Id.* at 11:24-12:3, emphasis added.)

Four months later, the answer is a resounding "Yes." Tatung-Taiwan's jurisdictional challenge

---

substantial justice under a "stream of commerce" analysis. (S. Opp. to Mot. Dismiss at 5-9 (Dkt.
11), citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994).)
Second, Safer explained that this Court has personal jurisdiction over Tatung-Taiwan because
Tatung-U.S. is the agent of Tatung-Taiwan, Tatung-Taiwan exerts control over Tatung-U.S., and
the conceded jurisdiction over Tatung-U.S. in Virginia for selling products in Virginia, including
those made by Tatung-Taiwan. (*Id.* at 9-11; Tatung's Rebuttal Brief in Support of Defendant's
Motion for Protective Order (Dkt. No. 42) at 3 ("Tatung U.S. submitted to personal jurisdiction
in Virginia as it conducts business in Virginia.").)

RESP 00089

has been a colossal and completely unnecessary waste of time and resources for the Court, Safer, and at least nine third parties.

### D.    Tatung-Taiwan Repeatedly Attempted to Obstruct Jurisdictional Discovery and Depositions of Witnesses From Taiwan

As Safer previously explained to the Court, finding proof that Tatung-Taiwan monitors were sold in Virginia from third party documents was originally a difficult, multi-step process for Safer because Tatung-Taiwan sells its monitors to branded computer vendors, such as Compaq, who place their own names and model numbers on the monitors before they are sold by retailers such as Office Depot. For Safer to prove that sales of Compaq monitors by Office Depot in Virginia were in fact sales of Tatung-Taiwan manufactured monitors required it to "connect the links" and compare various records from Tatung-Taiwan to the branded vendor to the retailer, which was complicated by the fact that, prior to the date that Tatung-Taiwan withdrew its motion to dismiss, none of the documents received from third party monitor vendors and retailers have specifically identified or tracked Tatung-Taiwan as the manufacturer of rebranded monitors sold in Virginia. Indeed, Tatung-Taiwan acknowledged the difficulty of this task at the time, going so far as to argue that "connecting the links is a hopeless endeavor" because the third party documents produced so far do not contain Tatung-Taiwan's own product numbers. (Tatung-Taiwan's Mem. Supporting to Withdraw its Motion to Dismiss (Dkt. 108) at 6.)

For this reason, and also because Safer had not yet received sufficient documents from third parties to take their depositions (Weinstein Decl. Tab 33 at 10:17-11:2; 17:23-19:1), Safer had for months been trying to schedule depositions with knowledgeable witnesses from Tatung-Taiwan. Safer has always believed that people in charge of Tatung-Taiwan's sales and marketing—as opposed to the manager of personnel who was selected to submit a terse

7

declaration supporting Tatung-Taiwan's motion to dismiss—*must* know where the monitors rebranded by Compaq and others are being sold throughout the U.S.[3]  Given that Safer had only one 60 day shot at taking jurisdictional discovery, however, it had no choice but to pursue information from third parties as well, including Viewsonic, Compaq, Hewlett-Packard, Best Buy, Office Depot, and Wal-Mart.  As explained more fully below, Tatung-Taiwan's counsel have repeatedly stalled and refused to produce witnesses from Taiwan, and once they were ordered by Judge Bradberry to promptly produce witnesses from Taiwan, Tatung-Taiwan withdrew its jurisdictional challenge.  Tatung-Taiwan's counsel have also impeded and delayed discovery from third parties, including Safer's attempts to obtain from Compaq its contracts with Tatung-Taiwan.  All the while, Tatung-Taiwan has tried to take advantage of the very delays it caused by arguing that personal jurisdiction must not exist because of the time it has taken Safer to collect the evidence.  The Court should see this gameplaying for what it is.

On August 27, 2004, two days after the hearing on Tatung-Taiwan's motion to dismiss, Safer served jurisdictional document requests and interrogatories on Tatung-Taiwan and Tatung-U.S.  On August 31, 2004, Safer served third party subpoenas seeking relevant jurisdictional documents and testimony from third parties designed to uncover Tatung-Taiwan's distribution network and sales into Virginia.  These subpoenas generally sought documents and testimony in mid- to late-September and early October (i.e., well within the 60 day frame).[4]  Specifically,

---

[3] The same is apparently not true for employees of Tatung-U.S. because they claim that they do not sell to HP, and presumably other branded vendors. (Supp. Decl. of D. S. J. Chang Supporting Tatung Co.'s Mtn. to Dismiss (Dkt. No. 10), ¶ 5.)  Indeed, it appears from discovery from Tatung-U.S. that it sells to much smaller vendors, including in Virginia, than the national vendors like Compaq, Hewlett-Packard, and Viewsonic.

[4] Because Judge Doumar also ordered at the August 25 hearing that Safer could take merits discovery as well as jurisdictional discovery, Safer also pursued merits discovery during this time frame from both defendants and third parties. (Weinstein Decl. Tab 33 at 33:3-5.)  Judge Bradberry reviewed that transcript and confirmed that that was the order on October 27,

8

Safer initially served third party subpoenas on Best Buy, Wal-Mart, eMachines, Office Depot, CompUSA, Circuit City, and Viewsonic.

### 1. Tatung-Taiwan Acted to Dissuade Third Parties From Producing Subpoenas From Discovery

Tatung-Taiwan moved quickly to block these discovery efforts by Safer. First, on September 9 and 10, 2004, Tatung-Taiwan wrote individually to the third parties subpoenaed by Safer and falsely told them that there were "ongoing negotiations with plaintiff's counsel concerning the scope and propriety of the subpoenas" (Weinstein Decl. Tab 16), an obvious attempt to dissuade the third parties from producing any discovery. Tatung-Taiwan's letters further attempted to obstruct discovery by stating that there was an "increasing likelihood" that Tatung-Taiwan would move for a protective order. (*Id.*) Safer promptly admonished Tatung-Taiwan that (1) there had been no negotiations regarding the third party subpoenas, (2) Tatung-Taiwan had no standing to challenge the subpoenas, and (3) "your letters have impeded the progress of discovery, and we request that you cease further actions that delay our rightful discovery of these documents." (Weinstein Decl. Tab 17.)

