U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 14 2007

CLERK, U.S. DISTRICT COURT
By _____
      Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE SUBPOENA ISSUED TO )  Civil Action No.: _____
RADIOSHACK )
 )  **3-07MC0018-P**
**ORIGINAL** )

**APPENDIX IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND BRIEF IN SUPPORT**

Defendants Tatung Company and Tatung Company of America, Inc. submit the

following Appendix in Support of Defendants' Motion for Protective Order and Brief in Support:

1. Notice of Fed.R.Civ.P. 30(b)(6) Deposition *Duces Tecum* and Fed.R.Civ.P. 45 Service of Subpoena……………………………………………………………...…………0003

2. Motion for a Protective Order Limited Scope of Third Party Deposition and Subpoena……………………………………………………………………………0017

3. Declaration of Charlene Oh……………………………………………………...0055

4. Declaration of Charlene L. Oh………………………………………………….…...0057

5. Declaration of Jackson Chang……………………………………………………...0060

6. Stipulated Protective Order……………………………………………………….0061

7. Order Granting Motion for Protective Order (S.D. Fla.)………………………...…...0074

Respectfully Submitted,

Penelope Broost Blackwell
  State Bar No. 24029456
**GREENBERG TRAURIG, LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601
**ATTORNEYS FOR TATUNG COMPANY and
TATUNG COMPANY OF AMERICA, INC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served all counsel of record via electronic mail and certified mail, return receipt requested, this *14th* day of March, 2007, and addressed as follows:

| | |
|---|---|
| Richard D. Kirk, rkirk@bayardfirm.com<br>The Bayard Firm<br>222 Delaware Avenue # 900<br>Wilmington, DE 19899 | Gaspare J. Bono, gbono@mckennalong.com<br>Rel S. Ambrozy, rambrozy@mckennalong.com<br>Cass W. Christenson, cchristenson@mckennalong.com<br>Lora A. Brzezynski, lbrzezynski@mckennalong.com<br>Cormac T. Connor, cconnor@mckennalong.com<br>Shari L. Klevens, sklevens@mckennalong.com<br>McKenna Long & Aldridge LLP<br>1900 K Street, N.W.<br>Washington, DC 20006 |
| Jeffrey B. Bove, jbove@cblh.com<br>James D. Heisman, jheisman@cblh.com<br>Jaclyn M. Mason, jmason@cblh.com<br>Connolly Bove Lodge & Hutz LLP<br>1007 North Orange Street<br>P.O. Box 2207<br>Wilmington, DE 19899 | Tracy R. Roman, troman@raskinpeter.com<br>Raskin Peter Rubin & Simon LLP<br>1801 Century Park East, Suite 2300<br>Los Angeles, CA 90067 |
| Scott R. Miller, smiller@cblh.com<br>Connolly Bove Lodge & Hutz LLP<br>355 South Grand Avenue, Suite 3150<br>Los Angeles, CA 90071 | Frederick L. Cottrell, III, Cottrell@RLF.com<br>Anne Shea Gaza, Gaza@RLF.com<br>Richards Layton & Finger, PA<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, DE 19899 |
| Frank E. Merideth, Jr., meridethf@gtlaw.com<br>Valerie W. Ho, hov@gtlaw.com<br>Mark H. Krietzman, krietzmanm@gtlaw.com<br>Steve P. Hassid, hassids@gtlaw.com<br>Charlene L. Oh, ohc@gtlaw.com<br>Deborah J. Pouratian, pouratiand@gtlaw.com<br>Greenberg Traurig LLP<br>2450 Colorado Avenue, Suite 400E<br>Santa Monica, CA 90404 | |

Penelope Brobst Blackwell

DAL-FS1\105827v01

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

                            Plaintiff,

        v.                                          Civil Action No. 04-343 (JJF)

TATUNG COMPANY, et al.,

                            Defendants.

**NOTICE OF FED.R.CIV.P. 30(b)(6) DEPOSITION *DUCES TECUM*
AND FED.R.CIV.P. 45 SERVICE OF SUBPOENA
(RADIOSHACK CORPORATION)**

TO:

Jeffrey B Bove, Esq.                    Frederick L. Cottrell, III, Esq.
Jaclyn M. Mason, Esq.                   Anne Shea Gaza, Esq.
Connolly Bove Lodge & Hutz LLP          Richards, Layton & Finger
1007 North Orange Street                One Rodney Square
P.O. Box 2207                           P.O. Box 551
Wilmington, Delaware 19899-2207         Wilmington, DE 19899


Valerie Ho, Esq.                        Scott R. Miller, Esq.
Mark H. Krietzman, Esq.                 Connolly Bove Lodge & Hutz LLP
Frank C. Merideth, Jr., Esq.            355 South Grand Avenue
Greenberg Traurig LLP                   Suite 3150
2450 Colorado Avenue, Suite 400E        Los Angeles, CA 90071
Santa Monica, CA 90404



Tracy Roman, Esq.
Raskin  Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067


        PLEASE TAKE NOTICE that Plaintiff will take the deposition *duces tecum* of

Radioshack Corporation ("Radioshack") pursuant to Fed. R. Civ. P. 30(b)(6), on March 22, 2007

at 10:00 a.m.  The deposition will take place at the offices of Esquire Deposition Services, 1700

Pacific Ave., Suite 4750, Dallas TX 75201.  The deposition will be videotaped and taken before

a notary public or court reporter, duly authorized to administer oaths and transcribe the testimony of the deponent(s) and may use technology that permits the real time display of the deposition transcript for attendees who bring a compatible computer. The deposition may continue from day to day until completed if authorized by the Court or stipulated by the parties.

PLEASE ALSO TAKE NOTICE that LG.Philips LCD Co., Ltd. is serving Radioshack with a subpoena (the "Subpoena"), a copy of which is attached hereto. The subjects covered in the deposition will include (but are not limited to) the subjects listed on Attachment A to the Subpoena. Pursuant to Fed. R. Civ. P. 30(b)(6), Radioshack is required to designate one or more persons to testify at the deposition as to the matters known or reasonably available to Radioshack concerning all topics listed in Attachment A to the Subpoena. In addition, the Subpoena requires Radioshack to produce at the deposition the documents listed in Attachment B to the Subpoena.

You are invited to attend and cross examine.

February 26, 2007

THE                                                  BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
OF COUNSEL:                                          rkirk@bayardfirm.com
Gaspare J. Bono                                      (302) 655-5000
Matthew T. Bailey                                    Counsel for Plaintiff
Lora A. Brzezynski                                   LG.PHILIPS LCD CO., LTD.
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

OAO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS

LG.PHILIPS LCD CO., LTD.                    **SUBPOENA IN A CIVIL CASE**
      V.
TATUNG COMPANY, et al.

Case Number:[1]    04-343 (JJF)

TO:  **RadioShack Corporation**
    **Riverfront Campus World Headquarters**
    **300 RadioShack Circle, Ft. Worth, TX 76102-1964**

United States District Court for the District of Delaware

  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
G  to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
X  deposition in the above case. (See Attachment A for topics.)

| PLACE OF DEPOSITION<br>Esquire Deposition Services, 1700 Pacific Ave. Ste 4750, Dallas TX 75201 | DATE AND TIME<br>March 22, 2007 at 9:00 am. |
|---|---|

  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at
X  the place, date, and time specified below (list documents or objects): All documents listed in Attachment B.

| PLACE<br>Mail documents to: McKenna Long & Aldridge LLP, Attn: Shari Klevens<br>c/o Esquire Deposition Services, 1700 Pacific Ave. Ste 4750, Dallas TX 75201 | DATE AND TIME<br>March 15, 2007 at 9:00 a.m. |
|---|---|

G  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

  Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER=S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR<br>Shari Klevens (Attorney for Plaintiff) *Shari Klevens* | DATE<br>February 26, 2007 |
|---|---|

ISSUING OFFICER=S NAME, ADDRESS AND PHONE NUMBER
Shari Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
Telephone: 202-496-7612

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

DC:50459468.1

App. 0005

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
| | |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

    (i)     fails to allow reasonable time for compliance,
    (ii)    requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

    (iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or
    (iv)    subjects a person to undue burden.

(B) If a subpoena

    (i)     requires disclosure of a trade secret or other confidential research, development, or commercial information, or
    (ii)    requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or
    (iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand. ·

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

DC:50459468.1

App. 0006

## ATTACHMENT A: TOPICS TO BE ADDRESSED AT THE DEPOSITION

For purposes of this Attachment, RadioShack Corporation should use the following definition for the terms used herein.

A.      "RadioShack," "you," and "your" as used herein, means RadioShack Corporation and all persons or entities acting or purporting to act on your behalf, and any affiliates of RadioShack Corporation.

B.      "ViewSonic" means Defendant ViewSonic Corporation, and all persons or entities acting or purporting to act on ViewSonic's behalf, and any affiliates of ViewSonic, including, but not limited to, entities, divisions, and affiliates located in Taiwan.

C.      "ViewSonic products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for ViewSonic. This includes all such products, regardless of brand name, and thus includes, but is not limited to, ViewSonic brand products.

D.      "Tatung Company" means Defendant Tatung Company, all persons or entities acting or purporting to act on Tatung Company's behalf, and affiliates of Tatung Company including but not limited to Tatung Company.

E.      "Tatung Company products" as used herein any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung Company. This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung brand products.

App. 0007

F.    "Tatung America" means Defendant Tatung Company of America, Inc., and all persons or entities acting or purporting to act on Tatung Company of America's behalf, including, but not limited to Tatung Company of America.

G.    "Tatung America products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung America.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung America brand products.

H.    "TSTI" means Tatung Science and Technology, Inc., and all persons or entities acting or purporting to act on Tatung Science and Technology's behalf, including, but not limited to Tatung Science and Technology.

I.    "TSTI products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for TSTI. This includes all such products, regardless of brand name, and thus includes, but is not limited to, TSTI brand products.

J.    "Affiliate(s)" means any corporation or other entity that controls, is controlled by or is under common control with the identified corporation or entity, including without limitation partnerships, parents, subsidiaries and divisions.

K.    "Visual display products" means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs.

App. 0008

L.    "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information between two of more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery or otherwise, including but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

M.    "Concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing or constituting the referenced subject.

N.    "Discuss," "discussing," "relate to" "relating to," "support" or "supporting" means in any way directly or indirectly, in whole or in part, discussing, referring to, regarding, constituting, concerning, about, pertaining to, relating to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling or negating.

O.    "Identify" used in respect to a company or corporate or business entity of any kind means to set forth:

        a.    the full name of the company;

        b.    the full name of the division or office involved, if applicable; and

        c.    the address of the company and of the division or office involved, if applicable.

P.    "Identify" used in respect to a document or thing means:

App. 0009

    a.   to provide a brief description of such document or thing, including date, author, recipients, type, and content or substance;

    b.   to identify the custodian of the document or thing;

    c.   to identify the place where the document or thing may be inspected; and

    d.   if a copy of the document has been supplied to LPL, to so state and specifically identify the copy supplied by reference to production numbers or other identifying information.

Q.    "Identify" used with respect to a natural person means to state:

    a.   the full name;

    b.   the present or last known business and residence addresses;

    c.   the last known employer or job affiliation; and

    d.   the last known occupation and business position or title held.

R.    "Import" or "importation" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

S.    "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

T.    "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

U.    "Person" means any natural person, firm, association, partnership, corporation, or other form of legal entity.

V.    "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

W.    The use of the singular form of any word includes the plural and vice versa.

The topics to be covered in the deposition include:

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 4 of 6

1.      The nature of the business relationship and transactions between RadioShack and Tatung Company, Tatung America, TSTI, and/or ViewSonic relating to the sale, distribution, or importation of visual display products, including but not limited to the agreements between RadioShack, Tatung Company, Tatung America, TSTI, and/or ViewSonic.

2.      The scope, nature and purpose of communications between RadioShack and Tatung Company, Tatung America, TSTI, and ViewSonic (a) concerning the sale or marketing in the United States of visual display products manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, (b) communications regarding any product support assistance or warranties that Tatung Company, Tatung America, TSTI, and/or ViewSonic have provided to RadioShack, and (c) communications regarding the market trends for visual display products in the United States.

3.      Any agreements or contracts pursuant to which RadioShack has agreed to purchase Tatung Company's, Tatung America's, TSTI's and/or ViewSonic's visual display products either directly from Tatung Company, Tatung America, TSTI, or ViewSonic or indirectly by purchasing such products from any OEMs.

4.      RadioShack's activities or efforts related to the distribution or sale of visual display products in the United States manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic.

5.      All channels, distributors, suppliers, and networks through which products made in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic have been shipped, imported, sold, and/or distributed in the United States.

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 5 of 6

6.      RadioShack's sales of its visual display products that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, including the quantity and dollar amount of such sales, by product.

7.      The date(s) and location(s) of any in person meetings in the United States between employees or representatives of RadioShack and of a) Tatung, b) Tatung America, c) TSTI, and/or d) ViewSonic, the identity and job descriptions of participants in such meetings, and the substance of issues discussed or addressed in such meetings.

DC:50459616.1

App. 0012

## ATTACHMENT B: DOCUMENTS TO BE PRODUCED

For purposes of this Attachment, RadioShack Corporation should refer to Attachment A for the definition or meaning of terms used herein, which definitions are incorporated herein by reference. In addition, the following definition applies:

A.    "Document" means all types of documents and things embraced within Federal Rules of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries or interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, or opinions of counsel, records, reports or summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, computer printouts, floppy disks, hard drives, CD-ROM's, magnetic tapes and other data compilations from which

App. 0013

information can be obtained or translated, if necessary by RadioShack through detection devices into reasonably usable form. The term document also refers to any tangible object other than a document as described above, and includes objects of every kind and nature such as, but not limited to, prototypes, models, and specimens.

