**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| IN RE SUBPOENA ISSUED TO COMPUSA, INC. | **3-07 mc 0018-P** (related case: 3-07 mc 0017-N) |

RESPONDENT LG.PHILIPS LCD CO., LTD.'S  BRIEF IN SUPPORT OF ITS
RESPONSE TO TATUNG'S MOTION FOR PROTECTIVE ORDER

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff/Respondent LG.Philips LCD Co., Ltd. ("LPL") hereby opposes the tardily filed Motion for Protective Order filed by Defendants Tatung Company and Tatung Company of America, Inc. (collectively "Tatung") with respect to the third party subpoena served by LPL on Radio Shack Corporation (*See* Appendix RESP 0002-00015).[1]

LPL requests that the Court exercise its discretion to transfer the instant motion to the United States District Court for the District of Delaware.  In the alternative, LPL requests that the Court deny the Motion and allow LPL to proceed with necessary and appropriate third party discovery.

This Motion for Protective Order has not been filed by the party who received the subpoena from LPL.  Rather, Tatung, a defendant in the underlying case, in a blatant attempt to interfere with this and other proper subpoenas, has filed this motion in an effort to prevent third parties from producing what LPL knows will be extensive evidence against Tatung of both infringement and inducement to infringe the patents in the underlying suit.  Further, Tatung's efforts are designed to prevent LPL from obtaining necessary third party discovery prior to the deadline of March 30, 2007.  LPL has filed a motion with the Special Discovery Master in the underlying case seeking an order that prevents Tatung from taking such actions and also seeking an extension of third party discovery due to Tatung's improper conduct.

---
[1] References to RESP 000 - -, refer to pages in Appendix filed herewith.

## I.    STATEMENT OF FACTS

This discovery dispute arises out of a patent infringement action pending in the United States District Court for the District of Delaware ("Main Case").  LPL is the owner of U.S. Patent No. 6,498,718 ("the '718 Patent") and U.S. Patent No. 6,501,641 ("the '641 Patent") (collectively, the "Patents-in-Suit"), which relate to mounting systems used in visual display products such as liquid crystal display ("LCD") computer monitors, laptop computers, and televisions.  LPL has asserted patent infringement claims against Tatung and ViewSonic Corporation ("ViewSonic") (collectively, the "Defendants").  The Defendants manufacture visual display products, which LPL alleges utilize LPL's patented techniques.  Among its claims, LPL alleges that Defendants have induced other parties, including the party to whom the instant Subpoena was served, to infringe LPL's patents.[2]

On December 27, 2006, LPL served a third party subpoena on Hewlett-Packard Company.  On February 13 and 14, 2007, LPL served approximately 23 other third party subpoenas ("Subpoenas") on various distributors, retailers, and purchasers of Defendants' products in the United States.  The Subpoenas were issued based on LPL's understanding that these parties, who have current or former business relationships with Tatung and ViewSonic, have documents that are relevant to the instant action, including but not limited to, documents related to purchase and sale of the infringing products in the United States, documents relating to Defendants' efforts to market the infringing products in the United States, and other important

---

[2] "A person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C. R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990).  If the defendant has knowledge of the patent, then upon a showing that defendant "had intent to induce the specific acts constituting infringement, intent additionally to cause an infringement can be presumed." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379 (Fed. Cir. 2005).  A jury could conclude that e-mails between  a foreign defendant and a U.S. company "represent product support" showing that the defendant was aware of potentially infringing activities in the U.S. by the U.S. company and that the defendant "intended to encourage those activities." *Id.* at 1379-80.  *See also Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1305 (Fed. Cir. 2002) (evidence did not support finding of no inducement where defendant was aware of patents and supplied infringing products to customers "with instructions on how they were to be used, which, when followed, would lead to infringement.");  *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001) (defendant's acts in connection with selling infringing audio chips, manufactured in Singapore and sold to customer that resold to the U.S. PC market, constituted active inducement).

discovery concerning infringement, inducement, damages, and other issues.[3]  While a small

handful of these third parties were served with subpoenas during the jurisdictional phase of this

case, the new subpoenas are materially and justifiable broader.

Based on information available to LPL and LPL's belief, the third parties are likely to

have information showing that the Defendants have imported, sold, and used their products in the

United States, activities which infringe upon LPL's U.S. patents and which support LPL's claims

of direct infringement or inducement of infringement.