Unfortunately, however, the damage had been done. For example, although Compaq located some contracts with Tatung-Taiwan, counsel for Tatung-Taiwan first instructed Compaq that they should not be produced because Tatung-Taiwan had filed a (meritless) motion seeking to limit discovery to televisions, even though monitors and not televisions were specifically

---

2004. (*Id.* Tab 34 at 39:12-23.) Although the Court subsequently limited discovery to jurisdictional issues on November 16 (*Id.* Tab 35 at 27:13-19), before that date the Court had expressly permitted Safer and defendants to pursue merits discovery. Accordingly, rather than have to take jurisdictional discovery now and merits discovery later from the same witnesses, Safer originally sought merits discovery from the same witnesses from whom Safer was also seeking jurisdictional discovery. Although Tatung-Taiwan has repeatedly tried to make an issue out of this, Tatung-Taiwan has no basis for complaint given the two express orders from the Court, and given that Tatung-Taiwan inundated Safer with merits interrogatories, document requests, and requests for admissions during the same time period.

RESP 00092

accused of infringing in the complaint (discussed in section D.2 below). Later, apparently after its meritless motion was denied, Tatung-Taiwan instructed Compaq that the contracts were supposedly not responsive to the subpoena because they were executed prior to 1998. (Ottinger Decl. ¶ 6.) In subsequent follow-up efforts by Safer's counsel, however, Compaq advised that the contracts were automatically renewed or renewable on an annual basis, and that they were apparently operative during the relevant 1998-99 timeframe. (*Id.*) Still later, Tatung-Taiwan told Compaq that the contracts should not be produced because Tatung-Taiwan was withdrawing its jurisdictional challenge. (*Id.* ¶ 7.) (Despite these admonitions from Tatung-Taiwan's counsel, Compaq eventually produced these contracts on December 22, 2004, nearly two weeks after Tatung-Taiwan moved to withdraw its jurisdictional challenge. The content of these confidential documents is discussed in the Weinstein Declaration at ¶¶ 6-8.)

In addition, in its letter to Wal-Mart, Tatung-Taiwan's counsel went so far as to say that one of his partners "will be in your offices next week on another matter but will touch base with you." (Weinstein Decl. Tab 16.) Very soon thereafter, Wal-Mart sent Safer a certification that it had no responsive documents. (Weinstein Decl. Tab 18.) Interestingly, Wal-Mart later retracted that certification and, in late November, produced responsive documents after Safer sent a second deposition subpoena seeking testimony regarding Wal-Mart's efforts to locate responsive documents. (*Id.* Tabs 20 and 21.)

### 2. Tatung-Taiwan Also Blocked Third Party Discovery By Filing a Meritless Motion for a Protective Order

Tatung-Taiwan's letters and communications with the subpoenaed third parties also delayed jurisdictional discovery because the third parties delayed producing documents until after the resolution of Tatung-Taiwan's motion for protective order. (Weinstein Decl. Tab 33 at 17:23-19:1.) On September 17, 2004, soon after it wrote to the third parties, Tatung-Taiwan

RESP 00093

filed a motion for protective order asking the Court to, *inter alia,* completely preclude third party

depositions until further notice. (Mem. Supporting Tatung's Motion for Protective Order (Dkt.

No. 27) at 2.) Tatung-Taiwan also moved to block discovery regarding accused products. That

is, Tatung-Taiwan tried to completely prevent discovery of monitors and limit discovery to

televisions, even though monitors are expressly accused of infringing in Safer's complaint and

televisions are not. (*Id.*) The Court predictably denied these meritless requests when the motion

was finally heard on October 27,[5] but during the pendency of that motion, Tatung-Taiwan

blocked discovery for approximately two months because the subpoenaed third parties delayed

producing their documents until after the resolution of the motion. (Weinstein Decl. Tab 33 at

17:23-19:1.) For instance, as of November 10, the only documents received from third parties

was a single spreadsheet from Office Depot, and these were produced only after Office Depot

was informed of the denial of Tatung-Taiwan's meritless motion. (*Id.* Tab 22.) On December 1,

just eight days before Tatung-Taiwan dropped its jurisdictional challenge, Safer's counsel

reported to the Court that, finally, "we're getting documents from those third parties now" and

that Safer had also received documents from Wal-Mart. (*Id.* Tab 33 at 10:20-23.)

### 3.    Tatung-Taiwan's Inadequate Document Production

Tatung-Taiwan blocked jurisdictional discovery on other fronts as well. For instance, as

of October 5, 2004, Tatung-Taiwan had produced only 14 documents, and none of them

sufficiently identified all of the sales and shipments of Tatung-Taiwan video monitors or

customers of Tatung-Taiwan, among other deficiencies. (Weinstein Decl. Tab 23.) On October

---

[5] Tatung-Taiwan disingenuously tries to give the impression that it prevailed in its first
motion for a protective order because the Court slightly narrowed the time frame from which
documents would be produced in discovery. Given that the Court rejected Tatung-Taiwan's
primary tactical requests to block discovery from third parties and discovery regarding monitors
(the accused products), the motion can only be viewed as a failure.

11

15, Safer was forced to file a motion for an expedited hearing on its motion to compel because defendants had failed and refused to comply with even the most basic discovery requests (e.g., sales and import records, and the manuals and technical documents relating to on-screen display). (Dkt. No. 48.) Although Tatung-Taiwan later produced summary documents showing sales to certain computer vendors at a high level (Weinstein Decl. ¶ 17 and Tab 10), these are insufficient because they lack the underlying documents' detail regarding key internal numbers for tracking models such as serial numbers. Although Defendants also subsequently produced approximately 7000 pages of documents, nearly all of these were asserted prior art that had absolutely no relevance to jurisdiction. (Weinstein Decl. Tab 24 at 2.)