The documents to be produced on or before March 5, 2007, include the following:

1.    All documents provided by Tatung Company, Tatung America, TSTI, or ViewSonic to RadioShack since January 1, 2002 regarding marketing, sales, or business documents or presentation materials and any documents relating to warranties, product support, or service provided by Tatung Company, Tatung America, TSTI, or ViewSonic regarding their visual display products.

2.    Documents provided by RadioShack to Tatung Company, Tatung America, TSTI, or ViewSonic since January 1, 2002 sufficient to show RadioShack's market for visual display products, and/or market trends in the United States for visual display products.

3.    Documents sufficient to show the business relationship between RadioShack and Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including communications with Tatung Company, Tatung America, TSTI, and/or ViewSonic, notes from meeting with Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents in which RadioShack has agreed to purchase visual display products directly from Tatung Company, Tatung America, TSTI, and/or ViewSonic.

4.    All documents from January 1, 2002 by which RadioShack has agreed to purchase from original equipment manufacturers ("OEMs") any visual display products that RadioShack had reason to believe were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents sufficient to show

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 2 of 4

that Tatung Company, Tatung America, TSTI, and/or ViewSonic received notice of RadioShack's agreements to purchase.

5. Documents sufficient to show RadioShack's receipt or purchase of visual display products sold, manufactured, shipped, imported, or distributed in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002.

6. Documents sufficient to show the total quantity of visual display products sold, by product, by RadioShack that were manufactured or assembled in whole or in part by Tatung Company, Tatung America, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

7. Documents sufficient to show the sales by total dollar value and by quantity of visual display products sold, by product, by RadioShack that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

8. Documents sufficient to identify each person RadioShack has communicated with at Tatung Company, Tatung America, TSTI, and/or ViewSonic.

DC:50459608.1

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 3 of 4

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 26, 2007, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Jeffrey B Bove, Esq.                          Frederick L. Cottrell, III, Esq.
Jaclyn M. Mason, Esq.                         Anne Shea Gaza, Esq.
Connolly Bove Lodge & Hutz LLP                Richards, Layton & Finger
1007 North Orange Street                      One Rodney Square
P.O. Box 2207                                 P.O. Box 551
Wilmington, Delaware 19899-2207               Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent by email to the above counsel on February 26, 2007, and will be sent by hand

on February 26, 2007, and were sent by email on February 26, 2007, and will be sent by

first class mail on February 26, 2007, to the following non-registered participants:

Scott R. Miller, Esq.                         Valerie Ho, Esq.
Connolly Bove Lodge & Hutz LLP                Mark H. Krietzman, Esq.
355 South Grand Avenue                        Frank C. Merideth, Jr., Esq.
Suite 3150                                    Greenberg Traurig LLP
Los Angeles, CA 90071                         2450 Colorado Avenue, Suite 400E
                                              Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

/s/ Richard D. Kirk (rk922)
Richard D. Kirk

571447-1

App. 0016

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

L.G. PHILIPS LCD CO., LTD.,

Plaintiff,

Case No. 04-343-JJF (D. Del.)

TATUNG COMPANY; TATUNG
COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION,

Defendants.

_____/

**07-80223**

**CIV-RYSKAMP**

MAGISTRATE JUDGE
VITUNAC

FILED BY _____ D.C.

2007 MAR -9 PM 4:16

### MOTION FOR A PROTECTIVE ORDER LIMITING SCOPE
### OF THIRD PARTY DEPOSITION AND SUBPOENA

### FRCP 26(C) CERTIFICATE OF COMPLIANCE

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, counsel for

Defendants Tatung Company and Tatung Company of America, Inc. certify that they

conferred in good faith with counsel for plaintiff L.G. Philips LCD Co., Ltd. to resolve

this dispute prior to filing this motion and were unsuccessful.

### BASIS FOR EMERGENCY HEARING

This Motion for Protective Order Limiting Scope of Third Party Deposition and

Subpoena (the "Motion for Protective Order") concerns a deposition notice and third-

party subpoena issued in this district in connection with a patent infringement lawsuit

pending in the United States District Court for the District of Delaware (the "Delaware

Action").

Defendants respectfully request an expedited hearing and briefing schedule on the

Motion for Protective Order for the following reasons:

*BOC 36433484v1 3/9/2007*

App. 0017

- Discovery cut-off in the Delaware Action is set for March 30, 2007.

- Fully aware of the impending discovery cut-off date, Plaintiff waited until the last minute to serve 23 separate third-party subpoenas and deposition notices, issued out of 15 different judicial districts, throughout the country starting in mid-February 2007.

- On February 27, 2007, Defendants requested that Plaintiff meet and confer about the scope of discovery demanded by Plaintiff in those 23 third-party subpoenas and deposition notices. Following Defendants' February 27, 2007 request, Plaintiff agreed to meet and confer on March 5, 2007.

- During the March 5, 2007 meet and confer, Plaintiff refused to limit the scope of the third-party subpoenas and deposition notices in any meaningful way.

- Plaintiff's subpoenas demand production of documents by March 5, 2007, and its deposition notices set depositions for March 12, 2007 through March 28, 2007. Because of Plaintiff's last-minute discovery tactics and its failure to meaningfully meet and confer with Defendants, an emergency hearing is necessary to resolve these discovery issues in a timely manner. Pursuant thereto, Defendants respectfully request an emergency hearing.

2

App. 0018

**DEFENDANTS TATUNG COMPANY AND TATUNG COMPANY OF
AMERICA, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER
<u>LIMITING SCOPE OF THIRD PARTY DEPOSITION AND SUBPOENA</u>**

### I.     INTRODUCTION

Defendants Tatung Company and Tatung Company of America (collectively, "the

Tatung Defendants") submit this Memorandum of Points and Authorities in support of

their Motion for Protective Order Limiting Scope of Third Party Deposition and

Subpoena (the "Motion for Protective Order").

This Motion for Protective Order seeks to limit the scope of a subpoena and

deposition notice issued on third-party Sensormatic, Inc. ("Sensormatic") out of this

district in connection with a patent infringement lawsuit pending in the United States

District Court for the District of Delaware (the "Delaware Action," C.A. No. 04-343-

JJF). The subpoena at issue is attached as Exhibit 1 hereto and made a part hereof.

Defendants submit that any third-party discovery should be limited to the accused

products. *See* Declaration of Charlene Oh at ¶3, which is attached hereto as Exhibit 2.

For the reasons discussed in greater detail below, the Tatung Defendants' request for a

protective order should be granted because the discovery sought by Plaintiff L.G. Philips

LCD Co., Ltd. ("LPL") is:

1.     A transparent and improper effort by LPL to perform an "end run" around

a potentially unfavorable ruling by the Special Master in the Delaware Action concerning

the proper scope of LPL's discovery, namely, the Special Master's impending ruling on

LPL's motion to compel discovery pertaining to *unaccused* products from the Tatung

Defendants and the Tatung Defendants' motion to stay discovery regarding *unaccused*

3

App. 0019

products pending resolution of issues relating to LPL's and its attorneys' violations of Protective Orders in cases pending between the parties;

2.      Irrelevant in that it seeks extremely broad categories of communications and information from the Tatung Defendants' customers entirely unrelated to the patents-in-suit or the accused products in the Delaware Action;

3.      Not reasonably calculated to lead to the discovery of admissible evidence in the Delaware Action, but instead, is information about the Tatung Defendants' confidential business communications and trade secret information that LPL seeks for ulterior and improper purposes; and

4.      Unduly burdensome in that the third-party discovery Plaintiff seeks from Sensormatic and the Tatung Defendants' other customers will require the production of thousands of documents and is calculated to harass the Tatung Defendants' customers, some of whom have already responded to subpoenas issued by LPL during jurisdictional discovery.

## II.      STATEMENT OF FACTS

### A.      The Nature Of This Lawsuit.

Defendant Tatung sells electronic products including computer monitors and televisions to resellers and retailers worldwide.  Defendant Tatung Company of America, a California corporation, is a reseller of computer monitors and other LCD applications in the United States.  The Tatung Defendants also perform OEM (Original Equipment Manufacturer) services for a number of customers.  LPL and its parent company, LG Electronics, Inc. ("LGE"), compete with the Tatung Defendants in the market of flat display panel products (e.g., LCD monitors, LCD televisions and plasma televisions).

4

Third-party Sensormatic, the recipient of LPL's subpoena and deposition notice, is located in Boca Raton, Florida and is a customer of the Tatung Defendants.

The Tatung Defendants integrate more than 800 models of computer monitors and flat panel display products, referred to collectively as "visual display products." As OEMs, many of the Tatung Defendants' products are branded and otherwise customer specific; in most instances, the products are made to exacting customer specifications. Because the monitor business is highly competitive, the particular product design requirements and specifications of the Tatung Defendants' OEM customers, including those of Sensormatic, are extremely valuable trade secrets. The Tatung Defendants' specific pricing arrangements with customers also are extremely valuable trade secrets.

LPL commenced the Delaware Action against the Tatung Defendants on May 27, 2004. In the Delaware Action, LPL has alleged patent infringement claims against the Tatung Defendants based on certain "rear-mount" patents with respect to 20 of its products.

The discovery cut-off date in the Delaware Action is March 30, 2007.

**B.    The Tatung Defendants Have Already Provided LPL With Voluminous Discovery Relating to Both Its Accused and Non-Accused Products.**

LPL served its initial discovery requests in the Delaware Action over two years ago. In response to those discovery requests, the Tatung Defendants produced technical specifications and assembly drawings covering approximately 800 models of monitors and flat panel displays they sell. Until November 2006, LPL had accused only one Tatung product of infringing the patents-in-suit. In November 2006, LPL identified two

5

additional accused products. It was not until mid-January 2007 that LPL accused the remaining products.

The Tatung Defendants have expended a great deal of effort to comply with their discovery obligations. Since late January 2007 alone, the Tatung Defendants have produced approximately 15,000 pages of documents, including the following:

- Highly confidential Tatung America product work instructions;

- Highly confidential exploded view drawings of products; and

- Highly confidential sales summaries from 2002 to the present (quarter 1, 2007) containing model, price, and quantity information for *all* of its visual display products.

In addition, the Tatung Defendants have made available for LPL's inspection, and LPL has examined, disassembled, and photographed more than 40 monitor and television products. Of the hundreds of products for which LPL has been provided technical documents, LPL to date has accused only 20 products of infringing the patents-in-suit.

**C.    LPL's Motion To Compel Further Customer Information Is Pending Before the Special Master.**

In January 2007, LPL filed a motion to compel the production of additional documents such as highly confidential agreements and communications between the Tatung Defendants and their customers relating to *all* of the Tatung Defendants' visual display products including the hundreds of unaccused products. The Tatung Defendants vigorously opposed that motion on the grounds that LPL's requested discovery is not limited in any way to the accused products at issue in the Delaware Action and is instead a transparent attempt by LPL to obtain highly sensitive business information. That

6

motion is presently pending before the Special Master.  The parties expect a decision

shortly, as discovery cut-off is March 30, 2007.

**D.    LPL Now Seeks the Same Discovery Directly From the
Tatung Defendants' Customers.**

In what can only be characterized as a blatant attempt to circumvent a potentially

unfavorable ruling by the Special Master on a motion LPL itself filed, LPL recently

served Sensormatic, as well as two dozen other customers of the Tatung Defendants, with

a subpoena and deposition notice seeking voluminous discovery about highly confidential

customer information on hundreds of products that LPL has *never accused of

infringement*.

Specifically, LPL's request for documents seeks, *inter alia*, "all documents"

including but not limited to writings, accounting records, agreements, communications,

correspondence, faxes, summaries of records or telephone conversations, minutes or

records of meetings or conferences, lists of persons attending meetings or conferences,

documents between the Tatung Defendants and Sensormatic concerning such subject

matter area as (a) marketing, sales, business documents or presentation materials

provided by the Tatung Defendants, (b) technical specifications and/or assembly

drawings regarding the Tatung Defendants' "visual display products," (c) Sensormatic's

design requirements for its "visual display products," (d) Sensormatic's market for its

"visual display products," (e) the business relationship between Sensormatic and the

Tatung Defendants since January 1, 2002, (f) the manufacture and/or assembly of the

Tatung Defendants' "visual display products," and more.

7

These extensive and broad-reaching requests for "visual display products" encompass *all* of the products the Tatung Defendants sell to Sensormatic and not just the accused products that are the subject of the Delaware Action.  To date, LPL has failed to provide any legitimate explanation why information on *unaccused* products is relevant to its patent infringement claims in the Delaware Action.

### III.    LEGAL ARGUMENT

**A.    The Tatung Defendants Have Standing Under FRCP 26(c) To Move For A Protective Order.**

Rule 26(c) of the Federal Rules of Civil Procedure ("FRCP") provides that "[u]pon motion *by a party* or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred…and for good cause shown… the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person…" (emphasis added).  Courts within the Eleventh Circuit have recognized that this language gives parties to a lawsuit, as well as third-parties themselves, standing to challenge third-party subpoenas. *See Maxwell v. Health Ctr. of Lake City, Inc.*, No. 3:05-cv-1056-J-32MCR, 2006 U.S. Dist. LEXIS 36774, at *6-8 (M.D. Fla. 2006) (granting Defendant's motion for protective order against third party subpoenas under FRCP 26(c)); *see also, Garcia v. Jefferson Capital Sys., LLC*, No. 8:05-CV-1967-T-23EAJ, 2006 U.S. Dist. LEXIS 56147, at *9-10 (M.D. Fla. 2006) (stating that Defendants have standing to move for protective order against third party subpoenas seeking irrelevant information, pursuant to FRCP 26(c)); *see also, Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla.