In addition, the Subpoenas requested that all documents be produced by March 5, 2007,

and that depositions occur between March 12 and March 27, 2007, consistent with the March 30

deadline for third party discovery in this case.  LPL provided notice and copies of the Subpoenas

to the Defendants prior to the service of the Subpoenas.  During a telephone conference on

January 30, 2007, Tatung indicated for the first time that it intended to file a motion for

protective order with respect to the Subpoena directed to Hewlett-Packard, but Tatung never did

so.[4]  More than one month later, on March 5, Tatung again threatened to file additional motions

for protective orders with respect to the later served 23 Subpoenas.  In addition, even though

Tatung had received the second batch of Subpoenas nearly three weeks earlier, Tatung indicated

that some or all of such motions would be made on an *ex parte* basis because of the upcoming

return dates on the Subpoenas, which incidentally was that same day.  (*See* Ex. 2, Emails

---

[3] LPL has also sought the same information and documents, unsuccessfully, from the Defendants.  Defendants have produced some - but certainly not all – discovery that LPL seeks.  Notably, much of Defendants' production is subject to objections and limitations that LPL disputes and which are the subject of related discovery motions already pending before the Special Discovery Master in the Main Case in the District of Delaware, as described more fully herein.

[4] To date, Hewlett-Packard has produced more than 5000 pages of relevant, responsive documents.  Hewlett-Packard's agreement to produce and subsequent production belies Tatung's argument that the Subpoenas are burdensome to the third parties, particularly because the majority of the third parties are smaller entities with far fewer responsive documents.    Moreover, Hewlett-Packard produced many "Process Management Plans," documents that LPL asserts are essential to its infringement claims.  Incredibly, Tatung denied the existence of such documents and refused to produce them in response to numerous requests from LPL.  Tatung's failure to produce these documents underscores how critical it is for LPL to obtain the discovery that is being sought from the third parties.

between V. Ho and C. Connor (Mar. 5-7, 2007); RESP 00017-20). Tatung claimed to have standing to raise any such objections on behalf of the third parties because it claimed that the Subpoenas pertained to Tatung's still unresolved objections to the scope of discovery in the Main Case. Tatung never explained why it had waited several weeks before raising its objections, but merely stated that it intended to file its motions on an *ex parte* basis. *See id.* In an exchange of emails, LPL strenuously objected to Tatung's position that it could file *ex parte* motions on any issue in the case, including any issues related to the third party subpoenas served by LPL. *See id.* In addition, LPL further reiterated its position that Tatung had no standing to raise objections to the Subpoenas, principally, because Tatung has never proved why any documents now in the custody of third parties are confidential, trade secrets, or otherwise shielded from discovery. *See id,* RESP 00017-20.

Nonetheless, Tatung filed the instant Motion, along with approximately 22 other Motions related to the various Subpoenas served by LPL. Tatung filed the Motions for Protective Order without regard for the fact that several of the third parties had either already produced the requested documents or agreed to produce the requested documents with objection. Indeed, several third parties have agreed to produce the requested documents even after learning that Tatung had filed Motions related to the Subpoenas, which further undermines Tatung's arguments in its Motion. Nonetheless, due to Tatung's interference and improper motions, there are also certain third parties who have now refused to produce the requested discovery <u>after they had already agreed to comply with the subpoenas</u>. *See, e.g.* Ex. 3 at RESP 00021-23.

## II.    <u>ARGUMENT</u>

Under Rule 26(c), Tatung bears the burden of establishing that a protective order should be granted. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). To meet its burden, "the party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *See id; United States v. Garrett*, 571 F.2d 1323, 1326, n. 3 (5th Cir. 1978) (requiring "a particular and specific demonstration of fact

as distinguished from stereotyped and conclusory statements"); *General Dynamics Corp. v. Selb Mfg. Corp.*, 481 F.2d 1204, 1212 (8th Cir.1973), cert. denied, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035 (1970 & Supp.1985). Moreover, it is clear that the harm described by the movant must be significant, not a mere trifle. *See, e.g., Joy v. North*, 692 F.2d 880, 894 (2d Cir.1982) (refusing protective order where proponent's only argument in its favor was the broad allegations that the disclosure of certain information would "injure the bank in the industry and local community"), cert. denied sub nom. *Citytrust v. Joy*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). Tatung has failed to meet its high burden with respect to this Motion.