> ### 4.    Tatung-Taiwan Refused to Produce Knowledgeable Witnesses from Taiwan

Tatung-Taiwan also repeatedly stalled and refused to produce Tatung-Taiwan witnesses for deposition. On September 23, Safer served notices for depositions in early October of David Shun-Juh Chang, the Tatung-Taiwan employee who submitted two declarations supporting its motion to dismiss, as well as a notice for a Rule 30(b)(6) deposition of Tatung-Taiwan. These depositions were set in October in the offices of Safer's counsel in Washington, D.C. Tatung-Taiwan objected and demanded that the depositions proceed in Taiwan. Safer's counsel promptly agreed to travel to Taiwan but, because only two inches of documents had been received from Tatung-Taiwan, Safer suggested pushing the depositions back approximately one week to October 20. (Weinstein Decl. Tab 25.) Tatung-Taiwan's counsel, apparently surprised by Safer's agreement to travel to Taiwan and in search of another excuse, refused to produce the witnesses in Taiwan on October 20. (*Id.* Tab 26.) Tatung-Taiwan now complained that it would be too expensive to take the depositions in Taiwan until after defendants' document production was completed, and that the depositions should not be heard until the Court had ruled on

12

defendants' motion for a protective order (which was denied two weeks later, as explained above). (*Id.* at 2.) Tatung-Taiwan's counsel requested that the depositions be pushed back a "few weeks" into November. (*Id.*)

Thus, by mid-October, Safer's attempts to obtain jurisdictional discovery were going nowhere, thanks to Tatung-Taiwan. The 60 day period ordered by Judge Doumar would close in less than two weeks. Safer kept trying, however, and on October 14 it noticed depositions in Taiwan for five Tatung-Taiwan witnesses recently identified as knowledgeable in Tatung-Taiwan's responses to Safer's interrogatories. Specifically, Safer noticed the depositions of (1) O. Shaih and Jerry Huang (each identified by Tatung-Taiwan as responsible for sales, marketing, and distribution, and relevant to the stream of commerce jurisdiction analysis); and (2) W.S. Lin, K.Y. Lang, and A.C. Wang (each identified by Tatung-Taiwan as serving on the board of management of Tatung-Taiwan and Tatung-U.S., and relevant to the agency jurisdiction analysis). On October 22, Tatung-Taiwan refused to produce these individuals. (Weinstein Decl. Tab 27.) Although Tatung-Taiwan stated that it would "attempt" to provide a corporate designee to testify regarding a handful of the topics requested by Safer (*id.* at 2), Tatung-Taiwan offered no dates for any depositions. Instead, Tatung-Taiwan filed a second motion for protective order on October 26 (Tatung's Motion to Limit Depositions (Dkt. 57)), and counsel for Tatung-Taiwan refused to schedule depositions in Taiwan until after Tatung-Taiwan's second motion for protective order was heard. (Weinstein Decl. Tab 28 at 2 ("We will not travel to Taiwan until after our motion has been heard.").) This was the same stall tactic that counsel had used while Tatung-Taiwan's first motion for protective order was pending.

Tatung-Taiwan's counsel also insisted that third party depositions be taken before the Tatung-Taiwan witnesses (Weinstein Decl. Tab 29), even though Tatung-Taiwan knew (1) that it

13

had blocked discovery from third parties with its earlier letters and communications, so that

Safer was not yet in a position depose the third parties, and (2) that linking sales of Tatung-

Taiwan's monitors with the third party documents alone is an extremely difficult task. Tatung-

Taiwan also stated that it would not make any Tatung-Taiwan witnesses available until January

or February of 2005 (*id.*), which Safer explained was unacceptable, particularly given that the

deposition notices had been pending for months and the Court's admonition to speed the pace of

jurisdictional discovery. (*Id.* Tab 30.)

Tatung-Taiwan continued to refuse to produce any witnesses from Taiwan until

Magistrate Judge Bradberry's December 1, 2004, order that Tatung-Taiwan witnesses must

appear for deposition within the month of December. (Weinstein Decl. Tab 33 at 30:3-4.) Eight

days later, Tatung-Taiwan filed a motion seeking leave to withdraw its motion to dismiss. (Dkt.

No. 107.) Tatung-Taiwan's stated reasons for moving to withdraw its jurisdictional challenge

were clearly pretextual and not supported by the record, as evidenced by the Court's subsequent

order that Tatung-Taiwan support its motion by citations to the record. (Dkt. No. 109.)

It is plain that Tatung-Taiwan moved to withdraw the challenge because Safer, after

months of effort, was finally getting an opportunity to depose witnesses from Taiwan and was on

the verge of proving that Tatung-Taiwan's monitors had been sold in Virginia. For instance,

Safer was planning to extensively question Tatung-Taiwan witnesses regarding, *inter alia*, the

Compaq MV700 monitor it manufactured for Compaq and its warranty and return records from

retailers in Virginia. Safer was also corresponding with Compaq and requesting that its contracts

with Tatung-Taiwan be produced when Tatung-Taiwan moved to withdraw its challenge.

14

**E.    Defendant's Allegations that Safer Was Driving Up Costs Are Baseless**

Defendants have repeatedly but baselessly argued that Safer has attempted to drive up costs in this litigation. Nothing could be further from the truth. Safer, as the plaintiff in this case, has every interest in achieving a prompt and cost-effective resolution of defendants' infringement. Indeed, Safer has agreed upon licenses with 28 parties, including former co-defendant Jean. Tatung-Taiwan, on the other hand, has an incentive to delay and complicate these proceedings as it did with its jurisdictional challenge.