*BOC 36433484v1 3/9/2007*

2005) (holding that a party has standing to challenge a subpoena issued to a non-party if the party alleges a personal right or privilege with respect to the subpoenas).

In meet and confer discussions, LPL has asserted that the Tatung Defendants do not have standing to object to the information sought from third parties. LPL is mistaken and references inapposite authority.[1]

Based on the above, the Tatung Defendants, as parties to the Delaware Action, clearly have standing to seek a protective order against LPL's attempts to obtain extremely broad and irrelevant discovery from third-parties.

**B.    Good Cause Supports The Issuance of A Protective Order.**

    **1.    Legal Standard Governing The Issuance Of Protective Orders.**

Pursuant to Federal Rule of Civil Procedure 26(c), "upon a showing of good cause," the Court may issue a protective order precluding or limiting the scope of discovery in order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. *See, e.g., Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D.

---

[1]    For example, LPL will likely cite *Dart Industries, Inc. v. Liquid Nitrogen Processing* for the proposition that "unless a party to an action can make claim to some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty witness, the party to the action has no right to relief under FRCP 45(b) or 30(b)." 50 F.R.D. 286, 291 (D. Del. 1970), *quoting Shepherd v. Castle*, 20 F.R.D. 184, 188 (W.D.Mo. 1957).

Dart Industries *is inapposite for two reasons. First, that case involved a party's motion to quash a third party subpoena under FRCP 45(b); here, the Tatung Defendants move for a protective order pursuant to FRCP 26(c), which expressly grants parties standing to move the court to limit the scope of, or altogether preclude certain issues from, third party discovery.[1] FRCP 26(c)(4), 26(c)(7). The Tatung Defendants have chosen not to quash under FRCP 45(b) because they agree that LPL may seek relevant and appropriate discovery from third parties; FRCP 26(c) is the more appropriate mechanism to strike a balance between allowing open discovery and ensuring that such discovery is fairly tailored to the accused products.*

*Second, unlike the Tatung Defendants, the moving party in* Dart Industries *did not assert any personal privilege with respect to the requested documents. 50 F.R.D. at 291. In fact, the court expressly "decline[d] to hold that Dart lacks standing to move to quash the subpoena duces tecum on the grounds stated in FRCP 45(b)," averring that Dart's interest "may be sufficient to give it standing to move to limit the production sought here." Id., emphasis added.*

9

App. 0025

175, 178 (N.D. Ill. 2006); *see also, Pulsecard, Inc. v. Discover Card Services, Inc.*, 1995

WL 526533 at *14 (D. Kan. 1995). The protective order may include limiting the scope

of discovery to certain matters, precluding altogether the discovery of certain matters, and

ordering that a trade secret or other confidential research, development, or commercial

information not be revealed. Fed R. Civ Proc. 26(c)(4), 26(c)(7).

In the context of Federal Rule of Civil Procedure 26(c)(7) specifically, "good

cause" requires the party seeking the protective order to demonstrate that: (1) the material

sought to be protected is confidential, and (2) disclosure will create a competitive

advantage for the party. *Pulsecard*, 1995 WL 526533 at * 16, *citing Georgia Television

Co. v. TV News Clips of Atltanta*, 718 F. Supp. 939, 953 (N.D. Ga. 1989).

### 2. The Requested Discovery Seeks Overly Broad Categories Of Communications and Information Completely Unrelated To Claims At Issue in The Delaware Action.

A protective order is appropriate because LPL's third-party discovery requests are

overly broad and seek information that is not relevant to its claims, nor the Tatung

Defendants' defenses, in the Delaware Action. Instead, LPL seeks to obtain, through the

guise of "discovery," sensitive and confidential information relating to the Tatung

Defendant's business operations that would help LPL gain a competitive advantage.

"[D]iscovery may not be had regarding a matter which is not 'relevant to the

subject matter involved in the pending action.'" *Micro Motion, Inc. v. Kane Steel Co.*,

894 F.2d 1318, 1323 (Fed. Cir. 1990). Moreover, "[e]*ven if relevant*, discovery is not

permitted where no need is shown, or compliance would be unduly burdensome, or

where harm to the person outweighs the need of the person seeking discovery of the

10

information." *Id; see also, American Standard, Inc. v. Pfizer Inc.*, 828 F.2d 734, 739-42 (Fed. Cir. 1987).

In this regard, the case of *Joy Technologies, Inc. v. Flakt, Inc.*, 772 F. Supp. 842 (D. Del. 1991) is instructive, and presents a nearly identical situation to that found here. In *Joy Technologies*, the defendant sought a protective order preventing plaintiff from seeking discovery from *any of the defendant's customers or potential customers* until plaintiff made a showing that the information: (a) was necessary and relevant to the action, and (b) could not be obtained from any other source. *Id.* at 845. The court granted the requested protective order, stating:

> [I]t is undisputed that [plaintiff] and [defendant] are fierce competitors in the technology that is the subject of this lawsuit, and [plaintiff] has not convinced the Court that the same information it seeks from third parties is not available from [defendant]. Therefore, unless [plaintiff] can demonstrate that it has a specific need for evidence available only from third party customers of [defendant], the Court concludes that [defendant] and its customers are entitled to protection.

*Id.* at 849.

Similarly, in *Micro Motion, supra*, the plaintiff sought to obtain information from a nonparty competitor that was purportedly relevant to the issue of damages in the underlying patent suit. The court held that the plaintiff was embarking on a "fishing expedition" with its "merely speculative inquiries in the guise of relevant discovery." 894 F.2d at 1327-28, *see also Visto Corp. v. Smartner Info. Systems, Ltd.,* 2007 WL 218771 at * 5 (N.D. Cal. 2007) (granting protective order such that third party did not have to respond to the subpoena).

Here, LPL's discovery requests to Sensormatic seek broad categories of documents and information concerning both accused and *unaccused* products that also

11

are not limited as to time period. Such overly broad discovery requests encompass documents and information that, in reality, have nothing to do with the pending Delaware Action. Instead, it is readily apparent that LPL seeks to obtain such information about the Tatung Defendants to obtain a competitive advantage over them.

It also should be noted that the Tatung Defendants do not seek to prevent LPL from obtaining all third-party discovery being requested in its subpoena and deposition notice. Rather, such third-party discovery should focus on deposition topics and documents *pertaining to the accused products* at issue in the Delaware Action.

### 3. The Requested Third-Party Discovery Is Irrelevant To Any Purported Claim of Indirect Infringement.

The Tatung Defendants anticipate that LPL will claim that it needs customer information in order to determine indirect infringement. However, LPL has not shown why such information is relevant to any such indirect infringement claim.

Determining whether a patent claim has been infringed involves a two step analysis. First, the claim must be properly construed by the Court to determine its scope and meaning. Second, the claim, as construed, must be compared to the accused device or process. *PC Connector Solutions LLC v. Smartdisk Corp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005). Infringement analysis therefore focuses on the products or processes and the claims of the patents.

Here, the Tatung Defendants have already produced technical documents that depict their products' components, as well as the assembly methods used. LPL is *already in possession* of all the technical information it needs to compare Tatung's products to the

12

asserted claims. There is no need to directly subpoena and depose the Tatung Defendants' customers.

Moreover, there can be no indirect infringement without direct infringement and an infringing product. "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, … and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Minnesota Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304 (Fed. Cir. 2002).

Here, there is no allegation of direct infringement with respect to the hundred of products for which LPL seeks thousands of documents from third parties. LPL is therefore not entitled to the broad categories of documents it seeks from Sensormatic.

### 4.    The Requested Discovery Seeks Confidential Business Information To Which LPL Would Not Otherwise Be Entitled.

A protective order also is appropriate because LPL's subpoena and deposition notice seeks disclosure of confidential, proprietary trade secret information belonging to the Tatung Defendants. Such confidential commercial information warrants special protection under Rule 26(c)(7). *Micro Motion,* 894 F.2d at 1323, *citing Smith & Wesson v. United States*, 782 F.2d 1074, 1082 (1st Cir. 1986).

The Tatung Defendants and LPL are active competitors in the computer monitor business. Declaration of Jackson Chang ("Chang Decl.") at ¶ 2, which is attached hereto as Exhibit 3. Producing the information and testimony LPL seeks would cause major competitive harm to the Tatung Defendants. Chang Decl. at ¶ 3. As just one example, LPL designates as a deposition topic: "The nature of the business relationship and

13

transactions between Sensormatic and [the Tatung Defendants] relating to the sale, manufacture, assembly, distribution, or import of visual display products, including but not limited to the agreements between Sensormatic [and the Tatung Defendants]." These topics are closely guarded by the Tatung Defendants as highly sensitive and confidential business information. *Id.* at ¶ 4. The Tatung Defendants' methods of manufacturing its visual display products, for example, are not disclosed publicly; divulging this information would likely result in competitors using the information to 1) undercut the Tatung Defendants in pricing; 2) deduce the exact specifications required by existing customers; and/or 3) specifically target and lure away Tatung's existing customers. *Id.* at ¶ 7. All of this information is kept secret by the Tatung Defendants. Only authorized personnel have access to the information and information kept on computers are password protected. *Id.* at ¶ 6. The product specifications and features required by each customer, including Sensormatic, constitute competitive value and maintaining the confidentiality of such information is essential to the fair conduct of this litigation.

> **5.    LPL's Discovery Is Unduly Burdensome And Is Intended to Harass The Tatung Defendants' Customers.**

Ordering compliance with LPL's subpoena would pose an undue and unnecessary burden and expense on non-party Sensormatic to gather and produce such information and defend depositions in the requested time frame, particularly given the utter irrelevance of the majority of requested documents and testimony.

The Tatung Defendants respectfully submit that LPL's discovery requests have been interposed solely to harass Sensormatic and aggravate the business relationship between the Tatung Defendants and their customers.

14

**C.    The Need For a Protective Order Limiting Third Party Discovery Is Even More Compelling Due To LPL's Violations Of Previous Protective Orders.**

LPL will likely argue that a Protective Order entered in the Delaware Action is sufficient for discovery produced by third parties. The Tatung Defendants disagree on two grounds, both of which are pending before the Special Master.

**1.    LPL Has Violated Other Protective Orders On At Least Two Occasions.**

The Tatung Defendants have recently petitioned the Special Master for relief regarding LPL's multiple violations of protective orders issued in different cases, implicating different patents, pending between the parties. LPL has *admitted* that its lawyers have viewed, used and disclosed confidential materials produced in other litigation between the parties for purposes of this case, which is expressly prohibited by the Protective Orders in the other litigation. The cases include *LPL v. Tatung Company, et. al.*, Case No. 05-292-JJF in Delaware District Court and *LPL v. Tatung Company, et. al.*, Case No. CV-02-6775-CBM in the Central District of California. Such conduct flagrantly disregards the letter and spirit of the applicable protective orders.

**2.    LPL Is Potentially In Violation Of the Patent Prosecution Bar.**

Second, the PTO records appear to show that LPL staffs its litigation team with attorneys who also prosecute patents in the area of flat panel display technology. The Tatung Defendants' investigation of this conduct, which would directly violate the Protective Order, is ongoing, and the issue has been raised with the Special Master.

For these reasons, the Tatung Defendants submit that the parties' current Protective Order is insufficient to protect against the potential harm posed by disclosure of unlimited confidential information by third parties, including Sensormatic. *See*

15

App. 0031

*Pulsecard*, 1995 WL 526533 at * 26 ("The court does not find that the entry of a prior protective order should necessarily bar a second one, if facts justify it").

## IV.    CONCLUSION

To be clear, the Tatung Defendants do not contest LPL's right to seek discovery from Sensormatic. They submit, however, that discovery obtained from third-parties must be *relevant* to this litigation and serve a legitimate purpose. Here, LPL's overly broad and improper requests do not serve such purposes. Accordingly, the Tatung Defendants respectfully request that the Court issue a protective order limiting discovery from Sensormatic to deposition testimony and documents relating to the accused products.

GREENBERG TRAURIG, P.A.
5100 Town Center Circle, Suite 400
Boca Raton, FL 33486
Telephone:    561.955.7600
Facsimile:    561.338.7099

By: _____
Geoffrey M. Cahen
Florida Bar No. 0013319
Counsel for Defendants Tatung
Company and Tatung Company of
America, Inc.

16

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing

upon all parties to this matter by depositing a true copy of same in the U.S. Mail, proper

postage prepaid, properly addressed to the parties on the attached service list:

This 9th day of March, 2007.

GREENBERG TRAURIG

By: _____
Geoffrey M. Cahen
Attorney For Defendants Tatung
Company and Tatung Company of
America, Inc.

17

App. 0033

## SERVICE LIST

Richard D. Kirk
rkirk@bayardfirm.com
**The Bayard Firm**
222 Delaware Avenue # 900
Wilmington, DE 19899

Gaspare J. Bono
gbono@mckennalong.com
Rel S. Ambrozy
rambrozy@mckennalong.com
Cass W. Christenson
cchristenson@mckennalong.com
Lora A. Brzezynski
lbrzezynski@mckennalong.com
**McKenna Long & Aldridge LLP**
1900 K Street, N.W.
Washington, DC 20006

Jeffrey B. Bove
jbove@cblh.com
James D. Heisman
jheisman@cblh.com
Jaclyn M. Mason
jmason@cblh.com
**Connolly Bove Lodge & Hutz LLP**
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Tracy R. Roman
troman@raskinpeter.com
**Raskin Peter Rubin & Simon LLP**
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

Scott R. Miller
smiller@cblh.com
**Connolly Bove Lodge & Hutz LLP**
355 South Grand Avenue, Suite 3150
Los Angeles, CA 90071

Frederick L. Cottrell, III
Cottrell@RLF.com
Anne Shea Gaza
Gaza@RLF.com
**Richards Layton & Finger, PA**
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

**Error! Unknown document property name.**

Frank E. Merideth, Jr.
meridethf@gtlaw.com
Valerie W. Ho
hov@gtlaw.com
Mark H. Krietzman
krietzmanm@gtlaw.com
Steve P. Hassid
hassids@gtlaw.com
**Greenberg Traurig LLP**
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

**Error! Unknown document property name.**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

                        Plaintiff,

            v.                                  Civil Action No. 04-343 (JJF)

TATUNG COMPANY, et al.,

                        Defendants.