**A.** **The Court Should Exercise Its Discretion to Transfer Tatung's Motion to the District of Delaware**

The Court has the authority to transfer Defendants' Motion for Protective Order to the District of Delaware. *See Devlin v. Transportation Communications International Union*, 2000 WL 249286, *1 (S.D.N.Y. 2000) (stating that there is ample authority for the court from which a subpoena issues to transfer any motions relating to that subpoena back to the court where the main case is pending); *Digital Equipment Corp.*, 949 F.2d 228, 231 (8th Cir. 1991) (holding that while the court initially has exclusive jurisdiction to rule on the objections, it may in its discretion remit the matter to the court in which the action is pending).[5]

As explained above, all 23 motions filed by LPL are nearly identical. Yet, by having the Motions heard in 15 or more different jurisdictions, the parties risk that inconsistent opinions will be rendered. Moreover, the hearings on all of these motions will be very time consuming and will further interfere with LPL's attempts to finalize discovery in the Main Case, in which depositions of Tatung's witnesses are currently being taken. Thus, for the reasons cited above, LPL requests that the Court formally transfer this dispute back to the District of Delaware, the

---

[5] *See also* Fed.R.Civ.P. 26(c), advisory committee's note. The Advisory Committee's Note to Rule 26(c) (Protective Orders) explains: The subdivision recognizes the power of the court in the district where a deposition is being taken to make protective orders...The court in the district where the deposition is being taken may, and frequently will, remit the deponent or party to the court where the action is pending.

court where the Main Case is pending, so that all 23 motions and oppositions can be heard en masse.

### B.   Tatung Lacks Standing to Challenge the Subpoenas

Tatung does not have standing to raise any objections to LPL's Rule 45 subpoenas.  Rule 45(c) provides protection to persons "subject to subpoenas."  Indeed,

> "[u]nless a party to an action can make claim to some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty witness, the party to the action has no right to relief under Rule 45(b) or 30(b)." *Dart Industries, Inc. v. Liquid Nitrogen Processing*, 50 F.R.D. 286, 291 (D. Del. 1970).[6]

Tatung attempts to distinguish the *Dart* decision on two grounds.  First, Tatung argues that the motion in *Dart* was premised on Rule 45(c), rather than Rule 26(c), which was relied upon by Tatung.  However, the standards for protective orders under both rules is the same.  *See* Advisory Committee Notes to the 1970 Amendment to Rule 45 (the "scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules.")  Thus, Rule 45 clearly incorporates the standards set forth in Rule 26.

Tatung also attempts to distinguish *Dart* on the ground that the moving party in *Dart* did not assert any personal privilege in the requested documents.  Similarly however, in this case, while Tatung has stated, in a conclusory manner, that it has a personal stake in the documents to be produced, Tatung has failed to provide any particularized facts or evidence to support its conclusions.  Such statements are insufficient for Tatung to meet its burden in establishing that it is entitled to a Protective Order. *Cipollone*, 785 F.2d at 1121.  In addition, Tatung fails to explain why the Protective Order entered in the Main Case, which governs the use and disclosure of confidential information, does not adequately protect the information to be produced by the third

---

[6] *See* also, *Ponsford v. United States*, 771 F.2d 1305, 1308 (9th Cir. 1985) (denying motion to quash for lack of standing); *Nova Products, Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (denying motion to quash because no showing of personal right or privilege); *Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New York*, 519 F. Supp. 668, 680 (D. Del. 1981) (denying motion to quash because movant failed to prove documents sought were privileged).

parties.  Indeed, by Tatung's own admission, it has already produced documents designated as "Highly Sensitive Confidential" in the Main Case under the Protective Order.  Yet, Tatung's arguments suggest that such a course of action is not good enough for the third parties, even though the Protective Order clearly applies to non-parties as well.  Ex. 4 at RESP 00024-39.

Here, Tatung has not identified any particular harm that would necessitate a Protective Order.  Moreover, Tatung has no basis to object to the information sought by LPL's subpoenas and, thus, does not have standing to move for a Protective Order with respect to any of LPL's subpoenas.  As such, Tatung has evidently filed these motions solely to delay and impede LPL's discovery efforts.