As explained in Safer's opposition to defendants' second motion for a protective order (Dkt. 72 at 1-4), until November 16, the Court had *twice* expressly stated that both parties could take merits discovery along with jurisdictional discovery, and defendants themselves had served Safer with interrogatories, document requests, and requests for admissions directed to the merits of this case. Once Judge Doumar subsequently limited discovery to jurisdictional issues, however, Safer obviously agreed to abide by that Order (Weinstein Decl. Tab 33 at 19:19-23), yet Tatung-Taiwan is still arguing about Safer's earlier efforts to obtain merits discovery as a red herring. Furthermore, Safer did not set 27 or 28 depositions in this case as defendants have alleged, as explained in our papers. (Dkt. 72 at 1.) Defendants double dipped in arriving at that number by including depositions noticed in other consolidated cases, including the now settled case against Jean. In truth, Safer noticed seven depositions for Tatung-Taiwan (one 30(b)(6), five individuals identified by Tatung-Taiwan as knowledgeable in response to interrogatories, and a Tatung-Taiwan employee relevant to the agency analysis), and two for Tatung-U.S. (one 30(b)(6) and one individual identified by Tatung-U.S. as knowledgeable in response to interrogatories). In addition, Safer noticed six potential depositions of third parties in the event that they would be needed to prove sales in Virginia, but Safer has not yet received sufficient

RESP 00098

documents from those third parties and is not ready to take their depositions now. (Weinstein Decl. Tab 33 at 10:17-11:2; 17:23-19:1.)

Importantly, Safer has always told defendants that it might not need to take all of these noticed depositions, and that it would stop once it discovered proof of sales in Virginia, as Safer's counsel confirmed to the Court. (Weinstein Decl. Tab 33 at 4:14-5:3; 10:17-11:2.) As Judge Bradberry pointed out, there were really no more than eight depositions at issue in early December (*Id.* at 11:3-8), and Safer has always needed to proceed with the Tatung-Taiwan witnesses first.

It was also made clear by Judge Bradberry that jurisdictional depositions and discovery would not proceed endlessly as Tatung-Taiwan pretends, but rather that jurisdictional discovery would stop once solid evidence of jurisdiction was discovered. (Weinstein Decl. Tab 33 at 25:1-26:7; 30:3-10; 31:16-25; 39:14-25.) But given the tight time constraints and Tatung-Taiwan's efforts to stymie discovery, Safer had no choice but to notice these potential depositions up front and proceed until it uncovered undisputable evidence of sales in Virginia.

Furthermore, Tatung-Taiwan has driven up the costs in this case with extensive motion practice. In addition to the meritless motions to block discovery of third parties and of accused monitors described above, it also filed a motion for summary judgment asserting that Safer did not own the patent-in-suit. Although the motion was unfounded and summarily denied by Judge Doumar, Safer nevertheless was forced to respond to this theoretically dispositive motion in writing and in Court. Tatung-Taiwan also filed another motion to "correct" an already correct order that was summarily denied by Magistrate Judge Bradberry, but Safer again had to respond and appear in Court to oppose that motion.

16

### III.    Argument

#### A.    Tatung-Taiwan Should be Sanctioned for Unreasonably and Vexatiously Multiplying These Proceedings

As explained above, Tatung-Taiwan has wasted an enormous amount of time and money by raising its unsupported jurisdictional challenge and by continuously interfering with Safer's attempts to obtain jurisdictional discovery from defendants and third parties. This Court has multiple sources of authority to sanction Tatung-Taiwan's unsupported, dilatory, vexatious, and wasteful litigation tactics, including (1) its inherent authority (*Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 45-46 (1991) (courts have inherent authority to sanction attorneys and parties who have shown "bad faith by delaying or disrupting the litigation" or who have "acted in bad faith, vexatiously, wantonly, or for oppressive reasons")); (2) Rule 11 of the Federal Rule of Civil Procedure; and (3) 28 U.S.C. § 1927 (party's attorney may be ordered to pay opposing party's attorneys' fees if he "multiplies the proceedings in any case so unreasonably and vexatiously").

Although the Court may *sua sponte* order sanctions against a party or attorney under Rule 11 (Fed. R. Civ. P. 11(c)(1)(B)), Safer is apparently precluded from moving for sanctions under that Rule because Tatung-Taiwan has withdrawn its jurisdictional challenge, even though the evidence indicates that the defense was unsupported (Weinstein Decl. at ¶¶ 4-23) and after so much time and money has been wasted over the issue. Fed. R. Civ. P. 11(C)(1)(A). Regardless, Safer may and does move for sanctions, including attorneys' fees, under the Court's inherent power and § 1927, for the many reasons explained above.

Moreover, Tatung-Taiwan had an affirmative duty to reasonably investigate its allegation of no personal jurisdiction before wasting months of time and money litigating the issue, and failure to do so is itself a basis for sanctions. *Continental Air Lines, Inc. v. Group Sys. Int'l Far East, Ltd.,* 109 F.R.D. 594, 597-600 (C.D. Cal. 1986); *Ortho Pharm. Corp. v. Sona Dist., Inc.,*

RESP 00100

117 F.R.D. 170, 171-72 (S.D. Fla. 1986). Thus, even if Tatung-Taiwan can somehow explain

the newly discovered evidence indicating that Tatung-Taiwan was the exclusive manufacturer

for North America for at least two different monitors for a national computer vendor whose

monitors are undeniably sold in Virginia, Tatung-Taiwan should nevertheless be sanctioned for

failing to investigate its asserted defense.

## IV.    Conclusion

Safer respectfully requests that the Court sanction Tatung-Taiwan by, among other

things, an award of attorneys' fees incurred in opposing Tatung-Taiwan's motion to dismiss for

lack of jurisdiction and all of the related discovery disputes, motion practice, and hearings that

have flowed therefrom. Safer conservatively estimates and represents that Tatung-Taiwan's

tactics have cost many tens of thousands of dollars of attorney time. Safer respectfully requests

that, if deemed necessary, the Court allow Safer a reasonable period of time to make an

evidentiary showing to support its request for attorneys' fees. Safer also suggests that the Court

should order that Tatung-Taiwan pay a sanction to the Court due to the considerable time and

effort that the Court has had to expend over Tatung-Taiwan's unreasonably duplicative litigation

tactics.