NOTICE OF FED.R.CIV.P. 30(b)(6) DEPOSITION *DUCES TECUM*
AND FED.R.CIV.P. 45 SERVICE OF SUBPOENA
(SENSORMATIC)

TO:

Jeffrey B Bove, Esq.                    Frederick L. Cottrell, III, Esq.
Jaclyn M. Mason, Esq.                   Anne Shea Gaza, Esq.
Connolly Bove Lodge & Hutz LLP          Richards, Layton & Finger
1007 North Orange Street                One Rodney Square
P.O. Box 2207                           P.O. Box 551
Wilmington, Delaware 19899-2207         Wilmington, DE 19899

Valerie Ho, Esq.                        Scott R. Miller, Esq.
Mark H. Krietzman, Esq.                 Connolly Bove Lodge & Hutz LLP
Frank C. Merideth, Jr., Esq.            355 South Grand Avenue
Greenberg Traurig LLP                   Suite 3150
2450 Colorado Avenue, Suite 400E        Los Angeles, CA 90071
Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

        PLEASE TAKE NOTICE that Plaintiff will take the deposition *duces tecum* of

Sensormatic ("Sensormatic") pursuant to Fed. R. Civ. P. 30(b)(6), on March 16, 2007. The

deposition will take place at Esquire Deposition Services, 2385 NW Executive Ctr. Suite 120,

Boca Raton, FL 33431. The deposition will be videotaped and taken before a notary public or

651702-1



App. 0036

court reporter, duly authorized to administer oaths and transcribe the testimony of the

deponent(s) and may use technology that permits the real time display of the deposition

transcript for attendees who bring a compatible computer. The deposition may continue from

day to day until completed if authorized by the Court or stipulated by the parties.

PLEASE ALSO TAKE NOTICE that LG.Philips LCD Co., Ltd. is serving Sensormatic

with a subpoena (the "Subpoena"), a copy of which is attached hereto. The subjects covered in

the deposition will include (but are not limited to) the subjects listed on Attachment A to the

Subpoena. Pursuant to Fed. R. Civ. P. 30(b)(6), Sensormatic is required to designate one or

more persons to testify at the deposition as to the matters known or reasonably available to

Sensormatic concerning all topics listed in Attachment A to the Subpoena. In addition, the

Subpoena requires Sensormatic to produce at the deposition the documents listed in Attachment

B to the Subpoena.

You are invited to attend and cross examine.


February 13, 2007

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, Suite 900
OF COUNSEL:                        P.O. Box 25130
Gaspare J. Bono                    Wilmington, DE  19899-5130
Matthew T. Bailey                  rkirk@bayardfirm.com
Lora A. Brzezynski                 (302) 655-5000
Cass W. Christenson                Counsel for Plaintiff
McKenna Long & Aldridge LLP        LG.PHILIPS LCD CO., LTD.
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

651702-1

OAO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD. | **SUBPOENA IN A CIVIL CASE** |
| V. | |
| TATUNG COMPANY, et al. | |

Case Number:[1]    04-343 (JJF)

TO:    **Sensormatic, Inc.**
       **6600 Congress Ave**
       **Boca Raton, Florida 33431-0837**

United States District Court for the District of Delaware

    YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
**X**    to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
**X**    deposition in the above case. (See Attachment A for topics.)

| PLACE OF DEPOSITION<br>Esq. Deposition Svcs, 2385 NW Executive Center Dr., Ste. 120, Boca Raton, FL 33431 | DATE AND TIME<br>March 16, 2007 at 9 am. |
|---|---|

    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at
**X**    the place, date, and time specified below (list documents or objects): All documents listed in Attachment B.

| PLACE<br>Mail documents to: McKenna Long & Aldridge LLP, Attn:  Shari Klevens c/o<br>Esq. Deposition Svcs, 2385 NW Executive Center Dr., Ste. 120, Boca Raton, FL 33431 | DATE AND TIME<br>March 5, 2007 at 9:00 a.m. |
|---|---|

**G**    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER=S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR<br>Shari Klevens (Attorney for Plaintiff) *Klevens* | DATE<br>February 13, 2007 |
|---|---|

ISSUING OFFICER=S NAME, ADDRESS AND PHONE NUMBER
Shari Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
Telephone: 202-496-7612

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

DC:504595211

App. 0038

AO88  (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
|      |       |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
|                        |                   |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
|                        |       |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                        DATE                        SIGNATURE OF SERVER

                                                    _____
                                                    ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)   fails to allow reasonable time for compliance,
(ii)  requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)  subjects a person to undue burden.

(B) If a subpoena

(i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)  requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

DC:50459531.1

App. 0039

**ATTACHMENT A: TOPICS TO BE ADDRESSED AT THE DEPOSITION**

For purposes of this Attachment, Sensormatic should use the following definition for the terms used herein.

A.    "Sensormatic," "you," and "your" as used herein, means Sensormatic and all persons or entities acting or purporting to act on your behalf, and any affiliates of Sensormatic.

B.    "ViewSonic" means Defendant ViewSonic Corporation, and all persons or entities acting or purporting to act on ViewSonic Corporation's behalf, and any affiliates of ViewSonic, including, but not limited to, entities, divisions, and affiliates located in Taiwan.

C.    "ViewSonic products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for ViewSonic. This includes all such products, regardless of brand name, and thus includes, but is not limited to, ViewSonic brand products.

D.    "Tatung Company" means Defendant Company and all persons or entities acting or purporting to act on Tatung Company's behalf, including, but not limited to Tatung America and TSTI.

E.    "Tatung Company products" as used herein any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung. This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung brand products.

App. 0040

F.    "Tatung America" means Defendant Tatung Company of America, Inc., and all persons or entities acting or purporting to act on Tatung Company of America's behalf, including but not limited to Tatung Company and any affiliates of Tatung Company of America.

G.    "Tatung America products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung America.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung America brand products.

H.    "TSTI" means Tatung Science and Technology, Inc., and all persons or entities acting or purporting to act on Tatung Science and Technology's behalf, including but not limited to Tatung Company, and any affiliates of Tatung Science and Technology.

I.    "TSTI products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for TSTI. This includes all such products, regardless of brand name, and thus includes, but is not limited to, TSTI brand products.

J.    "Affiliate(s)" means any corporation or other entity that controls, is controlled by or is under common control with the identified corporation or entity, including without limitation partnerships, parents, subsidiaries and divisions.

K.    "Visual display products" means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs.

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 2 of 6

L.    "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information between two of more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery or otherwise, including but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

M.    "Concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing or constituting the referenced subject.

N.    "Discuss," "discussing," "relate to" "relating to," "support" or "supporting" means in any way directly or indirectly, in whole or in part, discussing, referring to, regarding, constituting, concerning, about, pertaining to, relating to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling or negating.

O.    "Identify" used in respect to a company or corporate or business entity of any kind means to set forth:

      a.    the full name of the company;

      b.    the full name of the division or office involved, if applicable; and

      c.    the address of the company and of the division or office involved, if applicable.

P.    "Identify" used in respect to a document or thing means:

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 3 of 6

    a.   to provide a brief description of such document or thing, including date, author, recipients, type, and content or substance;

    b.   to identify the custodian of the document or thing;

    c.   to identify the place where the document or thing may be inspected; and

    d.   if a copy of the document has been supplied to LPL, to so state and specifically identify the copy supplied by reference to production numbers or other identifying information.

Q.    "Identify" used with respect to a natural person means to state:

    a.   the full name;

    b.   the present or last known business and residence addresses;

    c.   the last known employer or job affiliation; and

    d.   the last known occupation and business position or title held.

R.    "Import" or "importation" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

S.    "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

T.    "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

U.    "Person" means any natural person, firm, association, partnership, corporation, or other form of legal entity.

V.    "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

W.    The use of the singular form of any word includes the plural and vice versa.

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 4 of 6

The topics to be covered in the deposition include:

1.    The nature of the business relationship and transactions between Sensormatic and Tatung Company, Tatung America, TSTI, and/or ViewSonic relating to the sale, manufacture, assembly, distribution, or import of visual display products, including but not limited to the agreements between Sensormatic, Tatung Company, Tatung America, TSTI, and/or ViewSonic.

2.    The scope, nature and purpose of communications between Sensormatic and Tatung Company, Tatung America, TSTI, and/or ViewSonic (a) concerning the sale or marketing in the United States of visual display products manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, (b) communications regarding any product support assistance or warranties that Tatung Company, Tatung America, TSTI, and/or ViewSonic have provided to Sensormatic, (c) communications regarding the market trends for visual display products in the United States, (d) communications regarding the technical specifications of Tatung Company, Tatung America, TSTI, and/or ViewSonic visual display products, and (e) communications regarding your required or desired technical specifications for visual display products manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic.

3.    The scope, nature and purpose of communications between Sensormatic and Tatung Company, Tatung America, TSTI, and/or ViewSonic concerning the technical assembly of Tatung Company's, Tatung America's, TSTI's, or ViewSonic's visual display products, including, but not limited to, the use and identity of original equipment manufacturers ("OEMs") or systems integrators used by Sensormatic, Tatung Company, Tatung America, TSTI, and ViewSonic.

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 5 of 6

App. 0044

4.    Any agreements or contracts pursuant to which Sensormatic has agreed to purchase Tatung Company's, Tatung America's, TSTI, and/or ViewSonic's visual display products either directly from Tatung Company, Tatung America, TSTI, or ViewSonic or indirectly by purchasing such products from any OEMs.

5.    Sensormatic's activities or efforts related to the distribution or sale of visual display products in the United States manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic.

6.    All channels, distributors, suppliers, and networks through which products made in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic have been shipped, imported, sold, and/or distributed in the United States.

7.    Sensormatic's sales of its visual display products that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, including the quantity and dollar amount of such sales, by product.

8.    The substance of any meetings between Sensormatic and Tatung Company, Tatung America, TSTI, and/or ViewSonic whether in the U.S. or abroad.

DC:50159632.1

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 6 of 6

## ATTACHMENT B: DOCUMENTS TO BE PRODUCED

For purposes of this Attachment, Sensormatic should refer to Attachment A for the definition or meaning of terms used herein, which definitions are incorporated herein by reference.  In addition, the following definition applies:

A.    "Document" means all types of documents and things embraced within Federal Rules of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries or interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, or opinions of counsel, records, reports or summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, computer printouts, floppy disks, hard drives, CD-ROM's, magnetic tapes and other data compilations from which

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 1 of 3

information can be obtained or translated, if necessary by Sensormatic through detection devices into reasonably usable form. The term document also refers to any tangible object other than a document as described above, and includes objects of every kind and nature such as, but not limited to, prototypes, models, and specimens.

The documents to be produced on or before March 5, 2007, include the following:

1.      All documents provided by Tatung Company, Tatung America, TSTI, and/or ViewSonic to Sensormatic since January 1, 2002 regarding: (i) marketing, sales, or business documents or presentation materials; (ii) technical specifications and/or drawings regarding Tatung Company's, Tatung America's, TSTI's or ViewSonic's visual display products, including but not limited to the assembly of such products; and (iii) any documents relating to warranties, product support, or service provided by Tatung Company, Tatung America, TSTI, and/or ViewSonic regarding their visual display products.

2.      Documents provided by Sensormatic to Tatung Company, Tatung America, TSTI or ViewSonic since January 1, 2002 sufficient to show (i) Sensormatic's design requirements for its visual display products, (ii) Sensormatic's market for its visual display products, and/or (iii) market trends in the United States for visual display products.

3.      Documents sufficient to show the business relationship between Sensormatic and Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including communications with Tatung Company, Tatung America, TSTI, and/or ViewSonic, notes from meeting with Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents in which Sensormatic has agreed to purchase visual display products directly from Tatung Company, Tatung America, TSTI, and/or ViewSonic.

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 2 of 3

4.      All documents related to the manufacture and/or assembly of Tatung Company's, Tatung America's, TSTI's, and/or ViewSonic's visual display products.

5.      All documents since January 1, 2002 evidencing or relating to Sensormatic's purchase from original equipment manufacturers ("OEMs") any visual display products that Sensormatic had reason to believe were manufactured or assembled in whole or in part by Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents sufficient to show that Tatung Company, Tatung America, TSTI, and/or ViewSonic received notice of Sensormatic's agreements to purchase.

6.      Documents sufficient to show Sensormatic's receipt or purchase of visual display products sold, manufactured, shipped, imported, or distributed in whole or in part by Tatung Company, Tatung America, TSTI, and ViewSonic since January 1, 2002.

7.      Documents sufficient to show the total quantity of visual display products sold, by product, by Sensormatic that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI, and (4) ViewSonic products.

8.      Documents sufficient to show the sales by total dollar value and by quantity of visual display products sold, by product, by Sensormatic that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI, and (4) ViewSonic products.

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 3 of 3

9.    Documents sufficient to identify each person Sensormatic has communicated with at Tatung Company, Tatung America, TSTI, and/or ViewSonic.

DC:5C459602.1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 13, 2007, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent by hand to the above counsel and by email and will be sent by first class mail

to the following non-registered participants:

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

/s/ Richard D. Kirk (rk922)
Richard D. Kirk

571447-1

## DECLARATION OF CHARLENE OH

I, Charlene Oh, declare:

1.     I am an attorney licensed to practice before the Courts of the State of California.  I
am an associate with the law firm of Greenberg Traurig, LLP, counsel for Defendants
Tatung Company and Tatung Company of America, Inc.  I make this Declaration in
support of Defendants' Motion for a Protective Order Limiting Scope of Third Party
Deposition and Subpoena (the "Motion for Protective Order").