### C.    Tatung's Motion Is Nothing More Than An Attempt to Interfere With LPL's Legitimate Third Party Discovery

Tatung's interference with valid third party discovery is inappropriate and is nothing more than an attempt to delay the third party discovery until after the March 30, 2007 discovery deadline.  Indeed, on March 7, 2007, LPL received a telephone message from Sensormatic, who had previously agreed to produce the documents requested in the Subpoena.  In that message, Sensormatic stated that Tatung told Sensormatic that it planned to move for a  protective order. Sensormatic further expressed concern about being in the middle of the dispute between the parties regarding the Subpoena.  As a result, Sensormatic has not produced documents yet, despite its earlier agreement to do so.  On March 8, 2007, LPL received correspondence from Tyco Electronics Corp. ("Tyco"), who LPL had also served with a Subpoena.  (*See* Ex. 3, RESP 00021-23).  Prior to that date, Tyco had also agreed to produce documents in response to the Subpoena.  In the correspondence on March 8, however, Tyco stated that, "I understand that [Tatung] intends to file a motion for protective order with regard to this subpoena.  In light of this, Tyco will await the disposition of this motion by the court before providing any material in response to the subpoena."  (Id.)  These communications clearly show that Tatung's motions are delaying LPL's legitimate discovery in this action.

Tatung has also taken steps to disrupt third party discovery in at least one other case. *See Safer Display Technology, Ltd. v. Tatung Co.*, 227 F.R.D. 435 (E.D. Va. 2004) (copy attached hereto at RESP 00083). In that case, represented by the same counsel as in the Main Case, Tatung engaged in similar delays before it finally withdrew its jurisdictional defense. *See Safer Display*, 227 F.R.D. at 437. Notably, in *Safer Display*, Tatung worked diligently to impede third party discovery by contacting and attempting to dissuade third parties from producing discovery, (*see* Ex. 6 at RESP 00092-93), and filing motions for protective orders for which Tatung lacked standing, (*see id.* at RESP 00093-94).

Tatung's continuing pattern of dilatory tactics and improper interference with LPL's discovery efforts should not be allowed to continue.

### D.   LPL Has Been Unsuccessful In Obtaining the Discovery It Seeks From the Defendants, Who Have Refused to Produce the Requested Documents

LPL needs the discovery that it seeks from the third parties because the fact discovery in the Main Case will close on March 30, 2007 and because Tatung has not cooperated with LPL's discovery efforts. Indeed, Tatung misrepresents the volume and the sufficiency of its document production to date. Although LPL's discovery requests were served on November 29, 2005, Tatung has refused to fully comply with those requests by, among other things, imposing unreasonable limitations and conditions on their production. LPL filed motions to compel in the Main Case that addressed issues common to all Defendants in the Main Case in September, October, November, and December 2006 and in January, February, and March 2007. Most of these issues have not yet been resolved and many of those unresolved issues relate directly to Tatung's instant Motion for Protective Order. For instance, although Tatung has identified over 300 potentially infringing products, it only produced about 60 technical drawings and then claimed, without explaining their calculations, that this fractional production covered as much as 96% of their products. Additionally, after telling LPL for months that it had produced all technical documents, Tatung has only recently revealed, but not yet fully produced, additional categories of critically relevant technical drawings. Tatung has informed LPL that it will

complete its supplemental production in April, which is well after the March 30 deadline for third party discovery.

Tatung argues that the third parties should not be required to produce documents, in part, because Tatung has objected to the scope of LPL's requests. Tatung correctly notes that the Special Discovery Master in the Main Case has not yet ruled on these issues. This is precisely the reason that LPL seeks discovery from the third parties. Tatung has refused to produce relevant documents and the Special Discovery Master has not ruled on Tatung's objections or on LPL's motions to compel that production. Notably, the subpoena itself is not limited to documents relating to Tatung in the possession of the third party as the subpoena also seeks documents relating to ViewSonic, another defendant in the Main case who has not objected to these subpoenas. All fact discovery, including third party discovery, in the Main Case closes on March 30, 2007. After that date, LPL will not be able to seek further discovery from any third party. Thus, in order to compile all relevant evidence and properly prepare its case for trial, LPL needs discovery from the third parties so that it can test the sufficiency and completeness of Tatung's own production.