RESP 00101

Dated:  December 23, 2004

Respectfully submitted,

John M. Ryan (Va. Bar No. 4301)
Richard H. Ottinger (Va. Bar No. 38842)
VANDEVENTER BLANK LLP
500 World Trade Center
Norfolk, VA  23510
(757) 446-8600

Laura P. Masurovsky (Va. Bar. No. 32379)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
1300 I Street, N.W.
Washington, D.C.  20005-3315
(202) 408-4000

Roger D. Taylor
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
3200 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA  30308
(404) 653-6400

Attorneys for Plaintiff,
Safer Display Technology, Ltd.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that as of the date noted below the original or a true copy of the foregoing pleading was served in the manner indicated upon all parties herein, or their counsel of record, as follows:

| | |
|---|---|
| Stephen E. Noona | Manner of Service: |
| Kristan B. Burch | _____    First Class US Mail |
| Kaufman & Canoles, PC | _____ Overnight Delivery |
| 150 W. Main Street | _____ Facsimile |
| Norfolk, VA 23510 | _____ Electronically |
| *Counsel for Tatung Company, Tatung Co. of* | __X__ Hand Delivery |
| *America, Inc..* | _____ Other: _____ |

19

RESP 00102

Mark L. Hogge
Kathryn L. Clune
Greenberg Traurig, LLP
800 Connecticut Avenue, Suite 500
Washington, D.C. 20006
*Counsel for Tatung Company, Tatung Co. of
America, Inc..*

Manner of Service:
__X__ First Class US Mail
_____ Overnight Delivery
_____ Facsimile
__X__ Electronically (w/o attachments)
_____ Hand Delivery
_____ Other: _____

Mark Krietzman
Greenberg Traurig LLP
2450 Colorado Ave., Suite 400 E
Santa Monica, CA 90404
(310) 586-7700
*Counsel for Tatung Company, Tatung Co. of
America, Inc..*

Manner of Service:
__X__ First Class US Mail
_____ Overnight Delivery
_____ Facsimile
__X__ Electronically (w/o attachments)
_____ Hand Delivery
_____ Other: _____

Rolf Marshall
Preston Gates Ellis & Rouvelas Meeds, LLP
1735 New York Avenue, N.W., Suite 500
Washington, D.C. 20006
*Counsel for Envision Peripherals, Inc.*

Manner of Service:
__X__ First Class US Mail
_____ Overnight Delivery
_____ Facsimile
_____ Electronically
_____ Hand Delivery
_____ Other: _____

Michael J. Bettinger
Ralph Alldredge
Preston Gates & Ellis, LLP
55 Second Street, Suite 1700
San Francisco, California 94105
*Counsel for Envision Peripherals, Inc.*

Manner of Service:
__X__ First Class US Mail
_____ Overnight Delivery
_____ Facsimile
_____ Electronically
_____ Hand Delivery
_____ Other: _____

Done this date: December 23, 2004

Of Counsel

RESP 00103

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| IN RE SUBPOENA ISSUED TO COMPUSA, INC. | **3-07 mc 0018-P**<br>related case: 3-07 mc 0017-N |

### RESPONDENT LG.PHILIPS LCD CO., LTD.'S  CORRECTED RESPONSE IN OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff/Respondent LG.Philips LCD Co., Ltd. ("LPL") hereby opposes the Motion for Protective Order tardily filed by Defendants Tatung Company and Tatung Company of America, Inc. (collectively "Tatung") with respect to the third party subpoena served by LPL on Radio Shack Corporation. (*See* Appendix RESP 0002-00015).

The matter presented to this Court concerns Motions to Quash deposition subpoenaes filed by the Defendant Tatung, not by the proposed deponent, who is not a party to the case.

Tatung has filed numerous motions in various district courts, including this Court, to quash LPL's deposition subpoenaes served on a number of third party witnesses in a patent infringement action pending in the United States District Court in Delaware filed as Case Number 04-cv-00343-JJF, ("Main Case").

For the reasons explained in LPL's contemporaneously filed Brief in Support of this Response, LPL requests that this matter be transferred to the District Court in Delaware, or alternatively, that Tatung's motion be denied.

Respectfully Submitted,


s/Frank L. Broyles
 Frank L. Broyles
 Texas State Bar #03230500
 GOINS, UNDERKOFLER,
 CRAWFORD & LANGDON, LLP
 1201 ELM ST. SUITE 4800
 DALLAS, TX 75270
 (214) 969-5454
 (214 969-5902 TELECOPY


Attorneys for Respondent
**LG.PHILIPS LCD CO., LTD.**


Certificate of Service

On March 15, 2007, a genuine copy of the foregoing and referenced Appendix was served via email on the persons shown on the service list attached on the next page. Additionally, a copy will be served by First Class Mail on March 16, 2007.

s/Frank L. Broyles

## SERVICE LIST:
## 07-0017 & 07-0018 NDTX

**Richard D. Kirk**
The Bayard Firm
222
Delaware Ave.
Ste 900
Wilmington, DE 19899

**Jeffrey B. Bove**
**James D. Heisman**
**Jaclyn M. Mason**
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange St.
P.O. Box 2207
Wilmington, DE 19899

**Scott R. Miller**
CONNOLLY BOVE LODGE & HUTZ LLP
355 S. Grand Ave.
Suite 3150
Los Angeles, CA 90071

**Tracy R. Roman**
RASKIN PETER RUBIN & SIMON LLP
1801 Century Park East, Ste 2300
Los Angeles, CA 90067

**Frederick L. Cottrell, III**
**Anne Shea Gasa,**
RICHARDS LAYTON & FINGER, PA
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Penelope Brobst Blackwell

Email List:


rkirk@bayardfirm.com; jbove@cblh.com; jheisman@cblh.com; jmason@cblh.com;
smiller@cblh.com; troman@raskinpeter.com; Cottrell@RLF.com; Gaza@RLF.com

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

**IN RE: SUBPOENA ISSUED TO**
**RADIO SHACK**

|  |  |  |
|---|---|---|
| | § | |
| **L.G. PHILLIPS LCD CO., LTD.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **NO. 3:07-MC-018-P** |
| | § | |
| **TATUNG COMPANY, et al.,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER OF REFERENCE

Pursuant to 28 U.S.C. Section 636(b), this matter is hereby referred to the **Honorable**

**Jeff Kaplan,** United States Magistrate Judge, for hearing, if necessary, and determination.

**IT IS SO ORDERED.**

Signed this 15th day of March 2007.