2.     The Motion for Protective Order concerns a deposition notice and third party
subpoena issued in this district in connection with a patent infringement lawsuit pending
in the United States District Court for the District of Delaware, C.A. No. 04-343-JJF (the
"Delaware Action").

3.     The following list identifies those products Plaintiff L.G. Philips LCD Co., Ltd.
has accused of infringement in the C.A. No. 04-343-JJF case.  The list is taken from
Plaintiff's Fifth Supplemental Response to Defendants' Interrogatory No. 1.

| |
|---|
| L17AMTN |
| L17UCCT |
| TLM1705 |
| Tatung ADMNC1LCD17 |
| American Dynamics ADMNC1LCD17 |
| Unidentified American Dynamics Product |
| P42HSMT |
| P46T |
| (Triview) TLM1505 |
| TriviewFST-1503RV-4B |
| TLM1703T |
| TLM1703 |
| TLM1903 |
| V23CLTT |
| V23DLWX-U12 |
| V27CMTT-U01 |
| V30CMTT-U62 |



EXHIBIT

2

App. 0051

| V30CMTT-U01 |
|---|
| HP RG556AA |
| IloFCBT |
| Hitachi 37HDL52 |

4.    The Motion for Protective Order requests that this Court limit discovery from third parties to deposition testimony and documents that relate to the above accused products.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 8, 2007 in Los Angeles, CA.

_____

Charlene Oh

126743326_1

## DECLARATION OF JACKSON CHANG

I, Jackson Chang, under penalty of perjury, hereby declare and state:

1. I am the General Manager of Display BU Sales for Tatung Company.

2. Tatung Company and Tatung Company of America, Inc. (the "Tatung Defendants"), actively compete with L.G. Philips LCD Co., Ltd. ("LPL") and its parent company, LG Electronics, Inc. ("LGE") in the computer monitor business.

3. Producing the information and testimony LPL seeks would cause major competitive harm to the Tatung Defendants.

4. The noticed deposition topics are closely guarded by the Tatung Defendants as highly sensitive and confidential business information.

5. The requested documents also implicate highly sensitive commercial information.

6. All of this information is kept secret by the Tatung Defendants. Only authorized personnel have access to the information and information kept on computers are password protected.

7. A third party's disclosure of the requested information would likely result in competitors using the information to 1) undercut the Tatung Defendants in pricing; 2) deduce the exact specifications required by existing customers; and/or 3) specifically target and lure away Tatung's existing customers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 8, 2007 in Los Angeles, CA.

_Jackson Chang_
Jackson Chang

EXHIBIT

3

App. 0053

Case 9:07-mc-80223-KLR    Document 1    Entered on FLSD Docket 03/12/2007    Page 38 of 38

OJS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)    NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

**I. (a) PLAINTIFFS**
L.G. PHILIPS LCD CO., LTD.

**DEFENDANTS**
TATUNG COMPANY, TATUNG COMPANY OF AMERICA, INC. and VIEWSONICE CORPORATION

CIV-RYSKAMP

MAGISTRATE JUDGE
VITUNAC

07-80223

(b) County of Residence of First Listed Plaintiff Seoul, Korea
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Taipei, Taiwan
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
302-655-5000

Attorneys (If Known)
Greenberg Traurig
5100 Town Center Circle, Suite 400
Boca Raton, FL 33486
561-955-7600

FILED BY
2007 MAR -9

(d) Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

07CV 8C223  KLR/AAV

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act |  | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other |  |  | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed- (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**
(See instructions second page):

a) Re-filed Case  ☐ YES  ☐ NO      b) Related Cases  ☒ YES  ☐ NO
JUDGE Joseph J. Fernan, Jr.

District of Delaware (Wilmington)
DOCKET NUMBER 1:04-cv-00343-JJF

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity): Fed. R. Civ. P. 26(c)

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
Geoffrey Cahn

DATE
03/09/07

722519

FOR OFFICE USE ONLY

AMOUNT 39—

American LegalNet, Inc.    www.USCourtForms.com

App. 0054

## DECLARATION OF CHARLENE OH

I, Charlene Oh, declare:

1.      I am an attorney licensed to practice before the Courts of the State of California. I am an associate with the law firm of Greenberg Traurig, LLP, counsel for Defendants Tatung Company and Tatung Company of America, Inc. I make this Declaration in support of Defendants' Motion for a Protective Order Limiting Scope of Third Party Deposition and Subpoena (the "Motion for Protective Order").

2.      The Motion for Protective Order concerns a deposition notice and third party subpoena issued in this district in connection with a patent infringement lawsuit pending in the United States District Court for the District of Delaware, C.A. No. 04-343-JJF (the "Delaware Action").

3.      The following list identifies those products Plaintiff L.G. Philips LCD Co., Ltd. has accused of infringement in the C.A. No. 04-343-JJF case. The list is taken from Plaintiff's Fifth Supplemental Response to Defendants' Interrogatory No. 1.

| |
|---|
| L17AMTN |
| L17UCCT |
| TLM1705 |
| Tatung ADMNC1LCD17 |
| American Dynamics ADMNC1LCD17 |
| Unidentified American Dynamics Product |
| P42HSMT |
| P46T |
| (Triview) TLM1505 |
| TriviewFST-1503RV-4B |
| TLM1703T |
| TLM1703 |
| TLM1903 |
| V23CLTT |
| V23DLWX-U12 |
| V27CMTT-U01 |
| V30CMTT-U62 |

126743326_1

| V30CMTT-U01 |
| HP RG556AA |
| IloFCBT |
| Hitachi 37HDL52 |

4.    The Motion for Protective Order requests that this Court limit discovery from third parties to deposition testimony and documents that relate to the above accused products.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 8, 2007 in Los Angeles, CA.

Charlene Oh

## Declaration of Charlene L. Oh

I, Charlene L. Oh, declare as follows:

1.      I am an attorney at the law firm of Greenberg Traurig, LLP, and I am counsel for Defendants Tatung Company and Tatung Company of America (collectively, "the Tatung Defendants") in the lawsuit styled *L.G. Philips LCD Co., Ltd. v. Tatung Company, et al.*, Civil Action No. 04-343-JJF, in the United States District Court for the District of Delaware (the "Delaware Action").

2.      I have personal knowledge of the facts contained in this declaration and, if called and sworn as a witness, I could and would testify truthfully to the following:

3.      L.G. Philips LCD Co., Ltd.'s ("LPL") served its initial discovery requests in the Delaware Action over two years ago.

4.      In response, the Tatung Defendants produced technical specifications and assembly drawings covering approximately 800 models of the monitors and flat panel displays that they sell.

5.      Of the hundreds of products for which LPL has been provided technical documents, LPL has to date accused only 20 products of infringing the patents-in-suit.

6.      Until November 2006, LPL had accused only one Tatung product of infringing the patents-in-suit.

7.      In November 2006, LPL identified two additional accused products.

8.      It was not until mid-January 2007 that LPL accused the remaining products.

9.      The Tatung Defendants have expended a great deal of effort to comply with their discovery obligations.  Since late January 2007 alone, the Tatung Defendants have produced approximately 15,000 pages of documents, including the following:

- Highly confidential Tatung America product work instructions;

- Highly confidential exploded view drawings of products; and

- Highly confidential sales summaries from 2002 to the present (quarter 1, 2007) containing model, price, and quantity information for *all* of its visual display products.

10.    In addition, the Tatung Defendants have made available for LPL's inspection, and LPL has examined, disassembled, and photographed more than 40 monitor and television products.

11.    In January 2007, LPL filed a motion to compel the production of additional documents such as highly confidential agreements and communications between the Tatung Defendants and their customers relating to *all* of the Tatung Defendants' visual display products including the hundreds of unaccused products.

12.    The Tatung Defendants opposed that motion on the grounds that LPL's requested discovery is not limited in any way to the accused products at issue in the Delaware Action and is instead LPL's attempt to obtain highly sensitive business information.

13.    That motion is presently pending before the Special Master in the Delaware Action, and a decision is expected before the close of discovery on March 30, 2007.

14.    LPL has recently served over two dozen Tatung customers, with a subpoena duces tecum for oral deposition and the production of voluminous, irrelevant documents including confidential customer information on hundreds of products that LPL has never accused of infringement.

126746797_1

15.    The Tatung Defendants have recently petitioned the Special Master in the Delaware Action for relief regarding LPL's multiple violations of protective orders issued in different cases, implicating different patents, pending between the parties.

16.    LPL has admitted that its lawyers have viewed, used and disclosed confidential materials produced in other litigation between the parties for purposes of the Delaware Action, which is expressly prohibited by the Protective Orders in the other litigation. The cases include *LPL v. Tatung Company, et. al.,* Case No. 05-292-JJF in Delaware District Court and *LPL v. Tatung Company, et. al.,* Case No. CV-02-6775-CBM in the Central District of California.

17.    The Patent and Trademark Office records appear to show that LPL staffs its litigation team with attorneys who also prosecute patents in the area of flat panel display technology. The Tatung Defendants' investigation of this conduct, which would directly violate the Protective Order, is ongoing, and the issue has been raised with the Special Master.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct. Executed on March 13, 2007 in Los Angeles, California.

Charlene L. Oh

## DECLARATION OF JACKSON CHANG

I, Jackson Chang, under penalty of perjury, hereby declare and state:

1.    I am the General Manager of Display BU Sales for Tatung Company.

2.    Tatung Company and Tatung Company of America, Inc. (the "Tatung Defendants"), actively compete with L.G. Philips LCD Co., Ltd. ("LPL") and its parent company, LG Electronics, Inc. ("LGE") in the computer monitor business.

3.    Producing the information and testimony LPL seeks would cause major competitive harm to the Tatung Defendants.

4.    The noticed deposition topics are closely guarded by the Tatung Defendants as highly sensitive and confidential business information.

5.    The requested documents also implicate highly sensitive commercial information.

6.    All of this information is kept secret by the Tatung Defendants.  Only authorized personnel have access to the information and information kept on computers are password protected.

7.    A third party's disclosure of the requested information would likely result in competitors using the information to 1) undercut the Tatung Defendants in pricing; 2) deduce the exact specifications required by existing customers; and/or 3) specifically target and lure away Tatung's existing customers.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 8, 2007 in Los Angeles, CA.


_Jackson Chang_
Jackson Chang

App. 0060

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 JAN 24  AM 9: 45

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LG PHILIPS LCD CO., LTD.,                )
                                         )
Plaintiff,                               )
                                         )        C.A. No. 04-343-JJF
v                                        )
                                         )
TATUNG COMPANY;                          )
TATUNG COMPANY OF AMERICA,               )
INC. and VIEWSONIC CORPORATION,          )
                                         )
Defendants.                              )

STIPULATED PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the parties stipulate to the
following Protective Order, subject to the approval of the Court:

1.      Scope of Protection.

1.1     This Protective Order shall govern any record of information, designated pursuant
to Paragraph 2 of this Protective Order, produced in this action, including all designated
deposition testimony, all designated testimony taken at a hearing or other proceeding,
interrogatory answers, documents and other discovery materials, whether produced
informally or in response to interrogatories, requests for admissions, requests for
production of documents or other formal method of discovery.

1.2     This Protective Order shall also govern any designated record of information
produced in this action pursuant to required disclosures under any federal procedural rule
or District of Delaware local rule, and any supplementary disclosures thereto.

1.3     This Protective Order shall apply to the parties and any nonparty from whom
discovery may be sought and who desires the protection of this Protective Order
(collectively herein referred to as a "party" or the "parties").

2.      Designation.

2.1     Each party shall have the right to designate as confidential and subject to this
Protective Order any information produced by it in this action which contains, reflects, or

App. 0061

otherwise discloses confidential technical, business or financial information ("CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered confidential under this Protective Order. The parties will use reasonable care to avoid designating any documents or information CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER that are generally available to the public.

2.2     Each party shall have the right to designate as restricted to review by those categories of individuals listed in Paragraphs 4.1(a) - 4.1(e) and subject to this Protective Order any information produced in this action which contains, reflects, or otherwise discloses (1) trade secrets, (2) research and development, manufacturing, operational or other highly sensitive technical information, or (3) highly sensitive business related informaton, such as customer, supplier or financial information (collectively, "HIGHLY SENSITIVE CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend HIGHLY SENSITIVE CONFIDENTIAL prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered HIGHLY SENSITIVE CONFIDENTIAL under this Protective Order. To the extent that material is marked HIGHLY SENSITIVE CONFIDENTIAL, such material shall be revealed to or used by limited categories of individuals, as provided for in Paragraph 4.2, and shall not be communicated in any manner, either directly or indirectly, to any person or entity not permitted disclosure pursuant to this Protective Order. Any copies of such material, abstracts, summaries or information derived therefrom, and any notes or other records regarding the contents thereof, shall also be deemed HIGHLY SENSITIVE CONFIDENTIAL, and the same terms regarding confidentiality of these materials shall apply as apply to the originals. Use of this highly restrictive designation is limited to information of the highest sensitivity. The parties will use reasonable care to avoid designating any documents or information HIGHLY SENSITIVE CONFIDENTIAL for which the designating party does not have a good faith belief that the documents or information satisfy the criteria set forth in this Paragraph 2.2. HIGHLY SENSITIVE CONFIDENTIAL information shall be used only for purposecs directly related to this action, and for no other purpose whatsoever, except by consent of all of the parties or order of the Court.