There have been no rulings in the Main Case that would limit LPL's ability to obtain the scope of discovery that it seeks from the third parties. Indeed, contrary to Tatung's statement that the Special Discovery Master's "impending ruling" will be favorable to Tatung, neither party can predict in whose favor the Special Discovery Master will rule.

**E.    The Scope of the Subpoena is Reasonable, And In Any Event, Tatung's Objections are Misplaced**

In its Motion, Tatung argues that any discovery should be limited to the accused products. This, however, is precisely why LPL issued the Subpoenas. In its Complaint, LPL identified to Tatung an example of a product that LPL alleged to infringe the Patents-in-Suit. However, because Tatung makes hundreds of products, most of which are sold under brand names belonging to third parties, LPL needs third party discovery to determine which of Tatung's hundreds of products use infringing technology.

In light of the Delaware Court's Scheduling Order, requiring that third party discovery be completed by March 30, Tatung's efforts to limit the scope of LPL's subpoena to products that have been accused of infringement will artificially narrow the scope of the subpoena to products that are currently accused, even though that list will likely expand in April, after LPL finally receives Tatung's supplemental document production.

In addition, Tatung's objections to the scope of the Subpoena are misplaced. Specifically, objections based on burden or scope of a Subpoena should be made by the party upon whom the Subpoena is served. As the burden will not be borne by Tatung, Tatung does not have standing to raise that issue. To the extent that Tatung believes that the documents produced by third parties are not relevant to the litigation, or exceed the bounds of admissible evidence, Tatung can raise those arguments in advance of trial. *See Cook v. Rockwell Intern. Corp.*, 935 F.Supp. 1452, 1465 (D.Colo. 1996) ("Defendants had no standing to object to the breadth of the order [with respect to third party subpoena] but were restricted to appropriate objections as to relevance and admissibility before trial.") Notably, Tatung filed the Motions for Protective Order without regard for the fact that several of the third parties had either already produced the requested documents or agreed to produce the requested documents with objection. As the party to whom the Subpoena was served has not filed a Motion for Protective Order with respect to the breadth of the Subpoena, Tatung's objection on that basis should be denied.

### III.    CONCLUSION

For the foregoing reasons, LPL requests that the Court exercise its discretion to transfer the instant motion to the United States District Court for the District of Delaware. In the alternative, LPL requests that the Court deny the Motion and allow LPL to proceed with necessary third party discovery.

Respectfully Submitted,


s/Frank L. Broyles
  Frank L. Broyles
  Texas State Bar #03230500
  GOINS, UNDERKOFLER,
  CRAWFORD & LANGDON, LLP
  1201 ELM ST. SUITE 4800
  DALLAS, TX 75270
  (214) 969-5454
  (214 969-5902 TELECOPY


Attorneys for Respondent
**LG.PHILIPS LCD CO., LTD.**


Certificate of Service

On March 15, 2007, a genuine copy of the foregoing and referenced Appendix was served via email on the persons shown on the service list attached on the next page. Additionally, a copy will be served via first class mail on March 16, 2007.

s/Frank L. Broyles

## SERVICE LIST:
## 07-0017 & 07-0018 NDTX

**Richard D. Kirk**
The Bayard Firm
222
Delaware Ave.
Ste 900
Wilmington, DE 19899

**Jeffrey B. Bove**
**James D. Heisman**
**Jaclyn M. Mason**
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange St.
P.O. Box 2207
Wilmington, DE 19899

**Scott R. Miller**
CONNOLLY BOVE LODGE & HUTZ LLP
355 S. Grand Ave.
Suite 3150
Los Angeles, CA 90071

**Tracy R. Roman**
RASKIN PETER RUBIN & SIMON LLP
1801 Century Park East, Ste 2300
Los Angeles, CA 90067

**Frederick L. Cottrell, III**
**Anne Shea Gasa,**
RICHARDS LAYTON & FINGER, PA
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Penelope Brobst Blackwell

Email List:


rkirk@bayardfirm.com; jbove@cblh.com; jheisman@cblh.com; jmason@cblh.com;
smiller@cblh.com; troman@raskinpeter.com; Cottrell@RLF.com; Gaza@RLF.com