_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT                    Revised 11/01/06
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**To:    All Attorneys of Record Appearing in a Case (including Attorneys in *pro se* cases):**
- **Designated for Electronic Case Filing and**
- **Involving a Matter Referred to a United States Magistrate Judge Pursuant to 28 U.S.C. § 636**

## STANDING ORDER[1] FOR ELECTRONIC FILINGS RELATED TO MATTERS REFERRED TO THE UNITED STATES MAGISTRATE JUDGE

The District Court has entered its *Standing Order Designating Case for Enrollment in the Electronic Case Files "ECF" System*. These instructions control all electronic filings for matters referred to the United States Magistrate Judge at any time during the pendency of the case, and are provided to ensure that electronic filings referred to the United States Magistrate Judge are processed appropriately. Nothing in this order precludes the Magistrate Judge from modifying these instructions with the judge's own order governing procedures for handling cases in his or her court.

### I.  CASE CAPTION

Every document related to a matter referred to the United States Magistrate Judge must include:

---

[1]    Upon referral of a matter to a United States magistrate judge in the Dallas Division of the Northern District of Texas, in a case designated for enrollment in the Electronic Case Files "ECF" System by the presiding district judge, the clerk shall enter this **Standing Order.** As *pro se* litigants are not permitted to electronically file documents in the Dallas Division of the Northern District of Texas, the clerk is not required to distribute the **Standing Order** to *pro se* litigants. If there is an order for process to issue, the Clerk is directed at that time to send a copy of the **Standing Order** to the defendant or respondent with the service of the summons or show cause order.

- the **United States Magistrate Judge's identifying alpha-notation** (identified below) at the end of the case number, and

- "**Referred to the U.S. Magistrate Judge**" directly beneath the "ECF" notation.

These notations help ensure that the filing is received by the assigned United States Magistrate Judge. The additional notations should **NOT** be used for filings related to matters not referred to the United States Magistrate Judge.

**United States Magistrate Judges' Alpha-Notations**

Magistrate Judge William F. Sanderson, Jr.    **"(AH)"**

Magistrate Judge Jeff Kaplan                          **"(BD)"**

Magistrate Judge Paul D. Stickney                  **"(BF)"**

Magistrate Judge Irma Carrillo Ramirez          **"(BH)"**

## II. COURTESY COPIES

Each magistrate judge listed on the reference chart included as Attachment 1 to this Standing Order has specific requirements for courtesy copies. Each required courtesy copy of a document related to a matter referred to the magistrate judge must be marked "Judge's Copy," must have a copy of the Notice of Electronic Filing[2] for that document affixed as the first page, must be delivered to the chambers of the United States Magistrate Judge (NOT to the clerk's office or the district judge's office) as soon

---

[2]    A link to the Notice of Electronic Filing and the electronically filed document will be automatically e-mailed to the filer upon the completion of the electronic filing procedure.

as possible, and well before any scheduled hearing, and must be in the form required by LR 10.1 and LCrR 49.3. The court, in its discretion, may not begin its consideration of the document until it has received the required courtesy copy. Furthermore, failure to follow the courtesy copy requirements of the United States Magistrate Judge may result in the document being unfiled.

## III. PROPOSED ORDERS

As directed in the District Court's ECF designation order, a proposed order shall be submitted for **<u>EVERY</u>** motion in a WordPerfect or Word compatible format via e-mail as instructed under the ECF system's "Proposed Orders" event. In cases that are under standing orders of reference or in cases referred for pretrial management, attorneys are reminded to send their order to the "Orders" e-mail account for the assigned United States Magistrate Judge (NOT the assigned United States district judge). Failure to send the proposed order to the judge assigned to consider the matter may result in unnecessary delay in disposition.

Questions regarding this **Standing Order** should be directed to the Office of the Clerk at (214) 753-2200 or the ECF Help Desk at (866) 243-2866.

*ATTACHMENT 1*

## COURTESY COPY REQUIREMENTS

| JUDGE | COPY REQUIREMENTS | MAILED TO: |
|---|---|---|
| Wm. F. Sanderson, Jr. | ALL FILINGS | 1100 Commerce Street, Room 1407 Dallas, TX 75242 |
| Jeff Kaplan | ALL FILINGS | 1100 Commerce Street, Room 1611 Dallas, TX 75242 |
| Paul D. Stickney | ALL FILINGS | 1100 Commerce Street Room 1549 Dallas, TX 75242 |
| Irma Carrillo Ramirez | **No** Courtesy Copies Required | |

4

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| L.G. PHILLIPS LCD CO., LTD. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-07-MC-018-P |
| | § | |
| TATUNG COMPANY, ET AL. | § | |
| | § | |
| Defendants. | § | |

## ORDER SETTING HEARING

A hearing on defendants' motion for protective order is set for **March 23, 2007** at **10:00 a.m.**

before U.S. Magistrate Judge Jeff Kaplan, 1100 Commerce Street, 16th Floor, Dallas, Texas.

Counsel for both parties are directed to hand deliver hard copies of their respective pleadings to the

chambers of the magistrate judge by **12:00 noon** on **March 21, 2007.**

SO ORDERED.

DATED:  March 16, 2007.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

LG.PHILIPS LCD CO., LTD., PLAINTIFF

V.