2.3     To the extent that any party has, prior to the date that this Order is entered, produced to the other side materials that the producing party has marked with confidentiality designation, all such materials shall be considered to have been designated under this Order as HIGHLY SENSITIVE CONFIDENTIAL unless otherwise agreed by the Parties.

3.      Limit On Use And Disclosure Of Designated Information.

3.1    Each party and all persons bound by the terms of this Protective Order shall use any information or document governed by this Protective Order only in connection with the prosecution or defense of this action and for no other purpose, except by consent of the parties or order of the Court. No party or other person shall disclose or release to any person not authorized under this Protective Order any information or document governed by this Protective Order for any purpose, or to any person authorized under this Protective Order for any other purpose.

3.2    It is, however, understood that counsel for a party may give advice and opinions to his or her client in connection with the prosecution or defense of this action based on his or her evaluation of designated confidential information received by the party, provided that such rendering of advice and opinions counsel shall not reveal the content of such information except by prior written agreement with counsel for the producing party.

3.3    The attorneys of record for the parties and other persons receiving information governed by this Protective Order shall exercise reasonable care to ensure that the information and documents governed by this Protective Order are (a) used only for the purposes specified herein, and (b) disclosed only to authorized persons.

4.    Disclosure Of Confidential Material.

4.1    Documents or information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER shall be disclosed by the recipient thereof only to:

(a)    the attorneys who are actively involved in this action that are partners of or employed by the following law firms of record for the parties, and their authorized secretarial, clerical and legal assistant staff: Morris, James, Hitchens & Williams LLP; McKenna, Long & Aldridge LLP; Potter Anderson & Corroon LLP; Bingham McCutchen LLP; Rosethal, Monhait, Gross & Goddess; and Baum & Weems provided that such attorneys shall not be provided access to HIGHLY SENSITIVE CONFIDENTIAL information if such attorneys

(1)    have participated in, directed or supervised any patent prosecution activitiy related to the patents-in-suit or currently participate in, direct or supervise any patent prosecution activity involving (i) flat panel or fllat panel display technology or (ii) technology related or refering to or incorporating flat panels or flat panel displays (collectively, "the Subject Matter"). During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not participate in, direct or supervise any patent prosecution activity in the United States Patent and Trademark Office or with any patent office outside the United States involving the Subject Matter;

(2)    provide non-legal, business advice or non-legal, business representation or to clients in the flat panel display industry wherein the highly sensitive business-related financial information of any opposing party would be relevant to such non-legal, business advice or non-legal, business representation. During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not provide non-legal, business advice or non-legal, business representation to clients in the flat panel display industry wherein the highly sensitive business-related information of any opposing party would be relevant to such non-legal, business advice or representation; or

(3)    are related to or have a personal, social relationship with any officer, director or employee of a party

(b)    the Court and Court personnel, as provided in Paragraph 12;

(c)    consultants or experts and their staffs retained by the parties or their attorneys for purposes of this action, who are agreed upon by the parties pursuant to Paragraph 6, who are not employees or otherwise affiliated with any of the parties (except persons scheduled to be deposed by any of the parties pursuant to Rule 30(b)(6), Fed.R.Civ.P.), and who first agree to be bound by the terms of this Protective Order;

(d)    court reporters employed in connection with this action;

(e)    outside copying and computer services necessary for document handling, and other litigation support personnel (e.g., translators, graphic designers and animators);

(f)    One member of LG.Philips LCD, Co., Ltd.'s in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(g)    One member of Viewsonic Corporation's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(h)    One member of Tatung Company's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(i)    One attorney of Tatung Company of America, Inc.'s regular out-side counsel, provided that each such individual must first agree to be bound by the terms of this Protective Order;

4.2    Documents or information designated HIGHLY SENSITIVE CONFIDENTIAL shall be disclosed by the recipient thereof only to those categories of individuals listed in Paragraphs 11 4.1(a) - 4.1(e) subject to the restrictions therein.

5.    Redaction.

Counsel for a party producing documents may mask ("redact") material deemed exempt from discovery because it is protected from disclosure under the attorney-client privilege or work product immunity afforded by Rule 26(b), Fed.R.Civ.P. However, any document from which material is masked must identify in the masked area that masking or redaction has occurred. The reason for any such masking must be stated on a log to be provided within thirty (30) days after the production of the documents. Sufficient information regarding the masked material must be provided to the other party to enable it to evaluate the legitimacy of the asserted privilege or immunity. The parties reserve the right to pursue categories for redaction in addition to those identified above, by either consent of the parties or order of the Court, to be addressed on a case-by case basis.

6.    Disclosure to Independent Consultants and Identification of Experts.

6.1    If any party desires to disclose information designated CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL to any expert or consultant pursuant to Paragraph 4 above, it must first identify in writing to the attorneys for the producing party each such expert or consultant. The attorney for the producing party shall have ten (10) business days from receipt of such notice to object to disclosure of such information to any of the experts or consultants so identified.

6.2    Such identification shall include the full name and professional address and/or affiliation of the proposed expert or consultant, an up-to-date curriculum vitae identifying at least all other present and prior employments or consultancies of the expert or consultant in the field of flat panel and flat panel display technologies, and a list of the cases in which the expert or consultant has testified at a deposition, an arbitral hearing or trial within the last four years. The parties shall attempt to resolve any objections informally. If the objections cannot be resolved, the party seeking to disclose the CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information to the expert or consultant may move the Court for an Order allowing the disclosure. On any motion challenging the disclosure of such information to an expert or consultant, the burden of proof shall lie with the party objecting to the disclosure to establish that the information should not be disclosed to the expert or consultant. In the event objections are made and not resolved informally, disclosure of information to the expert or consultant shall not be made except by Order of the Court (or to any limited extent upon which the parties may agree).

7.    Agreement Of Confidentiality.

In no event shall any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL be disclosed to any person authorized pursuant to Paragraph 4, other than (a) the Court and Court personnel, (b) the parties' attorneys identified in Paragraph 4.1(a) and their authorized secretarial and legal assistant staffs, (c) court reporters, and (d) outside copying and computer services necessary for document handling, until such person has executed a written

Confidentiality Undertaking (in the form set forth in Exhibit A hereto) acknowledging and agreeing to be bound by the terms of this Protective Order. Copies of such Confidentiality Undertakings shall be promptly served on the producing party.

8.      Related Documents.

Information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL shall include (a) all documents, copies, extracts, and complete or partial summaries prepared from or containing such information; (b) portions of deposition transcripts and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (c) portions of briefs, memoranda or any other papers filed with the Court and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (d) deposition testimony designated in accordance with Paragraph 9; and (e) testimony taken at a hearing or other proceeding that is designated in accordance with Paragraph 10.

9.      Designation Of Deposition Transcripts.

9.1     Deposition transcripts, or portions thereof, may be designated as subject to this Protective Order either (a) at the time of such deposition, in which case the transcript of the designated testimony shall be marked by the reporter with the appropriate legend (see Paragraph 2.1) as the designating party may direct, or (b) within twenty-one (21) days following the receipt of the transcript of the deposition by providing written notice to the reporter and all counsel of record, in which case all counsel receiving such notice shall mark the copies or portions of the designated transcript in their possession or under their control as directed by the designating party.

9.2     All deposition transcripts not previously designated shall be deemed to be, and shall be treated as, HIGHLY SENSITIVE CONFIDENTIAL until the expiration of the period set forth in Paragraph 9.1, and neither the transcript nor the content of the testimony shall be disclosed by a non-designating party to persons other than those persons named or approved according to Paragraph 4.

9.3     The designating party shall have the right to exclude from a deposition, before the taking of testimony which the designating party designates CONFIDENTIALSUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, all persons other than those persons previously qualified to receive such information pursuant to Paragraph 4.

9.4     In addition, to the extent that any document or information that has been designated as either CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, such document or information shall not be disclosed to or otherwise used with any witness not currently or previously employed or retained by the producing party during a deposition without at least three (3) calendar days prior notice to the designating party of such potential use in order to permit counsel for the designating party to attend and to take

such action as it deems appropriate to protect the confidentiality of the documents and/or information. Counsel for the parties shall attempt to resolve any objection(s) and they will only seek redress to the Court if no resolution can be reached. However, the receiving party shall not use or otherwise disclose the confidential documents or information subject to such objection at such deposition of a witness not currently or previously employed or retained by the producing party until the Court has ruled upon any such objection(s), provided that the producing party submits the matter to the Court within three (3) calendar days of the parties being unable to resolve the objection(s).

10.    Designation Of Hearing Testimony Or Argument.

With respect to testimony elicited during hearings and other proceedings, whenever counsel for any party deems that any question or line of questioning calls for the disclosure of CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL information, counsel may designate on the record prior to such disclosure that the disclosure is subject to confidentiality restrictions. Whenever matter designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL is to be discussed in a hearing or other proceeding, any party claiming such confidentiality may ask the Court to have excluded from the hearing or other proceeding any person who is not entitled under this Order to receive information so designated.

11.    Disclosure To Author Or Recipient.

Notwithstanding any other provisions of this Order, nothing herein shall prohibit counsel for a party from disclosing a document containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL to any person which the document clearly identifies as an author, addressee, or carbon copy recipient of such document, or to any current employee of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. During deposition or trial testimony, counsel may disclose documents produced by a party to current employees and officers of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. And regardless of such designation pursuant to this ' Protective Order, if a document or testimony makes reference to the actual or alleged conduct or statements of a person who is a potential witness, counsel may discuss such conduct or statements with such witness without revealing any portion of the document or testimony other than that which specifically refers to such conduct or statement, and such discussion shall not constitute disclosure in violation of this Protective Order.

12.    Designation Of Documents Under Seal.

Any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, if filed with the Court, shall be filed under seal and shall be made available only to the Court and to persons authorized by the terms of this Protective Order. The party filing any paper which reflects, contains or includes

any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information subject to this Protective Order shall file such paper in a sealed envelope, or other appropriately sealed container, which indicates the title of the action, the party filing the materials, the nature of the materials filed, the appropriate legend (see Paragraph 2.1), and a statement substantially in the following form:

This envelope contains documents subject to a Protective Order of the Court. It should be opened only by the Court. Its contents should not be disclosed, revealed or made public except by Order of the Court or written agreement of the parties.

13.    Confidentiality Of Party's Own Documents.

No person may disclose, in public or private, any designated information of another party except as provided for in this Protective Order, but nothing herein shall affect the right of the designating party to disclose to its officers, directors, employees, attorneys, consultants or experts, or to any other person, its own information. Such disclosure shall not waive the protections of this Protective Order and shall not entitle other parties or their attorneys to disclose such information in violation of it, unless by such disclosure of the designating party the information becomes public knowledge (see Paragraph 16). Similarly, the Protective Order shall not preclude a party from showing its own information to its officers, directors, employees, attorneys, consultants or experts, or to any other person, which information has been filed under seal by the opposing party.

14.    Other Protections.

14.1    No person shall use any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information, or information derived therefrom, for purposes other than the prosecution or defense of this action, including without limitation, for purposes of preparing, filing or prosecuting any patent application, continuation or divisional patent application, reissue patent application or request for re-examination.

14.2    Any party may mark any document or thing containing CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information as an exhibit to a deposition, hearing or other proceeding and examine any witness thereon qualified under the terms of this Protective Order to have access to such designated material.

15.    Challenge To Confidentiality.

15.1 This Protective Order shall not preclude any party from seeking and obtaining, on an appropriate showing, such additional protection with respect to the confidentiality of documents or other discovery materials as that party may consider appropriate. Nor shall any party be precluded from (a) claiming that any matter designated hereunder is not entitled to the protections of this Protective Order, (b) applying to the Court for an Order permitting the disclosure or use of information or documents otherwise prohibited by this Protective Order, or (c) applying for a further Order modifying this Protective Order in any respect. No party shall be obligated to challenge the propriety of any designation, and

failure to do so shall not preclude a subsequent challenge to the propriety of such designation.

15.2    On any motion challenging the designation of any information, the burden of proof shall lie with the producing party to establish that the information is, in fact, CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information. If a party seeks declassification or removal of particular items from a designation on the ground that such designation is not necessary to protect the interests of the party wishing the designated information, the following procedure shall be utilized:

a. The party seeking such declassification or removal shall give counsel of record for the other party written notice thereof specifying the designated information as to which such removal is sought and the reasons for the request; and

b. If, after conferring, the parties cannot reach agreement concerning the matter, then the party requesting the declassification or removal of particular items may file and serve a motion for a further Order of this Court directing that the designation shall be so removed.

16.    Prior Or Public Knowledge.

This Protective Order shall not apply to information that, prior to disclosure, is public knowledge, and the restrictions contained in this Protective Order shall not apply to information that is, or after disclosure becomes, public knowledge other than by an act or omission of the party to whom such disclosure is made, or that is legitimately and independently acquired from a source not subject to this Protective Order.

17.    Limitation Of Protective Order.

This Protective Order is not intended to address discovery objections to produce, answer, or respond on the grounds of attorney-client privilege or work product doctrine, or to preclude any party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure.

18.    Other Proceedings.

By entering this order and limiting the disclosure of information in this case, the court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who may be subject to a motion to disclose another party's CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information pursuant to this order shall promptly notify that party of the motion so that it may have an opportunity to appear and be heard on whether such information should be disclosed.

19.    Inadvertent Disclosure Of Work Product Or Privileged Information:

Procedure And Waiver.

19.1    If the producing party at anytime notifies the Non-producing party in writing that it has inadvertently produced documents and/or things that are protected from disclosure under attorney-client privilege, work-product immunity, and/or any other applicable privilege or immunity from disclosure, the non-producing party shall return all copies of such documents and/or things to the producing party within five (5) business days of receipt of such notice and shall not further disclose or use such items for any purpose until further order of the Court. Upon being notified by the producing party pursuant to this section, counsel for the non-producing party shall use his or her best efforts to retrieve all copies of the documents at issue.