TATUNG COMPANY, *et al,* DEFENDANTS

(IN RE SUBPOENA ISSUED TO
RADIOSHACK CORPORATION)

**3-07 mc 0018-P-BD**
**ECF**
Referred to the U.S. Magistrate Judge
(related case: 3-07 mc 0017-N-BD)

## NOTICE OF RELATED CASE AND SUGGESTION FOR CONSOLIDATION

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff LG.Philips LCD Co., Ltd., Plaintiff, hereby advises the Court that two related matters are pending in the above case which have been assigned to different courts, namely this case and case 3-07 mc 0017-N, both of which have been designated as ECF cases, and both of which have been referred to United States Magistrate Judge Kaplan.  The matters are related because:

1.  They are discovery disputes arising out of the same case, which is a case pending in Delaware in the District Court for the District of Delaware, Case Number 04-cv-00343-JJF.

2.  The parties in the related cases are identical.

3.  The attorneys who have appeared in the related cases to date are identical.

4.  The two cases concern motions for protective orders filed by Defendant Tatung Company and Responses filed by Plaintiff.  The bases for the motion and bases for the response are substantially identical.

5.  The cases were assigned to two different courts because the Defendant filed its motions for protective orders as separate cases.

Judge Kaplan has set Defendant's Motion for Protective Order in this case for hearing on March 23, 2007. The matter in the related case has not been set for hearing.

Plaintiff suggests that consolidation may be appropriate under the circumstances.

Respectfully Submitted,

s/Frank L. Broyles
Frank L. Broyles
Texas State Bar #03230500
GOINS, UNDERKOFLER,
CRAWFORD & LANGDON, LLP
1201 ELM ST. SUITE 4800
DALLAS, TX 75270
(214) 969-5454
(214 969-5902 TELECOPY

Attorneys for Respondent,
**LG.PHILIPS LCD CO., LTD.**

### Certificate of Service

On March 19, 2007, a genuine copy of the foregoing was served via email on the persons shown on the service list attached on the next page.

s/Frank L. Broyles

## SERVICE LIST:
## 07-0017 & 07-0018 NDTX

**Richard D. Kirk**
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19899

**Jeffrey B. Bove**
**James D. Heisman**
**Jaclyn M. Mason**
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899

**Scott R. Miller**
CONNOLLY BOVE LODGE & HUTZ LLP
355 S. Grand Avenue, Suite 3150
Los Angeles, CA 90071

**Tracy R. Roman**
RASKIN PETER RUBIN & SIMON LLP
1801 Century Park East, Ste 2300
Los Angeles, CA 90067

**Frederick L. Cottrell, III**
**Anne Shea Gasa,**
RICHARDS LAYTON & FINGER, PA
One Rodney Square
P.O. Box 551
Wilmington, DE 19899


Penelope Brobst Blackwell
Green Taurig
2200 Ross Ave
Suite 5200
Dallas, TX 75201

# Email List:


rkirk@bayardfirm.com; jbove@cblh.com; jheisman@cblh.com; jmason@cblh.com;
smiller@cblh.com; troman@raskinpeter.com; Cottrell@RLF.com; Gaza@RLF.com;
blackwellp@gtlaw.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

LG.PHILIPS LCD CO., LTD., PLAINTIFF

V.

TATUNG COMPANY, *et al*, DEFENDANTS

**3-07 mc 0018-P-BD**
**ECF**
Assigned to the U.S. Magistrate Judge

CERTIFICATE OF SERVICE

On March 19, 2007, a genuine copies of: (i) the cover letter included with the Court's courtesy copy of the Notice of Related Case and Suggestion for Consolidation and ECF filing confirmation, and (ii) this certificate were served via email on the persons served with the underlying Notice of Related Case and Suggestion for Consolidation. A copy of the cover letter is attached.

Respectfully Submitted,

s/Frank L. Broyles
Frank L. Broyles
Texas State Bar #03230500
GOINS, UNDERKOFLER,
CRAWFORD & LANGDON, LLP
1201 ELM ST. SUITE 4800
DALLAS, TX 75270
(214) 969-5454
(214 969-5902 TELECOPY

Attorneys for
Respondent/Plaintiff,
LG.Philips LCD Co., Ltd.

LAW OFFICES

# GOINS, UNDERKOFLER, CRAWFORD & LANGDON

A REGISTERED LIMITED LIABILITY PARTNERSHIP
RENAISSANCE TOWER
1201 ELM STREET, SUITE 4800
DALLAS, TEXAS 75270

**FRANK L. BROYLES**
BOARD CERTIFIED – BUSINESS BANKRUPTCY
TEXAS BOARD OF LEGAL SPECIALIZATION

(214) 969-5454
FAX (214) 969-5902
E-mail: frankb@gucl.com

March 19, 2007

The Honorable Jeff Kaplan
U.S. Magistrate Judge
United States District Court
Northern District of Texas
1100 Commerce Street
Room 1611
Dallas, Texas 75242

    RE:    Case Numbers 3:07 mc 0017-N-BN-D and 3:07-mc-18-P-BD

Dear Judge Kaplan:

    Enclosed please find courtesy copies of pleadings filed today in the above-referenced matters. If you need anything further, please do not hesitate to contact us.

Very truly yours,

Lori Powell
Legal Assistant to Frank L. Broyles

Enclosures
FLB:lp
09332-002/LP:147038



## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

LG.PHILIPS LCD CO., LTD., PLAINTIFF

V.

TATUNG COMPANY, *et al,* DEFENDANTS

**3-07 mc 0018-P-BD**
**ECF**
Referred to the U.S. Magistrate Judge

### CERTIFICATE OF INTERESTED PERSONS

Respondent LG.Philips LCD Co., Ltd. files this its certificate of interested persons, that

is, persons who may have an interest in the financial outcome of the litigation:

1.    **PLAINTIFF:**

    a.  LG.Philips LCD Co. Ltd.

2.    **ATTORNEYS FOR PLAINTIFF**

    a.  THE BAYARD FIRM – Wilmington Delaware

        i.  Richard D. Kirk

    b.  MCKENNA, LONG & ALDRIDGE – Washington, D.C.

        i.  Cass Christenson

        ii.  Lora A. Brzezynski

        iii.  Nicole Balaci

        iv.  Cormac T. Conner

        v.  Sheri L. Klevins

    c.  GOINS, UNDERKOFLER, CRAWFORD & LANGDON, LLP – Dallas, TX

        i.  Frank L. Broyles

3.    **DEFENDANTS:**

    a.  Tatung Co.

    b.  Tatung Company of America, Inc.

    c.  Viewsonic Corp.