19.2    The return of any discovery item to the producing party shall not in any way preclude the non-producing party from moving the Court for a ruling that: (a) the document or thing was never privileged or otherwise immune from disclosure; and/or (b) that any applicable privilege or immunity has been waived.

19.3    Inadvertent or unintentional disclosure of information subject to any privilege or immunity during the course of this litigation without proper designation shall not be deemed a waiver of a claim that disclosed information is in fact subject to a privilege or immunity if so designated within ten (10) business days after the producing party actually learns of the inadvertent or unintentional disclosure.

20.     Non-Party Material.

The terms of this Protective Order, as well as the terms of any protective order that may be entered into between a discovering party and third party for the production of information to the discovering party, are applicable to CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information provided by a non-party. Information provided by a non-party in connection with this action and designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, pursuant to the terms of this Protective Order shall be protected by the remedies and relief provided by this Protective Order.

21.     Return Of Designated Information.

Within thirty (30) days of final termination of this action, unless otherwise agreed to in writing by an attorney of record for the designating party, each party shall assemble and return, or certify destruction of, all materials containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, including all copies, extracts and summaries thereof, to the party from whom the designated material was obtained, except that (a) any documents or copies which contain, constitute or reflect attorney's work product or attorney-client privilege communications, and (b) archive copies of pleadings, motion papers, deposition transcripts, correspondence and written discovery responses may be retained by counsel.

22.     Waiver Or Termination Of Order.

No part of the restrictions imposed by this Protective Order may be waived or terminated, except by written stipulation executed by counsel of record for each designating party, or by an Order of the Court for good cause shown. The restrictions provided for herein shall not terminate upon the conclusion of this action, but shall continue until further Order of this Court.

23.     Modification Of Order; Prior Agreements.

To the extent the terms of this Protective Order conflict with Local Rule 26.2 or with any agreements between the parties regarding the confidentiality of particular documents or information entered into before the date of this Protective Order, the terms of this Protective Order shall govern, except as to those documents and information produced or disclosed prior to the entry of this Protective Order, which documents and information shall continue to be governed by the terms of such prior agreements or by the provisions of Local Rule 26.2, as applicable.

24.     Section Captions.

The title captions for each section of this Protective Order are for convenience only and are not intended to affect or alter the text of the sections or the substance of the

Order.

Dated: December       , 2004

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 04-343-JJF |
| v. | ) | |
| | ) | |
| TATUNG COMPANY; | ) | |
| TATUNG COMPANY OF AMERICA, | ) | |
| INC. and VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## CONFIDENTIALITY UNDERTAKING

I certify that I have read the Protective Order in this action and that I fully understand the terms of the Order. I recognize that I am bound by the terms of that Order, and I agree to comply with those terms. I hereby consent to the personal jurisdiction of the United States District Court, District of Delaware, for any proceedings involving the enforcement of that Order and waive any venue objection with respect to any such proceedings.

EXECUTED this     day of _____, _____.

Name

Affiliation

Business Address

## CERTIFICATE OF SERVICE

I, Jeffrey S. Goddess, hereby certify that on January 24, 2005, I caused two copies of the foregoing document to be served as follows:

(VIA E-MAIL)        Richard D. Kirk, Esquire
                    The Bayard Firm
                    222 Delaware Avenue #900
                    P. O. Box 25130
                    Wilmington, DE 19899
                     Attorneys for Plaintiff L.G. Philips LCD Co., Ltd.

(VIA E-MAIL)        Richard L. Horwitz, Esquire
                    Potter Anderson & Corroon, LLP
                    1313 N. Market Street
                    Hercules Plaza, 6th Floor
                    P. O. Box 951
                    Wilmington, DE 19899

(VIA E-MAIL)        Cass W. Christenson, Esquire
                    McKenna Long & Aldridge LLP
                    1900 K Street, NW
                    Washington, DC 20006

(VIA E-MAIL)        Tracy Roman, Esquire
                    Bingham McCutchen
                    355 S. Grand Ave., 44th Floor
                    Los Angeles, CA 90071

JEFFREY S. GODDESS (No. 630)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

L.G. PHILIPS LCD CO., LTD.,

      Plaintiff,

TATUNG COMPANY; TATUNG
COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION,

      Defendants

Case No. 04-343-JJF (D. Del.)

**07-80223**

**CIV-RYSKAMP**

THIS MATTER having been opened to the Court on motion by defendants, the

Tatung Co. and the Tatung Company of America, Inc., by their attorneys, for a protective

order pursuant to Fed. R. Civ. P. 26(c), limiting the scope of discovery from third party

Sensormatic, Inc. ("Sensormatic"); and plaintiff L.G.Philips LCD Co., Ltd., by their

attorneys, having opposed the motion; and the Court having considered the papers

submitted and the arguments presented; and for good cause shown:

**IT IS HEREBY ORDERED THAT:**

1.      The motion is GRANTED.

2.      Any deposition testimony taken from third party Sensormatic shall be

limited to the accused products at issue in *L.G. Philips LCD Co., Ltd. v. Tatung*

*Company, et. al.*, C.A. No. 04-343-JJF (United States District Court for the District of

Delaware) (the "Delaware Action"). Such deposition testimony shall be subject to the

provisions of the Stipulated Protective Order dated January 24, 2005 entered in the

Delaware Action.

3.      Any documents produced in response to the subpoena by third party

Sensormatic shall be limited to those documents relating to the accused products at issue

in the Delaware Action. Additionally, any documents produced shall be stamped

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER and shall be produced subject

to the Stipulated Protective Order dated January 24, 2005 entered in the Delaware Action,

which is attached hereto as Exhibit 1.

Dated:  March 2, 2007
Boca Raton, Florida

_____
United States District Court Judge for the
Southern District of Florida

Copies to:    Richard D. Kirk, Esq. (rkirk@bayardfirm.com)
              Gaspare J. Bono, Esq. (gbono@mckennalong.com)
              Jeffrey B. Bove, Esq. (jbove@cblh.com)
              Tracy R. Roman, Esq. (troman@raskinpeter.com)
              Scott R. Miller, Esq. (smiller@cblh.com)
              Frederick L. Cottrell, III, Esq. (Cottrell@RLF.com)
              Frank E. Merideth, Jr., Esq. (meredith@gtlaw.com)
              Geoffrey M. Cahen, Esq. (caheng@gtlaw.com)

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 JAN 24  AM 9: 45

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LG PHILIPS LCD CO., LTD ,              )
                                        )
Plaintiff,                              )
                                        )        C A. No. 04-343-JJF
v                                       )
                                        )
TATUNG COMPANY;                         )
TATUNG COMPANY OF AMERICA,              )
INC. and VIEWSONIC CORPORATION,         )
                                        )
Defendants.                             )

STIPULATED PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the parties stipulate to the
following Protective Order, subject to the approval of the Court:

1.      Scope of Protection.

1.1     This Protective Order shall govern any record of information, designated pursuant
to Paragraph 2 of this Protective Order, produced in this action, including all designated
deposition testimony, all designated testimony taken at a hearing or other proceeding,
interrogatory answers, documents and other discovery materials, whether produced
informally or in response to interrogatories, requests for admissions, requests for
production of documents or other formal method of discovery.

1.2     This Protective Order shall also govern any designated record of information
produced in this action pursuant to required disclosures under any federal procedural rule
or District of Delaware local rule, and any supplementary disclosures thereto.

1.3     This Protective Order shall apply to the parties and any nonparty from whom
discovery may be sought and who desires the protection of this Protective Order
(collectively herein referred to as a "party" or the "parties").

2       Designation.

2.1     Each party shall have the right to designate as confidential and subject to this
Protective Order any information produced by it in this action which contains, reflects, or

EXHIBIT

App. 0076

otherwise discloses confidential technical, business or financial information ("CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered confidential under this Protective Order. The parties will use reasonable care to avoid designating any documents or information CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER that are generally available to the public.

2.2     Each party shall have the right to designate as restricted to review by those categories of individuals listed in Paragraphs 4.1(a) - 4.1(e) and subject to this Protective Order any information produced in this action which contains, reflects, or otherwise discloses (1) trade secrets, (2) research and development, manufacturing, operational or other highly sensitive technical information, or (3) highly sensitive business related information, such as customer, supplier or financial information (collectively, "HIGHLY SENSITIVE CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend HIGHLY SENSITIVE CONFIDENTIAL prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered HIGHLY SENSITIVE CONFIDENTIAL under this Protective Order. To the extent that material is marked HIGHLY SENSITIVE CONFIDENTIAL, such material shall be revealed to or used by limited categories of individuals, as provided for in Paragraph 4.2, and shall not be communicated in any manner, either directly or indirectly, to any person or entity not permitted disclosure pursuant to this Protective Order. Any copies of such material, abstracts, summaries or information derived therefrom, and any notes or other records regarding the contents thereof, shall also be deemed HIGHLY SENSITIVE CONFIDENTIAL, and the same terms regarding confidentiality of these materials shall apply as apply to the originals. Use of this highly restrictive designation is limited to information of the highest sensitivity. The parties will use reasonable care to avoid designating any documents or information HIGHLY SENSITIVE CONFIDENTIAL for which the designating party does not have a good faith belief that the documents or information satisfy the criteria set forth in this Paragraph 2.2. HIGHLY SENSITIVE CONFIDENTIAL information shall be used only for purposes directly related to this action, and for no other purpose whatsoever, except by consent of all of the parties or order of the Court.

2.3     To the extent that any party has, prior to the date that this Order is entered, produced to the other side materials that the producing party has marked with confidentiality designation, all such materials shall be considered to have been designated under this Order as HIGHLY SENSITIVE CONFIDENTIAL unless otherwise agreed by the Parties

3.     Limit On Use And Disclosure Of Designated Information.

App. 0077

3.1    Each party and all persons bound by the terms of this Protective Order shall use any information or document governed by this Protective Order only in connection with the prosecution or defense of this action and for no other purpose, except by consent of the parties or order of the Court. No party or other person shall disclose or release to any person not authorized under this Protective Order any information or document governed by this Protective Order for any purpose, or to any person authorized under this Protective Order for any other purpose.

3.2    It is, however, understood that counsel for a party may give advice and opinions to his or her client in connection with the prosecution or defense of this action based on his or her evaluation of designated confidential information received by the party, provided that such rendering of advice and opinions counsel shall not reveal the content of such information except by prior written agreement with counsel for the producing party.

3.3    The attorneys of record for the parties and other persons receiving information governed by this Protective Order shall exercise reasonable care to ensure that the information and documents governed by this Protective Order are (a) used only for the purposes specified herein, and (b) disclosed only to authorized persons.

4.    Disclosure Of Confidential Material.

4.1    Documents or information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER shall be disclosed by the recipient thereof only to:

(a)    the attorneys who are actively involved in this action that are partners of or employed by the following law firms of record for the parties, and their authorized secretarial, clerical and legal assistant staff: Morris, James, Hitchens & Williams LLP; McKenna, Long & Aldridge LLP; Potter Anderson & Corroon LLP; Bingham McCutchen LLP; Rosenthal, Monhait, Gross & Goddess; and Baum & Weems provided that such attorneys shall not be provided access to HIGHLY SENSITIVE CONFIDENTIAL information if such attorneys

(1)    have participated in, directed or supervised any patent prosecution activitiy related to the patents-in-suit or currently participate in, direct or supervise any patent prosecution activity involving (i) flat panel or fllat panel display technology or (ii) technology related or refering to or incorporating flat panels or flat panel displays (collectively, "the Subject Matter"). During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not participate in, direct or supervise any patent prosecution activity in the United States Patent and Trademark Office or with any patent office outside the United States involving the Subject Matter;

(2)    provide non-legal, business advice or non-legal, business representation or to clients in the flat panel display industry wherein the highly sensitive business-related financial information of any opposing party would be relevant to such non-legal, business advice or non-legal, business representation. During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not provide non-legal, business advice or non-legal, business representation to clients in the flat panel display industry wherein the highly sensitive business-related information of any opposing party would be relevant to such non-legal, business advice or representation; or

(3)    are related to or have a personal, social relationship with any officer, director or employee of a party

(b)    the Court and Court personnel, as provided in Paragraph 12;

(c)    consultants or experts and their staffs retained by the parties or their attorneys for purposes of this action, who are agreed upon by the parties pursuant to Paragraph 6, who are not employees or otherwise affiliated with any of the parties (except persons scheduled to be deposed by any of the parties pursuant to Rule 30(b)(6), Fed.R.Civ.P.), and who first agree to be bound by the terms of this Protective Order;

(d)    court reporters employed in connection with this action;

(e)    outside copying and computer services necessary for document handling, and other litigation support personnel (e.g., translators, graphic designers and animators);

(f)    One member of LG.Philips LCD, Co., Ltd.'s in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(g)    One member of Viewsonic Corporation's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(h)    One member of Tatung Company's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(i)    One attorney of Tatung Company of America, Inc.'s regular out-side counsel, provided that each such individual must first agree to be bound by the terms of this Protective Order;

4.2    Documents or information designated HIGHLY SENSITIVE CONFIDENTIAL shall be disclosed by the recipient thereof only to those categories of individuals listed in Paragraphs 11 4.1(a) - 4.1(e) subject to the restrictions therein.

LG Philips v Tatung Co, Case No 04-343-JJF
Protective Order, Page 4

App. 0079

5.    Redaction

Counsel for a party producing documents may mask ("redact") material deemed exempt from discovery because it is protected from disclosure under the attorney-client privilege or work product immunity afforded by Rule 26(b), Fed.R.Civ.P. However, any document from which material is masked must identify in the masked area that masking or redaction has occurred. The reason for any such masking must be stated on a log to be provided within thirty (30) days after the production of the documents. Sufficient information regarding the masked material must be provided to the other party to enable it to evaluate the legitimacy of the asserted privilege or immunity. The parties reserve the right to pursue categories for redaction in addition to those identified above, by either consent of the parties or order of the Court, to be addressed on a case-by case basis.