**4.**    **ATTORNEYS FOR DEFENDANTS**

    a.  RICHARDS, LAYTON & FINGER – Wilmington, DE

        i.  Anne Shea Gaza

        ii.  Frederick L. Cottrell, III

    b.  ROSENTHAL, MONHAIT & GODDESS, P.A.

        i.  Jeffrey S. Goddess

    c.  Frank C. Merideth

    d.  Mark H. Krietzman

    e.  Robert C. Weems

    f.  BIFFERATO GENTILOTTI BIDEN & BALICK – Wilmington, DE

        i.  Adam Balick

        ii.  Joanne Ceballos

    g.  CONNOLLY BOVE LODGE & HUTZ LLP – Wilmington, DE; Los Angeles, CA

        i.  Jeffrey B. Bove

        ii.  James D. Heisman

        iii.  Jaclyn M. Mason

    h.  GREEN TAURIG – Dallas, TX

        i.  Penelope Brobst Blackwell

        ii.  Frank C. Meridith, Jr.

        iii.  Valerie Ho

    i.  POTTER ANDERSON & CORROON, LLP – Wilmington, DE

        i.  Richard L. Horwitz

        ii.  David Ellis Moore

    j.  RASKIN PETER RUBIN & SIMON LLP – Los Angeles, CA

        i.  Tracy R. Roman

Respectfully Submitted,

s/Frank L. Broyles
 Frank L. Broyles
 Texas State Bar #03230500
 GOINS, UNDERKOFLER,
 CRAWFORD & LANGDON, LLP
 1201 ELM ST. SUITE 4800
 DALLAS, TX 75270
 (214) 969-5454
 (214 969-5902 TELECOPY


Attorneys for Respondent,
**LG.PHILIPS LCD CO., LTD.**

## Certificate of Service

On March 20, 2007, a genuine copy of the foregoing was served via email and first class mail on the persons shown on the service list attached on the next page.

s/Frank L. Broyles

# SERVICE LIST:
## 07-0017 & 07-0018 NDTX

**Richard D. Kirk**
THE BAYARD FIRM
222 Delaware Avenue, Suite  900
Wilmington, DE 19899

**Jeffrey B. Bove**
**James D. Heisman**
**Jaclyn M. Mason**
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899

**Scott R. Miller**
CONNOLLY BOVE LODGE & HUTZ LLP
355 S. Grand Avenue, Suite 3150
Los Angeles, CA 90071

**Tracy R. Roman**
RASKIN PETER RUBIN & SIMON LLP
1801 Century Park East, Ste 2300
Los Angeles, CA 90067

**Frederick L. Cottrell, III**
**Anne Shea Gasa,**
RICHARDS LAYTON & FINGER, PA
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

**Penelope Brobst Blackwell**
GREEN TAURIG
2200 Ross Ave
Suite 5200
Dallas, TX 75201

# Email List:

rkirk@bayardfirm.com; jbove@cblh.com; jheisman@cblh.com; jmason@cblh.com; smiller@cblh.com; troman@raskinpeter.com;  Cottrell@RLF.com; Gaza@RLF.com; blackwellp@gtlaw.com;

ORIGINAL

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAR 21 2007

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

LG.PHILIPS LCD CO., LTD., PLAINTIFF

v.

TATUNG COMPANY, *et al*, DEFENDANTS

3-07 mc 0018-P-BD
**ECF**
Referred to the U.S. Magistrate Judge

---

**AGREED ORDER TRANSFERRING CASE TO UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

Defendants Tatung Company and Tatung Company of America, Inc. filed motions for protective orders relating to deposition subpoenas in this case and in case 3-07-mc 0017-N-BD. Plaintiff LG.Philips LCD Co., Ltd responded and requested, *inter alia,* transfer of the pending motions to the United States District Court for the District of Delaware where the main case is pending as case number 1:04-cv-00343-JJF. The parties agree that this Court has discretion to transfer the case as requested and additionally have agreed to the transfer and entry of this order. Based on the agreements of the parties as evidenced by their signatures below, the Court is of the opinion that the case should be transferred. Accordingly, this case is

ORDERED TRANSFERRED to the United States District Court for the District of Delaware.

Signed *March 21, 2007*

UNITED STATES MAGISTRATE JUDGE

**AGREED:**

Frank L. Broyles by Penelope Blackwell with permission

Attorney for Respondent: LG.Philips LCD Co., Ltd.

Penelope Brobst Blackwell

Attorney for Movants: Tatung Company and Tatung Company of America, Inc.

Page Solo

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

Division:    Dallas

3/30/07

Clerk of Court

U.S. District Court

844 N. King Street

Wilmington, DE 19801

SUBJECT:  3:07-mc-00018 In Re Subpoena issued to Radio Shack Corporation

Dear Deputy Clerk:

The above action has been transferred to your court.

Enclosed is a certified copy of the transfer order and docket sheet. You may access electronically filed documents at our DCN CM/ECF web address: https://ecf.txnd.uscourts.gov. A guest login and password may be found on our website at: http://ntnet.txnd.circ5.dcn/pdf/irc/guest_login.pdf.

 Once logged into our CM/ECF database, you can query the case and download or print the PDFs for your court's file. If you find our headers at the top of each document to be a problem, they can be removed by going through Utilities, Maintain Your Account, and turning off the PDF Header before you download or print the documents.

Any documents not available electronically are enclosed in paper format.

Please acknowledge receipt of the certified copy of the transfer order, docket sheet and original documents, if any, by email to the Intake Section of the appropriate division:

Please reference our case number and brief style in the subject of your email acknowledgment.

Sincerely,
KAREN MITCHELL
Clerk of Court