6.    Disclosure to Independent Consultants and Identification of Experts.

6.1    If any party desires to disclose information designated CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL to any expert or consultant pursuant to Paragraph 4 above, it must first identify in writing to the attorneys for the producing party each such expert or consultant. The attorney for the producing party shall have ten (10) business days from receipt of such notice to object to disclosure of such information to any of the experts or consultants so identified.

6.2    Such identification shall include the full name and professional address and/or affiliation of the proposed expert or consultant, an up-to-date curriculum vitae identifying at least all other present and prior employments or consultancies of the expert or consultant in the field of flat panel and flat panel display technologies, and a list of the cases in which the expert or consultant has testified at a deposition, an arbitral hearing or trial within the last four years. The parties shall attempt to resolve any objections informally. If the objections cannot be resolved, the party seeking to disclose the CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information to the expert or consultant may move the Court for an Order allowing the disclosure. On any motion challenging the disclosure of such information to an expert or consultant, the burden of proof shall lie with the party objecting to the disclosure to establish that the information should not be disclosed to the expert or consultant. In the event objections are made and not resolved informally, disclosure of information to the expert or consultant shall not be made except by Order of the Court (or to any limited extent upon which the parties may agree).

7.    Agreement Of Confidentiality.

In no event shall any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL be disclosed to any person authorized pursuant to Paragraph 4, other than (a) the Court and Court personnel, (b) the parties' attorneys identified in Paragraph 4.1(a) and their authorized secretarial and legal assistant staffs, (c) court reporters, and (d) outside copying and computer services necessary for document handling, until such person has executed a written

Confidentiality Undertaking (in the form set forth in Exhibit A hereto) acknowledging and agreeing to be bound by the terms of this Protective Order. Copies of such Confidentiality Undertakings shall be promptly served on the producing party.

8.      Related Documents.

Information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL shall include (a) all documents, copies, extracts, and complete or partial summaries prepared from or containing such information; (b) portions of deposition transcripts and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (c) portions of briefs, memoranda or any other papers filed with the Court and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (d) deposition testimony designated in accordance with Paragrapah 9; and (e) testimony taken at a hearing or other proceeding that is designated in accordance with Paragraph 10.

9.      Designation Of Deposition Transcripts.

9.1     Deposition transcripts, or portions thereof, may be designated as subject to this Protective Order either (a) at the time of such deposition, in which case the transcript of the designated testimony shall be marked by the reporter with the appropriate legend (see Paragraph 2.1) as the designating party may direct, or (b) within twenty-one (21) days following the receipt of the transcript of the deposition by providing written notice to the reporter and all counsel of record, in which case all counsel receiving such notice shall mark the copies or portions of the designated transcript in their possession or under their control as directed by the designating party.

9.2     All deposition transcripts not previously designated shall be deemed to be, and shall be treated as, HIGHLY SENSITIVE CONFIDENTIAL until the expiration of the period set forth in Paragraph 9.1, and neither the transcript nor the content of the testimony shall be disclosed by a non-designating party to persons other than those persons named or approved according to Paragraph 4.

9.3     The designating party shall have the right to exclude from a deposition, before the taking of testimony which the designating party designates CONFIDENTIALSUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, all persons other than those persons previously qualified to receive such information pursuant to Paragraph 4.

9.4     In addition, to the extent that any document or information that has been designated as either CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, such document or information shall not be disclosed to or otherwise used with any witness not currently or previously employed or retained by the producing party during a deposition without at least three (3) calendar days prior notice to the designating party of such potential use in order to permit counsel for the designating party to attend and to take

such action as it deems appropriate to protect the confidentiality of the documents and/or information. Counsel for the parties shall attempt to resolve any objection(s) and they will only seek redress to the Court if no resolution can be reached. However, the receiving party shall not use or otherwise disclose the confidential documents or information subject to such objection at such deposition of a witness not currently or previously employed or retained by the producing party until the Court has ruled upon any such objection(s), provided that the producing party submits the matter to the Court within three (3) calendar days of the parties being unable to resolve the objection(s).

10.     Designation Of Hearing Testimony Or Argument.

With respect to testimony elicited during hearings and other proceedings, whenever counsel for any party deems that any question or line of questioning calls for the disclosure of CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL information, counsel may designate on the record prior to such disclosure that the disclosure is subject to confidentiality restrictions. Whenever matter designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL is to be discussed in a hearing or other proceeding, any party claiming such confidentiality may ask the Court to have excluded from the hearing or other proceeding any person who is not entitled under this Order to receive information so designated.

11.     Disclosure To Author Or Recipient.

Notwithstanding any other provisions of this Order, nothing herein shall prohibit counsel for a party from disclosing a document containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL to any person which the document clearly identifies as an author, addressee, or carbon copy recipient of such document, or to any current employee of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. During deposition or trial testimony, counsel may disclose documents produced by a party to current employees and officers of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. And regardless of such designation pursuant to this Protective Order, if a document or testimony makes reference to the actual or alleged conduct or statements of a person who is a potential witness, counsel may discuss such conduct or statements with such witness without revealing any portion of the document or testimony other than that which specifically refers to such conduct or statement, and such discussion shall not constitute disclosure in violation of this Protective Order.

12.     Designation Of Documents Under Seal.

Any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, if filed with the Court, shall be filed under seal and shall be made available only to the Court and to persons authorized by the terms of this Protective Order. The party filing any paper which reflects, contains or includes

any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information subject to this Protective Order shall file such paper in a sealed envelope, or other appropriately sealed container, which indicates the title of the action, the party filing the materials, the nature of the materials filed, the appropriate legend (see Paragraph 2.1), and a statement substantially in the following form:

This envelope contains documents subject to a Protective Order of the Court. It should be opened only by the Court. Its contents should not be disclosed, revealed or made public except by Order of the Court or written agreement of the parties.

13.     Confidentiality Of Party's Own Documents.

No person may disclose, in public or private, any designated information of another party except as provided for in this Protective Order, but nothing herein shall affect the right of the designating party to disclose to its officers, directors, employees, attorneys, consultants or experts, or to any other person, its own information. Such disclosure shall not waive the protections of this Protective Order and shall not entitle other parties or their attorneys to disclose such information in violation of it, unless by such disclosure of the designating party the information becomes public knowledge (see Paragraph 16). Similarly, the Protective Order shall not preclude a party from showing its own information to its officers, directors, employees, attorneys, consultants or experts, or to any other person, which information has been filed under seal by the opposing party.

14.     Other Protections.

14.1    No person shall use any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information, or information derived therefrom, for purposes other than the prosecution or defense of this action, including without limitation, for purposes of preparing, filing or prosecuting any patent application, continuation or divisional patent application, reissue patent application or request for re-examination.

14.2    Any party may mark any document or thing containing CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information as an exhibit to a deposition, hearing or other proceeding and examine any witness thereon qualified under the terms of this Protective Order to have access to such designated material.

15.     Challenge To Confidentiality.

15.1 This Protective Order shall not preclude any party from seeking and obtaining, on an appropriate showing, such additional protection with respect to the confidentiality of documents or other discovery materials as that party may consider appropriate. Nor shall any party be precluded from (a) claiming that any matter designated hereunder is not entitled to the protections of this Protective Order, (b) applying to the Court for an Order permitting the disclosure or use of information or documents otherwise prohibited by this Protective Order, or (c) applying for a further Order modifying this Protective Order in any respect. No party shall be obligated to challenge the propriety of any designation, and

failure to do so shall not preclude a subsequent challenge to the propriety of such designation.

15.2    On any motion challenging the designation of any information, the burden of proof shall lie with the producing party to establish that the information is, in fact, CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information. If a party seeks declassification or removal of particular items from a designation on the ground that such designation is not necessary to protect the interests of the party wishing the designated information, the following procedure shall be utilized:

a. The party seeking such declassification or removal shall give counsel of record for the other party written notice thereof specifying the designated information as to which such removal is sought and the reasons for the request; and

b. If, after conferring, the parties cannot reach agreement concerning the matter, then the party requesting the declassification or removal of particular items may file and serve a motion for a further Order of this Court directing that the designation shall be so removed.

16.    Prior Or Public Knowledge.

This Protective Order shall not apply to information that, prior to disclosure, is public knowledge, and the restrictions contained in this Protective Order shall not apply to information that is, or after disclosure becomes, public knowledge other than by an act or omission of the party to whom such disclosure is made, or that is legitimately and independently acquired from a source not subject to this Protective Order.

17.    Limitation Of Protective Order.

This Protective Order is not intended to address discovery objections to produce, answer, or respond on the grounds of attorney-client privilege or work product doctrine, or to preclude any party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure.

18.    Other Proceedings.

By entering this order and limiting the disclosure of information in this case, the court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who may be subject to a motion to disclose another party's CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information pursuant to this order shall promptly notify that party of the motion so that it may have an opportunity to appear and be heard on whether such information should be disclosed.

19.    Inadvertent Disclosure Of Work Product Or Privileged Information:

App. 0084

Procedure And Waiver.

19.1    If the producing party at anytime notifies the Non-producing party in writing that it has inadvertently produced documents and/or things that are protected from disclosure under attorney-client privilege, work-product immunity, and/or any other applicable privilege or immunity from disclosure, the non-producing party shall return all copies of such documents and/or things to the producing party within five (5) business days of receipt of such notice and shall not further disclose or use such items for any purpose until further order of the Court. Upon being notified by the producing party pursuant to this section, counsel for the non-producing party shall use his or her best efforts to retrieve all copies of the documents at issue.

19.2    The return of any discovery item to the producing party shall not in any way preclude the non-producing party from moving the Court for a ruling that: (a) the document or thing was never privileged or otherwise immune from disclosure; and/or (b) that any applicable privilege or immunity has been waived.

19.3    Inadvertent or unintentional disclosure of information subject to any privilege or immunity during the course of this litigation without proper designation shall not be deemed a waiver of a claim that disclosed information is in fact subject to a privilege or immunity if so designated within ten (10) business days after the producing party actually learns of the inadvertent or unintentional disclosure.

20.    Non-Party Material.

The terms of this Protective Order, as well as the terms of any protective order that may be entered into between a discovering party and third party for the production of information to the discovering party, are applicable to CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information provided by a non-party. Information provided by a non-party in connection with this action and designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, pursuant to the terms of this Protective Order shall be protected by the remedies and relief provided by this Protective Order.

21.    Return Of Designated Information.

Within thirty (30) days of final termination of this action, unless otherwise agreed to in writing by an attorney of record for the designating party, each party shall assemble and return, or certify destruction of, all materials containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, including all copies, extracts and summaries thereof, to the party from whom the designated material was obtained, except that (a) any documents or copies which contain, constitute or reflect attorney's work product or attorney-client privilege communications, and (b) archive copies of pleadings, motion papers, deposition transcripts, correspondence and written discovery responses may be retained by counsel.

22. Waiver Or Termination Of Order.

No part of the restrictions imposed by this Protective Order may be waived or terminated, except by written stipulation executed by counsel of record for each designating party, or by an Order of the Court for good cause shown. The restrictions provided for herein shall not terminate upon the conclusion of this action, but shall continue until further Order of this Court.

23. Modification Of Order; Prior Agreements.

To the extent the terms of this Protective Order conflict with Local Rule 26.2 or with any agreements between the parties regarding the confidentiality of particular documents or information entered into before the date of this Protective Order, the terms of this Protective Order shall govern, except as to those documents and information produced or disclosed prior to the entry of this Protective Order, which documents and information shall continue to be governed by the terms of such prior agreements or by the provisions of Local Rule 26.2, as applicable.

24. Section Captions.

The title captions for each section of this Protective Order are for convenience only and are not intended to affect or alter the text of the sections or the substance of the

Order.

Dated: December        , 2004

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 04-343-JJF |
| v. | ) | |
| | ) | |
| TATUNG COMPANY; | ) | |
| TATUNG COMPANY OF AMERICA, | ) | |
| INC. and VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants | ) | |

CONFIDENTIALITY UNDERTAKING

I certify that I have read the Protective Order in this action and that I fully understand the terms of the Order. I recognize that I am bound by the terms of that Order, and I agree to comply with those terms. I hereby consent to the personal jurisdiction of the United States District Court, District of Delaware, for any proceedings involving the enforcement of that Order and waive any venue objection with respect to any such proceedings.

EXECUTED this       day of _____, _____.

Name

Affiliation

Business Address

LG.Philips v. Tatung Co, Case No. 04-343-JJF
Protective Order, Page 12

App. 0087

<u>CERTIFICATE OF SERVICE</u>

I, Jeffrey S. Goddess, hereby certify that on January 24, 2005, I caused two

copies of the foregoing document to be served as follows:


(VIA E-MAIL)   Richard D. Kirk, Esquire
        The Bayard Firm
        222 Delaware Avenue #900
        P. O. Box 25130
        Wilmington, DE 19899
        Attorneys for Plaintiff L.G. Philips LCD Co., Ltd.


(VIA E-MAIL)   Richard L. Horwitz, Esquire
        Potter Anderson & Corroon, LLP
        1313 N. Market Street
        Hercules Plaza, 6th Floor
        P. O. Box 951
        Wilmington, DE 19899


(VIA E-MAIL)   Cass W. Christenson, Esquire
        McKenna Long & Aldridge LLP
        1900 K Street, NW
        Washington, DC 20006


(VIA E-MAIL)   Tracy Roman, Esquire
        Bingham McCutchen
        355 S. Grand Ave., 44th Floor
        Los Angeles, CA 90071


           _____
           JEFFREY S. GODDESS (No. 630)